**SPRAGUE & SPRAGUE**
By:     Richard A. Sprague, Esquire (PA I.D. # 04266)
              Jordann R. Conaboy, Esquire (PA I.D. # 319337)
The Wellington Building, Suite 400
135 S. 19th Street
Philadelphia, PA 19103
(215) 561-7681
*Counsel for Plaintiffs  Richard A. Sprague,*
*Hon. Ronald D. Castille, Hon. Stephen Zappala, Sr.,*
*Hon. John W. Herron and Hillel S. Levinson*


### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD A. SPRAGUE,** | : | |
| | : | |
| And | : | |
| | : | |
| **HON. RONALD D. CASTILLE,** | : | |
| | : | Case No.1:16-CV-02169 |
| And, | : | |
| | : | |
| **HON. STEPHEN ZAPPALA, SR.,** | : | |
| | : | |
| And, | : | |
| | : | |
| **HON. JOHN W. HERRON** | : | |
| | : | |
| And, | : | |
| | : | |
| **HILLEL S. LEVINSON** | : | |
| | : | |
| Plaintiffs , | : | |
| | : | |
| v. | : | |
| | : | |

PEDRO A. CORTÉS, IN HIS OFFICIAL :
CAPACITY AS THE SECRETARY    :
OF THE COMMONWEALTH OF       :
PENNSYLVANIA,                 :
                              :
                              :
                    Defendant.    :

---

## PLAINTIFFS' SECOND AMENDMED COMPLAINT

## I.      PRELIMINARY STATEMENT

This case involves a demonstrably misleading ballot question and infringement of the inalienable right of Pennsylvania citizens to approve amendments to the Pennsylvania Constitution.  The Pennsylvania General Assembly proposes amending the Pennsylvania Constitution to raise the constitutionally-mandated judicial retirement age for state judges from 70 to 75. The Pennsylvania Constitution requires that the Secretary of the Commonwealth put the constitutional amendment proposed by the General Assembly to a statewide vote.  In order to do so, the Secretary of the Commonwealth developed a very straightforward question for the April 2016 primary election ballot.  The ballot question developed by the Secretary asked voters in simple terms whether the Pennsylvania Constitution should be amended to require that the Commonwealth's Supreme Court justices, judges and magisterial district judges "be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the

1

current requirement that they be retired on the last day of the calendar year in which they attain the age of 70."

When a group of state senators asked the Pennsylvania Supreme Court just over 7 months ago to revise this ballot question by striking the language advising of the current requirement that jurists of the Commonwealth retire at age 70, the Defendant, Secretary of the Commonwealth Pedro A. Cortés (the "Secretary" or "Secretary of the Commonwealth"), correctly argued that omitting this information would mislead voters into believing that the proposed constitutional amendment would newly impose a mandatory judicial retirement age, rather than raise the current compulsory retirement age by 5 years.   In an inexplicable about-face, however, the Secretary has since adopted the very ballot language he told the Pennsylvania Supreme Court would amount to a fraud on the Pennsylvania electorate.

Instead of asking whether voters wish to raise the judicial retirement age by 5 years, the ballot question that the Secretary intends to present to the electorate will simply ask Pennsylvania voters in the next general election whether the Pennsylvania Constitution should be amended to require that the Commonwealth's jurists "be retired on the last day of the calendar year in which they attain the age of 75 years[.]"  Unlike the ballot question that the Secretary developed for the April 2016 primary election, the question that the Secretary intends to place on the

November 2016 general election ballot omits the fact that Supreme Court justices, judges and magisterial district judges of the Commonwealth of Pennsylvania are currently required to retire at the age of 70.  The Secretary's ballot question is misleadingly designed to garner "yes" votes from voters who are actually in favor of restricting the terms of state court jurists, or who are against authorizing state court jurists to serve longer terms, but are unaware that the proposed amendment will have the opposite effect.

Despite recognizing the importance of the constitutional question presented here—whether the Secretary's ballot question is unlawfully misleading—the Pennsylvania courts, paralyzed by a deadlock among Justices of the Commonwealth's Supreme Court, have failed to answer the question.  Plaintiffs' fundamental right to have their case and this substantial issue of public importance decided on the merits requires relief.  This Court should preclude the Secretary from tallying and certifying votes cast upon his misleading ballot question in the upcoming general election in the Commonwealth of Pennsylvania, or invalidate the results of the election on the deceptive ballot question.

## II.  THE PARTIES

1.      Richard A. Sprague, Esquire, is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and

intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

2.      The Honorable Ronald D. Castille, former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

3.      The Honorable Stephen Zappala, Sr., former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

4.      The Honorable John W. Herron, a current senior judge of the Pennsylvania Court of Common Pleas, Philadelphia County, is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

5.      Hillel S. Levinson is a resident and citizen of the Commonwealth of Pennsylvania, an inactive member of the Pennsylvania Bar, a registered voter, a

taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.[1]

6.      Pedro A. Cortés, Esquire (as noted above, herein referred to as the "Secretary" or the "Secretary of the Commonwealth") is the Secretary of the Commonwealth of Pennsylvania, and in that capacity, he is responsible for determining and publishing the language that appears on statewide ballots concerning any proposed amendment to the Pennsylvania Constitution, including the proposed constitutional amendment that is the subject of this action.  At all relevant times, the Secretary acted under the color of state law.

## III.    JURISDICTION AND VENUE

7.      This is a civil action for declaratory and injunctive relief arising under 42 U.S.C. § 1983, the Constitution and laws of the United States, and the laws of the Commonwealth of Pennsylvania.  This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

8.      Venue is proper in the Middle District of Pennsylvania under 28 U.S.C. § 1391(b) because Defendant Cortés resides in this District, a substantial

---

[1] Plaintiffs  Richard A. Sprague, Hon. Ronald D. Castille, Hon. Stephen Zappala, Sr., Hon, John W. Herron, and Hillel S. Levinson are hereinafter collectively referred to as "Plaintiffs."

part of the events giving rise to this action occurred in the Middle District of

Pennsylvania, and Defendant Cortés performs his official duties in the Middle

District of Pennsylvania.

## IV.   BACKGROUND

### Constitutionally-Mandated Judicial Retirement Ages in Pennsylvania

9.     The operative Pennsylvania Constitution is the fifth Constitution that

has governed the Commonwealth since the United States declared its independence

in 1776.

10.     The four previous Pennsylvania Constitutions—adopted in 1776,

1790, 1838 and 1874, respectively—did not prescribe an age by which Supreme

Court justices, judges and magisterial district judges of the Commonwealth were

required to retire.

11.     Following a Constitutional Convention held in 1967 and 1968,

Pennsylvania voters adopted the presently-controlling Pennsylvania Constitution,

which revised the judiciary article of the previous Constitution and set a mandatory

retirement age for justices of the Pennsylvania Supreme Court, lower court judges

and magisterial district judges.

12.     Article V, Section 16(b) of the original 1968 Pennsylvania

Constitution required all judicial officers of the Commonwealth to retire

immediately upon attaining the age of 70.  (*See Driscoll v. Corbett*, 69 A.3d 197,

6

200 (Pa. 2013)) ("Section 16(b), as adopted in 1968, stated: 'Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years.'")

13.     This state constitutional requirement remained operative until 2001, when primary ballots across the Commonwealth of Pennsylvania contained the following question asking Pennsylvania voters if they wished to amend Article V, Section 16(b) of the original 1968 Pennsylvania Constitution: "Shall the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, *rather than on the day they attain the age of 70?*"  (*See* Staff Report of the General Assembly of the Commonwealth of Pennsylvania, Ballot Questions and Proposed Amendments to the Pennsylvania Constitution, A Compilation with Statistics from 1958 to 2006 at p. 53, a true and correct copy of which is attached hereto as Exhibit A) (emphasis added).

14.     67.5% of the voters who answered the ballot question regarding the 2001 proposed state constitutional amendment voted "yes."  As a result, Article V, Section 16(b) of the Pennsylvania Constitution was amended in 2001 to require that the Commonwealth's judicial officers need not retire on the day that they reach 70 years of age, but instead, on the last day of the calendar year in which they reach the age of 70. (*Id.*)

15.     In the years following the 2001 amendment to Article V, Section 16(b), several members of the legislature introduced unsuccessful bills proposing to amend the Pennsylvania Constitution to either raise the mandatory judicial retirement age beyond 70 or to abolish the constitutional requirement that the Commonwealth's judicial officers retire upon reaching a certain age.  (*See, e.g.,* H.B. 2657, 2010 Reg. Sess. (Pa. 2010); H.B. 2129, 2012 Reg. Sess. (Pa. 2012).)

16.     In 2013, several groups of Pennsylvania jurists "sought to renew the attack on Article V, Section 16(b) via multiple legal actions commenced in both federal and state courts."  *Driscoll v. Corbett*, 69 A.3d 197, 200 (2013).

17.     The Pennsylvania Supreme Court joined the federal courts in rejecting these legal challenges to Article V, Section 16(b), noting in a 2013 decision that the only way to increase or eliminate Pennsylvania's constitutionally-mandated judicial retirement age "is to pursue further amendment to the Pennsylvania Constitution."  *Id*. at 215.

## Recent Efforts To Raise The Pennsylvania Judicial Retirement Age

18.     Shortly after the Pennsylvania Supreme Court confirmed the legality of Article V, Section 16(b)'s requirement that Pennsylvania judicial officers retire on the last day of the calendar year in which they attain the age of 70, the Pennsylvania House of Representatives considered a resolution proposing to

8

present the Pennsylvania electorate with a ballot question regarding whether the

constitutionally-mandated judicial retirement age should be raised from 70 to 75.

19.     Pursuant to Article XI, Section 1 of the Pennsylvania Constitution, in

order for the resolution to result in a Constitutional amendment, it must be

approved by a majority vote of both houses of the Pennsylvania General Assembly

in two consecutive sessions, as well as "submitted to the qualified electors of the

State" and "approved by a majority of those voting thereon."  *See* Pa. Const. Art.

XI, § 1.

20.     The first affirmative vote by the Pennsylvania General Assembly

came on October 22, 2013, when the General Assembly passed H.B. 79, a joint

resolution proposing to amend Article V, Section 16(b) to require that the

Commonwealth's jurists retire on the last day of the year in which they attain 75,

rather than 70 as presently required by the Pennsylvania Constitution.  (*See* H.B.

79, 2013 Reg. Sess. (Pa. 2013) and H.B. 79 legislative history, true and correct

copies of which are attached hereto as Exhibits B and C.)

21.      In accordance with the requirements of Article XI, Section 1 of the

Pennsylvania Constitution and H.B. 79, following the Pennsylvania General

Assembly's affirmative vote, the Secretary of the Commonwealth published notice

of the proposed amendment through advertisements in newspapers throughout the

Commonwealth.  (*See* Pa. Const. Art. XI, § 1) (providing that once a proposed

amendment to the Pennsylvania Constitution is "agreed to by a majority of the members elected to each House . . . the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published.")

22.     During the next legislative session, on November 16, 2015, the General Assembly passed H.B. 90, a joint resolution identical to the preceding session's H.B. 79, proposing to amend Article V, Section 16(b) of the Pennsylvania Constitution to require that the Commonwealth's jurists retire on the last day of the year in which they attain 75, rather than 70.  (*See* H.B. 90, 2015 Reg. Sess. (Pa. 2015) and of H.B. 90 legislative history, true and correct copies of which are attached hereto as Exhibits D and E.)

23.     Consistent with the requirements of the Election Code, 25 P.S. § 2621(c), H.B. 90 directed the Secretary of the Commonwealth to develop a ballot question concerning the Pennsylvania General Assembly's proposal to amend Article V, Section 16(b) and to submit that ballot question "to the qualified electors of this Commonwealth at the first primary, general or municipal election . . . which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly."  (*See* Exhibit D) (*see also* 25 P.S. § 2621(c)) ("The Secretary of the Commonwealth shall exercise in the manner provided by this act

10

all powers granted to him by this act, and shall perform all the duties imposed upon him by this act, which shall include . . . the form and wording of constitutional amendments or other questions to be submitted to the electors of the State at large.").)

24.     As required by Article XI, Section 1 of the Pennsylvania Constitution and H.B. 90, the Secretary of the Commonwealth published notice of the proposed amendment in newspapers across the commonwealth along with a "plain English" statement prepared by the Attorney General explaining "the purpose, limitations and effects of the ballot question on the people of the Commonwealth." *See* 25 Pa.C.S. § 2621.1.

25.     The Secretary's public notice explained that Pennsylvania voters would be asked to approve or deny the proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution by answering "yes" or "no" to the following ballot question developed by the Secretary: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?" (*See* Public Notice by Secretary of the

Commonwealth Pedro A. Cortés, a true and correct copy of which is attached hereto as Exhibit F.)

26.     Pennsylvania election officials thereafter created ballots for the April 26, 2016 primary election containing the question the Secretary published in Newspapers across Pennsylvania regarding the proposal to amend the Pennsylvania Constitution to require that justices of the Pennsylvania Supreme Court and the state's inferior judicial officers retire on the last day of the year in which they attain the age of 75, instead of the last day of the year in which they attain the age of 70 as presently required under the Pennsylvania Constitution.

27.     The Secretary developed the language of the April 2016 primary election ballot question concerning the proposal to amend Article V, Section 16(b) of the Pennsylvania Constitution in accordance with Section 201 of the Pennsylvania Election Code, 25 P.S. § 2621(c), which vests the Secretary of the Commonwealth with authority over "the form and wording of constitutional amendments or other questions to be submitted to the State at large." 25 P.S. § 2621(c).

28.     Consistent with the Pennsylvania Election Code's delegation of authority over ballot questions to the Secretary of the Commonwealth, neither one of the bills the Pennsylvania Generally Assembly passed proposing to change the constitutionally-mandated judicial retirement age from 70 to 75 (*i.e.*, neither H.B.

79 nor H.B. 90) set forth or even suggested language for a ballot question concerning the proposed amendment.

29.     Around the time of the Pennsylvania General Assembly's approval of the second joint resolution proposing to amend the Pennsylvania Constitution to require that the Commonwealth's judicial officers retire on the last day of the year in which they reach the age of 75, rather than 70 as the Pennsylvania Constitution presently requires, the Pennsylvania Supreme Court became embroiled in a statewide controversy that gained national media attention and sparked well-known negative opinions among the Commonwealth's electorate about the Pennsylvania judiciary.

30.     In August 2015, following former Pennsylvania Supreme Court Justice Joan Orie Melvin's May 1, 2013 resignation from judicial service, the Court of Judicial Discipline of the Commonwealth of Pennsylvania entered an Opinion and Order officially removing former Justice Orie Melvin from office and deeming her ineligible for future judicial service as a result of her four felony convictions for crimes including theft/diversion of services and criminal conspiracy. *See In re: Joan Orie Melvin Justice of the Supreme Court of Pennsylvania*, No. 7 JD 2012 (Aug. 14, 2015 Pa. Ct. of Judicial Discipline).

31.     Later in 2015, Pennsylvania citizens, lawyers, politicians, and the Pennsylvania Governor began calling for then-Justice of the Pennsylvania Supreme

Court Michael Eakin to resign from the Court as a result of the public disclosure of racist and misogynistic emails the former Justice exchanged with members of the judiciary, members of the Office of the Attorney General, and other individuals and state officials.

32.     On March 24, 2016, the Court of Judicial Discipline of the Commonwealth of Pennsylvania issued an Opinion and Order acknowledging former Justice Eakin's resignation from the Pennsylvania Supreme Court; finding that the former Justice's use of a pseudonymous email address to exchange emails containing imagery of "sexism, racism, and bigotry" with officers of the court and state officials demonstrated the former Justice's "arrogance" and "seriously jeopardized the reputation of the judiciary"; and imposing a $50,000 fine on former Justice Eakin.  *See In re: J. Michael Eakin Justice of the Supreme Court of Pennsylvania*, No. 13 JD 2015 (Mar. 24, 2016  Pa. Ct. of Judicial Discipline).

33.     Former Justice Orie Melvin's removal from the Pennsylvania Supreme Court and former Justice Eakin's resignation from the Court came shortly after former Justice Seamus McCaffery resigned his seat on the Pennsylvania Supreme Court as a result of an email scandal, similar to that in which former Justice Eakin was embroiled, involving the exchange of pornographic, misogynistic and racist emails.

34.     During the same time period when criminal conduct and violations of the Code of Judicial Conduct and Pennsylvania Constitution caused former Justices Orie Melvin, Eakin and McCaffery to lose their seats on the Pennsylvania Supreme Court, the media also reported on criminal convictions of, and scandals surrounding, lower state court judges and magisterial district judges.

35.     Amidst the controversy surrounding the Pennsylvania judiciary, which garnered mass media attention and cast doubt on the Pennsylvania electorate's willingness to amend the Constitution to extend the limited tenure of Pennsylvania Supreme Court justices, judges and magisterial district judges, a group of legislators sought to strike certain portions of the ballot question that the Secretary had developed for the April 2016 primary election regarding the Pennsylvania General Assembly's proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution.

36.     In particular, these legislators sought to strike from the ballot question developed by the Secretary any reference to the embattled Pennsylvania Supreme Court as well as any indication that the proposed amendment would *raise* the constitutionally-mandated retirement age for Pennsylvania Supreme Court justices, judges and magisterial district judges by five years.

37.     On March 6, 2016, 8 days before then-Justice Eakin officially announced his resignation from the Pennsylvania Supreme Court, the Pennsylvania

Senate Majority Caucus, Senate President Pro Tempore Joe Scarnati, and Senate

Majority Leader Jake Corman filed an "Emergency Application for Extraordinary

Relief" asking the Pennsylvania Supreme Court to "strike the following terms and

phrases" from the Secretary's ballot question regarding the Pennsylvania General

Assembly's proposed amendment to Article V, Section 16(b):

> Shall the Pennsylvania Constitution be amended to require that Justices ~~of the Supreme Court~~, judges and justices of the peace ~~(known as magisterial district judges)~~ be retired on the last day of the calendar year in which they attain the age of 75 years~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70~~?

(*See* Emergency Application for Extraordinary Relief by Pennsylvania Senate

Majority Caucus, Senate President Pro Tempore Joe Scarnati, and Senate Majority

Leader Jake Corman, a true and correct copy of which is attached hereto as Exhibit

G.)[2]

    38.    These state Senators' Emergency Application for Relief advanced

three arguments in support of their request that the Pennsylvania Supreme Court

strike certain language from the ballot question devised by the Secretary of the

Commonwealth.  First, the Senators contended that the phrase "of the Supreme

---

[2] The Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joe Scarnati, and Senate Majority Leader Jake Corman are hereinafter collectively referred to as the "Senators."

Court" after the word "Justices" would confuse voters into thinking the proposed amendment would apply to justices of the United States Supreme Court, and that the phrase "known as magisterial district judges" after the term "justices of the peace" would mislead voters into thinking "that the proposed amendment does not apply to judges of the court of common pleas, the Superior Court, and the Commonwealth Court." (*See* Exhibit G at pp. 1-2.) Second, the Senators argued that the "terms and phrases sought to be stricken are inconsistent with the proposed constitutional amendment . . . ." (*Id.* at p. 2.) Finally, the Senators seeking to rewrite the ballot question devised by the Secretary of the Commonwealth argued that the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70" was "nothing more than superfluous and gratuitous commentary," and that a ballot question regarding a proposed constitutional amendment need not state "what the current state of the law may be at the time of the proposed amendment." (*Id.*)

39.    On March 11, 2016, the Secretary of the Commonwealth filed an Answer in Opposition to the Emergency Application for Extraordinary Relief, pointing out that the Senators' Application should be denied because the proposed ballot question advocated for therein "would deny Pennsylvania voters relevant information regarding the proposed constitutional amendment." (*See* March 11,

2016 Answer of Secretary of the Commonwealth Pedro A. Cortés at p. 7, a true and correct copy of which is attached hereto as Exhibit H.)

40.     In particular, the Secretary argued that "the phrase 'instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70' should remain on the ballot question" because a ballot question that does not advise voters that "the *existing* language in the Constitution would be *changed* to 75 *instead of* 70 . . . would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is no requirement at all."  (*Id*. at p. 17) (emphasis in original).

41.     The Secretary therefore explained to the Pennsylvania Supreme Court in his Answer in Opposition to the Senators' Application for Extraordinary relief that the Senators' proposed ballot question would "deprive voters of relevant information on the ballot itself regarding the mandatory retirement age requirement as it currently exists in the Pennsylvania Constitution."  (*Id.* at p. 16.)

42.     Shortly after opposing the Senators' Application for Extraordinary Relief, however, the Secretary reversed course and agreed to present the voters of the Commonwealth of Pennsylvania with a ballot question that is nearly identical to the ballot question that the Secretary of the Commonwealth had argued 11 days earlier to the Pennsylvania Supreme Court would mislead voters as to the true

nature of the proposed amendment to Article V, Section 16(b) of the Pennsylvania

Constitution.

43.     On March 22, 2016, the Senators who filed the Emergency

Application for Relief, the Secretary, the Pennsylvania Department of State, and

the Office of the Pennsylvania Attorney General filed a Joint Application for

Extraordinary Relief requesting that the Pennsylvania Supreme Court approve a

stipulation providing that the Secretary of the Commonwealth would: (1) remove

from the April 26, 2016 primary election ballots the question that the Secretary had

initially developed concerning the General Assembly's proposal to amend the

Constitution by raising the constitutionally-mandated judicial retirement age from

70 to 75, (2) direct the county boards of elections to do the same, and (3) place on

the November 8, 2016 general election ballot in the Commonwealth of

Pennsylvania the following question:

> Shall the Pennsylvania Constitution be amended to
> require that justices of the Supreme Court, judges, and
> magisterial district judges be retired on the last day of the
> calendar year in which they attain the age of 75 years?

(*See* Joint Application for Extraordinary Relief dated March 22, 2016, a true and

correct copy of which is attached hereto as Exhibit I.)

44.     On March 23, 2016, the Pennsylvania Supreme Court entered an

Order denying the Senators' Emergency Application for Extraordinary Relief and

the Joint Application seeking approval of the Stipulated Resolution and modified

ballot question.  (*See In re Proposed Constitutional Amendment 1, Ballot Question*, No. 29 MM 2016 (Pa. Mar. 23, 2016)).[3]

45.     Following the Pennsylvania Supreme Court's denial of the Joint Application seeking to change the ballot question that the Secretary of the Commonwealth had devised for the April 2016 primary election pursuant to the Secretary's authority under Section 201 of Pennsylvania Election Code, 25 P.S. § 2621(c), groups of Pennsylvania legislators introduced concurrent resolutions to remove the proposed Amendment from the April 2016 primary ballot, to place the proposed amendment on the November 2016 general election ballot, and to require the Secretary to adopt a ballot question drafted by the General Assembly.

46.     On April 6, 2016, the Pennsylvania House of Representatives approved one such concurrent resolution, H.R. 783, and the Pennsylvania Senate approved the resolution on April 11, 2016.  (*See* H.R. 783 and H.R. 783 legislative history, true and correct copies of which are attached hereto as Exhibits J and K.)

47.     Because the Pennsylvania General Assembly approved H.R. 783 just 15 days before the 2016 primary election, after absentee ballots had already been distributed and cast, the General Assembly recognized that it would be impossible

---

[3] This ballot question that the Secretary intends to present to the electorate in the November 2016 general election is nearly identical to the ballot question that the Secretary opposed in his March 11, 2016 filing with this Court.  The only two differences—both of which are irrelevant to this case—are that the Secretary's currently-proposed ballot question does not omit reference to the Supreme Court and substitutes "justices of the peace" with "magisterial district judges."

for the Secretary of the Commonwealth to remove his previously-devised question from the statewide primary election ballots, as the voting machines and ballots across Pennsylvania had already been finalized.

48. Accordingly, H.R. 783 directed the Secretary to "disregard any vote" on the proposed amendment, and the Resolution instructed county boards of election that, "to the extent possible," they were to remove from the April 2016 primary election ballots the following question devised by the Secretary of the Commonwealth:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

(*See* Exhibit J.)

49. H.R. 783 attempted to divest the Secretary of his authority over "the form and wording of constitutional amendments or other questions to be submitted to the State at large" and directed the Secretary to place on the November 8, 2016 general election ballot a question drafted by the Pennsylvania General Assembly, which misleadingly omits that the proposed amendment would increase the mandatory retirement age, and instead suggests that the proposed amendment would result in the inaugural imposition of a mandatory retirement age for

21

Pennsylvania Supreme Court justices, judges and magisterial district judges of the Commonwealth.

50.     In particular, H.R. 783 directed the Secretary to place the proposed constitutional amendment "on the ballot for the general election on November 8, 2016, in the following form":

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?

(*See* Exhibit J**.**)

51.     The differences between the ballot question the Secretary of the Commonwealth developed for the April 2016 primary election and the ballot question set forth by the Pennsylvania General Assembly in H.R. 783 can be seen below, with the language the General Assembly removed from Secretary of the Commonwealth's ballot question stricken:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and ~~justices of the peace (known as~~ magisterial district judges~~)~~ be retired on the last day of the calendar year in which they attain the age of 75 years~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70~~?

52.     The key difference between the ballot question the Secretary of the Commonwealth developed for the April 2016 primary election and the one he intends to present to voters in the November 2016 general election is that the ballot

question for the primary election notified voters that the proposed constitutional amendment would raise the constitutionally-mandated retirement age for Pennsylvania Supreme Court justices, judges and magisterial district judges by 5 years, while the revised ballot question for the November 2016 general election gives no indication that the Constitution currently contains a mandatory retirement age for Supreme Court justices, judges and magisterial district judges lower than that sought to be imposed by the proposed constitutional amendment.  In other words, the language of the ballot question the Secretary intends to place on the ballot in the upcoming general election gives the misimpression that voters are being asked to impose a mandatory judicial retirement age for the first time, rather than to raise an existing mandatory judicial retirement age.

53.     On April 14, 2016, three days after the Pennsylvania General Assembly approved H.R. 783, a group of state legislators asked the Pennsylvania Commonwealth Court to preliminarily enjoin the Secretary from implementing H.R. 783 because of the alleged improper process through which the Pennsylvania General Assembly passed the concurrent resolution purportedly contravening the Secretary of the Commonwealth's authority under Pennsylvania law.

54.     Specifically, state Senators Joy Costa, Daylin Leach, and Christine M. Tartaglione filed an Application for a Preliminary Injunction seeking to enjoin the Secretary of the Commonwealth from implementing H.R. 783 on the grounds that

the concurrent resolution: (1) unconstitutionally directed the Secretary to infringe on the rights of voters who had already cast absentee ballots; (2) should have been presented to the Governor for his approval; and (3) compelled the Secretary of the Commonwealth to act contrary to his duties with respect to the legal process for voting on a constitutional amendment.

55.     On April 20, 2016, the Pennsylvania Commonwealth Court, by the Honorable P. Kevin Brobson, found that Senators Costa, Leach, and Tartaglione did not meet the high burden required to obtain preliminary injunctive relief and therefore declined to preliminarily enjoin H.R. 783 in advance of the April 2016 primary election.

56.     Given that Judge Brobson's decision declining to preliminarily enjoin H.R. 783 came just 6 days before the April 26, 2016 primary election, it was impossible to remove from the primary ballots the question the Secretary of the Commonwealth devised concerning the General Assembly's proposal to raise the judicial retirement age from 70 to 75, as the final primary election ballots containing the Secretary of the Commonwealth's question had been created and distributed prior to Judge Brobson's decision.

57.     Thus, although the Secretary of the Commonwealth was prohibited from conducting an official tally of the vote, the April 2016 primary election

ballots across the Commonwealth contained the following question developed by

the Secretary of the Commonwealth:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

58.     According to the Pennsylvania Department of State, 2,395,250

Pennsylvania Citizens answered the ballot question, with 50.99% voting "no" and

49.01% voting "yes."  (*See* Pennsylvania Department of State, Tuesday, April 26,

2016 Official Returns, a true and correct copy of which is attached hereto as

Exhibit L.)

59.     Pursuant to H.R. 783, the electorate's vote at the April 2016 primary

election against amending the Pennsylvania Constitution to require that judicial

officers "be retired on the last day of the calendar year in which they attain the age

of 75 years, instead of the current requirement that they be retired on the last day of

the calendar year in which they attain the age of 70" was invalidated and had no

legal effect.

60.     Instead, the Secretary of the Commonwealth intends to place on the

November 2016 general election ballot in the Commonwealth of Pennsylvania the

following question set forth by the General Assembly in H.R. 783:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?

(*See* Affidavit of Jonathan Marks, Commissioner Bureau of Commissions, Elections and Legislation, Department of State, a true and correct copy of which is attached hereto as Exhibit M.)

61.     On July 6, 2016, a panel of the Pennsylvania Commonwealth Court, in an Opinion authored by Judge Brobson, held that the Pennsylvania General Assembly acted within its authority by passing the portions of H.R. 783 withdrawing the proposed constitutional amendment to Article V, Section 16(b) from the April 2016 primary election ballot and placing the proposed amendment on the November 2016 general election ballot.  (*See* Commonwealth Court Opinion dated July 6, 2016, a true and correct copy of which is attached hereto as Exhibit N.)

62.     The Pennsylvania Commonwealth Court's July 6, 2016 Opinion upholding the process by which the Pennsylvania General Assembly passed H.R. 783 does not address the propriety of the language of the ballot question regarding the General Assembly's proposed amendment to Article V, Section 16(b).

63.     The Commonwealth Court, however, implicitly acknowledged in the Opinion that one cannot understand the effect and purpose of the proposed amendment without knowing the present law regarding judicial retirement.  In

26

order to give meaning to its statement that the proposed amendment would "amend

section 16(b) of Article V of the Pennsylvania Constitution to provide that

Pennsylvania justices, judges, and magisterial district judges be retired on the last

day of the calendar year in which they attain the age of 75," the Pennsylvania

Commonwealth Court felt it necessary to include a footnote explaining that

"Section 16(b) of Article V of the Pennsylvania Constitution currently provides

that Pennsylvania justices, judges, and magisterial district judges be retired on the

last day of the year in which they attain the age of 70."  (*See* Exhibit N at p. 3.)

64.    The Pennsylvania Commonwealth Court also accurately described the

true nature and effect of the proposed constitutional amendment, which is not

merely to impose a constitutionally-mandated judicial retirement age, but rather to

"***raise*** the judicial retirement age to 75."  (*Id.* at. p. 4, n. 4) (emphasis added).

## The First Pennsylvania Supreme Court Deadlock

65.    On July 21, 2016, just 15 days after the Pennsylvania Commonwealth

Court issued its Opinion in the *Costa* case denying the relief sought by the *Costa*

Plaintiffs to preclude the proposed constitutional amendment from being presented

to voters in the November 2016 election, Plaintiffs filed suit in the Pennsylvania

Supreme Court seeking a declaration that the Secretary's ballot question is

unlawfully misleading, and requesting an order directing the Secretary to present

Pennsylvania voters with a ballot question accurately advising that the proposed

amendment would result in raising the current constitutionally-mandated compulsory judicial retirement age of 70 to 75.

66.     In an attempt to ensure that the merits of their challenge to the Secretary's misleading ballot question for the upcoming November 2016 general election would be resolved as promptly as possible, Plaintiffs herein filed an Emergency Application for Extraordinary Relief requesting that the Pennsylvania Supreme Court exercise extraordinary jurisdiction over the case.  (*See* Plaintiffs' Emergency Application for Extraordinary Relief dated July 21, 2016, a true and correct copy of which is attached hereto, without exhibits, as Exhibit O.)

67.     The Secretary did not oppose the Pennsylvania Supreme Court's exercise of extraordinary jurisdiction but simply advocated for a swift resolution. (*See* Secretary's Answer to Plaintiffs' Emergency Application for Extraordinary Relief dated July 25, 2016, a true and correct copy of which is attached hereto as Exhibit P.)

68.     On July 27, 2016, the Pennsylvania Supreme Court entered an Order granting Plaintiffs' Emergency Application for Extraordinary Relief, thus assuming plenary jurisdiction over the matter that Plaintiffs had filed in the Pennsylvania Commonwealth Court, and directed the Secretary to file an answer to Plaintiffs' Complaint by August 3, 2016.  (*See* Supreme Court Order dated July 27, 2016, a true and correct copy of which is attached hereto as Exhibit Q.)

28

69.     The Secretary timely filed an Answer and New Matter on August 3, 2016.  (*See* Secretary's Answer and New Matter dated August 3, 2016, a true and correct copy of which is attached hereto, without Exhibits, as Exhibit R.)

70.     The Secretary's Answer and New Matter admitted the majority of the factual averments in Plaintiffs' Complaint.  (*Id.* at p. 23.)

71.     The Secretary's Answer to Plaintiffs' Complaint admitted that the Secretary had previously argued to the Pennsylvania Supreme Court that the ballot question at issue is unlawfully misleading and that the Pennsylvania Supreme Court should preclude it from appearing on the ballot to protect Pennsylvania voters from being deceived into thinking that the Pennsylvania General Assembly proposes imposing a mandatory judicial retirement age for the first time when in actuality, the General Assembly's proposed amendment would result in the existing constitutionally-mandated judicial retirement age being raised by five years.  (*See id.* at p. 10, ¶ ¶ 36-38.)

72.     Because the Secretary's Answer to Plaintiffs' Complaint did not raise any genuine issues of material fact, Plaintiffs filed an Application for Summary Relief on August 4, 2016 requesting that the Pennsylvania Supreme Court enter judgment in Plaintiffs' favor based on the pleadings that the Plaintiffs and the Secretary had already filed.  (*See* Plaintiffs' Application for Summary Relief dated August 4, 2016, a true and correct copy of which is attached hereto as Exhibit S.)

29

73.     In accordance with the briefing schedule previously issued by the

Pennsylvania Supreme Court, on August 9, 2016, Plaintiffs filed in the

Pennsylvania Supreme Court a brief addressing the merits of their Complaint, as

the Supreme Court had not yet issued a ruling on Plaintiffs' Application for

Summary Relief.  (*See* Plaintiffs' Brief dated August 9, 2016, a true and correct

copy of which is attached hereto, without exhibits, as Exhibit T; Supreme Court

letter dated July 27, 2016, a true and correct copy of which is attached hereto as

Exhibit U.)

74.     Plaintiffs' merits brief set forth two general arguments: (1) because it

fails to mention that the Pennsylvania Constitution currently requires state court

jurists to retire at the age of 70, the misleading ballot question at issue will result in

voter deception because voters both for and against restricting the tenure of state

court jurists will be misled by the ballot question into voting contrary to their

intentions, and the election results will not reflect their true will; and (2) as the

Secretary previously argued to the Pennsylvania Supreme Court, the unlawfully-

defective ballot question cannot be cured by supplemental information provided in

the newspaper advertisements or postings of the "plain English statement" that the

Election Code requires.  (*See* Exhibit T.)

75.     Plaintiffs highlighted in their Pennsylvania Supreme Court brief that

the Secretary was correct when he argued to the Supreme Court in March 2016 that

30

the fatal defect in the misleading ballot question at issue—*i.e.*, its failure to advise

that the proposed constitutional amendment would raise the existing

constitutionally-mandated judicial retirement age by 5 years—may not be cured

through the advertising or publication outside the voting booth of the text of the

proposed constitutional amendment or the plain English statement.  (*See* Exhibit T

at pp. 27-30.)

76.    The Secretary filed an Answer to Plaintiffs' Application for Summary

Relief on August 12, 2016.  (*See* Secretary's Answer to Plaintiffs' Application for

Summary Relief, a true and correct copy of which is attached hereto as Exhibit V.)

77.    On August 16, 2016, the Secretary filed in the Pennsylvania Supreme

Court a Cross Application for Summary Relief as well as a merits brief, which

Plaintiffs replied to on August 18, 2016.  (*See* Secretary's Cross Application for

Summary Relief dated August 16, 2016, a true and correct copy of which is

attached hereto, without exhibits, as Exhibit W; Secretary's Brief dated August 16,

2016, and Plaintiffs' Reply Brief dated August 18, 2016, true and correct copies of

which are attached hereto as Exhibit X.)

78.    Remarkably, not only did the Secretary refrain from repudiating his

prior arguments to the Pennsylvania Supreme Court that the ballot question at issue

would mislead and deprive Pennsylvania voters of requisite information, but the

Secretary did "not even acknowledge that he made these arguments even though he

31

currently takes the opposite position." (*See* Justice Todd's Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying the Secretary's Application for Summary Relief dated September 2, 2016 at p. 7, a true and correct copy of which is attached hereto as Exhibit Y.)

79.     Pennsylvania Supreme Court Justices Todd, Dougherty and Wecht supported granting Plaintiffs' Application for Summary Relief and denying the Secretary's Application for Summary Relief.  (*See* Exhibit Y.)

80.     Justices Baer, Donohue and Mundy, on the other hand, supported denying Plaintiffs' Application for Summary Relief and granting the Secretary's Application for Summary Relief.  (*See* Justice Baer's Opinion in Support of Denying Plaintiffs' Application for Summary Relief and Granting the Secretary's Application for Summary Relief dated September 2, 2016, a true and correct copy of which is attached hereto as Exhibit Z.)

81.     Accordingly, because Chief Justice Saylor recused, the Pennsylvania Supreme Court was evenly divided and thus deadlocked on how to resolve the question of whether the Secretary's ballot question is unlawfully misleading.  And on September 2, 2016, the Court entered the following per curiam Order:

> **AND NOW,** this 2nd day of September, 2016, the Court being equally divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained.  See Creamer v. Twelve Common Pleas

> Judges, 281 A.2d 57 (Pa. 1971) (holding that where this
> Court was evenly divided in a King's Bench original
> jurisdiction matter challenging gubernatorial
> appointments to judicial vacancies, the appropriate
> disposition was to enter a *per curiam* order noting that
> the requested relief could not be granted, thereby
> maintaining the *status quo* of the matter).

(*See* Supreme Court Order dated September 2, 2016, a true and correct copy of
which is attached hereto as Exhibit AA.)

82.     Although the Supreme Court did not reach the merits of Plaintiffs'
Complaint, the participating Justices filed competing non-precedential opinions—
which are not binding on any court or any party—both for and against granting
Plaintiffs' Application seeking summary relief in the form of an order from the
Pennsylvania Supreme Court declaring the Secretary's misleading ballot question
unlawful and precluding the Secretary from placing it on the November 2016
general election ballot.

83.     Justice Todd, joined by Justices Wecht and Dougherty, issued an
"Opinion is Support of Granting Plaintiffs' Application for Summary Relief and
Denying Defendant's Application for Summary Relief" concluding that the
Secretary's ballot question "is inherently misleading and falls well short of meeting
the exacting standard which all ballot questions for the adoption of constitutional
amendments must meet."  (*See* Exhibit Y at p. 2) ("Justice Todd's Opinion").

84.     Justice Todd's Opinion explains that a ballot question like the one at issue in this case—which suggests that voters are being asked to impose a new constitutional requirement while, in actuality, they are being asked to alter existing constitutional language—"is, at the very least, misleading, and, at its worst, constitutes a ruse." (*See id.* at pp. 1-2.)

85.     Justice Todd's Opinion recognizes that Pennsylvania Supreme Court precedent "preclud[es] the conclusion that a misleading ballot question can be cured by the provision of notice to the voter [of the effect of the proposed amendment] by other means such as posting or publication of the Plain English Statement." (*See id.* at p. 10.)

86.     Justice Wecht, who concurred in Justice Todd's Opinion, filed a single-Justice "Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying Defendant's Application for Summary Relief" suggesting that Article XI of the Pennsylvania Constitution may require a more exacting standard than the one applied in Justice Todd's Opinion (and purportedly in Justice Baer's Opinion) for judicial review of a ballot question concerning a proposed constitutional amendment. (*See* Justice Wecht's Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying Defendant's Application for Summary Relief, dated September 2, 2016, a true and correct copy of which is attached hereto as Exhibit BB.)

34

87.     Regardless of which standard of judicial review applies, however, Justice Wecht recognized that in order to cast an informed vote on a proposed constitutional amendment, "a voter must necessarily know two things: (1) what the constitution currently provides and (2) what it would provide if the amendment were adopted."  (*See* Exhibit BB. At p. 4.)  Thus, Justice Wecht concluded, "[a] ballot question that omits the former (as does the one we examine here) falls short of 'literal compliance' with Article XI" and fails to "fairly, accurately and clearly appri[s]e the voter 'of the amendment.'"   (*See id.* at pp. 4,5.)

88.     Justice Baer authored an "Opinion in Support of Denying Plaintiffs' Application for Summary Relief and Granting Defendants' Application for Summary Relief," in which Justices Donohue and Mundy Joined.  (*See* Exhibit Z) ("Justice Baer's Opinion").

89.     Justice Baer's Opinion acknowledges that the Secretary's ballot question would be "more informative" if it advised voters that Pennsylvania's jurists are currently required under the Pennsylvania Constitution to retire at the age of 70, but it nonetheless goes on to express the opinion that the admittedly-uninformative ballot question may be presented to voters since the "purpose, limitations and effects" of the General Assembly's proposed amendment can be gleaned from the "Plain English Statement prepared by the Attorney General." (*See* Exhibit Z at pp. 11-12.)

35

90.     Despite recognizing that under Pennsylvania Supreme Court precedent, "a ballot question must fairly, accurately, and clearly appri[s]e the voter of the question or issue on which the electorate must vote," Justice Baer's opinion reaches the contradictory conclusion that the Secretary should be permitted to present voters with the misleading ballot question at issue because a ballot question regarding a proposed constitutional amendment need not "explain the effect of the proposed amendment."  (*See id.* at pp. 8, 14.)

91.     A few hours after the Pennsylvania Supreme Court issued its September 2, 2016 Order stating that "the Court being equally divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained," Plaintiffs filed an Application for Reconsideration requesting that the Pennsylvania Supreme Court amend its Order to clarify that the case shall remain pending in the Commonwealth Court in order to maintain the *status quo* of the lawsuit before the Supreme Court exercised extraordinary jurisdiction over it.  (*See* Plaintiffs' Motion for Reconsideration and Correction of the Court's September 2, 2016 Order dated September 2, 2016, a true and correct copy of which is attached hereto as Exhibit CC) ("Application for Reconsideration and Correction").

92.     The Secretary opposed Plaintiffs' Application for Reconsideration and Correction on September 8, 2016.  (*See* Secretary's Answer to Plaintiffs' Motion for Reconsideration and Correction of the Court's September 2, 2016 Order dated September 8, 2016, a true and correct copy of which is attached hereto as Exhibit DD.)

93.     On September 16, 2016, the Pennsylvania Supreme Court entered an Order denying Plaintiffs' Application for Reconsideration and Correction, holding that reconsideration is not the proper procedural avenue through which Plaintiffs' challenge to the Secretary's misleading ballot question should be presented to the Commonwealth Court for resolution.  (*See* Supreme Court Order dated September 16, 2016, a true and correct copy of which is attached hereto as Exhibit EE.)

94.     Justice Todd, joined by Justice Wecht, filed a dissenting statement in support of granting Plaintiffs' Application for Reconsideration and remanding the case back to the Commonwealth Court "for an expedited resolution."  (*See* Dissenting Statement in Support of Granting Reconsideration and Remand to the Commonwealth Court dated September 16, 2016 at p. 3, a true and correct copy of which is attached hereto as Exhibit FF.)

95.     As Justices Todd and Wecht expressly observed—and the majority of the participating Justices did not dispute—"[n]othing in [the Supreme Court's]

September 2 order . . . precludes the parties from seeking relief in the

Commonwealth Court at this juncture." (*See id.* at p. 2.)

## The Pennsylvania Commonwealth Court's Refusal to Adjudicate Plaintiffs' Claims

96.    On September 19, 2016, Plaintiffs filed in the Commonwealth Court

of Pennsylvania a Petition for Review in the Nature of a Complaint seeking a

declaration that the Secretary's ballot question is unlawfully misleading and

requesting an order precluding the Secretary from placing the ballot question on

the November 2016 general election ballot.

97.    Plaintiffs and the Secretary thereafter filed competing applications for

summary relief and supporting briefs.

98.    On October 8, 2016, the Honorable Mary Hannah Leavitt, President

Judge of the Commonwealth Court of Pennsylvania, issued a single-Judge Opinion

granting the Secretary's Application for Summary Relief, denying Plaintiffs'

Cross-Application for Summary Relief, and holding that under the doctrine of *res

judicata*, the Pennsylvania Supreme Court's September 2, 2016 deadlock Order

precluded the Commonwealth Court from ruling on the Petition for Review

Plaintiffs filed in the Commonwealth Court on September 19, 2016.

**The Second Pennsylvania Supreme Court Deadlock**

99.     On October 11, 2016, Plaintiffs appealed Judge Leavitt's Opinion and
Order to the Pennsylvania Supreme Court by way of a Notice of Appeal, arguing
that Judge Leavitt erred in holding that the doctrine of *res judicata* relieved the
Commonwealth Court of its duty to rule on the merits of Plaintiffs' Petition for
Review where no court had rendered a final adjudication with respect to the merits
of Plaintiffs' challenge to the Secretary's ballot question.  (*See* Plaintiff's Notice of
Appeal dated October 11, 2016, a true and correct copy of which is attached hereto
as Exhibit GG.)

100.    In conjunction with their Notice of Appeal, Plaintiffs filed in the
Pennsylvania Supreme Court an Application to Expedite on October 11, 2016.
(*See* Plaintiffs' Application to Expedite dated October 11, 2016, a true and correct
copy of which is attached hereto as Exhibit HH.)

101.    The Secretary filed and Answer to Plaintiffs Application to Expedite,
arguing that Judge Leavitt's Opinion and Order should be affirmed.

102.    The Pennsylvania Supreme Court once again deadlocked, and on
October 25, 2016, entered the following Order: "**AND NOW,** this 25th day of
October, 2016, Appellants' emergency application to expedite disposition of this
matter is **GRANTED**.  Appellants' application for leave to file a reply to answer is
**GRANTED**.  The Court being equally divided, the Order of the Commonwealth

Court is **AFFIRMED**." (*See* Pennsylvania Supreme Court Order dated October 25, 2016, a true and correct copy of which is attached hereto as Exhibit II.)

103.   Chief Justice Saylor *sua sponte* recused from considering and deciding Plaintiffs' appeal. (*Id*.)

104.   Justice Baer issued an opinion in support of affirming the Commonwealth Court's refusal to adjudicate Plaintiffs' claims. (*See* Justice Baer's Opinion in Support of Affirmance dated October 25, 2016, a true and correct copy of which is attached hereto as Exhibit JJ) ("Justice Baer's Second Opinion"). Justices Donohue and Mundy joined Justice Baer's Second Opinion.

105.   Even though neither the Pennsylvania Supreme Court nor any other court ever decided the simple question presented in Plaintiffs' state court challenge to the Secretary's ballot question—whether the Secretary's ballot question is unlawfully misleading—Justice Baer's Second Opinion opines that the Pennsylvania Supreme Court's September 2, 2016 deadlock Order "constitutes a final judgment on the merits for purposes of *res judicata*." (*See* Exhibit JJ at p. 7.)

106.   Justice Wecht, Justice Todd and Justice Dougherty each issued a separate opinion in support of reversing the Commonwealth Court's refusal to adjudicate Plaintiffs' Claims, and each joined in their fellow Justices' Opinions in Support of Reversal. (*See* Opinions of Justices Wecht, Todd and Dougherty in Support of Reversal, dated October 25, 2016, true and correct copies of which are

attached hereto as Exhibits KK, LL and MM (respectively referred to as "Justice Wecht's Second Opinion," "Justice Todd's Second Opinion," and "Justice Dougherty's Opinion")).

107.   Justice Wecht held that the doctrine of *res judicata* had no application because "neither [the Pennsylvania Supreme] Court nor any other court has finally adjudicated [Plaintiffs'] constitutional challenge to the wording of the November ballot question."  (*See* Exhibit KK at p. 3.)

108.   Justice Wecht further stated that "[the Pennsylvania Supreme Court] did not (indeed, [it] could not) issue a final adjudication of the merits" of Plaintiffs' challenge to the Secretary's ballot question, and he observed that the doctrine of *res judicata* is not properly applied to "encroach upon a litigant's fundamental right to have his or her case decided on the merits."  (*See* Exhibit KK at pp. 1, 4.)

109.   Justice Todd's Second Opinion is in accord with Justice Wecht's Second Opinion, noting that due to the Pennsylvania Supreme Court's prior 3-3 split, "regardless of what one concludes about the merits of the important constitutional question at issue, [the Pennsylvania Supreme Court] manifestly did not answer that question," and the Court's prior order "was decidedly not *a judgment on the merits*, nor did [the Court] *actually litigate or determine anything*."  (*See* Exhibit LL at pp. 2, 3 (emphasis in original).)

110.   Justice Todd further observed that "the underlying constitutional question could not be more important, as it concerns the people's power to amend their Constitution, and specifically the question of whether they have been fairly, completely, and accurately apprised of a proposed change to our charter." (*See* Exhibit LL at p. 9.)

111.   In refusing to rule on Plaintiffs' challenge to the Secretary's misleading ballot question, the Pennsylvania Supreme Court precluded Plaintiffs from receiving an answer to this fundamental question and violated Plaintiffs' right to an adjudication under the United States Constitution.

## The Ballot Question Regarding The Proposed Constitutional Amendment Is Unlawfully Misleading

112.   In a democracy, it is indisputable that voters are required to have the information necessary to make the best decisions on matters of critical importance such as a constitutional amendment regarding the retirement age of state judicial officers.

113.   The Pennsylvania Constitution currently requires that the Commonwealth's jurists retire on December 31 of the year in which they attain the age of 70.

114.   Under the General Assembly's proposal, Pennsylvania Supreme Court justices, judges and magisterial district judges of the Commonwealth would be required to retire on the last day of the year in which they attain the age of 75,

rather than the age of 70, as currently required under Article V, Section 16(b) of the Pennsylvania Constitution.

115.   Before the General Assembly's proposal can result in an amendment to the Constitution, it must be presented to the qualified electorate and approved by a majority vote.  Pa. Const. Art. XI, § 1.

116.   In order to be lawful, the ballot question concerning the Pennsylvania General Assembly's proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution must ask whether voters wish to *raise* the current mandatory judicial retirement age from 70 to 75, not merely whether voters are in favor of a constitutionally-mandated judicial retirement age of 75.

117.   The Secretary will present the Pennsylvania electorate in the November 2016 general election with a ballot question that omits any reference to the Pennsylvania Constitution's current compulsory judicial retirement age, despite previously arguing before the Pennsylvania Supreme Court that voters would be misled by a ballot question that does not include such information.

118.   The Secretary's ballot question is misleadingly designed to garner "yes" votes from voters who are unaware that there is currently a judicial retirement age set forth in the Pennsylvania Constitution but who are in favor of a mandatory judicial retirement age.

119.    Such voters would be misled into voting "yes" to the Secretary's ballot question, believing that they are voting for imposing a mandatory retirement age where none exists, and would be shocked to learn that a "yes" vote is really for increasing the current constitutionally-mandated judicial retirement age by 5 years.

120.    The effectiveness of the Secretary's deceitful tactic is plain, as noted in Justice Wecht's Second Opinion, which will violate Plaintiffs' due process rights and dilute and debase Plaintiffs' votes while also causing there to be judges on Pennsylvania state court benches whose tenures were not approved through a valid constitutional vote:

> A recent poll conducted by Franklin & Marshall College reveals, as many had assumed, that the ballot question's misleading language places a heavy thumb on the scale of the amendment process.  The polling indicates that 64% of registered voters would vote "yes" to the question that will appear on the November ballot.  But support for the amendment nosedives an astounding nineteen points to 45% when voters are presented with the question Secretary Cortés himself originally phrased, *i.e.*, when voters are informed that in fact a judicial retirement age does currently exist and it is 70.

(*See* Exhibit KK at p. 5; *see also* Affidavit of Berwood A. Yost, a true and correct copy of which is attached hereto as Exhibit NN.)[4]

---

[4] Berwood A. Yost, whose affidavit is attached hereto as Exhibit NN, is the independent survey research expert who conducted the poll discussed in Justice Wecht's Second Opinion.

121.    Simply stated, voters will be intentionally misled by the ballot question into voting contrary to their intentions, and the election results will not reflect the Pennsylvania voters' true will.

<div align="center">

**COUNT I – DECLATORY JUDGMENT**
**Federal Constitutional Rights Pursuant to 42 U.S.C. § 1983**

</div>

122.    Plaintiffs incorporate the paragraphs above as though fully set forth herein.

123.    The Secretary's ballot question is so misleading and deceptive that it deprives Pennsylvania voters of their inalienable right to amend their state Constitution as they see fit and the ballot question therefore violates Plaintiffs' rights under the Due Process Clause of the United States Constitution.

124.    The misleading nature of the ballot question will deceive voters into voting contrary to their intent and result in an election process that is patently and fundamentally unfair.

125.    An actual controversy exists between Plaintiffs and the Secretary regarding the ballot question the Secretary intends to present to the Pennsylvania electorate in the November 8, 2016 general election regarding the proposal to amend the Pennsylvania Constitution to raise Pennsylvania's constitutionally-mandated judicial retirement age from 70 to 75.

126.    Plaintiffs are entitled to a declaration from this Court that the Secretary's ballot question will infringe on Plaintiffs' Due Process rights under the

United States Constitution, and that votes cast on the ballot question, either for or against the proposed constitutional amendment, are invalid.

## COUNT II – INJUNCTIVE RELIEF
## Federal Constitutional Rights Pursuant to 42 U.S.C. § 1983

127.   Plaintiffs incorporate the paragraphs above as though fully set forth herein.

128.   Plaintiffs have demonstrated the merits of their claim that the Secretary's ballot question violates their federal constitutional rights.

129.   Plaintiffs will suffer irreparable harm if this Court does not enjoin the Secretary from tallying and certifying votes cast upon his materially misleading ballot question.

130.   The harm to Plaintiffs outweighs any harm to the Secretary which would be caused by issuing the injunction, as Plaintiffs merely request that the Secretary be required in accordance with the United States Constitution to present the Pennsylvania electorate with a ballot question that does not mislead Pennsylvania voters into believing they are being asked to newly impose a constitutionally-mandated judicial retirement age, such as the ballot question the Secretary drafted for the April 2016 primary election, and the Secretary will be permitted to do so during the April 2017 primary election or another future election in the Commonwealth of Pennsylvania.

131.   Granting injunctive relief will promote, not adversely affect, the public interest, as the requested injunctive relief will ensure that the true will of the Pennsylvania electorate is not subverted by the Secretary's fundamentally misleading ballot question.

132.   The deprivation of federal constitutional rights that Plaintiffs will suffer if this Court fails to enjoin the Secretary from tallying and certifying votes cast upon his misleading ballot question cannot be compensated in damages.

133.   The narrowly-tailored relief Plaintiffs request will prevent Plaintiffs and all other qualified Pennsylvania voters from being deprived of their federal constitutional right to intelligently vote on the proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution.

134.   Permitting a certification and tallying of votes cast upon the Secretary's materially and patently deceptive ballot question will result in the irreparable and permanent deprivation of guaranteed fundamental rights under the United States Constitution.

135.   Plaintiffs' right to relief is clear.

136.   The balance of equities favors Plaintiffs' request for injunctive relief.

137.    Plaintiffs are entitled to injunctive relief from this Court precluding the Secretary from tallying and certifying votes cast upon a ballot question that deceptively masks that that the proposed amendment would *raise* the current

47

Case 1:16-cv-02169-RDM  Document 17  Filed 11/08/16  Page 49 of 692

compulsory judicial retirement age by 5 years, including the following ballot question: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?"

## COUNT III – DECLARTORY AND INJUNCTIVE RELIEF
### Pennsylvania Law

138.   Plaintiffs incorporate the paragraphs above as though fully set forth herein.

139.   Plaintiffs and all Pennsylvania voters have the right under Pennsylvania law to be presented with a ballot question that fairly, accurately and clearly apprises them of the nature of the proposed amendment to the Pennsylvania Constitution, which is a raising of the current constitutionally-mandated judicial retirement age by 5 years from 70 to 75.

140.   Plaintiffs' right under Pennsylvania law to vote on a ballot question setting forth the true nature of the proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution is direct, substantial and immediate.

141.   The Secretary's ballot question regarding the proposed amendment to Article V, Section 16(b) of the Pennsylvania Constitution is so misleading and non-reflective of the proposed amendment that if the Secretary is permitted to tally and certify votes cast upon it in the November 2016 general election, Plaintiffs and their fellow citizens comprising the qualified electors of the Commonwealth of

Pennsylvania will be effectively stripped of their right guaranteed by Article XI,
Section 1 of the Pennsylvania Constitution to approve the proposed amendment to
the Pennsylvania Constitution.

142.   Plaintiffs' right to relief under Pennsylvania State law is clear.

## PRAYER FOR RELIEF

**WHEREFORE, Plaintiffs pray for a judgment in their favor as follows:**

1.     A declaration that the Secretary's ballot question regarding the
proposal to amend the Pennsylvania Constitution to raise the constitutionally-
mandated judicial retirement age from 70 to 75 violates the United States
Constitution and that any vote cast upon the Secretary's ballot question is invalid
under federal law.

2.     A declaration that the Secretary's ballot question regarding the
proposal to amend the Pennsylvania Constitution to raise the constitutionally-
mandated judicial retirement age from 70 to 75 is unlawful under Pennsylvania law
and that any vote cast upon the Secretary's ballot question is invalid under
Pennsylvania law.

3.     An injunction either: (a) invalidating the results of the election on the
Secretary's deceptive ballot question; or (b) precluding the Secretary from tallying
and certifying votes cast in the November 8, 2016 general election in the
Commonwealth of Pennsylvania on the following ballot question: "Shall the

49

Pennsylvania Constitution be amended to require that justices of the Supreme

Court, judges and magisterial district judges be retired on the last day of the

calendar year in which they attain the age of 75?"

Respectfully submitted,

**SPRAGUE & SPRAGUE**

By: /s/ Richard A. Sprague
      RICHARD A. SPRAGUE (PA I.D. #04266)
      RICHARD@SPRAGUE@COMCAST.NET
      JORDANN R. CONABOY (PA I.D. #319337)
      JCONABOY@SPRAGUEANDSPRAGUE.COM
      The Wellington Bldg., Suite 400
      135 S. 19th Street
      Philadelphia, Pennsylvania 19103
      (215)561-7681

Date: November 7, 2016

## <u>CERTIFICATE OF SERVICE</u>

I, Jordann R. Conaboy, Esquire, hereby certify that on November 8, 2016, I caused service of the foregoing Second Amended Complaint, as well as the accompanying exhibits, upon the persons listed below *via* the Court's electronic filing system and e-mail:

<div align="center">

Timothy E. Gates, Esquire
Linda Cadden Barrett, Esquire
Sean Martin Concannon, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Defendant Pedro A. Cortés*

</div>

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

Date: November 8, 2016

**SPRAGUE & SPRAGUE**
By:    Richard A. Sprague, Esquire (PA I.D. # 04266)
         Jordann R. Conaboy, Esquire (PA I.D. # 319337)
The Wellington Building, Suite 400
135 S. 19th Street
Philadelphia, PA 19103
(215) 561-7681
*Counsel for Plaintiffs Richard A. Sprague,*
*Hon. Ronald D. Castille, Hon. Stephen Zappala, Sr.,*
*Hon. John W. Herron and Hillel S. Levinson*


### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD A. SPRAGUE,** | : | |
| | : | |
| And | : | |
| | : | |
| **HON. RONALD D. CASTILLE,** | : | |
| | : | Case No.1:16-CV-02169 |
| And, | : | |
| | : | |
| **HON. STEPHEN ZAPPALA, SR.,** | : | |
| | : | |
| And, | : | |
| | : | |
| **HON. JOHN W. HERRON** | : | |
| | : | |
| And, | : | |
| | : | |
| **HILLEL S. LEVINSON** | : | |
| | : | |
| Plaintiffs , | : | |
| | : | |
| v. | : | |
| | : | |

**PEDRO A. CORTÉS, IN HIS OFFICIAL** :
**CAPACITY AS THE SECRETARY** :
**OF THE COMMONWEALTH OF** :
**PENNSYLVANIA,** :
                                        :
                                        :
                Defendant.              :

---

## EXHIBITS TO SECOND AMENDED COMPLAINT

1.    NOVEMBER 2, 2016 AFFIDAVIT OF BERWOOD A. YOST

A.    STAFF REPORT OF THE GENERAL ASSEMBLY OF THE COMMONWEALTH OF PENNSYLVANIA, BALLOT QUESTIONS AND PROPOSED AMENDMENTS TO THE PENNSYLVANIA CONSTITUTION, A COMPILATION WITH STATISTICS FROM 1958 TO 2006

B.    H.B. 79, 2013 REG. SESS. (PA. 2013)

C.    LEGISLATIVE HISTORY OF H.B. 79, 2013 REG. SESS. (PA. 2013)

D.    H.B. 90, 2015 REG. SESS. (PA. 2015)

E.    LEGISLATIVE HISTORY OF H.B. 90, 2015 REG. SESS. (PA. 2015)

F.    PUBLIC NOTICE BY SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS FOR THE APRIL 26, 2016 PRIMARY ELECTION

G.    MARCH 6, 2016 EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, AND SENATE MAJORITY LEADER JAKE CORMAN

H.    MARCH 11, 2016 ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, AND SENATE MAJORITY LEADER JAKE CORMAN

I.      MARCH 22, 2016 JOINT APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, SENATE MAJORITY LEADER JAKE CORMAN, SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS, THE PENNSYLVANIA DEPARTMENT OF STATE, AND OFFICE OF ATTORNEY GENERAL

J.      H.R. 783, 2016 REG. SESS. (PA. 2016)

K.      HISTORY OF H.R. 783, 2016 REG. SESS. (PA. 2016)

L.      PENNSYLVANIA DEPARTMENT OF STATE, TUESDAY, APRIL 26, 2016 OFFICIAL RETURNS

M.      MAY 15, 2016 AFFIDAVIT OF JONATHAN MARKS, COMMISSIONER BUREAU OF COMMISSIONS, ELECTIONS AND LEGISLATION, DEPARTMENT OF STATE

N.      *COSTA V. CORTES*, NO. 251 M.D. 2016 (PA. COMMW. CT. JULY 6, 2016)

O.      JULY 21, 2016 EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF OF PETITIONERS

P.      JULY 25, 2016 ANSWER OF THE SECRETARY TO PETITIONERS' EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

Q.      JULY 27, 2016 SUPREME COURT ORDER

R.      AUGUST 3, 2016 ANSWER AND NEW MATTER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS

S.      AUGUST 4, 2016 APPLICATION FOR SUMMARY RELIEF OF PETITIONERS

T.      AUGUST 9, 2016 BRIEF OF PETITIONERS

U.      JULY 27, 2016 LETTER FROM THE SUPREME COURT

V.      AUGUST 12, 2016 ANSWER OF THE SECRETARY TO PETITIONERS' APPLICATION FOR SUMMARY RELIEF

W.      AUGUST 16, 2016 CROSS APPLICATION FOR SUMMARY RELIEF

X.     AUGUST 16, 2016 BRIEF OF THE SECRETARY AND AUGUST 18, 2016 REPLY BRIEF OF PETITIONERS

Y.     SEPTEMBER 2, 2016 OPINION OF JUSTICE TODD IN SUPPORT OF GRANTING PETITIONERS' APPLICATION FOR SUMMARY RELIEF AND DENYING THE SECRETARY'S APPLICATION FOR SUMMARY RELIEF

Z.     SEPTEMBER 2, 2016 OPINION OF JUSTICE BAER IN SUPPORT OF DENYING PETITIONERS' APPLICATION FOR SUMMARY RELIEF AND GRANTING THE SECRETARY'S APPLICATION FOR SUMMARY RELIEF

AA.   SEPTEMBER 2, 2016 SUPREME COURT ORDER

BB.   SEPTEMBER 2, 2016 OPINION OF JUSTICE WECHT IN SUPPORT OF GRANTING PETITIONERS' APPLICATION FOR SUMMARY RELIEF AND DENYING THE SECRETARY'S APPLICATION FOR SUMMARY RELIEF

CC.   SEPTEMBER 2, 2016 MOTION OF PETITIONERS FOR RECONSIDERATION AND CORRECTION OF THE SUPREME COURT'S SEPTEMBER 2, 2016 ORDER

DD.   SEPTEMBER 2, 2016 ANSWER OF THE SECRETARY TO PETITIONERS' MOTION FOR RECONSIDERATION AND CORRECTION OF THE SUPREME COURT'S SEPTEMBER 2, 2016 ORDER

EE.   SEPTEMBER 16, 2016 SUPREME COURT ORDER

FF.   SEPTEMBER 16, 2016 DISSENTING STATEMENT IN SUPPORT OF GRANTING RECONSIDERATION AND REMAND TO THE COMMONWEALTH COURT

GG.   OCTOBER 11, 2016 NOTICE OF APPEAL

HH.   OCTOBER 11, 2016 APPLICATION OF PLAINTIFFS TO EXPEDITE APPEAL

II.   OCTOBER 25, 2016 SUPREME COURT ORDER

JJ.   OCTOBER 25, 2016 OPINION OF JUSTICE BAER IN SUPPORT OF AFFIRMANCE

KK.   OCTOBER 25, 2016 OPINION OF JUSTICE WECHT IN SUPPORT OF REVERSAL

LL.    OCTOBER 25, 2016 OPINION OF JUSTICE TODD IN SUPPORT OF REVERSAL

MM.   OCTOBER 25, 2016 OPINION OF JUSTICE DOUGHERTY IN SUPPORT OF REVERSAL

NN.   NOVEMBER 2, 2016 AFFIDAVIT OF BERWOOD A. YOST

# Exhibit A

# BALLOT QUESTIONS AND PROPOSED AMENDMENTS TO THE PENNSYLVANIA CONSTITUTION

**A Compilation with Statistics from 1958 to 2006**

**MAY 2007**



**Staff Report**
General Assembly of the Commonwealth of Pennsylvania
JOINT STATE GOVERNMENT COMMISSION
108 Finance Building
Harrisburg, Pennsylvania  17120

The release of this report should not be construed as an indication that the members of the Executive Committee of the Joint State Government Commission endorse all of the report's findings, recommendations or conclusions.

**JOINT STATE GOVERNMENT COMMISSION**
**ROOM 108 FINANCE BUILDING**
**HARRISBURG PA 17120-0018**

**717-787-4397**
**FAX 717-787-7020**

**E-mail: jntst02@legis.state.pa.us**
**Website: http://jsg.legis.state.pa.us**

---

The Joint State Government Commission was created by act of July 1, 1937 (P.L.2460, No.459) as amended, as a continuing agency for the development of facts and recommendations on all phases of government for the use of the General Assembly.

---

-ii-

# JOINT STATE GOVERNMENT COMMISSION

Senator Roger A. Madigan, Chair

## EXECUTIVE COMMITTEE

| Senate Members | House Members |
|---|---|
| Joseph B. Scarnati, III<br>    President Pro Tempore | Dennis M. O'Brien<br>    Speaker |
| Dominic F. Pileggi<br>    Majority Leader | H. William DeWeese<br>    Majority Leader |
| Robert J. Mellow<br>    Minority Leader | Samuel H. Smith<br>    Minority Leader |
| Jane Clare Orie<br>    Majority Whip | Keith R. McCall<br>    Majority Whip |
| Michael A. O'Pake<br>    Minority Whip | David G. Argall<br>    Minority Whip |
| Michael L. Waugh<br>    Chair, Majority Caucus | Mark B. Cohen<br>    Chair, Majority Caucus |
| Jay Costa Jr.<br>    Chair, Minority Caucus | Sandra Major<br>    Chair, Minority Caucus |

MEMBER EX-OFFICIO

Senator Roger A. Madigan, Commission Chair

David L. Hostetter, Executive Director

# INDEX

BORROWING

    Agricultural Conservation Easements .................................................42
    Economic Redevelopment ..................................................................39
    Environmental Initiatives (Including Open Space and
      Farmland Preservation, Watershed Protection and
      Acid Mine Drainage Remediation)....................................................57
    Volunteer Fire and Emergency Services............................31, 35, 45, 54
    Flood Control......................................................................................35
    Nursing Homes and Personal Care Boarding Homes ..................28, 38
    Persian Gulf Veterans ..................................................................47, 58
    Prison Facilities .................................................................................45
    State Capital Projects.........................................................................18
    State Parks, Conservation and Recreation .....................................9, 48
    Vietnam Veterans.................................................................20, 22, 27
    Water and Sewage Treatments.........................................16, 43, 46, 56


GOVERNOR

    Pardons.............................................................................................50
    Senate Confirmation ("Interim Appointments")....................................29
    Succession of Terms.....................................................................6, 14


JUDICIARY

    Bail ...................................................................................................52
    Civil Case Verdicts ............................................................................23
    Commonwealth Right to Trial by Jury .................................................52
    Disposal of Business..........................................................................10
    Education and Training of Justices .....................................................12
    Initiation of Criminal Proceedings.......................................................27
    Judicial Conduct Board ......................................................................47
    Mandatory Retirement........................................................................53
    Retention Elections ............................................................................34
    Statewide Selection of Judges ...........................................................21

## JUDICIARY—(continued)

Terms for Appointed Judges .............................................................33
Superior Court................................................................................34
Unified Court System ......................................................................19
Voluntary Confession ......................................................................40
Witness Confrontation ..............................................................49, 55

## LEGISLATIVE

Appointments to a Civil Office ..........................................................24
Disaster Relief................................................................................32
Interim Seat of Government ...............................................................8
Meetings.........................................................................................4
Reapportionment...............................................................18, 36, 53
Retirement or Pension Systems........................................................36
Special Sessions ............................................................................13

## LOCAL GOVERNMENT

Borrowing Capacity .........................................................................11
Competitive Bidding ........................................................................14
County Officers Salary .....................................................................24
Optional Form of Government...........................................................19
Real Estate Tax Rates .....................................................................44
Refunds Without an Appropriation ......................................................6
Succession of Terms (County Treasurer)............................................7

## TAXATION

Agricultural Reserves .......................................................................26
Aviation Fuel Excise Taxes ...............................................................37
Disabled Veterans............................................................................7
Exemptions ....................................................................................18
Flood and Storm Damage ..........................................................25, 30
Forest Reserves...............................................................................3
Homestead Property .......................................................................50
Occupational Privilege Taxes...........................................................10
Pennsylvania Disabled Veterans.......................................................32
Real Property Tax Provisions............................................................40
School Districts ................................................................................4

MISCELLANEOUS

Absentee Voting .........................................................................15, 41, 51
Appointment of Public Officers ...........................................................11
Attorney General Election .................................................................33
Civil Rights ...................................................................................13
Clean Air and Pure Water ................................................................23
College Loans ..............................................................................8
Constitutional Amendment Process ..................................................15
Constitutional Convention ............................................................9, 13
Disabled Veterans' Spouses' Benefits................................................41
Private Corporations .....................................................................12
Public Employer Dispute Settlements ...............................................17
Qualified Voters in Prior District .......................................................5
Railroads and Canals......................................................................15
Secretary of Internal Affairs............................................................6
Sexual Discrimination......................................................................23

# INTRODUCTION

The Constitution of the Commonwealth of Pennsylvania provides that questions must be submitted to the voters for approval before two things may occur:  the incurring of public debt and the amendment of the Constitution.

Section 7(a)(3) of Article VIII provides that "[d]ebt may be incurred without limit for purposes specifically itemized in the law authorizing such debt, if the question whether the debt shall be incurred has been submitted to the electors and approved by a majority of those voting on the question."

Section 1 of Article XI describes the procedure by which amendments to the Constitution must be submitted to the electorate.

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such

manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years.  When two or more amendments shall be submitted they shall be voted upon separately.

The questions submitted to the voters of the Commonwealth of Pennsylvania from 1958 through 2005 and the results of the vote for each question are presented in the following pages.   Where a "question summary" is provided, the exact language of the question could not be found.  Voter registration data is also provided at the end of each date's entries.

**NOVEMBER 4, 1958**

| | |
|---|---|
| Question Summary: | Proposed amendment to Article IX, section 1 of the Constitution. |
| | Set up standards and qualifications for private forest reserves and make special provision for taxation thereof. |

Result:  Approved

Vote:                                Yes:  816,160      No:   502,943

Percentage of total voter registration:        15.1%              9.3%


Voter registration:      Democrat      2,554,007              47.3%
                         Republican    2,771,613              51.4
                         Other            71,787               1.3

                         Total         5,397,407             100.0%

**NOVEMBER 3, 1959**

---

Question 1
 Summary:   Proposed amendment to Article II, section 4 of the
            Constitution.

            Legislature shall meet each year the first Tuesday in
            January and in even years handle fiscal matters.

---

Result:  Approved

Vote:                           Yes:   632,422      No:   568,800

Percentage of total voter registration:      12.0%              10.8%

---

Question 2
 Summary:   Proposed amendment to Article IX, section 8 of the
            Constitution.

            School district debts not to exceed 15 percent of
            assessed valuation of taxable property.

---

Result:  Defeated

Vote:                           Yes:   513,987    No:   719,923

Percentage of total voter registration:      9.8%              13.7%

**NOVEMBER 3, 1959**—(continued)

| | |
|---|---|
| Question 3 | |
| Summary: | Proposed amendment to Article VIII, section 1 of the Constitution. |
| | If a qualified voter moves within the state within 60 days of an election he may vote in old district. |

Result:  Approved

Vote:                             Yes:  956,138      No:  292,019

Percentage of total voter registration:      18.1%                5.5%

Voter registration:     Democrat    2,566,629           48.7%
                        Republican  2,636,525           50.1
                        Other          65,288            1.2

                        Total       5,268,442          100.0%

**NOVEMBER 7, 1961**

| Question 1 |  |
|---|---|
| Summary: | Proposed amendment to Article III, section 16 of the Constitution. |
|  | Refunds of taxes and fees may be paid out of fund without an appropriation. |

Result: Approved

Vote:                               Yes: 1,108,506      No:   449,778

Percentage of total voter registration:         19.8%              8.0%

| Question 2 |  |
|---|---|
| Summary: | Proposed amendment to Article IV, section 3 of the Constitution. |
|  | Governor able to succeed self. |

Result: Defeated

Vote:                               Yes:   762,569      No:   847,869

Percentage of total voter registration:         13.6%             15.1%

| Question 3 |  |
|---|---|
| Summary: | Proposed amendment to Article IV, section 21 of the Constitution. |
|  | Secretary of Internal Affairs to take office in January. |

Result: Approved

Vote:                               Yes: 1,110,470      No:   400,402

Percentage of total voter registration:         19.8%              7.1%

**NOVEMBER 7, 1961**--(continued)

---

Question 4
  Summary:   Proposed amendment to Article IX, section 1 of the
             Constitution.

             Tax exemption for certain disabled veterans.

---

Result:  Approved

Vote:                          Yes:  1,122,261     No:   453,280

Percentage of total voter registration:      20.0%          8.1%

---

Question 5
  Summary:   Proposed amendment to Article XIV, section 1 of the
             Constitution.

             County treasurer able to succeed self.

---

Result:  Defeated

Vote:                          Yes:   674,099     No:   884,130

Percentage of total voter registration:      12.0%         15.8%


Voter registration:       Democrat     2,841,144          50.7%
                          Republican   2,685,505          47.9
                          Other           76,189           1.4

                          Total        5,602,838         100.0%

**NOVEMBER 5, 1963**

Question 1
Summary:   Proposed amendment to Article III, section 18
(renumbered Article III, section 29) of the Constitution.

Loans for higher education but not if attending
theological schools.

Result:  Approved

Vote:                          Yes:  1,348,908     No:   868,003

Percentage of total voter registration:       24.7%              15.9%

Question 2
Summary:   Proposed amendment to Article III, section 35 of the
Constitution.

General Assembly may provide emergency interim seats
of government in case of disaster.

Result:  Approved

Vote:                          Yes:  1,280,036     No:   831,335

Percentage of total voter registration:       23.4%              15.2%

**NOVEMBER 5, 1963**—(continued)

> Question 3
>   Summary:   Proposed amendment to Article IX, section 24 of the
>   Constitution.
>
>   Commonwealth to create a debt of $70 million for the
>   acquisition   of   land   for   State   parks,   reservoirs,
>   conservation,   recreation,   historical   preservation
>   purposes.

Result:  Approved

Vote:                              Yes:  1,149,263      No:  1,036,154

Percentage of total voter registration:      21.0%              19.0%

> Question 4
>   Summary:  Proposed Constitutional Convention.

Result:  Defeated

Vote:                              Yes:  1,106,388      No:  1,148,060

Percentage of total voter registration:      20.2%              21.0%

| Voter registration: | Democrat | 2,739,416 | 50.1% |
| | Republican | 2,656,403 | 48.6 |
| | Other | 70,899 | 1.3 |
| | Total | 5,466,718 | 100.0% |

**NOVEMBER 2, 1965**

---

Question 1
 Summary:   Proposed amendment to Article V, section 15 of the
            Constitution.

            The General Assembly may allow the Chief Justice of the
            Supreme Court to assign former judges temporarily in
            courts for the disposal of business.

---

Result:  Approved

Vote:                          Yes:  1,041,821      No:   351,737

Percentage of total voter registration:        18.7%              6.3%

---

Question 2
 Summary:   Proposed amendment to Article IX, section 1 of the
            Constitution.

            To exempt persons earning less than $1,000 per year
            from paying occupation privilege taxes.

---

Result:  Approved

Vote:                          Yes:  1,141,176      No:   292,700

Percentage of total voter registration:        20.5%              5.3%


Voter registration:       Democrat    2,795,257              50.3%
                          Republican  2,685,258              48.3
                          Other          80,075               1.4

                          Total       5,560,590             100.0%

**MAY 17, 1966**

Question 1
  Summary:  Proposed amendment to Article IX, section 8.

                   To permit an increase in the borrowing capacity of any county, city, borough, township, school district, other municipality or incorporated district, except Philadelphia.

Result:  Approved

Vote:                              Yes:  610,465      No:  600,434

Percentage of total voter registration:      11.2%                    11.0%

Question 2
  Summary:  Proposed combination of Articles VI, VII and XII of the Constitution.

                   To consolidate into a single amendment the appointment of public officers whose selection is not provided for by the Constitution.

Result:  Approved

Vote:                              Yes:  788,662      No:  430,679

Percentage of total voter registration:      14.5%                    7.9%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 2,735,241 | 50.2% |
| | Republican | 2,641,285 | 48.4 |
| | Other | 76,790 | 1.4 |
| | Total | 5,453,316 | 100.0% |

**NOVEMBER 8, 1966**

Question 1
Summary:   Proposed repeal of Article XVI of the Constitution.

To move from one article to another the section of the Constitution on private corporations.

Result:  Approved

Vote:                                    Yes:  1,212,790      No:   636,925

Percentage of total voter registration:       22.0%              11.5%

Question 2
Summary:   Authorizing the General Assembly to require the completion of a course of training and education by newly elected justices of the peace and aldermen who have not been admitted to practice law in the Commonwealth.

Result:  Approved

Vote:                                    Yes:  1,153,759      No:   853,200

Percentage of total voter registration:       20.9%              15.5%

Voter registration:        Democrat      2,759,524              50.0%
                           Republican    2,678,934              48.5
                           Other             80,543              1.5

                           Total         5,519,001             100.0%

**MAY 16, 1967**

Question 1
  Summary:   Proposed   Constitutional   Convention   to   rewrite   four
             sections of the Constitution.   (1) Judiciary, (2) Local
             Government, (3) State Finance, (4) Reapportionment.

Result:  Approved

Vote:                          Yes: 1,140,931     No:   703,576

Percentage of total voter registration:       21.8%          13.5%

Question 2
  Summary:   Prohibit discrimination or denial of any person of his civil
             rights.

Result:  Approved

Vote:                          Yes: 1,232,575     No:   638,365

Percentage of total voter registration:       23.6%          12.2%

Question 3
  Summary:   To provide that each Legislature be a continuing body for
             two years and to empower the Legislature to call itself
             into special session.

Result:  Approved

Vote:                          Yes: 1,249,914     No:   600,157

Percentage of total voter registration:       23.9%          11.5%

**MAY 16, 1967**—(continued)

---

Question 4
 Summary:   Streamline legislative process of competitive bidding for
                  State purchases where possible.

---

 Result:  Approved

 Vote:                              Yes:  1,233,709      No:    621,381

 Percentage of total voter registration:        23.6%                11.9%

---

Question 5
 Summary:   Governor and Lieutenant Governor to be elected jointly.
                  State Treasurer may not run for Auditor General. These
                  four officers may succeed themselves once. Eliminate
                  Secretary of Internal Affairs as an elective office.

---

 Result:  Approved

 Vote:                              Yes:  1,221,773      No:    628,011

 Percentage of total voter registration:        23.4%                12.0%

**MAY 16, 1967**—(continued)

---

Question 6
  Summary:  Ninety-day  residence  required  to  vote.   Require
            Legislature to enact absentee voters law.

---

  Result:  Approved

  Vote:                        Yes: 1,227,214     No:  638,361

  Percentage of total voter registration:     23.5%            12.2%

---

Question 7
  Summary:  To amend  the  Constitution  in  time  of  an  emergency.
            (1) two-thirds approval by each House, (2) publicizing full
            text in newspapers throughout the State, (3) approval of
            the voters, in statewide election at least one month after
            passage by General Assembly.

---

  Result:  Approved

  Vote:                        Yes: 1,198,076     No:  626,711

  Percentage of total voter registration:     22.9%            12.0%

---

Question 8
  Summary:   Repeal all 12 sections dealing with railroads and canals.

---

  Result:  Approved

  Vote:                        Yes: 1,221,907     No:  629,067

  Percentage of total voter registration:     23.4%            12.0%

**MAY 16, 1967**—(continued)

---

Question 9
Summary:   State government to borrow $500 million to fight stream
and water pollution to help communities to build sewage
treatment plants, to develop and equip Project 70
recreational areas.  Help restore mining areas.

---

Result:  Approved

Vote:                              Yes:  1,163,779      No:   677,808

Percentage of total voter registration:        22.3%              13.0%


Voter registration:      Democrat      2,574,479            49.2%
                         Republican    2,581,987            49.4
                         Other            72,512             1.4

                         Total         5,228,978           100.0%

**NOVEMBER 7, 1967**

| | |
|---|---|
| Question Summary: | The General Assembly is authorized to amend Article III, section 31, to enact law providing that findings of panels selected for settlement of disputes between policemen, firemen and public employers shall be binding and must be complied with by all parties. |

Result:  Approved

Vote:                              Yes:  1,396,312        No:  409,534

Percentage of total voter registration:        26.2%                7.7%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 2,618,723 | 9.2% |
| | Republican | 2,628,225 | 49.4 |
| | Other | 76,166 | 1.4 |
| | Total | 5,323,114 | 100.0% |

**APRIL 23, 1968**

| Question 1 | |
|---|---|
| Summary: | Mandated decennial reapportionment of the Legislature. |

Result:  Approved

Vote:                              Yes: 1,063,603      No:   583,091

Percentage of total voter registration:        20.4%              11.2%

| Question 2 | |
|---|---|
| Summary: | Debt limit for State capital projects. Forbid borrowing for operating deficiencies. |

Result:  Approved

Vote:                              Yes: 1,022,706      No:   614,110

Percentage of total voter registration:        19.6%              11.8%

| Question 3 | |
|---|---|
| Summary: | Provide for certain tax exemptions. |

Result:  Approved

Vote:                              Yes:   882,116      No:   763,745

Percentage of total voter registration:        16.9%              14.6%

**APRIL 23, 1968**—(continued)

Question 4
  Summary:   Local government allowed optional form of government.

  Result:  Approved

  Vote:                              Yes:   986,855      No:   633,323

  Percentage of total voter registration:        18.9%              12.1%

Question 5
  Summary:   Judiciary--a unified court system under the administration
             of the State Supreme court.

  Result:  Approved

  Vote:                              Yes:   910,855      No:   729,845

  Percentage of total voter registration:        17.4%              14.0%

  Voter registration:        Democrat     2,549,821              48.8%
                             Republican   2,595,062              49.7
                             Other            75,995              1.5

                             Total        5,220,878             100.0%

## NOVEMBER 5, 1968

| | |
|---|---|
| Question: | Shall debt be incurred in the amount of twenty-eight million dollars ($28,000,000) to provide compensation to veterans in accordance with the Vietnam Conflict Veterans' Compensation Act No. 183 of 1968? |

Result:  Approved

Vote:                              Yes: 2,077,634      No:   640,627

Percentage of total voter registration:        37.1%              11.4%


Voter registration:     Democrat      2,715,507              48.5%
                        Republican    2,775,456              49.6
                        Other           108,401               1.9

                        Total         5,599,364             100.0%

**MAY 20, 1969**

| | |
|---|---|
| Question | |
| Summary: | Selection procedure for statewide election of judges. |

Result:  Defeated

Vote:                                    Yes:  624,453      No:  643,960

Percentage of total voter registration:          11.5%              11.8%

Voter registration:       Democrat   2,640,071              48.5%
                          Republican 2,701,929              49.6
                          Other        104,554               1.9

                          Total      5,446,554             100.0%

**MAY 19, 1970**

| | |
|---|---|
| Question: | Shall debt be incurred in the amount of twenty-seven million dollars ($27,000,000) to extend the provisions of the Vietnam Conflict Veterans' Compensation Act of 1968 to provide compensation to veterans for time spent in military hospitals, outside of the Vietnam Theatre of Operations, as a result of service-connected wounds, diseases or injuries sustained in the Vietnam Theatre of Operations and for additional funds to insure payment other than hospitalization? |

Result:  Approved

Vote:                               Yes:   775,346      No:   233,175

Percentage of total voter registration:        14.4%                    4.3%

Voter registration:     Democrat    2,602,941              48.5%
                        Republican   2,659,592              49.5
                        Other          105,186               2.0

                        Total        5,367,719             100.0%

**MAY 18, 1971**

| Question 1: | Shall Article I, section 6 of the Constitution be amended to permit a verdict, in a civil case, to be rendered by no less than five-sixths of the jury? |
|---|---|

Result:  Approved

| Vote: | | Yes:  833,283 | No:  423,606 |
|---|---|---|---|
| Percentage of total voter registration: | | 15.8% | 8.0% |

| Question 2: | Shall Article I of the Constitution be amended by adding a new section prohibiting any denial or abridgment of rights because of an individual's sex? |
|---|---|

Result:  Approved

| Vote: | | Yes:  783,441 | No:  464,882 |
|---|---|---|---|
| Percentage of total voter registration: | | 14.9% | 8.8% |

| Question 3: | Shall Article I of the Constitution be amended by adding a new section guaranteeing the people's right to clean air and pure water and the preservation and conservation, by the Commonwealth, of the State's natural resources for the people's benefit? |
|---|---|

Result:  Approved

| Vote: | | Yes: 1,021,342 | No:  259,979 |
|---|---|---|---|
| Percentage of total voter registration: | | 19.4% | 4.9% |

**MAY 18, 1971**—(continued)

| | |
|---|---|
| Question 4: | Shall Article III, section 27 of the Constitution be amended to permit the salary or emoluments during the term of a county officer to be increased or decreased only in the event a change in county classification requires it? |

Result:  Defeated

Vote:                              Yes:   567,472      No:   656,603

Percentage of total voter registration:        10.8%                12.5%

| | |
|---|---|
| Question 5: | Shall Article II, section 6 of the Constitution be amended to permit any Senator or Representative to resign and to be appointed to a civil office during the time for which he was elected so long as the civil office was not created nor its emoluments increased during the time for which he was elected and to provide for immediate forfeiture of the elective office for any person holding an office other than one so permitted? |

Result:  Defeated

Vote:                              Yes:   487,976      No:   741,458

Percentage of total voter registration:         9.3%                 14.1%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 2,647,326 | 50.3% |
| | Republican | 2,511,939 | 47.7 |
| | Other | 106,656 | 2.0 |
| | Total | 5,265,921 | 100.0% |

**NOVEMBER 7, 1972**

| | |
|---|---|
| Question: | Shall Article VIII of the Constitution of the Commonwealth of Pennsylvania be amended to give the General Assembly authority to provide tax rebates, credits, exemptions, grants-in-aid, State supplementations or special provisions for individuals, corporations, associations or nonprofit institutions, including nonpublic schools (whether sectarian or nonsectarian) to alleviate the danger, damage, suffering or hardship faced as a result of storms or floods of September 1971 and June 1972? |

Result:  Approved

Vote:                                    Yes: 1,711,509      No:   686,792

Percentage of total voter registration:        29.1%              11.7%

| Voter registration: | Democrat | 2,993,092 | 51.0% |
|---|---|---|---|
| | Republican | 2,697,694 | 45.9 |
| | Other | 181,116 | 3.1 |
| | Total | 5,871,902 | 100.0% |

**MAY 15, 1973**

| | |
|---|---|
| Question: | Shall Article VIII, section 2 of the Constitution of the Commonwealth be amended to permit legislation for establishing standards, qualifications and special tax provisions for agriculture reserves and lands devoted to agriculture use? |

Result:  Approved

Vote:                              Yes:   803,173      No:   325,952

Percentage of total voter registration:        14.1%                5.7%


Voter registration:     Democrat     2,597,933             45.7%
                        Republican   2,914,398             51.3
                        Other          170,970              3.0

                        Total        5,683,301            100.0%

**NOVEMBER 6, 1973**

| Question 1: | Shall the aggregate debt of the Commonwealth to carry out the purposes of the Vietnam Conflict Veterans' Compensation Act be increased from fifty-five million dollars ($55,000,000) to sixty-five million dollars ($65,000,000)? |
|---|---|

Result:  Approved

Vote:                                    Yes:  1,143,147     No:   557,820

Percentage of total voter registration:        20.0%              9.7%

| Question 2: | Shall Article I, section 10 of the Constitution of the Commonwealth be amended so that each of the several courts of common pleas may, with the approval of the Supreme Court, provide for the initiation of criminal proceedings by information, without the necessity for an indictment by a grand jury? |
|---|---|

Result:  Approved

Vote:                                    Yes:   897,295     No:   552,797

Percentage of total voter registration:        15.7%              9.7%


Voter registration:        Democrat      2,947,632              51.5%
                           Republican    2,605,925              45.5
                           Other           173,005               3.0

                           Total         5,726,562             100.0%

**MAY 21, 1974**

| | |
|---|---|
| Question: | Do you favor the incurrence of indebtedness by the Commonwealth of $100,000,000 for use through loans to provide for repairs, reconstruction and rehabilitation of nursing homes necessary to insure compliance with State and Federal safety standards? |

Result:  Approved

Vote:                           Yes:   924,566     No:   301,918

Percentage of total voter registration:        16.9%              5.5%

Voter registration:     Democrat    2,838,593              51.9%
                        Republican  2,472,260              45.2
                        Other          158,550               2.9

                        Total       5,469,403             100.0%

**MAY 20, 1975**

---

Question:   Shall Article IV, sections 8 and 9, and Article V, section 13 of the Pennsylvania Constitution be amended so that all nominations by the Governor to vacancies in offices requiring Senate confirmation, regardless of when the vacancies occur, become subject to majority or two-thirds consent of the Senate as provided by law, and subject to Senate action within twenty-five legislative days after submission or the nominee shall take office as if the Senate had consented?

---

Result:  Approved

Vote:                              Yes:   937,249    No:   209,026

Percentage of total voter registration:        18.2%                    4.1%


Voter registration:     Democrat    2,753,512              53.6%
                        Republican  2,256,714              43.9
                        Other         129,292               2.5

                        Total       5,139,518             100.0%

**NOVEMBER 4, 1975**

| | |
|---|---|
| Question: | Shall Article VIII, section 17 of the Pennsylvania Constitution be amended so that the General Assembly may provide for tax rebates, credits, exemptions, grants-in-aid, State supplementations, or otherwise provide special provisions for individuals, corporations, associations or nonprofit institutions, including nonpublic schools (whether sectarian or nonsectarian) in order to alleviate the danger, damage, suffering or hardship caused by great storms or floods of 1974 or 1975? |

Result:   Approved.  The emergency amendment provisions of the Constitution were followed by the State.

Vote:                                Yes: 1,241,622      No:   594,254

Percentage of total voter registration:        23.6%                    11.3%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 2,838,046 | 54.0% |
| | Republican | 2,281,188 | 43.4 |
| | Other | 136,770 | 2.6 |
| | Total | 5,256,004 | 100.0% |

## NOVEMBER 2, 1976

| | |
|---|---|
| Question Summary: | Commonwealth indebtedness of $10,000,000 for loans to volunteer fire companies and ambulance service companies. |

Result:  Approved

Vote:                           Yes: 1,408,284     No:   537,692

Percentage of total voter registration:        24.5%                    9.4%


Voter registration:     Democrat     3,152,450                54.8%
                        Republican   2,387,297                41.5
                        Other          210,013                 3.7

                        Total        5,749,660               100.0%

**NOVEMBER 8, 1977**

| Question 1: | Shall Article VIII, section 2(c) of the Pennsylvania Constitution be amended to provide that the exemption from certain real property taxes already applied to certain disabled veterans be extended to all those citizens and residents of Pennsylvania who have served the United States in any war or armed conflict and who have been declared to have a one hundred percent service-connected disability by the United States Veterans Administration? |
|---|---|

Result:  Approved

Vote:                                   Yes:  1,189,626      No:   360,211

Percentage of total voter registration:        21.0%              6.4%

| Question 2: | Shall Article VIII, section 17 of the Pennsylvania Constitution be amended to provide that special emergency legislation may be enacted by a vote of two-thirds of the General Assembly to make appropriations limited to monies required for Federal emergency or major disaster relief and shall this provision apply retroactively to 1976 or 1977? |
|---|---|

Result:  Approved

Vote:                                   Yes:  1,066,563      No:   428,388

Percentage of total voter registration:        18.8%              7.6%

Voter registration:       Democrat       3,134,943              55.3%
                          Republican     2,324,884              41.0
                          Other            212,703               3.7

                          Total          5,672,530             100.0%

**MAY 16, 1978**

Question 1
Summary:   Provides for the election of the Attorney General and provides for his qualifications.

Result:  Approved

Vote:                              Yes:  1,017,830      No:    206,528

Percentage of total voter registration:        18.2%                    3.7%

Question 2:   Shall Article V of the Pennsylvania Constitution be amended to provide that persons appointed to fill vacancies in the office of justice, judge or justice of the peace shall serve for a term ending on the first Monday of January following the next municipal election more than ten months after the vacancy occurs or for the remainder of the unexpired term whichever is less?

Result:  Approved

Vote:                              Yes:  1,000,662      No:    192,059

Percentage of total voter registration:        17.9%                    3.4%


Voter registration:        Democrat    3,101,172                 55.5%
                           Republican  2,276,892                 40.7
                           Other         212,064                  3.8

                           Total       5,590,128                100.0%

**NOVEMBER 6, 1979**

---

Question 1:   Shall Article V, section 3, and section 13, subsection b, and the Schedule to Article V, section 11 of the Pennsylvania Constitution be amended to permit an increase in the number of judges of the Superior Court from its present number of seven, make changes relating to initial terms of additional judges and further provide for the selection of the president judge of the Superior Court?

---

Result:  Approved

Vote:                                    Yes:   793,474      No:   703,736

Percentage of total voter registration:        14.6%              13.0%

---

Question 2
Summary:   Provides for the procedures for retention elections to be extended to apply to justices of the peace.

---

Result:  Defeated

Vote:                                    Yes:   730,122      No:   754,755

Percentage of total voter registration:        13.4%              13.9%

Voter registration:      Democrat      2,997,490                  55.2%
                         Republican    2,209,798                  40.7
                         Other           222,372                   4.1

                         Total         5,429,660                 100.0%

**NOVEMBER 3, 1981**

| | |
|---|---|
| Question 1: | Do you favor the incurring of indebtedness by the Commonwealth of $300,000,000 for use as loans to repair, construct, reconstruct, rehabilitate, extend and improve water supply systems, or to repair, reconstruct or rehabilitate flood control facilities, dams and port facilities in order to improve the health, safety and economic well-being of the people of the Commonwealth? |

Result:  Approved

Vote:                                       Yes:  1,054,329        No:    588,669

Percentage of total voter registration:            18.5%                    10.3%

| | |
|---|---|
| Question 2: | Do you favor the incurring of indebtedness of $15,000,000 for loans to volunteer fire companies, volunteer ambulance services and volunteer rescue squads for the purpose of establishing or modernizing facilities to house firefighting apparatus equipment, ambulances, and rescue vehicles, and for purchasing firefighting apparatus equipment, ambulances, and rescue vehicles, protective and communications equipment, and any other accessory equipment necessary for the proper performance of such organizations' duties? |

Result:  Approved

Vote:                                       Yes:  1,188,191        No:    462,950

Percentage of total voter registration:            20.9%                     8.1%

**NOVEMBER 3, 1981**—(continued)

| | |
|---|---|
| Question 3: | Shall Article II, section 17 of the Pennsylvania Constitution be amended to provide that a Legislative Reapportionment Commission be constituted in each year following the year of the Federal Decennial Census; and that the majority and minority leaders of the General Assembly, who constitute four of the five members, be certified to the elections officer of the Commonwealth no later than 60 days following the official reporting of the Federal Census as required by Federal law? |

Result:  Approved

Vote:                                    Yes:   823,948        No:   625,700

Percentage of total voter registration:          14.5%                  11.0%

| | |
|---|---|
| Question 4: | Shall Article III, section 26 of the Pennsylvania Constitution be amended to permit the General Assembly to legislate that increases in retirement benefits or pensions payable to members of a retirement or pension system of the Commonwealth, its political subdivisions, agencies or instrumentalities, be extended to beneficiaries who are spouses of members of such system, provided that such increases are certified to be actuarially sound? |

Result:  Defeated

Vote:                                    Yes:   618,857        No:   928,699

Percentage of total voter registration:          10.9%                  16.3%

**NOVEMBER 3, 1981--(continued)**

| | |
|---|---|
| Question 5: | Shall Article VIII, section 11 of the Pennsylvania Constitution be amended to provide that net proceeds from aviation fuel excise taxes be appropriated by the General Assembly to State agencies or political subdivisions to be used solely for purposes related to air navigation including, but not limited to, construction, operation and maintenance of air navigational facilities; property tax reimbursement; and further providing that these proceeds shall not be diverted by transfer or otherwise to any other purpose? |

Result:  Approved

Vote:                                    Yes:   762,491      No:    714,434

Percentage of total voter registration:          13.4%                    12.6%

Voter registration:     Democrat     3,023,334                    53.1%
                        Republican   2,364,713                    41.6
                        Other          301,137                     5.3

                        Total        5,689,184                   100.0%

**NOVEMBER 2, 1982**

| Question: | Do you favor the use of up to $50,000,000 previously authorized for nursing homes to also be used for loans to repair, reconstruct and rehabilitate personal care boarding homes? |
|---|---|

Result:  Approved

Vote:                                    Yes: 1,371,930      No:   774,178

Percentage of total voter registration:          24.1%                    13.6%


Voter registration:      Democrat        3,035,523                53.2%
                         Republican      2,357,448                41.4
                         Other             309,586                 5.4

                         Total           5,702,557               100.0%

**APRIL 10, 1984**

| | |
|---|---|
| Question: | Do you favor incurring indebtedness by the Commonwealth of $190,000,000 to promote economic redevelopment throughout Pennsylvania through job producing programs; grants and loans for industrial and small business development; acquisition of equipment for vocational programs in secondary schools, community colleges and engineering degree-granting schools; agricultural development; and the acquisition, rehabilitation or development of facilities for community services and public recreation purposes subject to implementation by law? |

Result:  Approved

Vote:                                    Yes:  726,742      No:  417,351

Percentage of total voter registration:          12.8%                    7.4%


Voter registration:        Democrat      3,176,515              56.1%
                           Republican    2,230,588              39.4
                           Other           254,341               4.5

                           Total         5,661,444             100.0%

**NOVEMBER 6, 1984**

| | |
|---|---|
| Question 1: | Shall Article VIII, section 2(b) of the Pennsylvania Constitution be amended to permit the General Assembly to establish standards and qualifications by which local taxing authorities in first and second class counties may make uniform special real property tax provisions applicable to taxpayers who are longtime owner-occupants of residences in areas where real property values have risen markedly due to the refurbishing or renovating of other deteriorating residences or the construction of new residences? |

Result:  Approved

Vote:                                     Yes:  1,499,771      No:  1,132,296

Percentage of total voter registration:          24.2%                 18.3%

| | |
|---|---|
| Question 2: | Shall Article I, section 9 of the Pennsylvania Constitution be amended to provide that the use of a suppressed voluntary admission or voluntary confession to impeach the credibility of a person may be permitted and shall not be construed as compelling a person to give evidence against himself? |

Result:  Approved

Vote:                                     Yes:  1,542,142      No:  1,076,343

Percentage of total voter registration:          24.9%                 17.4%

Voter registration:       Democrat      3,380,675               54.6%
                          Republican    2,487,552               40.2
                          Other            325,475                5.2

                          Total         6,193,702              100.0%

**NOVEMBER 5, 1985**

| Question 1: | Shall Article VII, section 14 of the Pennsylvania Constitution relating to Absentee Voting be amended to require the General Assembly to provide by general law, a method of voting for those electors who will not attend a polling place because of the observance of a religious holiday or who, in the case of a county employee, cannot vote because of election day duties? |
|---|---|

Result:  Approved

Vote:                                      Yes:   912,845      No:   434,516

Percentage of total voter registration:        15.1%                7.2%

| Question 2: | Shall Article VIII, section 2(c) of the Pennsylvania Constitution be amended to provide that an unmarried surviving spouse upon the death of a veteran who as a result of military service was blind, paraplegic, a double or quadruple amputee or had a 100% permanent disability be exempt from the payment of all real property taxes upon their residence provided that the State Veteran's Commission determines that such spouse is in need of an exemption? |
|---|---|

Result:  Approved

Vote:                                      Yes: 1,075,121    No:   290,795

Percentage of total voter registration:        17.8%                4.8%


Voter registration:      Democrat    3,271,365                54.3%
                         Republican  2,453,667                40.7
                         Other         304,358                 5.0

                         Total       6,029,390               100.0%

**NOVEMBER 3, 1987**

| | |
|---|---|
| Question: | Do you favor the incurring of indebtedness by the Commonwealth of $100,000,000 for the purchase of agricultural conservation easements for the preservation of agricultural land either for a period of 25 years or in perpetuity? |

Result:  Approved

Vote:                                    Yes:  1,172,483      No:   575,330

Percentage of total voter registration:        21.8%                  10.7%

Voter registration:    Democrat      2,861,251              53.1%
                       Republican    2,297,088              42.6
                       Other           229,857               4.3

                       Total         5,388,196             100.0%

**APRIL 26, 1988**

| | |
|---|---|
| Question: | Do you favor the incurring of indebtedness by the Commonwealth of $300,000,000 for use as loans to acquire, repair, construct, reconstruct, rehabilitate, extend, expand and improve water supply and sewage treatment systems? |

Result:  Approved

Vote:                              Yes:   888,120     No:   276,735

Percentage of total voter registration:        16.6%              5.2%


Voter registration:     Democrat     2,848,528              53.2%
                        Republican   2,279,849              42.6
                        Other           225,933               4.2

                        Total        5,354,310             100.0%

**MAY 16, 1989**

| | |
|---|---|
| Question: | Shall Article VIII, section 2(b) of the Pennsylvania Constitution be amended to allow for legislation which would require or permit local government units to reduce residential real estate tax rates to the extent of additional revenues obtained from personal income taxes, while keeping all other changes in real estate tax rates uniform? |

Result:  Defeated

Vote:                                   Yes:   514,317        No:  1,538,732

Percentage of total voter registration:        8.9%                  26.5%


Voter registration:     Democrat      3,050,692                52.6%
                        Republican    2,469,761                42.6
                        Other           275,744                 4.8

                        Total         5,796,197               100.0%

## NOVEMBER 6, 1990

| | |
|---|---|
| Question 1: | Do you favor the incurring of indebtedness by the Commonwealth of $200,000,000 to repair, expand, construct, reconstruct and rehabilitate county prisons or multicounty regional prison facilities or fund capital needs to create or expand county alternative sentencing or treatment programs? |

Result:  Approved

Vote:                                             Yes:  1,346,264       No:   955,384

Percentage of total voter registration:        23.8%               16.9%

| | |
|---|---|
| Question 2: | Do you favor the incurring of indebtedness of $25,000,000 for loans to volunteer fire companies, volunteer ambulance services and volunteer rescue squads for the purpose of establishing or modernizing facilities to house firefighting apparatus equipment, ambulances and rescue vehicles, and for purchasing firefighting apparatus equipment, ambulances and rescue vehicles, protective and communications equipment, and any other accessory equipment necessary for the proper performance of such organizations' duties? |

Result:  Approved

Vote:                                             Yes:  1,854,826       No:   486,896

Percentage of total voter registration:        32.8%                8.6%


Voter registration:        Democrat     2,907,156              51.4%
                           Republican   2,476,222              43.7
                           Other          275,811               4.9

                           Total        5,659,189             100.0%

**APRIL 28, 1992**

| Question: | Do you favor the incurring of indebtedness by the Commonwealth of $350,000,000 for use as loans to acquire, repair, construct, reconstruct, rehabilitate, extend, expand and improve water supply, storm water control and sewage treatment systems? |
|---|---|

Result:  Approved

Vote:                                Yes:  866,552      No:  457,881

Percentage of total voter registration:          16.3%                    8.6%

Voter registration:    Democrat    2,710,389              50.9%
                       Republican  2,362,748              44.4
                       Other         249,919               4.7

                       Total       5,323,056             100.0%

**MAY 18, 1993**

| | |
|---|---|
| Question 1: | Shall Article V of the Pennsylvania Constitution be amended to establish a judicial conduct board to investigate complaints of judicial misconduct, to establish a court of judicial discipline to adjudicate charges of judicial misconduct, to abolish the judicial inquiry and review board, and, except as provided by law, to bar payment of compensation, including retirement benefits, to justices, judges, and justices of the peace suspended, removed, or barred from judicial office for serious misconduct? |

Result:  Approved

Vote:                                        Yes:  1,018,318    No:   208,187

Percentage of total voter registration:        17.3%              3.5%

| | |
|---|---|
| Question 2: | Do you favor the incurring of indebtedness by the Commonwealth of up to $25,000,000 for payment of compensation for service in the Persian Gulf Conflict, including $1,500,000 for the cost of designing and constructing a patriotic monument or memorial in appreciation of Pennsylvania's veterans? |

Result:  Defeated

Vote:                                        Yes:   429,728    No:   821,415

Percentage of total voter registration:         7.3%              13.9%


Voter registration:    Democrat     3,010,606              51.0%
                       Republican   2,515,836              42.6
                       Other          375,559               6.4

                       Total       5,902,001              100.0%

**NOVEMBER 2, 1993**

| | |
|---|---|
| Question: | Do you favor the incurring of indebtedness by the Commonwealth in the amount of $50,000,000 to provide for the funding of nature preserves and wildlife habitats, and for improvements to and expansion of state parks, community parks and recreation facilities, historic sites, zoos and public libraries? |

Result:  Approved

Vote:                                    Yes: 1,023,834     No:   576,169

Percentage of total voter registration:          17.3%                  9.7%


Voter registration:        Democrat      3,007,927                  50.8%
                           Republican    2,527,456                  42.7
                           Other            383,488                   6.5

                           Total         5,918,871                 100.0%

**NOVEMBER 7, 1995**

| | |
|---|---|
| Question: | Shall [Article I, section 9 of]* the Pennsylvania Constitution be amended to provide (1) that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face," and (2) that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television? |

Result:   Approved.     However, because the ballot question contained two amendments, the Pennsylvania Supreme Court later determined this question to be unconstitutional.[1] Article XI, Section 1 provides that "[w]hen two or more amendments shall be submitted they shall be voted upon separately."   These issues reached the voters again on November 4, 2003 in the proper form of two separate ballot questions.  *See* page 55.

Vote:                                    Yes: 1,176,652      No:  400,727

Percentage of total voter registration:          19.1%                  6.5%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 3,070,170 | 49.8% |
| | Republican | 2,660,447 | 43.1 |
| | Other | 436,099 | 7.1 |
| | Total | 6,166,716 | 100.0% |

---

\*   The bracketed language is included for clarity and was not part of the ballot question.

---

[1]  *Bergdoll v. Kane*, 731 A.2d 1261 (Pa. 1999) (*aff'g* the opinion of the Commonwealth Court at 694 A.2d 1155 (Pa. Commw. Ct. 1997)).

## NOVEMBER 4, 1997

| | |
|---|---|
| Question 1: | Shall [Article VIII, section 2 of]* the Pennsylvania Constitution be amended to permit the enactment of legislation authorizing local taxing authorities to exclude from taxation an amount based on the assessed value of homestead property, with the limitations that the exclusions shall not exceed one-half of the of the median assessed value of all homestead property within the taxing jurisdiction and that the taxing authority may not increase the millage rate of its tax on real property to pay for these exclusions? |

Result:  Approved

Vote:                              Yes:  1,240,406      No:   778,105

Percentage of total voter registration:       17.6%                11.0%

| | |
|---|---|
| Question 2: | Shall [Article IV, section 9 of]* the Pennsylvania Constitution be amended to require a unanimous recommendation of the board of pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as board members? |

Result:  Approved

Vote:                              Yes:  1,182,067      No:   811,701

Percentage of total voter registration:       16.8%                11.5%

*   The bracketed language is included for clarity and was not part of the ballot question.

**NOVEMBER 4,1997** --(continued)

| | |
|---|---|
| Question 3: | Shall [Article VII, section 14 of]* the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside? |

Result:  Approved

Vote:                                    Yes:  1,301,638      No:   686,518

Percentage of total voter registration:          18.4%                    9.7%

Voter registration:      Democrat    3,441,798                 48.8%
                         Republican   2,998,083                 42.5
                         Other          617,188                  8.7

                         Total       7,057,069                100.0%

*    The bracketed language is included for clarity and was not part of the ballot question.

**NOVEMBER 3, 1998**

Question 1:   Shall {Article I, section 14 of}* the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?

Result:  Approved

Vote:                              Yes:  1,620,567      No:   601,463

Percentage of total voter registration:       22.3%              8.3%

Question 2:   Shall {Article I, section 6 of}* the Pennsylvania Constitution be amended to provide that the Commonwealth shall have the same right to trial by jury in criminal cases as does the accused?

Result:  Approved

Vote:                              Yes:  1,496,894      No:   684,204

Percentage of total voter registration:       20.6%              9.4%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 3,514,970 | 48.4% |
| | Republican | 3,072,299 | 42.3 |
| | Other | 671,553 | 9.3 |
| | Total | 7,258,822 | 100.0% |

*   The bracketed language is included for clarity and was not part of the ballot question.

**MAY 15, 2001**

| Question 1: | Shall {Article II, section 17 of}* the Constitution of Pennsylvania be amended with regard to legislative reapportionment to provide that when a reapportionment plan, upon attaining the force of law, contains a state Senate district which does not include the residence from which an incumbent Senator was elected, an election for the office of Senator for that district shall be held at the next general election irrespective of when an election for the district is otherwise scheduled? |
|---|---|

Result:  Approved

Vote:                                    Yes:    556,964        No:   362,210

Percentage of total voter registration:            7.2%                4.7%

| Question 2: | Shall {Article V, section 16 of}* the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, rather than on the day they attain the age of 70? |
|---|---|

Result:  Approved

Vote:                                    Yes:    656,270        No:   314,978

Percentage of total voter registration:            8.5%                4.1%


Voter registration:        Democrat      3,701,242                    48.1%
                           Republican    3,208,297                    41.7
                           Other           788,932                    10.2

                           Total         7,698,471                   100.0%

\*    The bracketed language is included for clarity and was not part of the ballot question.

## NOVEMBER 5, 2002

Question: Do you favor the incurring of indebtedness of up to $100,000,000 for the purpose of establishing a program that utilizes capital and other related methods to enhance and improve the delivery of volunteer fire and volunteer emergency services in this Commonwealth as hereafter authorized by statute?

Result: Approved

Vote:                              Yes: 1,833,795      No:   691,319

Percentage of total voter registration:        23.4%              8.8%


Voter registration:    Democrat      3,768,316              48.1%
                       Republican    3,235,172              41.3
                       Other           832,287              10.6

                       Total         7,835,775             100.0%

**NOVEMBER 4, 2003**

Question 1:  Shall {Article I, section 9 of}* the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face"?

Result:  Approved

Vote:                                    Yes:  1,239,356      No:  578,031

Percentage of total voter registration:        16.1%                7.5%

Question 2:  Shall {Article V, section 10(c) of}* the Pennsylvania Constitution be amended to provide that the General Assembly may enact laws regarding the manner by which children may testify in criminal proceedings, including the use of videotaped depositions or testimony by closed-circuit television?

Result:  Approved

Vote:                                    Yes:  1,494,261      No:  360,283

Percentage of total voter registration:        19.4%                4.7%

| Voter registration: | | | |
|---|---|---|---|
| | Democrat | 3,628,043 | 47.2% |
| | Republican | 3,239,104 | 42.1 |
| | Other | 821,148 | 10.7 |
| | Total | 7,688,295 | 100.0% |

*   The bracketed language is included for clarity and was not part of the ballot question.

**APRIL 27, 2004**

| | |
|---|---|
| Question: | Do you favor the incurring of indebtedness by the Commonwealth in the amount of $250,000,000 for use as grants and loans for construction, expansion or improvement of water and wastewater infrastructure, including water supply and sewage treatment systems? |

Result:  Approved

Vote:                                    Yes:   725,970      No:   426,043

Percentage of total voter registration:            9.3%                    5.5%

Voter registration:      Democrat      3,706,122              47.6%
                         Republican    3,230,496              41.6
                         Other           843,964              10.8

                         Total         7,780,582             100.0%

**MAY 17, 2005**

| | |
|---|---|
| Question: | Do you favor authorizing the Commonwealth to borrow up to $625,000,000, for the maintenance and protection of the environment, open space and farmland preservation, watershed protection, abandoned mine reclamation, acid mine drainage remediation and other environmental initiatives? |

Result:  Approved

Vote:                              Yes:   725,308      No:   472,290

Percentage of total voter registration:          9.0%                5.9%


Voter registration:    Democrat    3,836,701              47.6%
                       Republican  3,294,568              40.8
                       Other         934,267              11.6

                       Total       8,065,536             100.0%

**NOVEMBER 7, 2006**

| | |
|---|---|
| Question: | Do you favor indebtedness by the Commonwealth of up to $20,000,000 for the payment of compensation for service in the Persian Gulf Conflict of 1990-1991? |

Result:  Approved

Vote:                          Yes: 2,074,692        No:  1,317,051

Percentage of total voter registration:        25.4%                16.1%


Voter registration:      Democrat      3,900,685                    47.7%
                                     Republican    3,300,894                    40.3
                                     Other              981,297                    12.0

                                     Total           8,182,876                  100.0%

# Exhibit B

PRINTER'S NO. **58**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

No. **79**     Session of 2013

INTRODUCED BY HARPER, MCGEEHAN, QUINN, KRIEGER, DEAN, BOBACK,
   GOODMAN, GODSHALL, LONGIETTI, GILLEN, EVERETT, MOUL,
   DENLINGER AND PEIFER, JANUARY 10, 2013

REFERRED TO COMMITEE ON JUDICIARY, JANUARY 10, 2013

A JOINT RESOLUTION

1  Proposing an amendment to the Constitution of the Commonwealth
2     of Pennsylvania, further providing for compensation and
3     retirement of justices, judges and justices of the peace.

4     The General Assembly of the Commonwealth of Pennsylvania

5  hereby resolves as follows:

6     Section 1.  The following amendment to the Constitution of

7  Pennsylvania is proposed in accordance with Article XI:

8     That section 16(b) of Article V be amended to read:

9  § 16.  Compensation and retirement of justices, judges and

10          justices of the peace.

11     * * *

12     (b)  Justices, judges and justices of the peace shall be

13  retired on the last day of the calendar year in which they

14  attain the age of [70] 75 years. Former and retired justices,

15  judges and justices of the peace shall receive such compensation

16  as shall be provided by law. Except as provided by law, no

17  salary, retirement benefit or other compensation, present or

18  deferred, shall be paid to any justice, judge or justice of the

1   peace who, under section 18 or under Article VI, is suspended,

2   removed or barred from holding judicial office for conviction of

3   a felony or misconduct in office or conduct which prejudices the

4   proper administration of justice or brings the judicial office

5   into disrepute.

6       * * *

7       Section 2.   (a)   Upon the first passage by the General

8   Assembly of this proposed constitutional amendment, the

9   Secretary of the Commonwealth shall proceed immediately to

10  comply with the advertising requirements of section 1 of Article

11  XI of the Constitution of Pennsylvania and shall transmit the

12  required advertisements to two newspapers in every county in

13  which such newspapers are published in sufficient time after

14  passage of this proposed constitutional amendment.

15      (b)   Upon the second passage by the General Assembly of this

16  proposed constitutional amendment, the Secretary of the

17  Commonwealth shall proceed immediately to comply with the

18  advertising requirements of section 1 of Article XI of the

19  Constitution of Pennsylvania and shall transmit the required

20  advertisements to two newspapers in every county in which such

21  newspapers are published in sufficient time after passage of

22  this proposed constitutional amendment. The Secretary of the

23  Commonwealth shall submit this proposed constitutional amendment

24  to the qualified electors of this Commonwealth at the first

25  primary, general or municipal election which meets the

26  requirements of and is in conformance with section 1 of Article

27  XI of the Constitution of Pennsylvania and which occurs at least

28  three months after the proposed constitutional amendment is

29  passed by the General Assembly.

# Exhibit C

Case 1:16-cv-02168-RDM ) Document 11-6 Filed 11/08/16 Page 129 of 692

# Pennsylvania General Assembly

http://www.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2013&sind=0&body=H&type=B&bn=79      **07/20/2016 03:01 PM**

---

Home / Bill and Amendments / Bill Information

---

# Bill Information - History

## House Bill 79; Regular Session 2013-2014

| | |
|---|---|
| **Sponsors:** | HARPER, McGEEHAN, QUINN, KRIEGER, DEAN, BOBACK, GOODMAN, GODSHALL, LONGIETTI, GILLEN, EVERETT, MOUL, DENLINGER, PEIFER, FREEMAN, MILNE, MURT, KORTZ, WATSON, BARBIN and CALTAGIRONE |
| **Printer's No.(PN):** | 58* |
| **Short Title:** | A Joint Resolution proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for compensation and retirement of justices, judges and justices of the peace. |
| **Actions:** | PN 0058    Referred to JUDICIARY, Jan. 10, 2013 |
| | Reported as committed, May 14, 2013 |
| | First consideration, May 14, 2013 |
| | Laid on the table, May 14, 2013 |
| | Removed from table, June 20, 2013 |
| | Second consideration, June 24, 2013 |
| | Re-committed to APPROPRIATIONS, June 24, 2013 |
| | Re-reported as committed, June 25, 2013 |
| | Third consideration and final passage, June 28, 2013 (157–44) |
| | In the Senate |
| | Referred to JUDICIARY, June 30, 2013 |
| | Reported as committed, Oct. 1, 2013 |
| | First consideration, Oct. 1, 2013 |
| | Second consideration, Oct. 2, 2013 |
| | Third consideration and final passage, Oct. 15, 2013 (44-6) |
| | (Remarks see Senate Journal Page 1028-1029), Oct. 15, 2013 |
| | Signed in House, Oct. 16, 2013 |
| | Signed in Senate, Oct. 21, 2013 |
| | Filed in the Office of the Secretary of the Commonwealth, Oct. 22, 2013 |
| | Pamphlet Laws Resolution No. 3 |

\*  denotes current Printer's Number

ⓘ How to Read a Bill    ⓘ About PDF Documents

---

# Exhibit D

CORRECTIVE REPRINT
PRIOR PASSAGE - J.R. 2013-3                                    ◄

PRIOR PRINTER'S NO. 80                    PRINTER'S NO. **251**

### THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No. 90    Session of 2015

INTRODUCED BY HARPER, CALTAGIRONE, BARBIN, BOBACK, CARROLL,
   COHEN, DIAMOND, FREEMAN, GILLEN, GODSHALL, GOODMAN, GRELL,
   GROVE, KRIEGER, LONGIETTI, MURT, PETRI, SCHLOSSBERG, WATSON
   AND GIBBONS, JANUARY 21, 2015

REFERRED TO COMMITTEE ON JUDICIARY, JANUARY 21, 2015

A JOINT RESOLUTION

1  Proposing an amendment to the Constitution of the Commonwealth
2     of Pennsylvania, further providing for compensation and
3     retirement of justices, judges and justices of the peace.

4     The General Assembly of the Commonwealth of Pennsylvania

5  hereby resolves as follows:

6     Section 1.  The following amendment to the Constitution of

7  Pennsylvania is proposed in accordance with Article XI:

8     That section 16(b) of Article V be amended to read:

9  § 16.  Compensation and retirement of justices, judges and

10            justices of the peace.

11     * * *

12     (b)  Justices, judges and justices of the peace shall be

13  retired on the last day of the calendar year in which they

14  attain the age of [70] 75 years. Former and retired justices,

15  judges and justices of the peace shall receive such compensation

16  as shall be provided by law. Except as provided by law, no

1  salary, retirement benefit or other compensation, present or
2  deferred, shall be paid to any justice, judge or justice of the
3  peace who, under section 18 or under Article VI, is suspended,
4  removed or barred from holding judicial office for conviction of
5  a felony or misconduct in office or conduct which prejudices the
6  proper administration of justice or brings the judicial office
7  into disrepute.

8     * * *

9     Section 2.  (a)  Upon the first passage by the General
10 Assembly of this proposed constitutional amendment, the
11 Secretary of the Commonwealth shall proceed immediately to
12 comply with the advertising requirements of section 1 of Article
13 XI of the Constitution of Pennsylvania and shall transmit the
14 required advertisements to two newspapers in every county in
15 which such newspapers are published in sufficient time after
16 passage of this proposed constitutional amendment.

17    (b)  Upon the second passage by the General Assembly of this
18 proposed constitutional amendment, the Secretary of the
19 Commonwealth shall proceed immediately to comply with the
20 advertising requirements of section 1 of Article XI of the
21 Constitution of Pennsylvania and shall transmit the required
22 advertisements to two newspapers in every county in which such
23 newspapers are published in sufficient time after passage of
24 this proposed constitutional amendment. The Secretary of the
25 Commonwealth shall submit this proposed constitutional amendment
26 to the qualified electors of this Commonwealth at the first
27 primary, general or municipal election which meets the
28 requirements of and is in conformance with section 1 of Article
29 XI of the Constitution of Pennsylvania and which occurs at least
30 three months after the proposed constitutional amendment is

1  passed by the General Assembly.

# Exhibit E

# Pennsylvania General Assembly

Home / Bill and Amendments / Bill Information

# Bill Information - History

## House Bill 90; Regular Session 2015-2016

**Sponsors:** HARPER, CALTAGIRONE, BARBIN, BOBACK, CARROLL, COHEN, DIAMOND, FREEMAN, GILLEN, GODSHALL, GOODMAN, GRELL, GROVE, KRIEGER, LONGIETTI, MURT, PETRI, SCHLOSSBERG, WATSON, GIBBONS and DAVIS

**Printer's No.(PN):** 251* , 80

**Short Title:** A Joint Resolution proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for compensation and retirement of justices, judges and justices of the peace.

**Actions:**

PN 0080   Referred to JUDICIARY, Jan. 21, 2015

PN 0251   Corrective Reprint, Printer's No. 251, Jan. 28, 2015

Reported as committed, Feb. 3, 2015

First consideration, Feb. 3, 2015

Laid on the table, Feb. 3, 2015

Removed from table, Feb. 4, 2015

Second consideration, Feb. 9, 2015

Re-committed to APPROPRIATIONS, Feb. 9, 2015

Re-reported as committed, Feb. 10, 2015

Third consideration and final passage, Feb. 10, 2015 (154-44)

(Remarks see House Journal Page 157), Feb. 10, 2015

In the Senate

Referred to JUDICIARY, Feb. 13, 2015

Reported as committed, Feb. 17, 2015

First consideration, Feb. 17, 2015

Laid on the table, April 15, 2015

Removed from table, April 15, 2015

Laid on the table, June 1, 2015

Removed from table, June 1, 2015

Laid on the table, June 24, 2015

Removed from table, June 24, 2015

Re-referred to APPROPRIATIONS, June 30, 2015

Re-reported as committed, Oct. 27, 2015

Second consideration, Oct. 28, 2015

Third consideration and final passage, Nov. 16, 2015 (36-13)

(Remarks see Senate Journal Page 1190), Nov. 16, 2015

Signed in House, Nov. 17, 2015

Signed in Senate, Nov. 17, 2015

7/20/2016

Case 1:16-cv-01030-RDM (Delivery) Document 90-7 Regular Session 2015-2016 PA General Assembly Filed 01/09/18 Page 136 of 692

Filed in the Office of the Secretary of the Commonwealth, Nov. 17, 2015

Pamphlet Laws Resolution No. 1

\* denotes current Printer's Number
⑦ How to Read a Bill    ⑦ About PDF Documents

# Exhibit F

**• PUBLIC NOTICE •**

# PROPOSED AMENDMENTS TO THE CONSTITUTION OF PENNSYLVANIA

The following are true and correct copies of joint resolutions of the General Assembly of Pennsylvania proposing two amendments to the Constitution of Pennsylvania. Consistent with the procedures prescribed by Article XI, Section 1 of the Constitution, the General Assembly first proposed the amendments during the 2013 session and approved them for a second time during the 2015 session of the legislature. As required by Article XI, Section 1 of the Constitution and statutory law, the Secretary of the Commonwealth has caused the proposed amendments to be published here.

Pursuant to law, the Secretary of the Commonwealth will submit the proposed amendments to the electors of Pennsylvania in the form of two ballot questions at the General Primary to be held on April 26, 2016. If a ballot question is approved by a majority of electors voting on it, the corresponding amendment becomes part of the Constitution.

Those parts of the joint resolutions that appear in **bold print** are the words of the Constitution that are proposed by the General Assembly for addition or deletion. If an amendment were approved, the words <u>underlined</u> would be added to the Constitution and the words in brackets (e.g., **[Constitution]**) would be deleted. The unbolded words would remain unchanged in the Constitution.

Following the proposed amendments is the text of the questions that will be placed on the ballot. Below each question is a "Plain English Statement" prepared by the Office of Attorney General, and published as required by law, indicating the purpose, limitations and effects of the ballot question upon the people of this Commonwealth.

Anyone who needs help reading this advertisement or who needs the text of the proposed amendments in an alternative format may call or write the Pennsylvania Department of State, Bureau of Commissions, Elections and Legislation, Room 210 North Office Building, Harrisburg, PA 17120, (717) 787-5280, ra-BCEL@pa.gov.

Pedro A. Cortés, Secretary of the Commonwealth

---

## JOINT RESOLUTION 2015-1

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for compensation and retirement of justices, judges and justices of the peace.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That section 16(b) of Article V be amended to read:

§ 16. Compensation and retirement of justices, judges and justices of the peace.

* * *

(b) Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] **75** years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. Except as provided by law, no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace who, under section 18 or under Article VI, is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

* * *

Section 2. (a) Upon the first passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this proposed constitutional amendment.

(b) Upon the second passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this proposed constitutional amendment. The Secretary of the Commonwealth shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the next primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly.

---

### PROPOSED CONSTITUTIONAL AMENDMENT 1
AMENDING THE MANDATORY JUDICIAL RETIREMENT AGE

#### Ballot Question

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

#### Plain English Statement of the Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the justices of the Pennsylvania Supreme Court, judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

---

## JOINT RESOLUTION 2015-2

Proposing integrated amendments to the Constitution of the Commonwealth of Pennsylvania, eliminating the Traffic Court of Philadelphia.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following integrated amendments to the Constitution of Pennsylvania are proposed in accordance with Article XI:

(1) That section 1 of Article V be amended to read:

§ 1. Unified judicial system.

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal **[and traffic]** courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

(2) That the heading and subsection (c) of section 6 of Article V be amended to read:

§ 6. Community courts; Philadelphia Municipal Court **[and Traffic Court]**.

* * *

(c) In the City of Philadelphia there shall be a municipal court **[and a traffic court]**. The number of judges and the jurisdiction **[of each]** shall be as provided by law. **[These courts] This court** shall exist so long as a community court has not been established or in the event one has been discontinued under this section.

(3) That subsection (d) of section 10 of Article V be amended to read:

§ 10. Judicial administration.

* * *

(d) The Chief Justice and president judges of all courts with seven or less judges shall be the justice or judge longest in continuous service on their respective courts; and in the event of his resignation from this position the justice or judge next longest in continuous service shall be the Chief Justice or president judge. The president judges of all other courts shall be selected for five-year terms by the members of their respective courts**[, except that the president judge of the traffic court in the City of Philadelphia shall be appointed by the Governor]**. A Chief Justice or president judge may resign such position and remain a member of the court. In the event of a tie vote for chief or president judge in a court which elects its president judge, the Supreme Court shall appoint as president judge one of the judges receiving the highest number of votes.

* * *

(4) That subsection (b) of section 12 of Article V be amended to read:

§ 12. Qualifications of justices, judges and justices of the peace.

* * *

(b) **[Judges of the traffic court in the City of Philadelphia and justices]** Justices of the peace shall be members of the bar of the Supreme Court or shall complete a course of training and instruction in the duties of their respective offices and pass an examination prior to assuming office. Such courses and examinations shall be as provided by law.

(5) That subsection (a) of section 15 of Article V be amended to read:

§ 15. Tenure of justices, judges and justices of the peace.

(a) The regular term of office of justices and judges shall be ten years and the regular term of office for judges of the municipal court **[and traffic court]** in the City of Philadelphia and of justices of the peace shall be six years. The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.

* * *

Section 2. (a) Upon the first passage by the General Assembly of these proposed constitutional amendments, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of these proposed constitutional amendments.

(b) Upon the second passage by the General Assembly of these proposed constitutional amendments, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of these proposed constitutional amendments. The Secretary of the Commonwealth shall submit the proposed constitutional amendments under section 1 of this resolution to the qualified electors of this Commonwealth as a single ballot question at the first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendments are passed by the General Assembly.

---

### PROPOSED CONSTITUTIONAL AMENDMENT 2
ABOLITION OF THE PHILADELPHIA TRAFFIC COURT

#### Ballot Question

Shall the Pennsylvania Constitution be amended to abolish the Philadelphia Traffic Court?

#### Plain English Statement of the Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to abolish the Traffic Court in the City of Philadelphia.

Presently, the Pennsylvania Constitution provides for the Traffic Court in the City of Philadelphia as part of the unified judicial system. If the ballot question were to be approved, the Traffic Court in the City of Philadelphia would be abolished by removing all references to the Traffic Court and the judges of the Traffic Court in the City of Philadelphia from the Pennsylvania Constitution.

Legislation enacted in 2013 transferred the functions performed by the Traffic Court to the Philadelphia Municipal Court. As a result, violations of the Vehicle Code previously adjudicated by the Traffic Court are presently being adjudicated by the Philadelphia Municipal Court. The proposed amendment would officially abolish the Traffic Court by removing all references to the Traffic Court and its judges from the Pennsylvania Constitution.

This ballot question is limited to whether the Traffic Court in the City of Philadelphia should be abolished. The ballot question would not amend any other provisions of the Pennsylvania Constitution beyond the removal of all references to the Traffic Court and its judges.

The effect of the ballot question would be to abolish the Traffic Court in the City of Philadelphia. As discussed above, legislation enacted in 2013 transferred the functions of the Traffic Court to the Philadelphia Municipal Court. This amendment would officially abolish the Traffic Court by removing all references to the Traffic Court and its judges from the Pennsylvania Constitution.

---

**PAID FOR WITH PENNSYLVANIA TAXPAYER DOLLARS. THIS ADVERTISEMENT IS FUNDED IN WHOLE BY THE GENERAL FUND.**

# Exhibit G

Received 03/06/2016 Supreme Court Middle District

Filed 03/06/2016 Supreme Court Middle District
29 MM 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

No. _29_ MM 2016

IN RE:

PROPOSED CONSTITUTIONAL AMENDMENT 1
BALLOT QUESTION

## EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, AND SENATE MAJORITY LEADER JAKE CORMAN

**KLEINBARD LLC**
Matthew H. Haverstick, Esq. (No. 85072)
Mark E. Seiberling, Esq. (No. 91256)
Joshua J. Voss, Esq. (No. 306853)
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Ph: (215) 568-2000
Fax: (215) 568-0140

*Attorneys for Pennsylvania Senate Majority
Caucus, Senate President Pro Tempore
Joe Scarnati, and Senate Majority Leader
Jake Corman*

## TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................1

II.    JURISDICTIONAL STATEMENT ......................................................3

III.   CONCISE STATEMENT OF FACTS ..................................................4

IV.    ISSUE SOUGHT TO BE REVIEWED .................................................6

V.     JUSTIFICATION FOR INVOKING COURT'S PLENARY POWERS .......6

VI.    CONCLUSION AND RELIEF SOUGHT ............................................11

Exhibit A    Ballot Question and Plain English Statement

Exhibit B    HB 79 (2013-2014 Regular Session)

Exhibit C    HB 90 (2015-2016 Regular Session)

## TABLE OF AUTHORITIES

### Cases

*Com. v. Tharp*, 754 A.2d 1251 (Pa. 2000)................................................................10
*Driscoll v. Corbett*, 69 A.3d 197 (Pa. 2013)..............................................................3, 4
*Grimaud v. Com.*, 865 A.2d 835 (Pa. 2005)..............................................................10
*Pennsylvania Prison Soc. v. Com.*, 776 A.2d 971 (Pa. 2001) ................................10
*Stander v. Kelley*, 250 A.2d 474 (Pa. 1969) .............................................................10

### Statutes

25 P.S. § 2621.1 ...........................................................................................................5
25 P.S. § 2755 ..............................................................................................................5
25 P.S. § 3010 ...........................................................................................................5, 8
42 Pa.C.S. § 502 ..........................................................................................................3

### Joint Resolutions

HB 79 (2013-2014 Regular Session) ............................................................. 4, 5, 8, 11
HB 90 (2015-2016 Regular Session) ............................................................. 4, 5, 8, 11

### Rules

Pa.R.A.P. 3309 .............................................................................................................3

### Constitutional Provisions

Pa. Const. Art. V, §§ 2(a), 10(a) .................................................................................3
Pa. Const. Art. V, § 16(b) ...........................................................................................4
Pa. Const. Art. XI, § 1 ............................................................................................4, 11

### Other Authorities

Pete Williams and Elizabeth Chuck, *Supreme Court Justice Antonin Scalia Has
     Died at Age 79*, NBCNews.com (Feb. 14, 2016) ................................................7

## I.    INTRODUCTION

The Pennsylvania Senate Majority Caucus, Senate President Pro Tempore

Joe Scarnati, and Senate Majority Leader Jake Corman (collectively, the "Senate")

ask this Court to exercise its plenary powers, on an expedited basis, over an

electoral issue of immediate public importance regarding the forthcoming April 26,

2016 primary election. Specifically, this Court should immediately invoke its

plenary jurisdiction and strike the following terms and phrases from the Ballot

Question for Proposed Constitutional Amendment 1:

> Shall the Pennsylvania Constitution be amended to require that
> justices ~~of the Supreme Court~~, judges and justices of the peace
> ~~(known as magisterial district judges)~~ be retired on the last day of the
> calendar year in which they attain the age of 75 years[.]~~, instead of the~~
> ~~current requirement that they be retired on the last day of the calendar~~
> ~~year in which they attain the age of 70?~~

The above terms and phrases must be stricken from the Ballot Question in

advance of the April 26, 2016 primary election for at least the following three

reasons.

*First*, and perhaps most importantly, the terms and phrases sought to be

stricken are confusing, distracting and misleading to electors. The insertion of the

phrase "of the Supreme Court" after "justices" makes it incorrectly appear as if the

proposed constitutional amendment may also impact or affect justices of the

United States Supreme Court. This is not the case, and it is possible that the

average elector may not understand this important distinction when voting.

Further, the phrase "known as magisterial district judges," which appears right after "judges and justices of the peace" makes it appear that the proposed amendment does not apply to judges of courts of common pleas, the Superior Court, and the Commonwealth Court.

*Second*, the terms and phrases sought to be stricken are inconsistent with the proposed constitutional amendment as drafted, voted on, and approved by the General Assembly in two consecutive sessions. The Joint Resolution approved by both houses of the General Assembly simply stated: "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] 75 years." As currently drafted, the Ballot Question is not limited to, and does not mirror, this legislatively approved language.

*Third*, and finally, the terms and phrases sought to be stricken are nothing more than superfluous and gratuitous commentary, which is more appropriately addressed in the Plain English Statement of Office of Attorney General that accompanies the Ballot Question. Past ballot questions in this Commonwealth have been historically limited to what the new law would be if amended, not what the current state of the law may be at the time of the proposed amendment. To the extent this additional information may be relevant to the elector, it can be found and provided for in the Plain English Statement.

2

## II.   JURISDICTIONAL STATEMENT

The Pennsylvania Supreme Court has the ability to hear this electoral matter of immediate public importance pursuant to the plenary powers conferred upon it by Pa.R.A.P. 3309. These powers have been preserved in the Pennsylvania Constitution. *See* Pa. Const. Art. V, §§ 2(a), 10(a); 42 Pa.C.S. § 502.

The propriety of the Ballot Question for Proposed Constitutional Amendment 1, set to appear on the April 26, 2016 primary election ballot, requires the Court's expedited assessment because of the negative and adverse impact the question, as currently drafted, may have on electors. Given the short time period before the April 26, 2016 primary election, expedited review of this electoral matter is warranted and prudent in order ensure that the Ballot Question, as amended or clarified, remains on the ballot for the primary election, as mandated by the Pennsylvania Constitution and the Joint Resolution passed by the General Assembly proposing the constitutional amendment.

Although members of this Court may have an interest or be impacted by the proposed Ballot Question, the rule of necessity mandates that if all of the members of a tribunal may be subject to recusal, then the tribunal must consider the matter regardless of any personal interest of its members. *See Driscoll v. Corbett*, 69 A.3d 197, 207 (Pa. 2013) (concluding that rule of necessity required Supreme Court to decide judges' constitutional challenge to amendment that set mandatory

3

retirement for judges at age 70). Otherwise, the public would be denied a decision in the matter. *See id.*

## III.   CONCISE STATEMENT OF FACTS

As required by Article XI, Section 1 of the Pennsylvania Constitution, the General Assembly approved in the 2013-2014 Regular Session, and again in the 2015-2016 Regular Session, a Joint Resolution proposing to amend the Pennsylvania Constitution to increase the mandatory judicial retirement age.

Specifically, the Joint Resolution approved by the General Assembly in two consecutive sessions proposes to amend Section 16(b) of Article V of the Pennsylvania Constitution, titled "Compensation and retirement of justices, judges and justices of the peace," to provide: "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] 75 years." HB 79 (2013-2014 Regular Session) & HB 90 (2015-2016 Regular Session), attached as Exhibits B & C, respectively.

Consistent with Article XI, Section 1 of the Pennsylvania Constitution, the Joint Resolution further provides that following the second passage of the proposed amendment by the General Assembly:

> The Secretary of the Commonwealth shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election which . . . occurs at least three months after the proposed constitutional amendment is passed by the General Assembly.

4

HB 79 (2013-2014 Regular Session) & HB 90 (2015-2016 Regular Session).

In November 2015, the General Assembly approved the proposed

constitutional amendment for a second time. *See* HB 90 (2015-2016 Regular

Session). As required by the Election Code and the Joint Resolution approved by

the General Assembly, the Secretary of State prepared the ballot question for the

proposed constitutional amendment to be voted on by the electors at the April 26,

2016 primary election. *See* 25 P.S. § 3010; HB 90 (2015-2016 Regular Session).

The Ballot Question for Proposed Constitutional Amendment 1, as prepared

by the Secretary of State for the April 26, 2016 primary election, states:

> Shall the Pennsylvania Constitution be amended to require that
> justices of the Supreme Court, judges and justices of the peace
> (known as magisterial district judges) be retired on the last day of the
> calendar year in which they attain the age of 75 years, instead of the
> current requirement that they be retired on the last day of the calendar
> year in which they attain the age of 70?

Ballot Question, attached as Exhibit A.

As required by the Election Code, it is believed and therefore averred that

the Office of Attorney General approved the Ballot Question for Proposed

Constitutional Amendment 1, as prepared by the Secretary of State. *See* 25 P.S.

§ 2755. The Office of Attorney General also drafted the Plain English Statement to

accompany the Ballot Question, as required by the Election Code. 25 P.S.

§ 2621.1; *see* Plain English Statement of Office of Attorney General, attached as

Exhibit A.

5

## IV.   ISSUE SOUGHT TO BE REVIEWED

The Senate seeks to have this Court review, on an expedited basis, an electoral issue of immediate public importance in advance of the April 26, 2016 primary election in order to strike the following confusing surplusage and inconsistent language from the Ballot Question for Proposed Constitutional Amendment 1:

> Shall the Pennsylvania Constitution be amended to require that justices ~~of the Supreme Court~~, judges and justices of the peace ~~(known as magisterial district judges)~~ be retired on the last day of the calendar year in which they attain the age of 75 years[.] ~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?~~

Ballot Question, attached as Exhibit A.

## V.   JUSTIFICATION FOR INVOKING COURT'S PLENARY POWERS

Exercise of this Court's plenary powers is necessary and of immediate public importance in order to correct and strike, in advance of the April 26, 2016 primary election, certain confusing surplusage and inconsistent language from the Ballot Question for Proposed Constitutional Amendment 1.

The Ballot Question, as drafted by the Secretary of State and approved by the Office of Attorney General, must be corrected and reformed prior to the April 26, 2016 primary election for at least the following three reasons.

*First,* several of the terms and phrases included in the Ballot Question can be construed as confusing, distracting, and misleading to electors. For instance, the

6

insertion of the phrase "of the Supreme Court" after "justices" gives the

appearance that the proposed amendment may impact justices of the United States

Supreme Court, and not simply justices of the Pennsylvania Supreme Court. This

is not the case, and it is likely that the average elector may not fully appreciate this

important distinction. This is acutely so in light of the recent vacancy on the United

States Supreme Court created by the passing of Justice Antonin Scalia, where

many of the news reports prominently featured his age. *See, e.g.*, Pete Williams

and Elizabeth Chuck, *Supreme Court Justice Antonin Scalia Has Died at Age 79*,

NBCNews.com (Feb. 14, 2016).[1]

Likewise, the insertion of "known as magisterial district judges" and the

inclusion of "instead of the current requirement that they be retired on the last day

of the calendar year in which they attain the age of 70" are confusing, distracting

and unnecessarily elongate the Ballot Question. For example, the "known as

magisterial district judges" phrase makes it appear as if the preceding "judges and

justices" phrase refers only to magisterial district judges, which, in turn, makes it

appear as if judges of the courts of common pleas, Superior Court, and

Commonwealth Court are not subject to the constitutional change. It is precisely to

avoid this kind of confusion that the Election Code compels the Secretary of State

to prepare the ballot question for proposed constitutional amendments "in brief

---

[1] *Available at:* http://www.nbcnews.com/news/us-news/supreme-court-justice-antonin-scalia-79-has-died-officials-say-n518156.

form," which the Ballot Question as currently drafted clearly is not. *See* 25 P.S. § 3010.

*Second*, many of the terms and phrases included in the Ballot Question are entirely inconsistent with the Joint Resolution drafted, voted on, and approved by the General Assembly in two consecutive sessions. The Joint Resolution approved by the General Assembly was concise and to the point, providing: "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] <u>75</u> years." HB 79 (2013-2014 Regular Session) & HB 90 (2015-2016 Regular Session). In the Joint Resolution, the General Assembly specifically directed that, following the second passage of the proposed amendment, "[t]he Secretary of the Commonwealth *shall submit this proposed constitutional amendment* to the qualified electors of this Commonwealth at the first primary, general or municipal election[.]" *Id.* (emphasis added).

Yet, despite a clear directive from the General Assembly to submit the proposed constitutional amendment to the electors as drafted by the General Assembly, the Ballot Question for Proposed Constitutional Amendment 1 submitted by the Secretary of State and approved by the Office of Attorney General includes several additional terms and phrases not included in the Joint Resolution, such as "of the Supreme Court"; "known as magisterial district judges"; and "instead of the current requirement that they be retired on the last day

8

of the calendar year in which they attain the age of 70." The Joint Resolution drafted, voted on, and approved by the General Assembly in two consecutive sessions did not include these additional terms, and neither should the Ballot Question for Proposed Constitutional Amendment 1.

*Third*, and finally, many of the terms and phrases included in the Ballot Question are nothing more than superfluous and gratuitous commentary that is beyond the scope of the Ballot Question, and which is more appropriately addressed in the Plain English Statement of Office of Attorney General. Indeed, the insertion of defining terms such as "of the Supreme Court" or "known as magisterial district judges" in the Ballot Question is unnecessary and distracting, especially when these terms are appropriately defined and described in the Plain English Statement of Office of Attorney General accompanying the Ballot Question. *See* Plain English Statement of Office of Attorney General, attached as Exhibit A.

Moreover, the insertion of the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70" in the Ballot Question is equally unnecessary and distracting, considering that such a description of the current state of the law has not been historically included in ballot questions. Indeed, past ballot questions in this Commonwealth have traditionally limited questions for proposed constitutional amendments to what the

9

new law would be if amended, not what the current state of the law may be at the

time of the proposed amendment. Below are examples of several such ballot

questions approved by this Court in which the current state of law is neither

mentioned nor addressed.

- "Shall the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?" *Grimaud v. Com.*, 865 A.2d 835, 841 (Pa. 2005).

- "Shall the Pennsylvania Constitution be amended to provide that the Commonwealth shall have the same right to a trial by jury in criminal cases as does the accused?" *Com. v. Tharp*, 754 A.2d 1251, 1252 (Pa. 2000).

- "Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?" *Pennsylvania Prison Soc. v. Com.*, 776 A.2d 971, 974 (Pa. 2001).

- "Shall Proposal 7 on the JUDICIARY, adopted by the Constitutional Convention, establishing a unified judicial system, providing directly or through Supreme Court rules, for the qualifications, selection, tenure, removal, discipline and retirement of, and prohibiting certain activities by justices, judges, and justices of the peace, and related matters, be approved?" *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969).

To the extent that an elector may wish to learn about, or to be educated on,

the current state of the law, the elector need look no further than the Plain English

Statement of Office of Attorney General that accompanies the Ballot Question.

10

Again, the Plain English Statement of Office of Attorney General is the appropriate setting to provide such additional information and commentary, and, in this case, the Plain English Statement more than sufficiently provides that supplemental information to the elector. *See* Plain English Statement of Office of Attorney General, attached as Exhibit A.

Consistent with Article XI, Section 1 of the Pennsylvania Constitution, the Joint Resolution approved by the General Assembly in two consecutive sessions mandated that the Ballot Question be submitted to "the qualified electors of this Commonwealth at the first primary, general or municipal election which . . . occurs at least three months after the proposed constitutional amendment is passed by the General Assembly." HB 79 (2013-2014 Regular Session) & HB 90 (2015-2016 Regular Session). Thus, the proposed changes and revisions to the Ballot Question raised herein must be directed by this Court, implemented by the Secretary of State, and approved by the Office of Attorney General on an expedited basis in order to ensure that the Ballot Question appears on the April 26, 2016 primary election ballot, as mandated by the General Assembly.

## VI.   CONCLUSION AND RELIEF SOUGHT

The electoral issue raised herein is not only an issue of immediate public importance, but, for the foregoing reasons, requires expedited review by this Court in order to ensure that the Ballot Question for Proposed Constitutional Amendment

11

1 is corrected and amended in time for the fast-approaching April 26, 2016 primary

election. The Senate thus respectfully request that this Court grant this Application

and strike the confusing surplusage and inconsistent language cited herein from the

Ballot Question for Proposed Constitutional Amendment 1, and direct that the

strikes be completed, implemented, and approved in advance of the April 26, 2016

primary election.

<div style="text-align:right">

Respectfully submitted,

**KLEINBARD LLC**

</div>

Dated: March 6, 2016

**By:** <u>Matthew H. Haverstick</u>
Matthew H. Haverstick, Esq. (No. 85072)
Mark E. Seiberling, Esq. (No. 91256)
Joshua J. Voss, Esq. (No. 306853)
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 568-2000/Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
        mseiberling@kleinbard.com
        jvoss@kleinbard.com

*Attorneys for Pennsylvania Senate Majority*
*Caucus, Senate President Pro Tempore*
*Joe Scarnati, and Senate Majority Leader*
*Jake Corman*

# EXHIBIT A

## Proposed Constitutional Amendment 1
## Amending the Mandatory Judicial
## Retirement Age

### Ballot Question

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

YES

NO

## Plain English Statement of Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the justices of the Pennsylvania Supreme Court, judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia, and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

## CERTIFICATION OF SERVICE

I hereby certify that I am this day serving the foregoing document upon the

persons and in the manner indicated below, which service satisfies the

requirements of Pa.R.A.P. 121:

*Via First Class Mail:*
Pedro Cortes, Secretary
PA Department of State
302 North Office Building
Harrisburg, PA 17120

*Via First Class Mail:*
Kathleen Kane, Attorney General
PA Office of Attorney General
16th Floor, Strawberry Square
Harrisburg, PA 17120

Dated: March 6, 2016

/s/ Matthew H. Haverstick
Matthew H. Haverstick, Esq. (No. 85072)
KLEINBARD LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com

*Attorneys for Pennsylvania Senate Majority
Caucus, Senate President Pro Tempore
Joe Scarnati, and Senate Majority Leader
Jake Corman*

# Exhibit H

Filed 03/11/2016 Supreme Court Middle District
29 MM 2016

## IN THE SUPREME COURT OF PENNSYLVANIA

No. 29 MM 2016



IN RE: PROPOSED CONSTITUTIONAL AMENDMENT 1
BALLOT QUESTION

tition of: Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joe Scarnati, and Senate Majority Leader Jake rman

## ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF

Respectfully submitted,

**BRUCE R. BEEMER**
**First Deputy Attorney General**

**KENNETH L. JOEL**
**Chief Deputy Attorney General**
**Civil Litigation Section**
**Attorney ID PA #72370**

**Office of Attorney General**
**15th Floor, Strawberry Square**
**Harrisburg, PA 17120**
**Phone: (717) 787-8106**
**Fax:     (717) 772-4526**
kjoel@attorneygeneral.gov

**ROBERT A. MULLE**
**Executive Deputy Attorney General**
**Civil Law Division**

*Counsel for Department of State,*
*Secretary Cortes and Office of Attorney*
*General*

Date Filed:  March 11, 2016

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................ ii

STATEMENT OF JURISDICTION.............................................1

ORDER OR OTHER DETERMINATION IN QUESTION ....................2

STATEMENT OF ISSUES TO BE REVIEWED.............................3

STATEMENT OF THE CASE....................................................4

SUMMARY OF ARGUMENT ..................................................7

ARGUMENT .......................................................................8

    I.    Applicants' Emergency Application for Extraordinary
        Relief should be barred by the doctrine of laches. ...............8

    II.   Because the Secretary of the Commonwealth and the Office
        of Attorney General complied with the Pennsylvania
        Constitution and the Pennsylvania Election Code, Applicants
        have failed to assert a justiciable controversy....................10

    III.  Applicants' version of the Ballot Question would deny
        voters relevant information regarding the current mandatory
        retirement age. .....................................................16

    IV.  The Ballot Question is consistent with previous ballot
        questions submitted to the electorate where the proposed
        amendment changes existing language in the Pennsylvania
        Constitution. ........................................................20

    V.   If this Court were to revise the language of the Ballot
        Question, it would be impossible for the Secretary of the
        Commonwealth to comply anew with the publication
        Requirements of Article XI, Section 1 of the Pennsylvania
        Constitution. ........................................................24

CONCLUSION....................................................................29

# TABLE OF AUTHORITIES

## Cases

Bergdoll v. Commonwealth,
 858 A.2d 185 (Pa. Commw. Ct. 2004), aff'd, 583 Pa. 44 (2005)......11, 12, 14

Com v. Tharp,
 562 Pa. 231 (2000)..................................................................................23

Com. ex. rel. Schnader v. Beamish,
 309 Pa. 510 (1932)...............................................................................16, 25

Com. ex. rel. Woodruff v. King,
 278 Pa. 280 (1923)...............................................................................15, 25

Grimaud v. Com.,
 581 Pa. 398 (2005)..................................................................................23

Kremer v. Grant,
 529 Pa. 602 (1992)..................................................................................26

Pennsylvania Prison Soc. v. Com.,
 565 Pa. 526 (2001)..................................................................................23

Sernovitz v. Dershaw,
 127 A.3d 783 (Pa. 2015)..............................................................................8

Stander v. Kelley,
 432 Pa. 1 (1968)..............................................................................8, 9, 23

Stilp v. Hafer,
 553 Pa. 128 (1998)....................................................................................8

## Statutes

25 P.S. §1110(b)...................................................................................12, 14

25 P.S. §§2600-3591................................................................................12

ii

25 P.S. §2621.1 ...................................................................................19, 20

25 P.S. §2755 .....................................................................................12, 14

25 P.S. §3010(b).............................................................................12, 14, 20

25 P.S. §3041 .............................................................................................20

25 Pa.C.S. 3508(a)(1)................................................................................27

25 Pa.C.S. 3508(b)(1) ................................................................................27

42 Pa.C.S. §101 *et seq.* ............................................................................18

42 Pa.C.S. §762 .........................................................................................12

**Rules**

Pa.R.A.P. 3309.............................................................................................1

**Constitutional Provisions**

Pa. Const., art. I, sec. 9............................................................................22

Pa. Const., art. IV, sec. 9.........................................................................22

Pa. Const., art. V, sec. 16(b) ................................................................4, 21

Pa. Const., art. VII, sec. 14 .....................................................................22

Pa. Const., art. XI sec. 1...................................................................passim

## **STATEMENT OF JURISDICTION**

Applicants in this case are the Pennsylvania Senate Majority Caucus, the President Pro Tempore of the Senate, and the Senate Majority Leader ("Applicants"). While the Applicants' jurisdictional statement properly sets forth the nature of this Court's jurisdiction, Applicants' filing is deficient. Pa.R.A.P. 3309 requires that "[a]n application for relief . . . shall show service upon all persons who may be affected thereby . . . ." While the Secretary of the Commonwealth and the Office of Attorney General were served with this Application, and this response is submitted on behalf of both, the sixty-seven county boards of election are also "affected" by any changes or delays relating to the wording of Ballot Question 1, but the docket sheet does not show that service was made on each of the counties. The counties, rather than the Secretary of the Commonwealth or the Office of Attorney General, actually manage the election process, and to the extent that there is any delay occasioned by this litigation—or changing the ballot question—the counties are clearly "affected" by this filing. Because they are "persons who may be affected" by the Application, who have not been served, Applicants have imperfectly invoked the jurisdiction of this Court.

1

## ORDER OR OTHER DETERMINATION IN QUESTION

Applicants filed this matter directly with this Court.  Accordingly, there is no order or other determination that is being reviewed.

## <u>STATEMENT OF ISSUES TO BE REVIEWED</u>

I.     Whether Applicants' Emergency Application should be denied because of the doctrine of laches?

*Suggested answer*: Yes.

II.     Whether Applicants fail to assert a justiciable controversy where the Secretary of the Commonwealth drafted, and the Office of Attorney General approved, the Ballot Question for Joint Resolution 2015-1 in compliance with the Pennsylvania Constitution and the Pennsylvania Election Code, regarding the manner in which proposed amendments are to be submitted to the electorate?

*Suggested answer*: Yes.

III.     Whether the Pennsylvania Supreme Court should exercise its plenary powers to revise and strike language from the Ballot Question for Joint Resolution 2015-1, the proposed constitutional amendment amending the mandatory judicial retirement age, at an advanced stage in the amendment process, with fewer than 50 days before the General Primary on April 26, 2016, and at a point on the calendar which would render it impossible for the Secretary of the Commonwealth to comply anew with the publication requirements of Article XI, Section 1 of the Pennsylvania Constitution?

*Suggested answer*: No.

3

## STATEMENT OF THE CASE

In October 2013, the General Assembly passed Joint Resolution 2013-3, seeking to amend Article V, Section 16(b), which mandates that Pennsylvania jurists retire on December 31 of the year in which the jurist attains age 70. *See* Pa. Const. art. V, § 16(b). The amendment proposed raising the mandatory retirement age of jurists to age 75. *See* Joint Resolution No. 3, 2013, P.L. 1274, H.B. 79. In accordance with Article XI, Section 1 of the Pennsylvania Constitution, then-Secretary of the Commonwealth Carol Aichele published the proposed constitutional amendment by itself in each of the three months before the 2014 General Election on November 4, 2014, in at least two newspapers in every county in which such newspapers were published. (Kazlauskas Decl. ¶ 3; Marks Decl. ¶¶ 5-7; Cowan Decl. ¶ 3) (Exhibits A, B, C). The advertisements for Joint Resolution 2013-3 cost $1.28 million, paid for with monies from the General Fund. (Kazlauskas Decl. ¶ 5; Marks Decl. ¶¶ 16-19; Cowan Decl. ¶¶ 4 and 6-9).

A little more than two years later, in November 2015, the General Assembly passed Joint Resolution 2015-1. (Marks Decl. ¶ 9). Joint Resolution 2015-1 proposes an amendment to Article V, Section 16(b) that is identical to the amendment in Joint Resolution 2013-3. *See* Joint Resolution No. 1, 2015, P.L. _____, H.B. 90. Because the General Assembly passed the same proposed amendment in two consecutive sessions, the Secretary of the Commonwealth, in

4

accordance with Article XI, Section 1 of the Pennsylvania Constitution, caused the proposed amendment to be advertised in newspapers across the Commonwealth. (Marks Decl. ¶¶ 9-10 and 15; Cowan Decl. ¶ 5).   In addition to the proposed constitutional amendment, the advertisement upon second passage also contains the Ballot Question for Joint Resolution 2015-1 prepared by the Secretary and approved by the Office of Attorney General and the Plain English Statement prepared by the Office of Attorney General.  (Marks Decl. ¶ 11-15).  The Office of Attorney General approved the Ballot Question and transmitted the Plain English Statement to the Secretary on December 9, 2015.  (Marks Decl. ¶ 14).

The first round of advertisements ran in newspapers across the Commonwealth between January 19 and January 23, 2016.  (Kazlauskas Decl. ¶ 4; Marks Decl. ¶ 15; Cowan Decl. ¶ 5).  The second round of advertisements ran in newspapers between February 19 and February 25, 2016, and the third round of advertisements is scheduled to run in newspapers between March 18 and March 24, 2016.  (Kazlauskas Decl. ¶ 4; Marks Decl. ¶ 15; Cowan Decl. ¶ 5).  The deadline to approve any changes to the March 2016 publication is March 14, 2016. (Kazlauskas Decl. ¶ 7; Marks Decl. ¶ 20).  The total estimated cost to the General Fund for the three-month period is $1,321,922.98.  (Marks Decl. ¶ 16-17 and 19; Cowan Decl. ¶¶ 6-7 and 9).

The Ballot Question will be submitted to the electorate at the 2016 General Primary on April 26, 2016. (Marks Decl. ¶ 11 and 13). Applicants filed this Emergency Application for Extraordinary Relief with this Court on March 6, 2016 and, according to the Proof of Service that was also filed, Applicants served the Secretary, by first-class mail, on the same date. Through their Emergency Application, Applicants ask this Court to exercise plenary jurisdiction over the matter and seek to have the Pennsylvania Supreme Court—in the first instance— revise and strike language from the Ballot Question for Joint Resolution 2015-1.

## **SUMMARY OF ARGUMENT**

Applicants ask this Court to rewrite Ballot Question 1, which—if passed by the electorate—will increase the mandatory retirement age for Pennsylvania jurists from 70 to 75. They try to do so by improperly invoking the original jurisdiction of this Court and seeking emergency relief. Applicants' position must be rejected for any number of reasons. *First*, Ballot Question 1 was first published in January of 2016 and was subsequently published in February of 2016. Now, on the eve of the third and final publication, Applicants ask this Court to halt this process and rewrite Ballot Question 1. Applicants have waited too long and their request for extraordinary relief is barred by the doctrine of laches. *Second*, since the Secretary complied with the Pennsylvania Constitution and the relevant provisions of the Election Code, Applicants present no justiciable claim for relief. *Third*, the changes that Applicants desire would deny Pennsylvania voters relevant information relating to the proposed constitutional amendment. *Fourth*, Ballot Question 1 is consistent with previous ballot questions—including one that changed the mandatory retirement age for Pennsylvania jurists. *And, finally*, if Applicants succeed, the Secretary will be unable to place Ballot Question 1 on the fast approaching April 26, 2016 primary ballot. The Emergency Application must be denied.

7

## **ARGUMENT**

**I.    Applicants' Emergency Application for Extraordinary Relief should be barred by the doctrine of laches.**

"[L]aches bars relief when there has been a delay arising from the claimant's failure to exercise due diligence in instituting an action, and such delay has resulted in prejudice to the other party." *Sernovitz v. Dershaw*, 127 A.3d 783, 789 (Pa. 2015).

Applicants could have pursued relief as early as the first publication of the ballot question in January 2016, or even back in December 2015 when it was approved by the Office of Attorney General.  They gained no new information in the intervening two to three months, and whatever the merits of their claims now, they were the same back when the ballot language was first developed and published.

"Whether laches is established requires a factual determination based upon the circumstances of each case." *Stilp v. Hafer*, 553 Pa. 128, 134, 718 A.2d 290, 293 (1998).  For example, in *Stander v. Kelley*, 432 Pa. 1, 246 A.2d 649 (1968), the trial court was presented with a request by a petitioner to enjoin the Secretary of the Commonwealth from printing questions pertaining to Constitutional amendments on the April 23, 1968 ballot.  *Id.*  Procedurally, the proposed amendments were first advertised in the first week of April 1968, the initial

8

complaint was filed April 11, 1968, and the election was to be held on April 23, 1968. *Id.* The trial court refused to enter the injunctive relief because of the doctrine of laches. *Id.* The Pennsylvania Supreme Court found that decision was not a clear abuse of discretion or a palpable error of law. *Id.* Subsequently, the petitioner filed an amended pleading seeking permanent injunctive relief, which was denied by the trial court. This Court affirmed the dismissal of the action on substantive grounds and, in a footnote, commented on the timing of the litigation. *See Stander v. Kelley*, 433 Pa. 406, 409 n.1, 250 A.2d 474, 476 n.1 (1969). We submit that this footnote is *dicta*.

Even if that footnote were controlling, however, the fact is that the situation here calls for the application of the doctrine of laches to bar Applicants' extraordinary request. To that end, the ballot language at issue in this case was first published in January of 2016. Applicants did nothing. The ballot language at issue was published again in February of 2016. They did nothing. The ballot language at issue is to be published beginning on March 18, with a final edit date of March 14—and the Applicants finally bring their request. Applicants waited to pursue relief at a point in the amendment process where the Secretary of the Commonwealth has already completed two of the three constitutionally-required advertisements. Additionally, the Commonwealth has already spent over $1,000,000 in connection with the publishing in 2014 and the estimated cost for

9

publishing in 2016 is also over \$1,000,000.[1]   And, by the time this matter is decided, it likely will be too late for the Secretary to make any changes to the March 2016 publication.   And, even if changes could be made to the third publication, that publication would differ from the first and second publications. As a result, significant questions would arise as to whether the ballot question could proceed at all or impact of such a change to those who have already cast absentee ballots.

Applicants offer no explanation for their failure to timely pursue relief from this Court and should not now be permitted to engage the Court at this late stage of the process.   By virtue of their delay, Applicants readily contributed to the emergent nature of the relief they seek.   The Emergency Application should be denied.

## II.   Because the Secretary of the Commonwealth and the Office of Attorney General complied with the Pennsylvania Constitution and the Pennsylvania Election Code, Applicants have failed to assert a justiciable controversy.

Applicants assert the General Assembly provided a clear directive to the Secretary of the Commonwealth to submit the proposed constitutional amendment to the electors as drafted by the General Assembly.   Emergency Appl. for Extraordinary Relief at 8.   Applicants further argue that despite the clear directive,

---

[1]   Two of the three publications have occurred and, thus, monies have already been spent.   Moreover, as discussed in more detail below, ballots have already been provided to certain military personnel and likely have been cast.

the Ballot Question prepared by the Secretary and approved by the Office of Attorney General includes terms and phrases not included in Joint Resolution 2015-1. Emergency Appl. for Extraordinary Relief at 8. Applicants' argument is without merit.

Article XI, Section 1 of the Pennsylvania Constitution sets forth the manner in which the Constitution may be amended. Article XI, Section 1 provides:

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

Pa. Const. art. XI, § 1.

The Commonwealth Court of Pennsylvania in *Bergdoll v. Commonwealth*, 858 A.2d 185 (Pa. Cmwlth. 2004), *aff'd*, 583 Pa. 44, 874 A.2d 1148 (2005),

described in detail the amendment procedure prescribed in Article XI, Section 1 of the Constitution.

> Section 1 of Article XI directs that The General Assembly shall prescribe the manner in which the proposed amendments are to be submitted to the qualified electors. Pursuant to this authority, appearing in our Constitution as early as 1874, the General Assembly has directed, in the relevant part of Section 605 of the Election Code, [25 P.S. §§ 2600 – 3591] that 'proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form **to be determined by the Secretary of the Commonwealth with the approval of the Attorney General**.' 25 P.S. § 2755. In addition, Section 1110(b) of the Code specifies the length of the question and directs its preparation by the Secretary. It states, in relevant part, that "each question to be voted on shall appear on the ballot labels, in brief form, of not more than seventy-five words, **to be determined by the Secretary of the Commonwealth** in the case of constitutional amendments or other questions to be voted on by the electors of the State at large . . . ." Section 1110(b), as amended, 25 P.S. § 3010(b).

*Bergdoll*, 858 A.2d at 194-195 (emphasis added).[2]

The petitioners in *Bergdoll* sought a declaration voiding two separate amendments to the Pennsylvania Constitution passed by the electorate at the November 4, 2003 Municipal Election. *Id.* at 194. Petitioners asserted a multitude

---

[2]    In *Bergdoll* and other cases, challenges to ballot questions were first pressed before a trial court—such as the Commonwealth Court acting in its original jurisdiction. Additionally, in such cases, there were "plaintiffs" or "petitioners" and "defendants" or "respondents." Applicants have not pursued their challenge in this normal fashion and, given that the Ballot Question was first published in January of 2016, have offered no reason why they did not pursue an action against the Secretary before Commonwealth Court and seek injunctive or mandamus relief. And while this Court certainly enjoys King's Bench powers, given this, the extraordinary request of original jurisdiction on an emergency basis should not be entertained. *See* 42 Pa.C.S. § 762 (providing extraordinary plenary jurisdiction in matters that are presently before other tribunals).

of violations of State law and federal law, one of which was that only the General Assembly, not the Secretary or the Attorney General, is authorized to draft ballot questions. *Id.* In ruling on that particular claim, the court held that "[i]n light of the Constitution's grant of authority to prescribe the manner in which the amendments shall be presented to the electorate, the General Assembly quite properly directed in the Election Code that proposed amendments to the Constitution shall be presented as ballot questions **composed by the Secretary**." *Id.* at 195 (emphasis added).

In this case, Joint Resolution 2015-1 provides, in pertinent part, that following second passage of the proposed constitutional amendment, "[t]he Secretary of the Commonwealth shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election . . . which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly." *See* Joint Resolution No. 1, 2015, P.L. __, H.B. 90. Applicants read this language as a directive from the General Assembly to the Secretary to submit the proposed amendment to the electorate as drafted by the General Assembly.[3] In fact, this is

---

[3]   Because of the way the General Assembly drafted the proposed amendment, bracketing 70 and underlining 75, it is simply not possible to use the language from Joint Resolution 2015-1 as a ballot question. Were the Ballot Question to include that language, the Secretary of the Commonwealth, by necessity, would have to explain what the bracket and underline mean since the general public would not be

13

exactly what the Secretary has done.  To that end, the Joint Resolution first asks for the deletion of age 70 from the current Pennsylvania Constitution and, second, asks for the addition of age 75 to Pennsylvania Constitution.  The language of Ballot Question No. 1 includes both and, therefore, if the General Assembly's position is correct, the Secretary has complied with the directive of the General Assembly. Applicants' position, by contrast, wants language that only includes part of the proposed amendment—the new age of 75.

Applicants' reading, however, is totally inconsistent with the manner in which the General Assembly has exercised its authority under the Pennsylvania Constitution and is at odds with *Bergdoll*.  The General Assembly, pursuant to its authority under Article XI, Section 1 of the Constitution, enacted Sections 605 and 1110(b) of the Election Code, 25 P.S. §§ 2755 and 3010(b), which clearly provide the Secretary of the Commonwealth with the authority to determine the ballot question with approval by the Office of Attorney General.  *See also Bergdoll*, 858 A.2d at 194-95.  If the members of the General Assembly wanted to reserve the right to draft the ballot question, they could have done so (or would have to do so)

expected to understand legislative drafting.  Besides his authority to do so under the Election Code, the Secretary must change the ballot question as a practical matter.

14

in the relevant sections of the Election Code.[4]   Instead, the General Assembly chose to grant the Secretary the discretion to draft the question.

Moreover, while the language cited by Applicants is arguably a directive, for the reasons stated above, it is not a directive as to how to draft the ballot question for the proposed constitutional amendment.  Rather, the more plausible reading in light of the Election Code and case law is that the language is a directive to the Secretary to specify at *which election* the Secretary is to submit the proposed amendment to the qualified electors for their approval.   Such a reading is consistent with the language of the Constitution that "such proposed amendment . . . shall be submitted to the qualified electors . . . at **such time** at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe[.]"   Pa. Const. art. XI, § 1 (emphasis added); *see also Com. ex. rel. Woodruff v. King*, 278 Pa. 280, 122 A. 279 (1923).

Simply put, Applicants have failed to set forth a justiciable claim for the relief that they seek.   The Secretary of the Commonwealth and the Office of Attorney General have complied procedurally with Article XI, Section 1 and the relevant sections of the Pennsylvania Election Code.   Further, Applicants do not assert any violation of the Pennsylvania Constitution or the Election Code, nor do

---

[4]     If the General Assembly wanted to direct the precise language of the Ballot Question, it could have done so in Joint Resolution 2015-1, as it has done from time to time when it authorizes referenda on statewide bond issues or other matters.

they assert that the provisions of the Election Code themselves are unconstitutional. As such, Applicants are not entitled to the relief they seek.

## III.   Applicants' version of the Ballot Question would deny voters relevant information regarding the current mandatory retirement age.

Applicants ask this Court to revise and strike language from the Ballot Question for Joint Resolution 2015-1. Applicants contend that the Ballot Question, as drafted by the Secretary and approved by the Office of Attorney General, includes "confusing, distracting, and misleading" terms and phrases, as well as "superfluous and gratuitous commentary." Emergency Appl. for Extraordinary Relief at 6 and 9. The result of the revisions, however, would actually deprive voters of relevant information on the ballot itself regarding the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution.

As this Court explained in *Com. ex. rel. Schnader v. Beamish*, 309 Pa. 510, 164 A. 615 (1932):

> The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument. No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes.

*Beamish*, 309 Pa. at 515, 164 A. at 616-617.

Joint Resolution 2015-1 states that justices and judges "shall be retired on the last day of the calendar year in which they attain the age of [70] 75 years." *See*

16

Joint Resolution No. 1, 2015, P.L. ___, H.B. 90.   Because the number 70 in brackets would be deleted from the Constitution and the number 75 underlined would be added, the *existing* language in the Constitution would be *changed* to 75 *instead of* 70.   This is not an amendment where new language is merely being added to the Constitution.   For this proposed amendment, the existing text would actually change.   As such, it is hard to comprehend how making the electorate fully aware of the change as part of the Ballot Question can be characterized as "confusing, distracting, and misleading."   Amending the Ballot Question in the manner suggested by Applicants would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all.

While there is no directive in Joint resolution 2015-1 regarding the draft of the ballot question, the ballot question implicit in the Joint Resolution is the one formulated by the Secretary of the Commonwealth and approved the Office of Attorney General.   That Ballot Question clearly states the legislature's proposal with respect to the amendment.   Therefore, the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70" should remain in the Ballot Question.

As for the phrase "known as magisterial district judges," the term "magisterial district judges" is the nomenclature widely used by the legal

17

community and the general public to refer to district justices in Pennsylvania. The term "justices of the peace," even though it remains in the Pennsylvania Constitution, is an archaic term seldom used and not likely understood by the average person. Even the Pennsylvania Judicial Code, despite the language in the Constitution, uses the more common "magisterial district judges." *See* 42 Pa.C.S. § 101 *et seq*. There is no need for this Court to strike the parenthetical with the phrase "known as magisterial district judges." It is clear the parenthetical is referencing "justices of the peace." That being said, if the Court for some reason agrees with Applicants' assertion that the parenthetical makes it appear as if judges of the courts of common pleas, Superior Court, and Commonwealth Court are not subject to the constitutional change, the appropriate remedy, as opposed to striking the entire parenthetical, would be to simply add a comma between the word "judges" and the word "and." This would provide Applicants the clarity they are seeking and would not be nearly as offensive to the process as revising the entire Ballot Question. The addition of the comma would be a *de minimis* change that would not substantially alter the information that has already been provided to the electorate through the soon-to-be three advertisements in newspapers across the Commonwealth.

Applicants also contend the phrase "of the Supreme Court" after "justices" gives the appearance that the proposed amendment may impact the United States

Supreme Court, particularly in light of the recent death of Justice Antonin Scalia. Emergency Appl. for Extraordinary Relief at 7.   It is hard to reconcile how Applicants can on one hand argue the average voter may not fully understand the distinction between the United States Supreme Court and the Pennsylvania Supreme Court, but on the other hand argue that the average voter does not need to be fully aware of the current judicial mandatory retirement age in Pennsylvania. To Applicants' concerns though, the Ballot Question begins with "Shall the Pennsylvania Constitution be amended . . . ."   That language makes it clear the amendment applies to Pennsylvania jurists.[5]

Applicants argue all of the language they want to strike is more appropriately addressed in the Plain English Statement prepared by the Office of Attorney General, but it is important to remember the Plain English Statement does not appear on the ballot.   The ballot for the 2016 General Primary will only contain the Ballot Question.   (Marks Decl. ¶ 14).   Section 201.1 of the Election Code, 25 P.S. § 2621.1, relating to explanation of the ballot question, requires the Secretary to include the statement in the constitutionally-required newspaper advertisements of the proposed amendment, and requires the county boards of election to include the statement in the notice of the election required by Section 1201 of the Election

---

[5]      As for the news article that Applicants cite, there is no mention in that article about any mandatory retirement age for Supreme Court Justices of the United States Supreme Court—because there is none—and, indeed, Justice Scalia was 79 when he passed away.

Code, 25 P.S. § 3041, which is published in newspapers between three and 10 days before the election.  Section 201.1 also requires the county boards of election to post at least three copies of the plain English statement in or about the voting room but outside the enclosed space.  25 P.S. § 2621.1.  The fact that the voter does not have the benefit of the statement while he or she is interacting with the ballot itself lends even more weight to the position that the Ballot Question should be as informative as possible within the confines of the 75-word limitation in the Election Code.  *See* 25 P.S. § 3010(b).  The Ballot Question at issue is 69 words.

As discussed above, this Court should deny Applicants' request for relief and not alter the Ballot Question for Joint Resolution 2015-1, as drafted by the Secretary of the Commonwealth and approved by the Office of Attorney General.

## IV. The Ballot Question is consistent with previous ballot questions submitted to the electorate where the proposed amendment changes existing language in the Pennsylvania Constitution.

Most amendment proposals submitted to the electorate either directly or indirectly suggest a contrast with the current state of the Constitution.

Simply stating the provision to be added might be construed as adding a second, inconsistent provision to the Constitution.  While principles of statutory and constitutional interpretation would hold that the later-ratified portion controls over the earlier version, where, as here, a proposed amendment would actually strike language from the constitutional text (rather than simply append the new

20

amendment to the existing Constitution), some measure of comparison is not unwarranted.

Applicants are correct that a comparative description has not been included with each and every ballot question proposing a constitutional amendment. Emergency Appl. for Extraordinary Relief at 10.  But they are wrong to the extent they assert or suggest that these comparative descriptions have never been used in ballot questions.

Historically speaking, comparative ballot questions are far from unknown. In just the past twenty years, at least four ballot questions have had some measure of comparative language, including the ballot question which gave rise to the current version of the judicial retirement age provision in Article V, Section 16(b) of the Constitution.   When the electorate approved the judicial retirement age amendment in the May 2001 Municipal Primary, Question 2 on the ballot read:

> Shall [Article V, section 16 of] the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, **rather than on the day they attain the age of 70**?

(Emphasis added).[6]

---

[6]     Staff Report, Joint State Govt. Comm., Ballot Questions and Proposed Amendments to the Pennsylvania Constitution: A Compilation with Statistics from 1958 to 2006 (May 2007).  For the ease of this Court, we have provided a copy of that Report with this submission.  (Exhibit D).

Besides the obviously relevant ballot question in May 2001, which Applicants' emergency application makes no mention of, the other three most recent examples are:

- Question 2, November 1997[7]

  - Shall [Article IV, section 9 of] the Pennsylvania Constitution be amended to require a unanimous recommendation of the board of pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require **only** a majority vote of the Senate to approve the Governor's appointments to the board, **and to substitute a crime victim for an attorney and a corrections expert for a penologist as board members**? (Emphasis added)

- Question 3, November 1997[8]

  - Shall [Article VII, section 14 of] the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, **which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside**? (Emphasis added)

- Question 1, November 2003[9]

  - Shall [Article I, section 9 of] the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be "confronted with the witnesses against him," **instead of the right to "meet the witnesses face to face"**? (Emphasis added)

---

[7] *Id.*

[8] *Id.*

[9] *Id.*

The ballot questions cited by Applicants as examples can be distinguished from the proposed amendment in Joint Resolution 2015-1. The proposed amendment in *Grimaud v. Com.*, 581 Pa. 398, 865 A.2d 835 (2005), merely added new text to the existing Constitution, so there was no need for a comparative ballot question. *See* Joint Resolution No. 1, 1998, P.L. 1327, H.B. 1520. The same is true for the amendment and ballot question cited in *Com. v. Tharp*, 562 Pa. 231, 754 A.2d 1251 (2000). *See* Joint Resolution No. 2, 1998, P.L. 1328, S.B. 555. Applicants cite to the ballot question in *Pennsylvania Prison Soc. v. Com.*, 565 Pa. 526, 776 A.2d 971 (2001), for the proposition that the current law is not mentioned; however, as discussed *supra*, the question is nonetheless clearly an example of a comparative question. Finally, Applicants cite to the ballot question in *Stander*, 433 Pa. at 417, 250 A.2d at 480 to support their proposition. The amendment is *Stander* though was not adopted pursuant to the provisions of the Constitution at the time, but was adopted pursuant to a Constitutional Convention. *Id.* at 416, 479. That process does not apply to the current case in which the proposed amendment was adopted pursuant to the provisions of Article XI, Section 1.

Based on the information above, the Secretary of the Commonwealth correctly drafted a comparative Ballot Question for Joint Resolution 2015-1, which is consistent with established precedent regarding ballot questions submitted to the

electorate in the recent past.   Indeed, the last Ballot Question dealing with retirement of Pennsylvania jurists included the "of the Supreme Court" language and also comparative language to notify the electorate of the current standard and the proposed new standard.  The present Ballot Question is not materially different from this previous question—to which persons in the shoes of the current Applicants made no objection.[10]

**V.   If this Court were to revise the language of the Ballot Question, it would be impossible for the Secretary of the Commonwealth to comply anew with the publication requirements of Article XI, Section 1 of the Pennsylvania Constitution.**

Applicants ask this Court to revise the Ballot Question for Joint Resolution 2015-1, but make no mention of how that revision will affect the Secretary of the Commonwealth in carrying out his duties under Article XI, Section 1 of the Constitution, related to advertising the proposed amendment.

As previously discussed, upon second passage of a proposed amendment, the Secretary of the Commonwealth must publish the proposed amendment in at least two newspapers in every county which said newspapers are published in each of the three months prior to being submitted to the electorate in the form of a ballot

---

[10]      What Applicants apparently want is the bracketed 70 and the underlined 75 in Ballot Question 1.  While some lawyers may understand this to be a strike-out and replacement, average voters may not.  The language in the Ballot Question merely makes this point clear.

question. *See* Pa. Const. art. XI, § 1; *see also Beamish*, 309 Pa. at 515, 164 A. at 616.

After the General Assembly passed Joint Resolution 2015-1 in November 2015, and the Office of Attorney General approved the Ballot Question in December 2015, the first round of advertisements for the Joint Resolution ran in newspapers across the Commonwealth between January 19 and January 23, 2016. The second round of advertisements ran in newspapers between February 19 and February 25, 2016, and the third round of advertisements will run in newspapers between March 18 and March 24, 2016. The deadline to approve any changes to the March 2016 publication is March 14, 2016. These advertisements include the Ballot Question as drafted by the Secretary and approved by the Office of Attorney General. The purpose of the publications after second passage is to "advise the electors . . . so they may vote intelligently . . . ." *King*, 278 Pa. at 283, 122 A. at 280.

At this point in the amendment process, and by the time this Court issues even an expedited decision in this matter, the electors will likely have had the benefit of being informed of the proposed amendment, the Ballot Question and the plain English statement on three occasions. The total cost for the 2016 publications is estimated to be $1,321,922.98. If this Court revises the Ballot Question, with less than 50 days to go before the 2016 General Primary, the

25

Secretary does not have enough time to re-run the advertisements and comply with Article XI, Section 1 of the Constitution, nor does the Department of State have funds available to pay for any additional advertising.  Even if this Court would direct the Secretary to move the Ballot Question to the November 2016 General Election ballot, the Secretary would still have to comply with Article XI, Section 1, which would result in significant additional costs.[11]  This Court has previously held that "failure [of the Secretary] to carry out what is mandated [under Article XI] infects the amendment process with an incurable defect." *Kremer v. Grant*, 529 Pa. 602, 612, 606 A.2d 433, 438 (1992).  And while the constitutional requirement may be to advertise only the proposed amendment, which the published advertisements clearly do, the Court cannot ignore that the Ballot Question has been part and parcel of those advertisements.

In addition, under Act 189 of 2012, known as the Uniform Military and Overseas Voters Act (UMOVA), the county boards of election are required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an

---

[11]    The General Assembly recently passed, for the first time, a proposed constitutional amendment to reduce the size of the State House.  *See* Joint Resolution No. 1, 2016, P.L. _____, H.B. 153.  The Secretary is required to advertise this proposed amendment in each of three months before the November 2016 General Election.   The Secretary cannot, however, combine the advertisements for Joint Resolution 2015-1 with Joint Resolution 2016-1 because they are at different stages of the process and, thus, require materially different information.  We note this even though Applicants have pressed no such issue.

application no later than 50 days before the primary election. *See* 25 Pa.C.S. § 3508(b)(1). UMOVA also requires county boards of election to transmit absentee ballots and balloting materials to all other covered uniformed-service and overseas voters who submitted an application no later than 45 days before the primary election. *See* 25 Pa.C.S. § 3508(a)(1).

In 2016, the deadline for county boards of elections to send absentee ballots to uniformed service and overseas voters in extremely remote and isolated areas was March 7, 2016, and the deadline to send absentee ballots to all other covered uniformed-service and overseas voters is March 11, 2016. (Marks Decl. ¶ 21).

Even though there are still statewide objection cases pending before the courts which could potentially impact the final ballot, it is important to note that 625 uniformed-service and overseas absentee ballots were sent out already by the county boards of election as of March 9, 2016 and an additional 1,692 uniformed-service and overseas absentee ballots have been requested and must be sent out no later than March 11, 2016. (Marks Decl. ¶ 22). These are uniformed-service and overseas voters who already face challenges in terms of the timely return of absentee ballots. Any further delays or changes to the ballot have a particular impact on them.

If this Court were to grant Applicants' relief, it would be impossible for the Secretary to comply anew with the publication requirements of Article XI, Section

1, and the change may impact the election processes, which is well under way.

Therefore, Applicants' emergency application should be denied.

# Exhibit I

Received 03/22/2016 Supreme Court Middle District

Filed 03/22/2016 Supreme Court Middle District
29 MM 2016

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| IN RE:<br><br>PROPOSED CONSTITUTIONAL<br>AMENDMENT 1 BALLOT QUESTION | No. 29 MM 2016 |

## ORDER

**PER CURIAM**

    **AND NOW**, this _____ day of March, 2016, it is hereby **ORDERED** that

the Emergency Application for Extraordinary Relief is **GRANTED**.  Having

determined that:

    1.    The Pennsylvania Senate Majority Caucus, Senate President Pro

Tempore Joe Scarnati, Senate Majority Leader Jake Corman, Secretary of

the Commonwealth Pedro Cortés, the Pennsylvania Department of State, and

the Office of Attorney General of Pennsylvania (collectively, the "Parties")

have agreed to a stipulated resolution of the above matter; and,

    2.    As part of this stipulated resolution, the Parties have agreed to the

entry of this Order.

Accordingly, it is hereby **ORDERED** that:

{00960463;v2 }

a.     The Ballot Question for Proposed Constitutional Amendment 1

shall be revised to state, as agreed to by the parties:

> Shall the Pennsylvania Constitution be amended to
> require that justices of the Supreme Court, judges,
> and magisterial district judges be retired on the last
> day of the calendar year in which they attain the
> age of 75 years?

b.     The Ballot Question for Proposed Constitutional Amendment 1,

as revised, shall appear on the ballot for the November 8, 2016

general election, instead of the April 26, 2016 primary election.

Because the November 8, 2016 general election is the first

which would permit the full cycle of three monthly

advertisements, including the revised language, it is the first

election under Joint Resolution 2015-1 that meets the

requirements of and is in conformance with Article XI, Section

1 of the Pennsylvania Constitution and which occurs at least

three months after the proposed amendment was passed by the

General Assembly.

c.     To ensure compliance with Article XI, Section 1 of the

Pennsylvania Constitution, the Secretary of the Commonwealth

shall publish the Ballot Question for Proposed Constitutional

Amendment 1, as revised, along with the proposed amendment

and the plain English statement previously prepared by the

Office of Attorney General, in each of the three months prior to

the November 8, 2016 general election.

d.    The Secretary of the Commonwealth shall remove the Ballot

Question for Proposed Constitutional Amendment 1 from the

ballot certification for the April 26, 2016 primary election, and

direct the county boards of election to remove the Ballot

Question for Proposed Constitutional Amendment 1 from the

ballot.

3.    The proposed resolution satisfies all relevant Constitutional and

statutory requirements and is consistent with the legislation creating the

Ballot Question.

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | |
|---|---|
| IN RE:<br><br>PROPOSED CONSTITUTIONAL<br>AMENDMENT 1 BALLOT QUESTION | No. 29 MM 2016 |

## JOINT APPLICATION FOR EXTRAORDINARY RELIEF AND
## APPROVE PARTIES' STIPULATED RESOLUTION

The Pennsylvania Senate Majority Caucus, Senate President Pro Tempore
Joe Scarnati, Senate Majority Leader Jake Corman, Secretary of the
Commonwealth Pedro Cortés, the Pennsylvania Department of State, and the
Office of Attorney General of Pennsylvania (collectively, the "Parties")
respectfully move pursuant to Pa.R.A.P. 123 for this Court to grant the Emergency
Application for Extraordinary Relief filed in the above matter and approve the
Parties' stipulated resolution set forth below concerning the Ballot Question for
Proposed Constitutional Amendment 1 and, in support, aver as follows:

1.     In October 2013, the General Assembly passed Joint Resolution 2013-
3, seeking to amend Article V, Section 16(b) of the Pennsylvania
Constitution to require that justices, judges and justices of the peace (known

{00960463;v2 }

as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

2.      In accordance with Article XI, Section 1 of the Pennsylvania Constitution, the Secretary of the Commonwealth published the proposed amendment in each of the three months before the November 4, 2014 general election, in at least two newspapers in every county in which such newspapers were published.

3.      In November 2015, the next session of the General Assembly passed Joint Resolution 2015-1, which proposes an amendment to Article V, Section 16(b) of the Pennsylvania Constitution that is the same as the amendment advertised pursuant to Joint Resolution 2013-3.

4.      Joint Resolution 2015-1 directs the Secretary of the Commonwealth, upon second passage of the proposed constitutional amendment, to submit the proposed constitutional amendment to the qualified electors of the Commonwealth at the "first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly."

5.      Pursuant to sections 201.1, 605 and 1110(b) of the Election Code, 25

P.S. §§ 2621.1, 2755, 3010(b), the Secretary of the Commonwealth prepared

a Ballot Question for Proposed Constitutional Amendment 1, which was

approved by the Office of Attorney General, and advertised, along with the

proposed amendment and the plain English statement prepared by the Office

of Attorney General, in each of the three months before the April 26, 2016

primary election, in at least two newspapers in every county in which such

newspapers are published.

6.      On March 6, 2016, the Pennsylvania Senate Majority Caucus, Senate

President Pro Tempore Joe Scarnati, and Senate Majority Leader Jake

Corman filed an Emergency Application for Extraordinary Relief, which

sought to strike specific terms and phrases from the Ballot Question for

Proposed Constitutional Amendment 1 in advance of the April 26, 2016

primary election.

7.      On March 11, 2016, Secretary of the Commonwealth Pedro Cortés,

the Pennsylvania Department of State, and the Office of Attorney General

filed an Answer in Opposition to the Emergency Application for

Extraordinary Relief.

8.      With the Emergency Application for Extraordinary Relief still pending

before this Court, the Parties, after meaningful consultation and discussion,

are desirous of expeditiously resolving the issues raised in the Emergency

Application and the Answer in Opposition and believe resolution of these

matters by stipulated agreement under the terms set forth below is in the best

interests of all Parties and the electors of the Commonwealth.

9.      Further, the Parties believe that their proposed resolution satisfies all

relevant Constitutional and statutory requirements and is consistent with the

legislation creating the Ballot Question.

10.     To this end, the Parties jointly request that this Court exercise its

equitable power and grant, on an expedited basis, the Emergency

Application for Extraordinary Relief and enter an order approving the

following stipulated terms:

      a.      Pursuant to the agreed-upon revision by the Parties of the Ballot

           Question for Proposed Constitutional Amendment 1, the Ballot

           Question for Proposed Constitutional Amendment 1  shall state:

           Shall the Pennsylvania Constitution be amended to
           require that justices of the Supreme Court, judges, and
           magisterial district judges be retired on the last day of the
           calendar year in which they attain the age of 75 years?

      b.      The Ballot Question for Proposed Constitutional Amendment 1,

           as revised, shall appear on the ballot for the November 8, 2016

           general election, instead of the April 26, 2016 primary election.

           Because the November 8, 2016 general election is the first

which would permit the full cycle of three monthly
advertisements, including the revised language, it is the first
election under Joint Resolution 2015-1 that meets the
requirements of and is in conformance with Article XI, Section
1 of the Pennsylvania Constitution and which occurs at least
three months after the proposed amendment was passed by the
General Assembly.

c.   To ensure compliance with Article XI, Section 1 of the
Pennsylvania Constitution, the Secretary of the Commonwealth
shall publish the Ballot Question for Proposed Constitutional
Amendment 1, as revised, along with the proposed amendment
and the plain English statement previously prepared by the
Office of Attorney General, in each of the three months prior to
the November 8, 2016 general election.

d.   The Secretary of the Commonwealth shall remove the Ballot
Question for Proposed Constitutional Amendment 1 from the
ballot certification for the April 26, 2016 primary election, and
direct the county boards of election to remove the Ballot
Question for Proposed Constitutional Amendment 1 from the
ballot.

11.     Given the proximity of the April 26, 2016 primary election, it is

critical that the Emergency Application for Extraordinary Relief be resolved

as soon as possible so the county boards of election can timely and

accurately prepare the ballots for the election.

WHEREFORE, the Parties jointly request that this Court grant, on an

expedited basis, the Emergency Application for Extraordinary Relief and enter an

order approving the terms of the Parties' stipulated resolution.

Respectfully submitted,

**KLEINBARD LLC**

**By:** /s/ Matthew H. Haverstick
Matthew H. Haverstick, Esq. (No. 85072)
Mark E. Seiberling, Esq. (No. 91256)
Joshua J. Voss, Esq. (No. 306853)
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
Phone: (215) 568-2000
Fax: (215) 568-0140
Eml: mhaverstick@kleinbard.com
mseiberling@kleinbard.com
jvoss@kleinbard.com

*Attorneys for Pennsylvania Senate
Majority Caucus, Senate President Pro
Tempore Joe Scarnati, and Senate
Majority Leader Jake Corman*

Dated:  March 22, 2016

**BRUCE R. BEEMER**
**First Deputy Attorney General**

**By:** /s/ Kenneth L. Joel
Kenneth L. Joel, Esq. (No. 72370)
Chief Deputy Attorney General

Robert A. Mulle, Esq.
Executive Deputy Attorney General
Director of Civil Law Division

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
Phone: (717) 787-8106
Fax: (717) 772-4526
Eml: kjoel@attorneygeneral.gov

*Counsel for the Pennsylvania
Department of State, Secretary Pedro
Cortés and the Office of Attorney
General*

# Exhibit J

PRIOR PRINTER'S NO. 3071

PRINTER'S NO. **3091**

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE RESOLUTION

## No. 783 Session of 2015

INTRODUCED BY HARPER AND MARSICO, APRIL 4, 2016

AS RE-REPORTED FROM COMMITTEE ON RULES, HOUSE OF
REPRESENTATIVES, AS AMENDED, APRIL 5, 2016

A CONCURRENT RESOLUTION

1  Further providing for submission to the electorate of a
2    constitutional amendment on retirement for justices, judges
3    and justices of the peace.

4    WHEREAS, Pursuant to Article XI of the Constitution of

5  Pennsylvania, the General Assembly has proposed an amendment to

6  section 16(b) of Article V of the Constitution of Pennsylvania

7  providing that justices, judges and justices of the peace be

8  retired on the last day of the calendar year in which they

9  attain the age of 75; and

10   WHEREAS, In October 2013, a majority of both houses of the

11  General Assembly passed Joint Resolution No. 2013-JR3 and

12  presented it to the Secretary of the Commonwealth, who published

13  it pursuant to section 1 of Article XI of the Constitution of

14  Pennsylvania; and

15   WHEREAS, In November 2015, in the General Assembly next

16  afterwards chosen, a majority of both houses of the General

17  Assembly passed Joint Resolution No. 2015-JR1 and presented it

18  to the secretary; and

1    WHEREAS, Pursuant to ~~section~~ SECTIONS 201(c), 201.1 AND 605   **<--**

2    of the act of June 3, 1937 (P.L.1333, No.320), known as the

3    Pennsylvania Election Code, the secretary prepared a ballot

4    question as Proposed Constitutional Amendment 1, which was

5    approved by the Attorney General, and published along with the

6    proposed amendment and the plain English statement prepared by

7    the Office of Attorney General pursuant to section 1 of Article

8    XI of the Constitution of Pennsylvania; and

9    WHEREAS, Proposed Constitutional Amendment 1 is scheduled to

10   appear on the ballot for primary election on April 26, 2016; and

11   ~~WHEREAS, The General Assembly believes that the ballot~~   **<--**

12   ~~question as prepared by the secretary contains unnecessary~~

13   ~~language and consequently may be confusing to electors; and~~

14   ~~WHEREAS, On March 6, 2016, the General Assembly filed an~~

15   ~~application asking the Pennsylvania Supreme Court to order that~~

16   ~~the ballot question be amended; and~~

17   ~~WHEREAS, On March 23, 2016, the Supreme Court denied approval~~

18   ~~of a stipulated resolution between the parties, noting that~~

19   ~~"such denial shall not be construed as condoning or constraining~~

20   ~~any future legislative or executive action by the parties"; and~~

21   WHEREAS, The General Assembly has prepared a revised ballot

22   question for Proposed Constitutional Amendment 1 which ~~avoids~~   **<--**

23   ~~confusion and~~, IN THE VIEW OF THE GENERAL ASSEMBLY, more   **<--**

24   accurately reflects the language of Joint Resolution No. 2013-

25   JR3 and Joint Resolution No. 2015-JR1; and

26   WHEREAS, There is insufficient time to publish the revised

27   ballot question before primary election on April 26, 2016, as

28   required by section 1 of Article XI of the Constitution of

29   Pennsylvania; and

30   WHEREAS, Under section 802 of the Pennsylvania Election Code,

1  only persons registered and enrolled as members of a political

2  party are entitled to vote in any primary election of that

3  party; and

4      WHEREAS, More than 1 million Pennsylvania registered voters

5  are not registered and enrolled as members of one of the two

6  major political parties and therefore are not entitled to vote

7  in the primary election of either of those political parties;

8  and

9      WHEREAS, Many of those registered voters may be unaware of

10  their right to vote on Proposed Constitutional Amendment 1

11  during the primary election on April 26, 2016, and consequently

12  may not cast a vote on the ballot question; and

13      WHEREAS, Proposed Constitutional Amendment 1 is a matter of

14  Statewide importance to all citizens of the Commonwealth, not

15  merely registered members of the two major political parties;

16  and

17      WHEREAS, If Proposed Constitutional Amendment 1 were to be

18  placed on the ballot for the general election on November 8,

19  2016, the secretary will have sufficient time to publish the

20  revised ballot question as required under the Constitution of

21  Pennsylvania and registered voters who are not members of one of

22  the two major political parties will be more likely to

23  participate in the decision to approve or disapprove Proposed

24  Constitutional Amendment 1; and

25      WHEREAS, Under section 1 of Article XI of the Constitution of

26  Pennsylvania, it is within the authority of the General Assembly

27  to prescribe the manner and time at which proposed amendments to

28  the Constitution are submitted to the qualified electors of the

29  Commonwealth for approval; therefore be it

30      RESOLVED (the Senate concurring), That ~~the General Assembly~~  <--

 1  ~~direct~~ the Secretary of the Commonwealth ~~to~~ remove the ballot       <--
 2  question for Proposed Constitutional Amendment 1 from the ballot
 3  certification for the primary election on April 26, 2016; and be
 4  it further

 5      RESOLVED, That ~~the General Assembly direct the secretary to~~       <--
 6  ~~direct~~ the county boards of election ~~to~~ remove, to the extent       <--
 7  possible, the ballot question for Proposed Constitutional
 8  Amendment 1 from the ballot; and be it further

 9      RESOLVED, That ~~the General Assembly direct~~ the secretary ~~to~~       <--
10  disregard any vote on Proposed Constitutional Amendment 1 in the
11  primary election on April 26, 2016, and ~~prohibit the secretary~~       <--
12  ~~from making~~ THE SECRETARY NOT MAKE a tally of votes cast on       <--
13  Proposed Constitutional Amendment 1; and be it further

14      RESOLVED, That the General Assembly direct the secretary to
15  place Proposed Constitutional Amendment 1 on the ballot for the
16  general election on November 8, 2016, in the following form:

17          Shall the Pennsylvania Constitution be amended to require
18          that justices of the Supreme Court, judges, and
19          magisterial district judges be retired on the last day of
20          the calendar year in which they attain the age of 75
21          years?;
22  and be it further

23      RESOLVED, That, to ensure compliance with section 1 of
24  Article XI of the Constitution of Pennsylvania, the General
25  Assembly direct the secretary to publish the ballot question for
26  Proposed Constitutional Amendment 1 as revised along with the
27  proposed amendment and the plain English statement previously
28  prepared by the Office of Attorney General, in each of the three
29  months prior to the general election on November 8, 2016; and be
30  it further

1    RESOLVED, That, upon passage by a majority of both houses of

2    the General Assembly, this concurrent resolution be transmitted

3    to the Secretary of the Commonwealth for implementation.

# Exhibit K

# Pennsylvania General Assembly

http://www.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2015&sind=0&body=H&type=R&bn=783

Home / Bill and Amendments / Bill Information

# Bill Information - History

## House Resolution 783; Regular Session 2015-2016

| | |
|---|---|
| **Sponsors:** | HARPER and MARSICO |
| **Printer's No.(PN):** | 3091* , 3071 |
| **Short Title:** | A Concurrent Resolution further providing for submission to the electorate of a constitutional amendment on retirement for justices, judges and justices of the peace. |

**Actions:**

| | | |
|---|---|---|
| | PN 3071 | Referred to JUDICIARY, April 4, 2016 |
| | | Reported as committed, April 5, 2016 |
| | | Re-committed to RULES, April 5, 2016 |
| | PN 3091 | Re-reported as amended, April 5, 2016 |
| | | Adopted, April 6, 2016 (110-77) |
| | | (Remarks see House Journal Page ), April 6, 2016 |

<div align="center">In the Senate</div>

Referred to RULES AND EXECUTIVE NOMINATIONS, April 7, 2016

Reported as committed, April 11, 2016

Adopted, April 11, 2016 (32-17)

(Remarks see Senate Journal Page ), April 11, 2016

<div align="right">Signed in House, April 12, 2016</div>

<div align="right">Signed in Senate, April 12, 2016</div>

<div align="center">* denotes current Printer's Number</div>
<div align="center">⑦ How to Read a Bill   ⑦ About PDF Documents</div>

# Exhibit L



**2016 Presidential Primary**

Tuesday, April 26, 2016
Official Returns

## Statewide

9,157 Out of 9,157 Districts (100.00%) Reporting Statewide

**100.00%**



Copyright 2005 digital-topo-maps.com

| Filter Options | President of the United States | County Breakdown |
|---|---|---|
| ☐ President of the United States | **Democratic** | **Republican** |
| ☐ United States Senator | CLINTON, HILLARY **55.61%** | CRUZ, RAFAEL EDWARD **21.67%** |
| ☐ Attorney General | **935,107 Votes** SANDERS, BERNARD | **345,506 Votes** RUBIO, MARCO A |

- [ ] Auditor General
- [ ] State Treasurer
- [ ] Ballot Questions

**731,881 Votes**

DE LA FUENTE, ROQUE ROCKY
**0.86%**

**14,439 Votes**

**11,954 Votes**

BUSH, JOHN ELLIS
**0.60%**

**9,577 Votes**

CARSON, BENJAMIN SOLOMON
**0.93%**

**14,842 Votes**

KASICH, JOHN R
**19.44%**

**310,003 Votes**

TRUMP, DONALD J
**56.61%**

**902,593 Votes**

Back to Top

| United States Senator | County Breakdown |
| --- | --- |

On April 19, 2016, the Pennsylvania Supreme Court reinstated Democratic U.S. Senate candidate Joseph Vodvarka to the ballot. Because this ruling came so close to the April 26, 2016, Primary Election, the reporting of complete vote totals for Mr. Vodvarka will be delayed as some counties will have to manually tally his votes.

Democratic

VODVARKA, JOSEPH JOHN
**5.45%**

**85,837 Votes**

FETTERMAN, JOHN K
**19.49%**

**307,090 Votes**

SESTAK, JOSEPH A. JR.
**32.57%**

**513,221 Votes**

MCGINTY, KATIE
**42.50%**

Republican

TOOMEY, PATRICK J
**100.00%**

**1,342,941 Votes**

**669,774 Votes**

Back to Top

| Attorney General | County Breakdown |
| --- | --- |

**Democratic**      **Republican**

MORGANELLI, JOHN      PETERS, JOSEPH C.
**16.22%**         **36.18%**

      **250,097 Votes**      **464,491 Votes**
SHAPIRO, JOSHUA D      RAFFERTY, JOHN C JR
**47.03%**         **63.82%**

      **725,168 Votes**      **819,510 Votes**
ZAPPALA, STEPHEN A II
**36.74%**

      **566,501 Votes**

Back to Top

| Auditor General | County Breakdown |
| --- | --- |

**Democratic**      **Republican**

DEPASQUALE, EUGENE A      BROWN, JOHN A
**100.00%**         **100.00%**

      **1,307,226 Votes**      **1,203,209 Votes**

Back to Top

| State Treasurer | County Breakdown |
| --- | --- |

**Democratic**      **Republican**

TORSELLA , JOSEPH M.      VOIT, OTTO W. III

100.00%            100.00%

**1,300,295 Votes**        **1,191,619 Votes**

Back to Top

Ballot Questions

On April 20, 2016, the Commonwealth Court of Pennsylvania ruled that House Resolution 783, postponing the vote on Ballot Question 1, a proposed constitutional amendment relating to the mandatory judicial retirement age, will go into effect, and that the question should not appear on the Primary Election ballot. Because this ruling came so close to the April 26, 2016, Primary Election, it was not possible to remove it from the ballot. Any votes cast on Ballot Question 1 will not be counted/certified by the Secretary of the Commonwealth.

**PROPOSED CONSTITUTIONAL AMENDMENT 1 AMENDING THE MANDATORY JUDICIAL RETIREMENT AGE**

49.01%            50.99%

**Votes: Yes: 1,173,828 No: 1,221,422**

**PROPOSED CONSTITUTIONAL AMENDMENT 2 ABOLITION OF THE PHILADELPHIA TRAFFIC COURT**

59.76%            40.24%

**Votes: Yes: 1,469,641 No: 989,492**

Back to Top

**Last Updated Time: Jul 20, 2016 3:17:43 PM**

# Exhibit M

# AFFIDAVIT

I, Jonathan Marks, do hereby state and verify that the statements made below are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities and am making this statement under penalty of perjury.

1. I am employed by the Department of State (Department) as the Commissioner of the Bureau of Commissions, Elections and Legislation (BCEL). As part of my duties, I supervise the administration of the Department's duties relating to elections. Under my authority as Commissioner, I am responsible for managing the process by which the Department meets the constitutional requirements regarding the publication of proposed constitutional amendments.

2. Pursuant to Article XI, § 1 of the Pennsylvania Constitution, after the General Assembly passes a proposed constitutional amendment, the Secretary of the Commonwealth shall cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published in each of the three months prior to the next general election. If the next General Assembly also passes the proposed constitutional amendment, the Secretary of the Commonwealth shall again cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published at least three months after the General Assembly's vote and prior to being submitted to the qualified electors in the form of a ballot question.

3. Pursuant to the requirements of 25 P.S.§ 2621.1, whenever a proposed constitutional amendment shall be submitted to the qualified electors, the Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth. The Secretary of the Commonwealth is required to include such statement in the publications required by Article XI, § 1 of the Pennsylvania Constitution and certify such statement to the county boards of elections.

4. The Department contracts with Mid-Atlantic Newspaper Services, Inc. (MANSI) Media for the provision of services related to the publication of proposed constitutional amendments.

5. In accordance with the Commonwealth Court's order dated April 20, 2016, the Secretary of the Commonwealth removed Proposed Constitutional Amendment 1 from the official ballot certification and efforts were made at the polling places via a notice to inform voters of its status. A copy of the email to the counties with the amended certification and sample polling place notice is attached hereto as Exhibit A.

6. House Resolution 783 of 2016 (H.R. 783), a concurrent resolution adopted by the majorities in both houses of the General Assembly on April 12, 2016, directed the Secretary of the Commonwealth to remove the ballot question for Proposed Constitutional

Marks Affidavit
Page 2

Amendment 1 from the General Primary ballot on April 26, 2016, and to place a revised version of the ballot question on the General Election ballot on November 8, 2016.

7.  In order for the revised Proposed Constitutional Amendment 1 to be properly placed on the November 2016 ballot pursuant to the requirements of Article XI, § 1 of the Pennsylvania Constitution, the first round of advertisements must be published no later than August 8, 2016.

8.  In order to meet that timeframe, advertising space must be reserved in newspapers.  The text of the advertisements, including the language of the ballot question, must be provided to MANSI no later than July 27, 2016.

9.  Given the uncertainty due to the nature and timing of this litigation, as well as the impending publication deadlines, the Secretary of the Commonwealth voluntarily changed the form of the ballot question to conform to the text of H.R. 783 and intends to submit it to the Office of the Attorney General for approval under the terms of 25 P.S. § 2621.1.


5/13/2016
Date

Jonathan Marks, Commissioner
Bureau of Commissions, Elections
and Legislation
Department of State

# Exhibit N

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Senator Jay Costa, Pa. 43rd District,   :
Senator Daylin Leach, Pa. 17th District, :
in their Official Capacities, and        :
Senator Christine M. Tartaglione, Pa.  :
2nd District, in her Official Capacity   :
and individually on behalf of qualified :
electors in the Commonwealth of     :
Pennsylvania,                       :
                  Petitioners    :
                             :
          v.                 :    No. 251 M.D. 2016
                             :    Argued:  June 9, 2016
Secretary Pedro A. Cortes, Senator   :
Joseph B. Scarnati, Pa. 25th District,  :
and Senator Jacob Corman III,       :
Pa. 34th District, each in their        :
Official Capacities,              :
                Respondents  :

**BEFORE:   HONORABLE P. KEVIN BROBSON, Judge**
                **HONORABLE ANNE E. COVEY, Judge**
                **HONORABLE DAN PELLEGRINI, Senior Judge**

**OPINION BY JUDGE BROBSON**      **FILED:  July 6, 2016**

       Before the Court are cross-applications for summary relief filed by the

Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M.

Tartaglione,[1] duly-elected members of the Pennsylvania Senate (Petitioners), and

by the Honorable Joseph B. Scarnati and the Honorable Jacob Corman III, also

duly-elected members of the Pennsylvania Senate (Respondents).   The

---

     [1] Senator Tartaglione brings this action not only in her official capacity but also as an individual.

cross-applications are filed in response to Petitioners' amended petition for review in the nature of a complaint for declaratory and equitable relief, challenging House Resolution 783 of 2016 (H.R. 783).[2]  This case involves the extent of the General Assembly's powers under Article XI, section 1 of the Pennsylvania Constitution, which provides, in relevant part:

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years.  When two or more amendments shall be submitted they shall be voted upon separately.

---

[2] Although Petitioners filed the amended petition for review after the filing of the cross-applications for summary relief, the parties have had the opportunity to address the amended petition for review in their filings.

At issue is whether and, if so, when the General Assembly may, by concurrent resolution, withdraw a proposed constitutional amendment placed on a primary election ballot and place the same proposed constitutional amendment on the next general election ballot. We now deny Petitioners' application for summary relief, grant Respondents' application for summary relief, and enter judgment in favor of Respondents.

## I. BACKGROUND

H.R. 783 is a concurrent resolution adopted by majority votes in both the Pennsylvania House of Representatives, on April 6, 2016, and the Pennsylvania Senate, on April 11, 2016. Among other things, H.R. 783 purports to remove "Proposed Constitutional Amendment 1" from the April 26, 2016 General Primary Election (2016 Primary Election) ballot (April 2016 Ballot) and place the same on the November 8, 2016 General Election (2016 General Election) ballot (November 2016 Ballot). Proposed Constitutional Amendment 1, if approved by electors, would amend section 16(b) of Article V of the Pennsylvania Constitution to provide that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75.[3]

This case does not concern the legal validity of the processes and procedures followed by the General Assembly, the Secretary, and the Attorney General of Pennsylvania in securing Proposed Constitutional Amendment 1's place on the April 2016 Ballot.[4] Instead, Petitioners commenced this action in this

---

[3] Section 16(b) of Article V of the Pennsylvania Constitution currently provides that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 70.

[4] There is no dispute that the constitutional and statutory requirements for placing the proposed constitutional amendment on the April 2016 Ballot had been met prior to the General **(Footnote continued on next page...)**

3

**(continued...)**

Assembly's passage of H.R. 783.  As required by Article XI, section 1 of the Pennsylvania Constitution, the House of Representatives, on June 28, 2013, approved a resolution placing a ballot question before the qualified electors.  The ballot question proposed an amendment to Article V, section 16(b) of the Pennsylvania Constitution, which would raise the mandatory judicial retirement age to 75.  *See* Pa. House Bill 79 Session of 2013 (H.B. 79).  On October 15, 2013, the Senate approved the joint resolution, and, on October 22, 2013, the joint resolution was filed with the Secretary as "Pamphlet Law Resolution No. 3."  *See* Legis. Hist. of H.B. 79.  Thereafter, as directed by H.B. 79 and as mandated by Article XI, section 1, the Secretary advertised this first passage of the proposed constitutional amendment.  On November 17, 2015, both the House of Representatives and Senate approved a joint resolution representing the necessary second passage of the proposed constitutional amendment.  *See* Pa. House Bill 90 Session of 2015 (H.B. 90).  Consistent with H.B. 90 and Article XI, section 1, the Secretary advertised the proposed amendment for the second time.  This advertisement included a "plain English" summary of the proposed amendment, prepared by the Office of Attorney General (OAG).  Thereafter, the Secretary submitted the proposed constitutional amendment to the Commonwealth's qualified electors as a ballot question for the 2016 Primary Election, as mandated by H.B. 90.

Several events occurred following the Secretary's submission of the proposed constitutional amendment.  On March 6, 2016, Respondent Senators filed an emergency application requesting that the Pennsylvania Supreme Court act in its King's Bench jurisdiction to alter the wording of the proposed constitutional amendment, which at that time read:

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70.

Respondent Senators sought to alter the proposed constitutional amendment to read:

Shall the Pennsylvania Constitution be amended to require that judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 75 years.

By per curiam order, dated March 23, 2016, our Supreme Court denied any relief.  In apparent response, on April 6, 2016, the House of Representatives approved H.R. 783, which the Senate adopted on April 11, 2016.  Petitioners then filed the action now before the Court.  Petitioners sought preliminary injunctive relief, which the Court, by the Honorable P. Kevin Brobson, denied by order dated April 20, 2016, amended April 28, 2016.  In its opinion, the Court advised the Secretary to work with the county boards of elections to notify voters "that Proposed **(Footnote continued on next page...)**

Court's original jurisdiction to challenge the legal validity of H.R. 783, the operative clauses of which provide:

> RESOLVED (the Senate concurring), That the Secretary of the Commonwealth remove the ballot question for Proposed Constitutional Amendment 1 from the ballot certification for the primary election on April 26, 2016; and be it further
>
> RESOLVED, That the county boards of election remove, to the extent possible, the ballot question for Proposed Constitutional Amendment 1 from the ballot; and be it further
>
> RESOLVED, That the [S]ecretary disregard any vote on Proposed Constitutional Amendment 1 in the primary election on April 26, 2016, and the [S]ecretary not make a tally of votes cast on Proposed Constitutional Amendment 1; and be it further
>
> RESOLVED, That the General Assembly direct the [S]ecretary to place Proposed Constitutional Amendment 1 on the ballot for the general election on November 8, 2016, in the following form:
>
>> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?;
>
> and be it further
>
> RESOLVED, That, to ensure compliance with section 1 of Article XI of the Constitution of

---

**(continued...)**

Constitutional Amendment 1 is not on the April 2016 Ballot, regardless of what the actual ballot may say, and that any votes cast on that question will *not* be canvassed, counted, or tabulated." *Costa v. Cortes* (Pa. Cmwlth., No. 251 M.D. 2016, filed April 20, 2016), slip op. at 20-21, amended April 28, 2016.

> Pennsylvania, the General Assembly direct the [S]ecretary to publish the ballot question for Proposed Constitutional Amendment 1 as revised along with the proposed amendment and the plain English statement previously prepared by the Office of Attorney General, in each of the three months prior to the general election on November 8, 2016; and be it further
>
> RESOLVED, That, upon passage by a majority of both houses of the General Assembly, this concurrent resolution be transmitted to the Secretary of the Commonwealth for implementation.

In Count I of their amended petition for review, Petitioners contend that H.R. 783 violates Article III, section 9 of the Pennsylvania Constitution, because it was not presented to the Governor for approval. In Count II, Petitioners contend that H.R. 783 unconstitutionally infringes on the rights of qualified electors who have or will cast their votes in the 2016 Primary Election by absentee ballot. In Count III, Petitioners essentially request preliminary injunctive relief, which this Court denied by order dated April 20, 2016. In Count IV, Petitioners seek mandamus relief in the form of an "[o]rder requiring the Secretary to accept, count and certify the votes on the ballot question proposing the amendment to [section] 16(b) cast in the April 26, 2016 primary election." (Amended Petition for Review, ¶93.) In Count V of the Amended Petition for Review, Petitioners allege a violation of Article XI, section 1 of the Pennsylvania Constitution, contending that H.R. 783 violates the mandatory advertising requirements of that section. Finally, in Count VI, Petitioners contend that H.R. 783 violates Article III, section 3 of the Pennsylvania Constitution, which requires that any legislative act of the General Assembly be restricted to a single subject.

## II.  ISSUES PRESENTED

Petitioners and Respondents have filed cross-applications for summary relief under Pa. R.A.P. 1532(b).  Petitioners frame the issues to be decided, as follows:  (1) whether the General Assembly violated Article III, section 9 of the Pennsylvania Constitution when it used a concurrent resolution to direct the Secretary of the Commonwealth to remove Proposed Constitutional Amendment 1 from the April 2016 Ballot (Count I); (2) whether H.R. 783 violates Article XI, section 1 of the Pennsylvania Constitution by interfering with the three-month advertising requirement of that section (Count V); (3) whether H.R. 783 violates the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution (Count VI); and (4) whether H.R. 783 violates Article XI of the Pennsylvania Constitution by impermissibly disenfranchising the voters of this Commonwealth (Count II).  Respondents, by contrast, frame the matter as involving but a single question—*i.e.*, whether the General Assembly permissibly used a concurrent resolution to move Proposed Constitutional Amendment 1 to the November 2016 Ballot, "where Article XI, section 1 of the Pennsylvania Constitution vests the General Assembly with the exclusive authority to determine the time and manner of submitting constitutional amendments to the electorate." (Respondents' Br. at 2.)

In addition to setting forth arguments in their favor for the issues framed by Petitioners, Respondents argue that Petitioners are not entitled to mandamus relief as a matter of law, and, therefore, their count for mandamus relief (Count IV), in which Petitioners seek to compel the Secretary to certify the results of the 2016 Primary Election with respect to Proposed Constitutional Amendment 1, must fail.  The Secretary has not filed an application for summary

relief.   The Secretary has, however, filed a brief in response to Petitioners' application for summary relief, in which the Secretary asserts the same or similar arguments as Respondents.

## III. DISCUSSION

### A. Governing Legal Standards

In evaluating a request for summary relief, the Court applies the same standards that apply on summary judgment.   *See Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015).  Summary relief under Pa. R.A.P. 1532(b), therefore, is appropriate where the moving "party's right to judgment is clear . . . and no issues of material fact are in dispute."   *McGarry v. Pa. Bd. of Prob. and Parole*, 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003).

"In a case like this one, which calls upon the court to construe an Article of the Pennsylvania Constitution, the fundamental rule of construction which guides us is that the Constitution's language controls and must be interpreted in its popular sense, as understood by the people when they voted on its adoption."   *Ieropoli v. AC&S Corp.*, 842 A.2d 919, 925 (Pa. 2004).   Thus, a provision of the Constitution "will be interpreted, not in a strained or technical manner, but as understood by the people who adopted it."   *Blum by Blum v. Merrell Dow Pharm., Inc.*, 626 A.2d 537, 546 (Pa. 1993).   Furthermore, the various principles of statutory construction apply with equal force in interpreting the Pennsylvania Constitution. *Booth & Flinn v. Miller*, 85 A. 457, 459 (Pa. 1912) ("The established rules of construction applicable to statutes apply also in the construction of a Constitution.").   To that end, we observe that pursuant to Section 1922(3) of the Statutory Construction Act of 1971 (Statutory Construction Act), 1 Pa. C.S. § 1922(3), there is a presumption that "the General Assembly does not intend to violate the Constitution . . . of this Commonwealth."   Given the

8

strong presumption of constitutionality under Section 1922(3), "[a] party challenging an act has a heavy burden of persuasion[,]" and "[l]egislation will not be invalidated unless it clearly, palpably and plainly violates the Pennsylvania Constitution." *League of Women Voters of Pa. v. Commonwealth*, 692 A.2d 263, 269-70 (Pa. Cmwlth. 1997). "[A]ny doubts are to be resolved in favor of a finding of constitutionality." *Id.* at 270. Although Section 1922(3) applies to the construction of statutes, as noted above those same principles apply to the construction of constitutional provisions. *See Booth & Flinn*, 85 A. at 459.

Notwithstanding the applicability of statutory construction principles in general,

> [o]ur Supreme Court has repeatedly stated that "nothing short of literal compliance" with this detailed process for the amendment of the fundamental law of our Commonwealth will suffice. Also, our Supreme Court has made clear that the analytical model for deciding a challenge to the enactment of constitutional amendments is not based on the substantial deference afforded to the adoption of legislation.

*Bergdoll v. Commonwealth*, 858 A.2d 185, 193-94 (Pa. Cmwlth. 2004), *aff'd*, 874 A.2d 1148 (Pa. 2005) (internal citations omitted).

### B.  Challenge to the Form of H.R. 783 (Count I)

First, we address Petitioners' argument that the General Assembly impermissibly used a concurrent resolution to direct the Secretary of the Commonwealth to remove Proposed Constitutional Amendment 1 from the April 2016 Ballot in violation of Article III, section 9 of the Pennsylvania Constitution. Article III, section 9 provides:

> Every order, resolution or vote, to which the concurrence of both Houses may be necessary, except on the question of adjournment, shall be presented to the Governor and

before it shall take effect be approved by him, or being
disapproved, shall be repassed by two-thirds of both
Houses according to the rules and limitations prescribed
in case of a bill.

Petitioners contend that once the General Assembly passed Proposed
Constitutional Amendment 1 by joint resolution for the second time, the Secretary
was required to publish the proposed amendment and submit it to the qualified
electors of the State pursuant to Article XI, section 1 of the Pennsylvania
Constitution.   It is undisputed that the Secretary complied with the publication
requirements of Article XI, section 1 of the Pennsylvania Constitution with respect
to the submission of Proposed Constitutional Amendment 1 to the electors on the
April 2016 Ballot.   The passage of H.R. 783, and this Court's refusal to enjoin its
implementation, removed the question from the April 2016 Ballot.[5]

Petitioners assert that the General Assembly, through H.R. 783,
created an "entirely different species of legislative action" not contemplated under
the General Assembly's Article XI, section 1 power, by:   (1) directing the
Secretary to remove Proposed Constitutional Amendment 1 from the April 2016

---

[5] As we observed in footnote 4 above, the General Assembly followed the mandates of
Article XI, section 1 of the Pennsylvania Constitution in adopting H.B. 79 and H.B. 90 through
two joint resolutions.   Joint resolutions are the proper mechanism for placing proposed
constitutional amendments on a future ballot for the electorate's consideration.   *See West Shore
Sch. Dist. v. Pa. Labor Relations Bd.*, 570 A.2d 1354, 1357 (Pa. Cmwlth. 1990) ("The General
Assembly uses joint resolutions for the sole purpose of proposing constitutional amendments."),
*remanded sub nom. Blackwell v. Commonwealth, State Ethics Comm'n*, 589 A.2d 1094
(Pa. 1991).   Concurrent resolutions are commonly used "for recalling a bill from the Governor or
the other house, returning a bill to the Governor, adjournments sine die or in excess of three
days, recesses in excess of a week and memorializing Congress."   101 Pa. Code § 9.43(b).
Traditionally, concurrent resolutions have not required approval of the Governor, because they
were not considered an exercise of legislative power.   *See, e.g., Commonwealth v. Kuphal*,
500 A.2d 1205, 1206-07 (Pa. Super. 1985).

10

Ballot; (2) directing the county boards of elections to remove, to the extent possible, Proposed Constitutional Amendment 1 from the April 2016 Ballot; (3) directing the Secretary to disregard any vote on Proposed Constitutional Amendment 1 in the primary election; (4) prohibiting "the Secretary from making any 'tally of votes cast on Proposed Constitutional Amendment 1'" for the 2016 Primary Election; and (5) directing "the Secretary to alter the ballot question's language" from that which he drafted on his own accord and placed on the April 2016 Ballot." (Petitioners' Br. at 24-25.)  Petitioners assert that nothing in Article XI, section 1, provides the General Assembly with the authority to direct the Secretary to remove ballot questions from the ballot once the Secretary has placed the question on the ballot, disregard an election return, prohibit the Secretary from tallying votes, or compel the Secretary to alter the language of a ballot question on a proposed amendment.   Rather, Petitioners contend that pursuant to Article III, section 9 of the Pennsylvania Constitution the substance of H.R. 783 should have been presented to the Governor for approval as a legislative bill.  Petitioners contend that fundamental separation of powers concerns require each branch of government to operate within its own "separate sphere of power." *Jefferson Cnty. Court Appointed Employees Ass'n v. Pa. Labor Relations Bd.*, 985 A.2d 697, 706 (Pa. 2009).  Based on that reasoning, Petitioners contend that the General Assembly could not alter the constitutional amendment process that it set in motion with respect to Proposed Constitutional Amendment 1 without proceeding under Article III, section 9, because Article XI, section 1 does not authorize the actions contained in H.R. 783.

Petitioners next address the "time" and "manner" power in Article XI, section 1 of the Pennsylvania Constitution, which provides that any proposed

11

constitutional amendment "shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe."  Petitioners argue that even if portions of H.R. 783 could be derived from this power, such that it need not be approved by the Governor, H.R. 783's directives to the Secretary fall outside of this power because they are in conflict with what is commonly referred to as the Election Code.[6]  Petitioners contend that the Election Code "sets forth the specific contours of the General Assembly's authority to issue directives to the Secretary as an Executive Department official.  As that authority derives from the Election Code, H.R. 783 could not alter it without resort to the legislative procedures mandated in Article III."  (Petitioners' Br. at 27.)  They note that "[b]ecause a resolution does not have the force and effect of law, our Supreme Court has always held that the General Assembly cannot use this legislative device as a substitution for a law." *West Shore Sch. Dist. v. Pa. Labor Relations Bd.*, 570 A.2d 1354, 1357 (Pa. Cmwlth. 1990), *remanded sub nom. Blackwell v. Commonwealth, State Ethics Comm'n*, 589 A.2d 1094 (Pa. 1991).  Petitioners contend that H.R. 783 purports to prohibit the Secretary from complying with his duties under Section 201(c) of the Election Code, *as amended*, 25 P.S. § 2621(c), relating to certification to county boards of elections of "the form and wording of constitutional amendments and other questions to be submitted to the electors of the State at large," and Section 201(f) of the Election Code, *as amended*, 25 P.S. § 2621(f), which requires the Secretary to "canvass and compute the votes cast . . . upon questions as required by the provisions of this act" and "to proclaim the results of such

---

[6] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3591.

primaries and elections." Finally, Petitioners contend that under Section 605 of the Election Code, 25 P.S. § 2755, the form of the ballot question is to be determined by the Secretary and the Attorney General and not by the General Assembly. With respect to each of these statutory provisions, Petitioners contend that H.R. 783 affects a change to the law, which can only be accomplished by legislative bill and through the procedures set forth in Article III of the Pennsylvania Constitution.

Respondents counter that it is well-established that Article III of the Pennsylvania Constitution applies only to legislation and is thus inapplicable to the process for amending the Constitution. Instead Article XI, section 1 of the Pennsylvania Constitution provides the "complete and detailed process" for amending the Constitution. *Kremer v. Grant*, 606 A.2d 433, 436 (Pa. 1992). Article XI, section 1 exclusively commits to the General Assembly the power to "prescribe" the "manner" and "time" under which the proposed constitutional amendments "shall be submitted to the qualified electors" of the Commonwealth. *See* Pa. Const. art. XI, § 1. Nothing in Article XI, section 1, however, mandates how the General Assembly must "prescribe" the time at which and manner by which a proposed constitutional amendment will be submitted to the electorate—*i.e.*, whether the General Assembly must do so by joint resolution, concurrent resolution, or otherwise. Rather, the only requirement under Article XI, section 1 is that "a majority of the members elected to each House" agree to the time and manner prescription, which Respondents contend occurred through H.R. 783. Thus, Respondents contend that whether the General Assembly passed a joint resolution or concurrent resolution is irrelevant to Article XI, section 1, as both comply with the constitutional requirements set forth therein.

13

Respondents dispute the General Assembly's characterization of H.R. 783 as representing "an entirely different species of legislative action."[7] They emphasize that Article XI, section 1 expressly empowers the General Assembly to direct the Secretary when (time) and how (manner) to submit a proposed constitutional amendment to the qualified electors of the Commonwealth, with the only limit being that it may not be submitted before three months after being agreed to by both Houses (presumably to allow the Secretary to satisfy the publication requirements). Moreover, Respondents note that Section 605 of the Election Code is consistent with Article XI, section 1 of the Pennsylvania Constitution, in that it too exclusively commits to the General Assembly the power to "prescribe" the "manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution for the purpose of ascertaining whether the same shall be approved by a majority of those voting thereon." Accordingly, Respondents maintain that the General Assembly has acted consistent with both the Pennsylvania Constitution and the Election Code by directing the time at which and manner by which the Secretary is to submit Proposed Constitutional Amendment 1 to the electors of the Commonwealth, and, the Secretary has the legal obligation *under both* to follow the prescriptions. Because the General Assembly exercised powers committed exclusively to it, Respondents argue there can be no violation of the separation of powers, and Article III, section 9 is inapplicable.

We now hold that H.R. 783 was a valid exercise of the General Assembly's exclusive power under Article XI, section 1 of the Pennsylvania

---

[7] (Respondents' Br. at 13 (quoting Petitioners' Br. at 24).)

14

Constitution to prescribe both the time at which and manner by which the Secretary is to submit Proposed Constitutional Amendment 1 to the qualified electors of this Commonwealth for their consideration.  The Pennsylvania Supreme Court has recognized that Article XI, section 1 of the Pennsylvania Constitution provides the "complete and detailed process for the amendment of that document."[8]  *See Kremer*, 606 A.2d at 436.  In *Mellow v. Pizzingrilli*, 800 A.2d 350 (Pa. Cmwlth. 2002) (en banc), we explained:

> Because a proposed constitutional amendment is not a "law," the provisions of Article III relating to the enactment of legislation are inapplicable. . . . In this respect, [amendment of the Pennsylvania Constitution] is not a legislative act at all, but a separate and specific power granted to the General Assembly, similar to the impeachment and trial powers granted to the House of Representatives and Senate, respectively, under Article VI, Sections 4 and 5.  As to the impeachment power, we have held that the trial procedures are within the exclusive power of the Senate and are not subject to invasion by the Courts.  Similarly, we believe that Article XI has vested the power to propose amendments in the General Assembly.  Other than the express requirements set forth in Article XI, the procedure to be used in proposing such amendments is exclusively committed to the legislature.

*Mellow*, 800 A.2d at 359 (citations omitted); *see also Grimaud v. Commonwealth*, 806 A.2d 923 (Pa. Cmwlth. 2002) (en banc) (following *Mellow*), *aff'd*, 865 A.2d 835 (Pa. 2005).

---

[8] Our reasoning is consistent with the Court's opinion and order, dated April 20, 2016, amended April 28, 2016, in which the Court denied Petitioners' application for special relief in the nature of a preliminary injunction.

Although *Mellow* addressed challenges regarding only the "manner" of amendments, it is nevertheless instructive here.  In *Mellow*, we considered several challenges to two constitutional amendments approved by the electorate during the May 2001 Primary Election.  In one of the challenges, the petitioners in that case contended that one of the amendments should be set aside because the joint resolutions passed in 1998 and 2000 by the General Assembly did not contain identical language.  This Court rejected that argument, refusing to curb the General Assembly's power under Article XI, section 1 beyond the express limits set forth in that constitutional provision.  "Because Article XI does not require identical language or content in the *resolutions* (as opposed to the proposed amendment itself)," we opined "there is no constitutional violation."  *Mellow*, 800 A.2d at 359.

By its express terms, H.R. 783 sets both the time at which and manner by which Proposed Constitutional Amendment 1 is to be submitted to the electorate in that it removes the question from the April 2016 Ballot and moves the question to the November 2016 Ballot.  Under *Mellow*, the power of the General Assembly to set the time at which and manner by which amendments to the Pennsylvania Constitution are to be submitted to the electorate is an Article XI, section 1 power.  Pursuant to Article XI, section 1 of the Pennsylvania Constitution, the power granted therein is *exclusive* to the General Assembly.  The only express constitutional limitation on time is that it must be submitted at least three months after final agreement by the two houses of the General Assembly, which is not at issue here.[9]  *Id.*  We agree with Respondents that nothing in

---

[9] H.R. 783 expressly provides for the re-publication and re-advertising of Proposed Constitutional Amendment 1, as well as the plain English statement of the OAG, in each of the three months prior to the 2016 General Election.  Thus, even though the Secretary already had **(Footnote continued on next page…)**

Article XI, section 1 mandates how the General Assembly must "prescribe" the time at which and manner by which a proposed constitutional amendment will be presented to the electorate.  Thus, it is immaterial whether the General Assembly did so by joint or concurrent resolution, so long as "a majority of the members elected to each House" agreed to the time and manner prescription.[10] *Id.*

Even if we were to agree with Petitioners' general proposition that the General Assembly could not use H.R. 783 to impose directives on the Secretary that are inconsistent with the Secretary's directives set forth in the Election Code, we conclude that H.R. 783 is not so flawed.  First, H.R. 783 does not alter the duties of the Secretary or prohibit the Secretary from complying with his duties under Section 201(c) of the Election Code.  Section 201(c) of the Election Code requires the Secretary to do the following:

> *To certify to county boards of elections for primaries and elections* the names of the candidates for President and Vice-President of the United States, presidential electors, United States senators, representatives in Congress and all State offices, including senators, representatives, and judges of all courts of record, and delegates and alternate delegates to National conventions, and members of State committees,

---

**(continued...)**

complied with the publication and advertisement requirements of Article XI, section 1 of the Pennsylvania Constitution in advance of the 2016 Primary Election, the General Assembly took this additional step to ensure notice to the electorate by directing the Secretary to re-publish and re-advertise.  In his papers submitted to the Court, the Secretary has indicated his intentions to re-publish and re-advertise.

[10] As this Court in *Mellow* observed, "[i]ndeed, the General Assembly may properly choose to consider a proposed constitutional amendment under the title of a 'bill,' 'act,' 'resolution,' or a 'mystery wrapped in an enigma,' a title that might be more forthright in many instances." *Mellow*, 800 A.2d at 359 n.11.

and *the form and wording of constitutional amendments
or other questions to be submitted to the electors of the
State at large.*

(Emphasis added.)  On this issue, H.R. 783 provides that "the Secretary of the
Commonwealth [shall] remove the ballot question for Proposed Constitutional
Amendment 1 from the ballot certification for the primary election on
April 26, 2016."  As a result of H.R. 783, which this Court refused to enjoin
preliminarily, Proposed Constitutional Amendment 1 was not a question submitted
to the electorate on the April 2016 Ballot.  Clearly, Section 201(c) of the Election
Code does not empower the Secretary to certify to the county boards of elections
the form and wording of a constitutional amendment *that is not* to be submitted to
the electors of the State at large.  Thus, H.R. 783 appears to do nothing more than
echo existing law with respect to the Secretary's duties.

Second, H.R. 783 does not alter the duties of the Secretary or prohibit
the Secretary from complying with his duties under Section 201(f) of the Election
Code.  Section 201(f) of the Election Code, requires the Secretary to "canvass and
compute the votes cast . . . upon questions as required by the provisions of this act"
and "to proclaim the results of such primaries and elections."  On this subject,
H.R. 783 provides:  "RESOLVED, That the [S]ecretary *disregard* any vote on
Proposed Constitutional Amendment 1 in the primary election on April 26, 2016,
and the [S]ecretary not make a *tally* of votes cast on Proposed Constitutional
Amendment 1."  (Emphasis added.)  Like our analyses above, we look to
Section 201(f) of the Election Code and what it does and does not require of the
Secretary.  By its terms, Section 201(f) of the Election Code only requires the
Secretary to canvass and compute the votes cast on questions lawfully placed
before the electorate—*i.e.*, "questions as required by the" Election Code.  In light
of H.R. 783, Proposed Constitutional Amendment 1 was not a question submitted

18

to the electorate, *regardless of its presence on some ballots*. Thus, the Secretary is under no legal obligation to "canvass and compute" votes cast on Proposed Constitutional Amendment 1 during the 2016 Primary Election. A corollary to this legal conclusion is that the Secretary has no authority to canvass and compute votes cast on a question that is *not* before the electorate.

Finally, we address Petitioners' claim that H.R. 783 alters the duties of the Secretary or prohibits the Secretary from complying with his duties under Section 605 of the Election Code. Section 605 of the Election Code provides, in its entirety:

> *Unless the General Assembly shall prescribe otherwise with respect to any particular proposed amendment or amendments and the manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution* for the purpose of ascertaining whether the same shall be approved by a majority of those voting thereon, the said amendment or amendments which have heretofore, or which may hereafter be proposed, and which have not been submitted to the qualified electors of the State, *shall be submitted to the qualified electors of the State for the purpose aforesaid, at the first municipal or general election at which such amendment or amendments may be legally submitted to the electors*, which election shall occur at least three months after the date upon which such proposed amendment or amendments shall have been agreed to for the second time by a majority of the members elected to each house of the General Assembly, as provided in Article Eighteen,[11] section one of the Constitution. Said election shall be conducted on said election day in the manner prescribed by the provisions of this act. *Such proposed constitutional amendments shall be printed on the ballots or ballot labels in brief*

---

[11] Renumbered as Pa. Const. art. XI, § 1.

19

> *form to be determined by the Secretary of the*
> *Commonwealth with the approval of the Attorney*
> *General.*

(Emphasis added.)   Although not as developed as some of Petitioners' other arguments, Petitioners appear to challenge the ability of the General Assembly, through its Article XI, section 1 "time" and "manner" power, to set the form, or wording, of the constitutional amendment submitted to the electorate.   In other words, Petitioners appear to raise a conflict between H.R. 783 and Section 605 of the Election Code.

During oral argument in this matter, the Court expressed concern to the parties that such a conflict could arise if either the Secretary or the Attorney General rejected the form of Proposed Constitutional Amendment 1 set forth in H.R. 783.   In his filings with the Court in this matter, however, the Secretary has indicated that he will follow the form of the question set forth in H.R. 783. (Secretary's Br. at 3, 22.)   In addition, the Secretary, through his application for leave to file post-submission communication, which the Court granted, submitted a letter by Solicitor General Bruce L. Castor, Jr., dated June 14, 2016, wherein the Solicitor General, on behalf of the OAG, conveyed his approval of the form of Proposed Constitutional Amendment 1, as set forth in H.R. 783.   In light of these facts, the debate over whether H.R. 783 conflicts with Section 605 of the Election Code with respect to the form of the ballot question has become academic.

As a general rule, courts will not decide moot cases.   "[A] case is moot if there is no actual case or controversy in existence at all stages of the controversy." *Phila. Pub. Sch. Notebook v. Sch. Dist. of Phila.*, 49 A.3d 445, 448 (Pa. Cmwlth. 2012).   As this Court explained in *Philadelphia Public School Notebook*:

> Mootness problems arise in cases involving litigants who
> clearly had one or more justiciable matters at the outset
> of the litigation, but events or changes in the facts or law
> occur which allegedly deprive the litigant of the
> necessary stake in the outcome after the suit is underway.

*Id.* It is well settled that the courts "do not render decisions in the abstract or offer purely advisory opinions." *Pittsburgh Palisades Park, LLC v. Commonwealth*, 888 A.2d 655, 659 (Pa. 2005). Judicial intervention "is appropriate only where the underlying controversy is real and concrete, rather than abstract." *City of Philadelphia v. Commonwealth*, 838 A.2d 566, 577 (Pa. 2003).

As with most rules of general application, there are exceptions to the mootness doctrine for circumstances where "(1) the conduct complained of is capable of repetition yet evading review, or (2) involves questions important to the public interest, or (3) will cause one party to suffer some detriment without the Court's decision." *Cytemp Specialty Steel Div., Cyclops Corp. v. Pa. Pub. Util. Comm'n*, 563 A.2d 593, 596 (Pa. Cmwlth. 1989). Notwithstanding these exceptions, however, we note that "'[c]onstitutional questions are not to be dealt with abstractly.'" *Wortex Mills v. Textile Workers Union of Am.*, 85 A.2d 851, 857 (Pa. 1952) (quoting *Bandini Petroleum Co. v. Superior Court*, 284 U.S. 8, 22 (1931); *see In re Gross*, 382 A.2d 116, 120 (Pa. 1978). This Court, therefore, should be even more reluctant to decide moot questions which raise constitutional issues. *See id.* Instead, we "prefer to apply the well-settled principles that [courts] should not decide a constitutional question unless absolutely required to do so." *Krenzelak v. Krenzelak*, 469 A.2d 987, 991 (Pa. 1983); *see also Atlantic–Inland, Inc. v. Bd. of Supervisors of West Goshen Twp.*, 410 A.2d 380, 383 (Pa. Cmwlth. 1980) (opining that "a court will not consider a constitutional issue unless it is clearly necessary to do so to dispose of the case before it").

Clearly, there is a prevailing debate over whether the General Assembly has the power, under Article XI, section 1 of the Pennsylvania Constitution and Section 605 of the Election Code, to set the form of the ballot question to the exclusion of the Secretary and the Attorney General. There is, however, no case or controversy because, in light of an intervening event—*i.e.*, approval of the question by the OAG—resolution of that dispute will have no bearing on the form of the question for Proposed Constitutional Amendment 1 on the November 2016 Ballot. The issue, therefore, is moot. The Court declines to consider the dispute under any of the exceptions to the mootness doctrine. The General Assembly infrequently exercises its Article XI, section 1 power with respect to constitutional amendments. If, in the context of future proposed amendments, a dispute arises between the General Assembly, the Secretary, and/or the Attorney General as to which has the ultimate power to set the form of the ballot question to be presented to the electorate, we see no reason why such a dispute could not be resolved at that time.

With respect to the great public importance exception, the Pennsylvania Supreme Court has opined: "It is only in very rare cases where exceptional circumstances exist or where matters or questions of great public importance are involved, that this court ever decides moot questions or erects guideposts for future conduct or actions." *Wortex Mills*, 85 A.2d at 857. Although the substance of Proposed Constitutional Amendment 1 is of great public importance, we are not convinced that resolution of an abstract dispute over who sets the form of the ballot question rises to such a level, particular where, as here, the two branches of government that stand on opposite sides of this hypothetical

power struggle agree on the form of the question.  We are not inclined to foment discord where there is common ground.

As to the third exception to the mootness doctrine, no harm or detriment will befall Petitioners if we do not resolve this question.  As noted above, the form of the question has been set and agreed to by all parties in interest—the General Assembly, the Secretary, and the Attorney General. Petitioners gain nothing and lose nothing by our refusal to decide this moot question.  Finally, resolution of this moot question involves consideration of the General Assembly's power under Article XI, section 1 of the Pennsylvania Constitution.  As noted above, we are reluctant to resolve constitutional issues in the absence of a true case and controversy.  Accordingly, Petitioners' challenge to H.R. 783 as presenting a conflict over which, as between the General Assembly or the Secretary with the approval of the Attorney General, sets the form of Proposed Constitutional Amendment 1 to be submitted to the qualified electors of this Commonwealth is moot.

### C. H.R. 783 and the Three-month Advertising Requirement (Count V)

As discussed above, Article XI, section 1 of the Pennsylvania Constitution provides, in relevant part, that following the passage of a proposed constitutional amendment by a majority of the members of both houses of the General Assembly in two consecutive sessions,

> the Secretary of the Commonwealth shall cause the same again to be published . . . and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe.

23

With regard to the manner of publication, Article XI, section 1 of the Pennsylvania Constitution provides that the proposed amendment "be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published."

Petitioners contend that H.R. 783 compels the Secretary to act contrary to his duties under Article XI, section 1 of the Pennsylvania Constitution, because it prevents him from completing the process to effect the proposed amendment to the Pennsylvania Constitution in the time-frame initially established by the General Assembly and as originally advertised. Petitioners disagree with the Court's earlier interpretation of Article XI,[12] which recognized the General Assembly's exclusive authority over the time and manner of placing a proposed amendment on the ballot as including the authority to move a proposed amendment from a primary election to the next following general election. They argue that if the General Assembly were to have unconstrained power over the "time" and "manner" of the vote on a proposed amendment it could permanently remove a proposed amendment from the ballot at any time before voting begins. Such ability, according to Petitioners, would contravene the intentions of the framers of Article XI.

Petitioners also observe that our Supreme Court has identified two independent reasons for the requirement that there be statewide advertising of a proposed amendment, specifically (1) to inform voters that a proposed constitutional amendment will be placed on the next election ballot and to explain

---

[12] Petitioners refer to the Court's order dated April 20, 2016, amended April 28, 2016, denying Petitioners' application for special relief in the nature of a preliminary injunction.

the substance of the proposed amendment, and (2) to provide a three-month window during which voters may ascertain the attitudes of the candidates with regard to the proposed amendment. *See Kremer*, 606 A.2d at 438.[13]  With regard to ascertaining attitudes, the three-month window enables the voters to have sufficient time to determine how Senate and House candidates on that same ballot voted on the proposed amendment.  Under the current scenario, Petitioners contend that, because H.R. 783 was not advertised, voters were not provided a sufficient opportunity to determine which candidates voted to remove the proposed amendment from the April 2016 Ballot.  For these reasons, Petitioners urge the Court to construe Article XI to prohibit any alteration of the vote on a proposed amendment within three months of the originally prescribed election.

Respondents counter that Petitioners' argument is based on the faulty assumption that H.R. 783 is somehow subject to the advertising requirements of Article XI, section 1 of the Pennsylvania Constitution.  Respondents contend that, by its express terms, Article XI, section 1 requires only publication of the "proposed amendment or amendments."  Pa. Const. art. XI, § 1.  Respondents observe that Petitioners ignore that H.R. 783 expressly provides for the re-publication and re-advertising of Proposed Constitutional Amendment 1, as well as the "plain English" statement of the OAG, in each of the three months *prior to* the 2016 General Election.  Furthermore, Respondents observe that voters will

_____

[13] In *Kremer*, our Supreme Court wrote:

> For if an informed electorate disagrees with the proposed amendments, they will have an opportunity to indicate their displeasure at the ballot box and elect individuals to the next General Assembly with different attitudes.

*Kremer*, 606 A.2d at 438.

25

have more than three additional months to research and perform due diligence as to Proposed Constitutional Amendment 1 and candidates. Respondents agree that a permanent removal of a proposed constitutional amendment arguably would be contrary to Article XI, section 1, but they observe that no such permanent removal is contemplated by H.R. 783.

We are unswayed by Petitioners' concern that this Court's interpretation of the General Assembly's "time" and "manner" power under Article XI, section 1 is so unfettered that it would allow the General Assembly to thereafter refuse to place a ballot question, passed by both Houses in two consecutive legislative sessions, before voters in the next following general election, *at the latest*. Indeed, such a scenario would not likely survive judicial scrutiny. H.R. 783, however, provides that Proposed Constitutional Amendment 1 will be before voters for their consideration on the next general election ballot following second consideration by both Houses of the General Assembly, that being the November 2016 Ballot.

We are also unpersuaded by Petitioners' argument that H.R. 783 violated the publications requirements of Article XI, section 1. Nothing in Article XI, section 1 of the Pennsylvania Constitution requires publication or advertising of H.R. 783. Two of the Secretary's constitutional duties under Article XI, section 1 are related to publication of proposed amendments following each passage by the General Assembly. There is no contention in this case that the Secretary failed to comply with those publication mandates. In fact, the record is clear that Proposed Constitutional Amendment 1 was advertised in accordance with Article XI, section 1. Moreover, under H.R. 783, Proposed Constitutional Amendment 1 will be re-published and re-advertised, and voters will have

26

additional time to consider the amendment and the attitudes of candidates with respect thereto, so the intent behind Article XI, section 1 will be fulfilled.

The Secretary's third constitutional duty requires the Secretary to place a proposed constitutional amendment before the electorate "in such manner, and at such time *at least three months after being so agreed to by the two Houses*, as the General Assembly shall prescribe." Pa. Const. art. XI, § 1 (emphasis added). It is implicit that the reason why the General Assembly and, by extension, the Secretary must wait *at least* three months before putting the question before the electorate is to provide sufficient time for the Secretary to comply with the three-month advertising period described above. The General Assembly, through H.R. 783, has set the 2016 General Election (the latest possible election) as the time that Proposed Constitutional Amendment 1 should be placed before the electorate. As of the date of this opinion, there is sufficient time for the Secretary to re-publish and re-advertise consistent with Article XI, section 1 of the Pennsylvania Constitution and the goals articulated by the Pennsylvania Supreme Court in *Kremer*.

For these reasons, we conclude that H.R. 783 does not itself cause a violation of the advertising requirements in Article XI, section 1 of the Pennsylvania Constitution.

### D. H.R. 783 and the Single-Subject Rule (Count VI)

Petitioners argue that if H.R. 783 is examined as if it were a bill, rather than a concurrent resolution, it is facially deficient, as it impermissibly covers more than one subject in violation of Article III, section 3, of the Pennsylvania Constitution, relating to the "[f]orm of *bills*." (Emphasis added.) Article III, section 3 of the Pennsylvania Constitution provides:

27

> No *bill* shall be passed containing more than one subject,
> which shall be clearly expressed in its title, except a
> general appropriation bill or a bill codifying or compiling
> the law or a part thereof.

(Emphasis added.)  Our Supreme Court has identified what it refers to as the "twin requirements" of Article III, section 3, as the requirements "that each bill have only one subject, and that the subject be clearly expressed in the title." *City of Philadelphia*, 838 A.2d at 585.  In *City of Philadelphia*, our Supreme Court described the reasons why Pennsylvanians incorporated Article III, section 3 into the Pennsylvania Constitution of 1874, including distrust of corporate influence upon the General Assembly and a resulting desire to make the deliberative process of *legislative enactment* more visible to our citizens. *Id.* at 585-86.  By adopting Article III, section 3, Pennsylvanians sought to address a number of practices that members of the General Assembly occasionally employed to obtain *passage of legislation* without subjecting the legislation to an open and deliberative process.

In support of their argument that H.R. 783 violates the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution, Petitioners contend that H.R. 783 attempts to, in part:  (1) effect a change in time for the vote on an amendment to Article V, section 16(b) of the Pennsylvania Constitution; (2) direct action by a member of the executive branch—*i.e.*, the Secretary; and (3) modify portions of the Election Code for the primary and general elections of 2016.  Petitioners contend that H.B. 783 cannot do all three and still comply with the single-subject requirement of the Pennsylvania Constitution and, therefore, must be held unconstitutional *in toto*.  In support of this position, Petitioners rely on *Pennsylvania State Association of Jury Commissioners v. Commonwealth*, 64 A.3d 611 (Pa. 2013), for the proposition that

28

the single-subject requirement is violated where dual functions of government are addressed in the same bill.

Respondents counter that Article III, section 3 of the Pennsylvania Constitution applies only to legislation and is inapplicable to the process for amending the Constitution. Respondents further argue that even if H.R. 783 were governed by Article III, section 3, H.R. 783 is limited to the single-subject matter of prescribing the time and manner by which Proposed Constitutional Amendment 1 is to be submitted to the electorate, and those functions constitutionally rest with the General Assembly.

We agree with Respondents that H.R. 783 is not a legislative bill and, therefore, is not governed by Article III. Rather, as discussed above, actions by the General Assembly relating to the "time" and "manner" of amending the Pennsylvania Constitution are governed exclusively by Article XI, section 1 of the Pennsylvania Constitution, *Mellow*, which does not contain a single-subject requirement.

Assuming, however, Article III, section 3 did apply, H.R. 783 would pass constitutional muster under a single-subject analysis. The stated subject and objective for H.R. 783 is "providing for submission to the electorate of a constitutional amendment on retirement for justices, judges and justices of the peace." H.R. 783. All of the provisions of H.R. 783 assist in carrying out this main objective and are otherwise germane to its stated subject matter. *See City of Philadelphia*, 838 A.2d at 587 ("[T]he strictures of Article III, [s]ection 3 are often satisfied where the provisions added during the legislative process assist in carrying out a bill's main objective or are otherwise 'germane' to the bill's subject as reflected in its title."). Moreover, as noted above, any portions of H.R. 783 that

29

Petitioners characterize as "directives" to the Secretary merely recognize the Secretary's duties under Article XI, section 1 of the Pennsylvania Constitution or the Election Code and do not change those duties.

For these reasons, we conclude that H.R. 783 does not violate the single-subject requirement of Article III, section 3 of the Pennsylvania Constitution.

### E.   H.R. 783 and Voter Disenfranchisement (Count II)

Petitioners' argument as to why H.B. 783 disenfranchises voters has changed over time.   Originally, they argued that voters were disenfranchised because some had cast absentee ballots at the time that H.B. 783 was passed.  They now argue that despite H.R. 783 and this Court's refusal to enjoin its implementation, many voters voted on Proposed Constitutional Amendment 1 during the 2016 Primary Election.  Failure to count those votes, Petitioners argue, equates to voter disenfranchisement.  Petitioners theorize that the electorate will be confused if asked again to vote on Proposed Constitutional Amendment 1 in a revised form, given that voters may not vote on the same amendment within five years.  *See* Pa. Const. art. XI, § 1.  Petitioners contend that election night results from the 2016 Primary Election show that a majority of voters rejected Proposed Constitutional Amendment 1 and that H.R. 783 essentially nullifies the will of the majority.

Respondents' argument in opposition is succinct and compelling—there can be no voter disenfranchisement in the absence of a right to vote—and we

agree with Respondents.[14]  In light of H.B. 783, and this Court's refusal to enjoin its implementation, Proposed Constitutional Amendment 1 was not before the electorate on the April 2016 Ballot, regardless of how successful some or even most counties were at removing the question or informing voters that their votes on the proposed amendment would not be counted.   H.R. 783 in no way disenfranchised voters who had no right to vote on the Proposed Constitutional Amendment 1 in the first place and who were only able to vote because of insufficient measures to fully advise voters that Proposed Constitutional Amendment 1 was not before the electorate on the April 2016 Ballot.

> Moreover, as observed by the Secretary:

> Petitioners' position, if adopted, would work the only true disenfranchisement, by denying voters who properly refrained from voting on the questions a say in the outcome.  Whether or not H.R. 783 is a proper exercise of the General Assembly's constitutional authority, the purported "vote" on the proposed amendment during the [2016 Primary Election] cannot, under any rational view, be retroactively deemed official.

(Secretary's Br. at 13.)  Furthermore, the prohibition in Article XI, section 1 of the Pennsylvania Constitution that "no amendment or amendments shall be submitted oftener than once in five years," was also set forth in Article XVIII of the Pennsylvania Constitution of 1874.  *See Stander v. Kelley*, 250 A.2d 474, 480

---

[14] Because we agree with Respondents that there can be no voter disenfranchisement for a question not before the electorate, we need not discuss the parties' arguments regarding the number of voters who did or did not vote on Proposed Constitutional Amendment 1 when some county boards of elections were unable to remove it from the April 2016 Ballot.  We also need not address Respondents' arguments that Petitioners relied upon disputed facts (*i.e.*, "unofficial" and incomplete statewide election returns that are not part of the record) or documents presented at the preliminary injunction hearing.

31

(Pa. 1969).  As to both Pennsylvania Constitutions, our Supreme Court interpreted that clause as referring to an amendment that had been previously submitted and rejected and not one that was never before submitted to the electorate.  *Id.*  For the reasons explained above, Proposed Constitutional Amendment 1 was not submitted to and rejected by the electorate in the 2016 Primary Election.  Accordingly, it may be placed before the electorate during the 2016 General Election without violating the five-year provision in Article XI, section 1.

Finally, Petitioners appear to seek relief previously denied by this Court—*i.e.*, consideration of Proposed Constitutional Amendment 1 as part of the 2016 Primary Election and the counting and certification of the votes cast in that election with respect to that ballot question.  The law of the case doctrine provides additional grounds to refuse this request.  The law of the case doctrine provides that Pennsylvania courts "should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter."  *Ario v. Reliance Ins. Co.*, 980 A.2d 588, 597 (Pa. 2009).  The Court's order dated April 20, 2016, denied Petitioners' injunctive relief and, by law, conclusively removed Proposed Constitutional Amendment 1 from the April 2016 Ballot.  Practicality and the law of the case doctrine dictate that our prior ruling cannot now be undone.  As a result, inclusion of Proposed Constitutional Amendment 1 on the November 2016 Ballot is not only appropriate under the law, but it is also necessary in order to afford the entire electorate an opportunity to vote on the amendment.

### F.  Mandamus Relief (Count IV)

Respondents argue that Petitioners improperly seek mandamus relief to compel the Secretary to count and certify the votes taken on Proposed Constitutional Amendment 1 in the 2016 Primary Election in accordance with his

constitutional and statutory duties.   "A writ of mandamus is 'an extraordinary remedy which compels official performance of a ministerial act or mandatory duty, as opposed to a discretionary act.'"  *Griffin v. Pa. Dep't of Corr.*, 862 A.2d 152, 154 n.1 (Pa. Cmwlth. 2004) (quoting *Africa v. Horn*, 701 A.2d 273, 275 (Pa. Cmwlth. 1975)).  A writ of mandamus may issue only where "the petitioners have a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists."  *Brown v. Levy*, 73 A.3d 514, 516 n.2 (Pa. 2013).  Mandamus will not issue where "it is apparent that the writ will be futile or ineffectual by reason of the inability of the respondent to comply therewith."  *Commonwealth ex rel. McLaughlin v. Erie Cnty.*, 100 A.2d 601, 604 (Pa. 1953).

Respondents argue that the duty Petitioners demand the Secretary to perform—*i.e.*, counting and certifying the 2016 Primary Election votes—is impossible, because H.R. 783, which this Court declined to enjoin, removed Proposed Constitutional Amendment 1 from the April 2016 Ballot.  As a result, not all voters were able to vote on the proposed amendment and any election results were unofficial and incomplete.  Also, Respondents argue that Petitioners have not established either a clear right to relief or a corresponding duty on the part of the Secretary, as the Secretary's duty to count and certify votes cast on a ballot question is only triggered when that question is placed before the electorate, which did not occur in connection with the April 2016 Ballot.  Finally, Respondents argue that an adequate remedy exists at law, namely that all qualified electors will be permitted to cast their vote on Proposed Constitutional Amendment 1 during the 2016 General Election.

We agree with Respondents that Petitioners, as a matter of law, are not entitled to mandamus relief for all the reasons enumerated above. Simply put, the Secretary can have no duty to count and certify votes on a ballot question not submitted to the electorate, and Proposed Constitutional Amendment 1 was not on the April 2016 Ballot. Thus, Petitioners' count for mandamus relief must fail.

## IV.   Conclusion

Accordingly, we deny Petitioners' application for summary relief, grant Respondents' application for summary relief, and enter judgment in favor of Respondents.

_____
P. KEVIN BROBSON, Judge

34

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| Senator Jay Costa, Pa. 43rd District, | : | |
| Senator Daylin Leach, Pa. 17th District, | : | |
| in their Official Capacities, and | : | |
| Senator Christine M. Tartaglione, Pa. | : | |
| 2nd District, in her Official Capacity | : | |
| and individually on behalf of qualified | : | |
| electors in the Commonwealth of | : | |
| Pennsylvania, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 251 M.D. 2016 |
| | : | |
| Secretary Pedro A. Cortes, Senator | : | |
| Joseph B. Scarnati, Pa. 25th District, | : | |
| and Senator Jacob Corman III, | : | |
| Pa. 34th District, each in their | : | |
| Official Capacities, | : | |
| Respondents | : | |

# O R D E R

AND NOW, this 6th day of July, 2016, upon consideration of the cross-applications for summary relief filed by the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M. Tartaglione (Petitioners) and by the Honorable Joseph B. Scarnati and the Honorable Jacob Corman III (Respondents), it is hereby ordered that Petitioners' application for summary relief is DENIED and Respondents' application for summary relief is GRANTED. Judgment is entered in favor of Respondents.

_____
P. KEVIN BROBSON, Judge

# Exhibit O

Received 7/21/2016 10:25:26 AM Supreme Court Middle District

Filed 7/21/2016 10:25:00 AM Supreme Court Middle District
100 MM 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

---

## NO._____

---

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Petitioners,**

**v.**

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Respondent.**

---

## EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF PURSUANT TO 42 Pa.C.S. § 726 FOR THE EXERCISE OF EXTRAORDINARY JURISDICTION

---

1.      Issues of immediate public importance compel Petitioners Richard A. Sprague, Esquire, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr. (collectively, "Petitioners") to respectfully petition this Honorable Court to assume plenary jurisdiction, pursuant to 42 Pa.C.S. § 726, over the matter captioned in the Commonwealth Court of Pennsylvania as *Richard A. Sprague et. al. v. Pedro A. Cortés*.

2.      Because Petitioners have a clear right to relief, and because swift resolution of this matter is critical to a fair election process, it is respectfully

submitted that this Application should be granted and that the matter should be decided on an expedited basis prior to August 8, 2016, the deadline by which Respondent Secretary of State Pedro A. Cortés, Esquire ("Respondent") must advertise the proposed constitutional amendment at issue.

## I.   INTRODUCTION

3.   Democracy requires that voters be given the information necessary to make informed decisions on matters of critical importance, such as when voting to approve or reject the current proposal to amend the Pennsylvania Constitution to raise the constitutionally-mandated retirement age for the Commonwealth's judicial officers.

4.   This case concerns an attempted infringement by public officials on the right grounded in the Pennsylvania Constitution for members of the electorate to be informed on matters for which they cast their votes.

5.    Respondent intends to present the voters of the Commonwealth with a ballot question that he has already acknowledged is so lacking in information about the proposed constitutional amendment to be voted on as to constitute a fraud on the electorate.

6.   In order to prevent the Pennsylvania electorate from being presented in the November 2016 general election with this misleading and unconstitutional ballot question regarding a proposed amendment to the Pennsylvania Constitution

that would raise the constitutionally-mandated judicial retirement age from 70 to 75, this Court should assume plenary jurisdiction over Petitioners' challenge to the ballot question, declare the ballot question to be in violation of Pennsylvania law, and enjoin the Secretary of the Commonwealth from presenting the misleading ballot question to Pennsylvania voters.

## II.   PARTIES

7.     Richard A. Sprague, Esquire, is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

8.     The Honorable Ronald D. Castille, former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a registered voter, a taxpayer of the Commonwealth of Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

9.     The Honorable Stephen Zappala, Sr., former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a registered voter, a taxpayer of the Commonwealth of

Pennsylvania, and he is eligible and intends to vote in the November 2016 general election in the Commonwealth of Pennsylvania.

10.     Pedro A. Cortés, Esquire is the Secretary of the Commonwealth of Pennsylvania, and in that capacity, he is responsible for determining and publishing the language that appears on statewide ballots concerning any proposed amendment to the Pennsylvania Constitution, including the proposed constitutional amendment that is the subject of this action.

## III.    FACTUAL OVERVIEW

11.     The facts underlying the matter captioned in the Commonwealth Court as *Richard A. Sprague et. al. v. Pedro A. Cortés* are set forth fully in the Complaint attached hereto as Appendix 1, which Petitioners incorporate by reference as through set forth fully herein and to which Petitioners respectfully direct the Court's attention.

12.     In the interest of preserving judicial resources, Petitioners provide herein only a brief overview of the facts set forth in the attached Commonwealth Court Complaint, which justify the exercise of this Court's extraordinary jurisdiction under 42 Pa.C.S. § 726.

13.     The Pennsylvania General Assembly proposes raising by 5 years the compulsory judicial retirement age set forth in Article V, §16(b) of the Pennsylvania Constitution.

14.     Under the General Assembly's proposal, which must be presented to the qualified electorate and approved by a majority of those voting thereon, the Pennsylvania Constitution would be amended to permit Supreme Court justices and inferior judicial officers to remain in office until the last day of the calendar year in which they attain the age of 75, rather than the age of 70 as currently required under the Pennsylvania Constitution.

15.     Respondent, who is charged under the Pennsylvania Election Code, 25 P.S. § 2621(c), with devising the "form and wording" of ballot questions regarding proposed constitutional amendments, developed for the April 2016 primary election a ballot question regarding the General Assembly's proposal to amend the Pennsylvania Constitution to raise the mandatory judicial retirement age from 70 to 75.

16.     Respondent's ballot question read as follows:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

(*See* Appx. 1, Ex. F.)

17.     Shortly before the April 2016 primary election, however, the General Assembly passed a concurrent resolution directing Respondent to remove the

5

proposed constitutional amendment from the April 2016 primary election ballot and place on the November 2016 general election ballot a question which misleadingly omits that the proposed amendment would increase the current constitutionally-mandated retirement age, and instead suggests that the proposed amendment would result in the inaugural imposition of a mandatory retirement age for Supreme Court justices, judges and magisterial district judges of the Commonwealth.

18.     Specifically, in H.R. 783, the General Assembly directed Respondent to present voters during the November 2016 general election with the following ballot question:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?

(*See* Appx. 1, Ex. J.)[1]

---

[1] A panel of the Commonwealth Court recently issued an Opinion upholding the process by which the General Assembly approved H.R. 783.  (*See* Appx. 1, Ex. N.)  **The Commonwealth Court's July 6, 2016 Opinion is unrelated to and has no bearing on the present matter**, as it does not address the propriety of the language of the ballot question regarding the General Assembly's proposed amendment to Article V, Section 16(b).  In its Opinion, however, the Commonwealth Court implicitly acknowledged that one cannot understand the effect and purpose of the proposed amendment without knowing the present law regarding judicial retirement.  In order to give meaning to its statement that the proposed amendment would "amend section 16(b) of Article V of the Pennsylvania Constitution to provide that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75," the Commonwealth Court felt it necessary to include a footnote explaining that "Section 16(b) of Article V of the Pennsylvania Constitution currently provides that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the year in which they attain the age of 70."  (*See* Appx. 1, Exhibit N at p. 3.)

19.     While the ballot question devised by Respondent for the April 2016 primary election notified voters that the proposed constitutional amendment would raise the constitutionally-mandated retirement age for the Commonwealth's Supreme Court justices, judges and magisterial district judges by 5 years, the ballot question drafted by the General Assembly gives no indication that the Constitution currently contains a mandatory retirement age for Supreme Court justices, judges and magisterial district judges lower than that sought to be imposed by the proposed constitutional amendment.[2]

20.     The General Assembly's ballot question gives the misimpression that voters are being asked to impose a mandatory judicial retirement age for the first time, rather than to raise the existing mandatory judicial retirement age.

21.     For this reason, when a group of senators asked this Court to revise the ballot question Respondent drafted for the April 2016 primary election by striking the language advising that jurists of the Commonwealth are currently required under the Pennsylvania Constitution to retire at the age of 70, Respondent

---

[2] The differences between the ballot question that the Secretary of the Commonwealth developed for the April 2016 primary election and the ballot question set forth by the General Assembly in H.R. 783 can be seen below, with the language the General Assembly removed from Secretary of the Commonwealth's ballot question stricken:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and ~~justices of the peace (known as~~ magisterial district judges~~)~~ be retired on the last day of the calendar year in which they attain the age of 75 years~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70~~?

submitted an opposition brief in this Court correctly arguing that the senators'
proposed ballot language would mislead voters into believing that the proposed
constitutional amendment would result in the inaugural imposition of a mandatory
judicial retirement age, rather than a raising of the current compulsory retirement
age by 5 years.

22.     In an inexplicable about-face, however, Respondent has since adopted
the very ballot language he previously advised this Court would amount to a fraud
on the Pennsylvania electorate and has stated his intention to place that misleading
ballot question before the electorate in the upcoming November 2016 general
election.

23.     Accordingly, on July 21, 2016, Petitioners filed a Complaint for
Declaratory and Injunctive Relief requesting that the Commonwealth Court declare
unlawful, and enjoin Respondent from presenting to the Pennsylvania electorate,
the following ballot question:

> Shall the Pennsylvania Constitution be amended to
> require that justices of the Supreme Court, judges, and
> magisterial district judges be retired on the last day of the
> calendar year in which they attain the age of 75 years?

(*See* Appx. 1.)

24.     As set forth more fully in the Commonwealth Court Complaint
attached hereto as Appendix 1, the ballot question developed by the General
Assembly and adopted by Respondent is designed to exploit and garner "yes"

8

votes from the many voters who are in favor of a restricted mandatory judicial retirement age but are unaware that there is currently a lower judicial retirement age set forth in the Constitution.

25.    Such a voter who is not well-versed in the Pennsylvania Constitution would understand the above-worded ballot question set forth by the General Assembly and adopted by Respondent to ask whether the Pennsylvania Constitution should be amended to institute a mandatory retirement age for Supreme Court justices, judges and magisterial district judges, and would be shocked to learn that they were in fact voting to raise the current constitutionally-mandated judicial retirement age by 5 years.

26.    Indeed, Respondent himself argued to this Court that the ballot question is patently misleading because it does not advise voters that "the *existing* language in the Constitution would be *changed* to 75 *instead of* 70" and that the ballot question "would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is no requirement at all." (*See* Appx. 1, Ex. H at p. 17) (emphasis in original).

## IV.    THIS COURT SHOULD EXERCISE EXTRAORDINARY JURISDICTION

27.    Pursuant to 42 Pa.C.S. § 726, this Court may assume plenary jurisdiction over any matter pending before any court of this Commonwealth

involving an issue of immediate public importance and "enter a final order or otherwise cause right and justice to be done."  42 Pa.C.S. § 726.

28.     This Court has consistently recognized the immediate public importance of issues related to the propriety of elections, as well as ballot questions, and the Court has assumed plenary jurisdiction over such controversies. *See, e.g.*, *Stander v.  Kelley*, 250 A.2d 474 (Pa. 1969); *Sprague v. Casey,* 550 A.2d 184 (Pa. 1988); *Cavanaugh* v. Davis, 440 A.2d 1380 (Pa. 1982); *Jackson v. Davis*, 493 A.2d 687 (1985).

29.     It is respectfully submitted that the Court should likewise assume plenary jurisdiction over the matter pending in the Commonwealth Court of Pennsylvania captioned *Richard A. Sprague et. al. v. Pedro A. Cortés* because the matter involves issues of significant public importance affecting the operation of government throughout the Commonwealth.

30.     The ballot question at issue will infringe on Petitioners' and their fellow voters' state constitutional right to vote on an amendment to the Pennsylvania Constitution, as well as their due process rights under the Pennsylvania Constitution.

31.     Further, the resolution of this matter will have a substantial impact on the election and holder of every judicial office in the Commonwealth, thereby

directly, substantially, and immediately affecting Petitioners, the candidates for those offices, the electorate, and the Bar of this Commonwealth.

32.    It is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court.  Consequently, Petitioners respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election.[3]

## V.    CONCLUSION

33.    Based on the foregoing Petition and the Commonwealth Court Complaint attached hereto as Appendix 1, Petitioners Richard A. Sprague, Esquire, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr. respectfully request that this Court exercise its authority under 42 Pa.C.S. § 726 and assume extraordinary jurisdiction over the matter captioned in the Commonwealth Court of Pennsylvania as *Richard A. Sprague et. al. v. Pedro A. Cortés*.

---

[3] The Pennsylvania Constitution requires that after a proposed amendment to the Pennsylvania Constitution is "agreed to by a majority of the members elected to each House . . . the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published."  Pa. Const. Art. XI, § 1.  In order to meet this constitutional requirement in advance of the November 8, 2016 general election, Respondent must advertise by ***no later than August 8, 2016*** the General Assembly's proposal to amend the Pennsylvania Constitution by raising the constitutionally-mandated judicial retirement age from 70 to 75.  (*See* Appx. 1, Ex. M.)  The advertisement will include the ballot question for the November 2016 general election regarding the proposed constitutional amendment.  Accordingly, Petitioners respectfully request that this Court assume plenary jurisdiction over the Commonwealth Court case captioned *Richard A. Sprague et. al. v. Pedro A. Cortés* as expeditiously as possible.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By:   /s/Richard A. Sprague
       RICHARD A. SPRAGUE (I.D. #04266)
       BROOKE SPIGLER COHEN (I.D. #204648)
       JORDANN R. CONABOY (I.D. #319337)
       WILLIAM H. TRASK (I.D. # 318229)
       The Wellington Bldg., Suite 400
       135 S. 19th Street
       Philadelphia, Pennsylvania 19103
       (215) 561-7681

Date: July 21, 2016

## PROOF OF SERVICE

I, Jordann R. Conaboy, Esquire, herby certify that on this 21st day of July,

2016, I caused true and correct copies of the foregoing Emergency Application for

Extraordinary Relief, with exhibits, to be served on the individuals listed below *via*

hand delivery:

<div align="center">

Pedro A. Cortés, Esquire
Secretary of the Commonwealth
**Office of the Secretary**
302 North Office Building
Harrisburg, PA 17120

Kathleen G. Kane, Esquire
Bruce L. Castor, Jr., Esquire
**Office of the Attorney General**
15th Floor, Strawberry Square
Harrisburg, PA 17120

Timothy F. Yates, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120

</div>

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

# Exhibit P

IN THE SUPREME COURT OF PENNSYLVANIA

MIDDLE DISTRICT

_____

No. 100 MM 2016

_____

RICHARD A. SPRAGUE, ET AL. V. SECRETARY PEDRO A. CORTÉS

_____

**ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF**

_____

## **INTRODUCTION**

Petitioners, in an eleventh hour entry into a months-long dispute over a proposed amendment to the Pennsylvania Constitution, ask this Court to exercise extraordinary jurisdiction over a matter pending in the Commonwealth Court captioned *Richard A. Sprague et al. v. Pedro A. Cortés*, No. 409 M.D. 2016. While the timing of Petitioners' complaint and application is troubling,[1] and while

_____

[1] The ballot question language about which Petitioners complain was adopted by the General Assembly in H.R. 783 on April 11, 2016. *See* Emergency Appl. Extraordinary Relief, Appx. 1, ¶ 43. The Secretary, in order to resolve the uncertainty surrounding the ballot question and to ensure that the ballot question would be properly presented to the voters in November, advised Commonwealth Court that he intended to present the ballot question required by H.R. 783 to the Office of the Attorney General for approval. *See* Resp't's Br., *Costa v. Cortés* at 22, No. 251 M.D. 2016 (May 13, 2016), R. Doc. No. 18. He further informed Commonwealth Court that the Office of the Attorney General approved the revised ballot question. *See* Resp't's Appl. Post-Submission Communication, *Costa v. Cortés*, No. 251 M.D. 2016 (June 15, 2016), R. Doc. No. 25. And yet, Petitioners waited for another month, until July 21, 2016, to file the instant action and to seek this Court's intervention. Petitioners could have filed this action at least two months ago. Petitioners' delay is especially concerning considering that an altered ballot question

Secretary of the Commonwealth Pedro Cortés (Secretary) believes the complaint to be without merit, given the public importance of the matter, the need for certainty in very short order, and the pendency before this Court of a closely-related case, *see* below, the Secretary does not oppose the Court's exercise of extraordinary jurisdiction.

Petitioners have asked this Court to decide the matter prior to August 8, 2016, which is the deadline by which the Secretary must first advertise the proposed constitutional amendment.  As a practical matter, however, the deadline is much earlier than August 8, 2016.  The first round of advertisements is scheduled to run in newspapers during the week of August 1, 2016.  The Secretary has already provided the text of the advertisements, including the language of the ballot question, to the Department of State's vendor.  The last date on which that language can be changed, and still meet the August 8, 2016 deadline, is Wednesday, July 27, 2016.[2]  Unless either this Court or the Commonwealth Court directs otherwise by that date, the ballot question language contained in H.R. 783

---

(which Petitioners suggest as a remedy) would be almost certain to miss the first round of constitutionally required advertising of the joint resolution.  *See* Pa. Const. art. XI, § 1.

[2] The second round of advertisements must be published no later than September 8, 2016.  The deadline for any changes to that advertisement is August 26, 2016.  The third and final round of advertisements must be published no later than October 8, 2016, with a deadline of September 23, 2016, for any changes to the advertisement.

2

and adopted by the Secretary will be advertised in newspapers across the state beginning on August 1, 2016.

If this Court is not able to rule on the merits of this case by Wednesday, July 27, 2016, then this matter should be consolidated with the already pending appeal in *Costa v. Cortes*, No. 70 MAP 2016.  Sending the case back to Commonwealth Court for disposition of this particular claim makes little sense, given that closely related issues are already pending before this Court.

## ARGUMENT

## I.   SECRETARY CORTÉS HAS THE STATUTORY AUTHORITY TO FORMULATE A BALLOT QUESTION.

Article XI, Section 1 of the Pennsylvania Constitution grants the General Assembly plenary authority to determine the "time" and "manner" of the presentation of the proposed constitutional amendment to the voters, subject only to the requirement that such presentation occur at least three months after action by the General Assembly.[3]  The General Assembly, pursuant to sections 201(c), 605 and 1110(b) of the Election Code, 25 P.S. §§ 2621(c), 2755 and 3010(b), gives the Secretary the authority to determine the form of this and other ballot questions.

---

[3] *See* Pa. Const. art. XI, § 1 (providing that "such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time *at least three months after being so agreed to by the two Houses*, as the General Assembly shall prescribe") (emphasis added).

Here, in accordance with their statutory powers and duties under the Election Code, the Secretary originally drafted and the Office of the Attorney General approved a ballot question on the judicial retirement age.  Following brief litigation in this Court regarding the wording of the proposed ballot question,[4] the General Assembly passed H.R. 783, which directed the Secretary to place a revised version of the judicial age ballot question on the General Election ballot on November 8, 2016.

Whether H.R. 783 is a valid exercise of the General Assembly's constitutional power, given the Secretary's explicit authority to draft ballot questions under the Election Code, is one of the issues pending on appeal before this Court in *Costa v. Cortes*, No. 70 MAP 2016.  Because of the uncertainty concerning both the nature and timing of court rulings regarding the ballot question, the Secretary voluntarily changed the form of the ballot question to conform to H.R. 783, and the Office of the Attorney General approved the revised

---

[4] Certain members of the Republican leadership in the State Senate filed an Emergency Application for Relief in this Court on March 6, 2016, objecting to the ballot question drafted by the Secretary and seeking a modification.  On March 22, 2016, the parties to that action filed a Joint Application for Emergency Relief that asked the Court to approve a stipulated resolution that would have, *inter alia*, moved the ballot question to the November 2016 Ballot with revised language.  The Secretary agreed to participate in the Joint Application for Emergency Relief in an effort to bring certainty to a process that had been rendered uncertain by the Emergency Application for Relief.  On March 23, 2016, this Court denied both the Joint Application for Emergency Relief and the Emergency Application for Extraordinary Relief.  *See* Order, *In re: Proposed Constitutional Amendment 1, Ballot Question*, No. 29 M.M. 2016 (Pa. Mar. 23, 2016).

ballot question.  Simply put, the Secretary had to take swift action on the ballot question in order to meet constitutionally-prescribed publication deadlines and to ensure that the question is properly presented to voters in November.  *See* Pa. Const. art. XI, § 1.  Moreover, H.R. 783, like any other act of the General Assembly, is entitled to a presumption of constitutionality, and no court has struck down the concurrent resolution.

## II. THE BALLOT QUESTION AS FORMULATED IN H.R. 783, ADOPTED BY THE SECRETARY AND APPROVED BY THE OFFICE OF ATTORNEY GENERAL MEETS THIS COURT'S REQUIREMENT OF BEING FAIR, ACCURATE, AND CLEAR.

Under the Pennsylvania Constitution, questions on constitutional amendments must "fairly, accurately and clearly apprize the voter of the question or issue to be voted on."  *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969).  Where "the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions . . . it may be proper and necessary for a court to nullify an election.  But where the irregularity complained of could not reasonably have misled the voters," there is no cause for judicial relief. *Oncken v. Ewing*, 8 A.2d 402, 404 (Pa. 1939).

The ballot question as currently drafted and set to appear on the November ballot (prescribed by H.R. 783, independently adopted by the Secretary, and approved by the Office of the Attorney General) satisfies the *Stander* requirements. As the ballot question clearly and accurately states, if adopted by the voters, this

5

amendment would set the judicial retirement age at the end of the year in which the jurist turns 75.

### III. THE ELECTION CODE DOES NOT AUTHORIZE INDIVIDUAL MEMBERS OF THE VOTING PUBLIC TO EDIT THE SECRETARY'S BALLOT QUESTION LANGUAGE.

Of course, as with any Constitutional amendment, there are many ways to draft this question. The Election Code sets a limit of seventy-five words for a ballot question, 25 P.S. § 3010(b), providing the outer bounds for the Secretary as he drafts the wording. *See also Stander*, 250 A.2d at 419 ("a lengthy summary . . . could not have been printed on an election ballot"). At least three sections of the Election Code recognize that in many cases, there will be multiple valid ballot questions that could be developed, and it is the Secretary's task and ultimate discretion to develop the one that will appear on the ballot, subject to approval by the Attorney General. 25 P.S. §§ 2621(c), 2755, 3010(b) (Secretary's authority and duty to determine the form of ballot questions).

Ballot questions are not self-drafting. The Secretary has considered a number of different ways to phrase the question, and, for the reasons explained above, has now settled on one apparently not to the liking of Petitioners. But whether any particular phrasing, selected from the universe of permissible options, is "better" or "worse" than another, in the view of Petitioners (or other outsiders to the process who happen to have an opinion) is not properly part of the analysis.

The existence of one permissible form does not render all others impermissible. The validity of the present version ought to be analyzed on its own merits, and assessed as to whether it "fairly, accurately and clearly apprize[s] the voter of the question or issue to be voted on." *Stander*, 250 A.2d at 480.  It need not be held up against some supposedly superior version championed by interlopers.[5]

To the extent Petitioners' contentions have any merit—which they do not— any defect is wholly cured by the newspaper publications required under Article XI, Section 1 of the Pennsylvania Constitution, and the notices required to be posted in the polling place by section 201.1 of the Election Code, 25 P.S. § 2621.1. Voters will have the chance to examine the actual text of the changes to be wrought by their vote, along with the Office of the Attorney General's Plain English Statement[6] explaining the effects of the change.

---

[5] Were this Court to grant the requested relief – an order directing the Secretary to use the language that Petitioners prefer – then all future ballot questions would be subject to challenge by any voter who believes that he or she could do better.  As a practical matter, the Election Code must be read to grant the Secretary broad discretion as to the particular language that will appear on the ballot.  This Court should decline Petitioners' invitation to serve as the Secretary's editor.

[6] In accordance with Section 201.1 of the Election Code, 25 P.S. § 2621.1, the Plain English prepared by the Attorney General provides in part:

> Presently, the Pennsylvania Constitution provides that justices, judges, and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years.  Justices of the peace are currently referred to as magisterial district judges.
>
> If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain

The current ballot question meets all requirements in the law and should be used in the November election.

---

the age of 75 years rather than the last day of the calendar year in which they
attain the age of 70 years.

*See* Resp't's Appl. Post-Submission Communication, Ex. A, *Costa v. Cortes*, No. 251
M.D. 2016 (June 15, 2016), R. Doc. No. 25.  As noted above, this Plain English
Statement, in addition to being published in various newspapers, will be posted in at least
three places in all polling places.  *See* 25 P.S. § 2621.1.

## **CONCLUSION**

For the reasons set forth above, this Honorable Court should assume jurisdiction and the Secretary respectfully requests a ruling on the merits by Wednesday, July 27, 2016.  Alternatively, the Court should consolidate this action with the appeal currently pending before the Court at No. 70 MAP 2016.

Respectfully submitted,

*s/ Timothy E. Gates*
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*Counsel for Pedro A. Cortés,*
*Secretary of the Commonwealth*

Date:  July 25, 2016

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on July 25, 2016, I caused to be served a true and correct copy of the foregoing document titled Answer of Secretary of the Commonwealth Pedro A. Cortés to the Emergency Application for Extraordinary Relief to the following:

**VIA PACFile:**

| | |
|---|---|
| Richard A. Sprague, Esq. | Matthew H. Haverstick, Esq. |
| Brooke Spigler Cohen, Esq. | Mark E. Seiberling, Esq. |
| Jordan Richard Conaboy, Esq. | Joshua J. Voss, Esq. |
| William Howard Trask, Esq. | Kleinbard LLC |
| Sprague & Sprague | One Liberty Place, 46th Floor |
| 135 S. 19th Street, Suite 400 | 1650 Market Street |
| Philadelphia, PA 19103 | Philadelphia, PA  19103 |
| *Counsel for Applicants* | *Counsel for Amicus Curiae* |

 *s/ Timothy E. Gates*
TIMOTHY E. GATES
Chief Counsel
Pennsylvania Department of State

# Exhibit Q

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | 100 MM 2016 |
| | : | |
| | : | Emergency Application for Extraordinary |
| | : | Relief |
| Petitioners | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Respondent | : | |

## <u>ORDER</u>

**PER CURIAM**

**AND NOW,** this 27th day of July 2016, the Petitioners' Emergency Application for Extraordinary Relief is **GRANTED**.  The Secretary is directed to file an answer and any new matter to the complaint by Wednesday, August 3, 2016.  Thereafter, an expedited briefing schedule will be established for the parties to provide full briefing on the legal issue raised by Petitioners' complaint and/or any applications for summary relief filed in conjunction therewith.  <u>See</u> Pa.R.A.P. 1532(b).

Petitioners' Emergency Application to Strike the "Answer" of Amicus Curiae is **DISMISSED** as moot.

Chief Justice Saylor did not participate in consideration or decision of this matter.

# Exhibit R

Received 8/3/2016 10:06:03 AM Supreme Court Middle District

Filed 8/3/2016 10:06:00 AM Supreme Court Middle District
75 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Richard A. Sprague, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr., | : | |
| | : | |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 75 MAP 2016 |
| | : | |
| Pedro A. Cortés, Secretary of the Commonwealth, in his official capacity, | : | |
| | : | |
| Appellee | : | |
| | : | |

---

## ANSWER AND NEW MATTER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

OFFICE OF GENERAL COUNSEL
Denise J. Smyler, General Counsel

Timothy E. Gates, Chief Counsel
Department of State

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

Kathleen M. Kotula, Deputy Chief Counsel
Department of State

*Counsel for Respondent Pedro A. Cortés, Secretary of the Commonwealth*

DATE:  August 3, 2016

**IN THE SUPREME COURT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Richard A. Sprague, Hon. Ronald D. | : | |
| Castille and Hon. Stephen Zappala, Sr., | : | |
| | : | |
| Petitioners, | : | |
| | : | |
| v. | : | No. 75 MAP 2016 |
| | : | |
| Pedro A. Cortés, Secretary of the | : | |
| Commonwealth, in his official capacity, | : | |
| | : | |
| Respondent. | : | |

<u>**NOTICE TO PLEAD**</u>

You are hereby notified to file a written reply to Respondent's New Matter filed in response to Petitioners' Complaint for Declaratory and Injunctive Relief within twenty (20) days from service hereof.

<u>*s/ Timothy E. Gates*</u>
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

DATE:  August 3, 2016

## ANSWER

Respondent, Pedro A. Cortés, in his official capacity as Secretary of the Commonwealth of Pennsylvania ("Secretary"), by and through his undersigned counsel, hereby submits this Answer with New Matter to the Complaint for Declaratory and Injunctive Relief ("Complaint").

## I.   INTRODUCTION

The Pennsylvania General Assembly, acting pursuant to its authority in Article XI of the Pennsylvania Constitution, passed joint resolutions in 2013 and again in 2015 to propose an amendment to the Pennsylvania Constitution that would raise the judicial retirement age from 70 to 75.  The Secretary, in accordance with the duties imposed on him by the Election Code, drafted, and the Office of the Attorney General approved, the language for the ballot question.  Pursuant to the explicit text in the authorizing joint resolutions, the Secretary scheduled the ballot question for the General Primary to be held on April 26, 2016.

With less than eight weeks to go before the General Primary, and at a point on the election calendar when the county boards of election needed to finalize their civilian absentee and Election Day ballots, certain members of the Republican leadership in the State Senate filed an emergency application in this Court objecting to the ballot question drafted by the Secretary and seeking a modification of the language.  That litigation began a cycle of uncertainty that has plagued this ballot

question.  That cycle also includes: a concurrent resolution passed by the General Assembly two weeks before the primary election directing the Secretary to remove the ballot question from the General Primary ballot and place a revised version of the ballot question on the General Election ballot in November; another lawsuit (also pending before this Court), this time brought by certain members of the Democratic caucus of the State Senate, which included an unsuccessful attempt at a preliminary injunction one week before the primary election, over whether the concurrent resolution was properly enacted and what effect may be given to its provisions; and this most recent challenge, brought at a point in the process when the Secretary has finalized and cannot alter the first round of newspaper advertisements for the proposed constitutional amendment.

The Secretary, throughout the constitutional amendment process, has acted with diligence and vigilance, doing his best to fulfill his constitutional mandate, to follow the various directions of the General Assembly, and to keep county election officials and voters properly informed.

In June, while the *Costa v. Cortés* (Pa. Cmwlth., No. 251 M.D. 2016) case was pending in the Commonwealth Court, the Secretary was faced with the need to determine promptly what language to prepare[1] for inclusion in the constitutionally

---

[1] Various tasks must be completed prior to the final edit date for the advertisement to ensure that the Secretary is able to timely meet his obligation regarding advertising proposed amendments. Federal law requires the Secretary to publish the advertisements in Spanish in certain jurisdictions

mandated advertising set to begin in the first week of August.  At that time (as now), H.R. 783, a concurrent resolution passed by majorities in both chambers of the General Assembly, directed the Secretary to use the revised language rather than the language he had originally drafted, and no court had ordered otherwise.  Because the General Assembly's authority to specify the ballot question language through H.R. 783 was then (as now) uncertain, and because the need to prepare the advertisements was imminent, the Secretary endeavored to bring some certainty to the process, which has been anything but certain for the past several months, by amending the ballot question to conform to H.R. 783.  At no point in time did the Secretary decide that his original ballot question was flawed; rather, the Secretary recognized that there is more than one way to draft the ballot question, and, on that basis, submitted for the Office of the Attorney General's approval (which was granted) the same revised ballot question.  The need for certainty is what caused the Secretary to agree to the Senate Republican's ballot question in the initial round of litigation, and it is also what caused the Secretary to voluntarily amend the wording of the ballot question to conform to the concurrent resolution.  The driving forces behind these decisions by the Secretary have been the overall orderly administration of the

---

in Pennsylvania.  Therefore, once the text of the advertisement is finalized, it must be translated by an outside vendor and then reviewed by bilingual staff at the Department of State.  The printer then develops ad copy for the English and Spanish versions of the advertisements in numerous sizes for the various different-sized publications.  Each separate ad copy must be proofed and approved by the Department.  Any changes or corrections result in new ad copy that must once again be reviewed and approved.

election on the proposed amendment, the constitutionally-mandated pre-election advertisements, and the obligation that the proposed amendment is properly presented to voters.

To the extent this Court agrees with Petitioners in this case that the ballot question must be altered to expressly advise the voters of the General Assembly's proposal to raise the compulsory retirement age by five years, then the Court should consider the temporal factors that will impact the administration of the election.

For the ballot question to proceed on the November 2016 ballot, the first round of advertisements must be published in newspapers no later than August 8, 2016.  In order to meet that deadline, the Secretary had to reserve advertising space and provide the text of the advertisements, *including the language of the ballot question*, no later than July 27, 2016.  The deadline to provide or alter the text of the advertisement for the second round of publication is August 29, 2016, and the deadline to change the text for the October publication is September 26, 2016.

Besides the advertisements, in terms of the actual election itself, the sending of absentee ballots will begin in late August.  The county boards of election are required to send early military-overseas absentee ballots no later than August 30, 2016, and all other non-remote military-overseas absentee ballots must be sent no later than September 23, 2016.  The ballot question will be included with those absentee ballots.

There is still time, albeit very limited, for the Secretary to adjust to this latest round of uncertainty.  Should this Court deny Petitioners' requested relief in this matter, the Secretary is positioned to timely advertise the current ballot question and submit it to the electorate on the November 2016 ballot.  However, should this Court determine that the ballot question must be altered, the Secretary will need adequate time to revise the subsequent advertisements and notify the county boards of election of the revised ballot question for inclusion with absentee ballots.[2]  In light of this compressed timeline, the Secretary respectfully requests this Honorable Court to render a decision as expeditiously as possible.[3]

## II.   PARTIES

1.     It is ADMITTED that Richard A. Sprague is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, and a registered voter.  The Secretary is without sufficient information to ADMIT or DENY the remaining factual averments in the corresponding paragraph; therefore, they are DENIED.

---

[2] The Secretary can still modify the language of the ballot question, but in order to make the change and still meet the deadline of August 30, 2016, for the transmission of early military-overseas absentee ballots, the Secretary and the county boards of election urge this Court to take quick action.

[3] For this reason, the Secretary respectfully requests that this Court consider this matter on the briefing and without oral argument at a later session date.

2.      It is ADMITTED that the Honorable Ronald D. Castille, former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, and a registered voter.  The Secretary is without sufficient information to ADMIT or DENY the remaining factual averments in the corresponding paragraph; therefore, they are DENIED.

3.      It is ADMITTED that the Honorable Stephen Zappala, Sr., former Chief Justice of the Pennsylvania Supreme Court, is a resident and citizen of the Commonwealth of Pennsylvania, a member of the Pennsylvania Bar, and a registered voter.  The Secretary is without sufficient information to ADMIT or DENY the remaining factual averments in the corresponding paragraph; therefore, they are DENIED.

4.      ADMITTED, with the proviso that the Secretary's authority to determine and publish the specific language to be used on statewide ballot questions, including those concerning proposed constitutional amendments, is granted in statute by the General Assembly.

## III.   JURISDICTION

5.      It is ADMITTED that Commonwealth Court has jurisdiction over the present action pursuant to 42 Pa.C.S. § 761, and that this Honorable Court has

plenary jurisdiction over this action pursuant to 42 Pa.C.S. § 726.  The Secretary does not contest the jurisdiction of this Honorable Court.

## IV.   **BACKGROUND**

      6.    ADMITTED.

      7.    ADMITTED.

      8.    ADMITTED.

      9.    ADMITTED.

      10.    ADMITTED.

      11.    ADMITTED.

      12.    ADMITTED.

      13.    ADMITTED.

      14.    ADMITTED.

      15.    ADMITTED.

      16.    ADMITTED.

      17.    ADMITTED.

      18.    ADMITTED.

      19.    ADMITTED, with the qualification that both the House and Senate signed H.B. 90 on November 17, 2015, and filed the joint resolution with the Secretary that same day, accurately set forth in Petitioners' Exhibit E.

      20.    ADMITTED.

21.     ADMITTED.

22.     ADMITTED.

23.     ADMITTED.

24.     ADMITTED.

25.     It is ADMITTED that neither H.B. 79 nor H.B. 90 prescribe the language to be used in a ballot question, in either specific or general terms.  To the extent the corresponding paragraph makes any conclusions of law, no response is required.

26.     The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

27.     The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

28.     The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

29.     The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

30.    The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

31.    The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.

32.    It is ADMITTED that members of the Senate leadership filed suit against the Secretary on March 6, 2016, seeking to strike certain terms and phrases from the proposed ballot question.  The Secretary is without sufficient information to ADMIT or DENY the remaining averments in the corresponding paragraph; therefore, they are DENIED.

33.    It is ADMITTED that members of the Senate leadership filed suit against the Secretary on March 6, 2016, seeking to strike certain terms and phrases from the proposed ballot question.  The Secretary is without sufficient information to ADMIT or DENY the remaining averments in the corresponding paragraph; therefore, they are DENIED.

34.    It is ADMITTED, upon information and belief, that former Justice Eakin resigned his seat on the Pennsylvania Supreme Court on March 15, 2016.  It is further ADMITTED that members of the Senate leadership filed suit against the Secretary on March 6, 2016, seeking to strike the terms and phrases from the

proposed ballot question as set forth in the corresponding paragraph of the Complaint.  The Secretary is without sufficient information to ADMIT or DENY the remaining averments in the corresponding paragraph; therefore, they are DENIED.

    35.    ADMITTED.

    36.    ADMITTED.

    37.    ADMITTED.

    38.    ADMITTED.

    39.    It is ADMITTED only that at some point in the litigation, the Senators and the Secretary came to an understanding necessary to permit them to submit a joint stipulation, accurately reproduced in Petitioners' Exhibit I.  The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.

    40.    ADMITTED.

    41.    ADMITTED.

    42.    ADMITTED.

    43.    ADMITTED.

    44.    ADMITTED.

    45.    ADMITTED.

    46.    It is ADMITTED only that H.R. 783 directs the Secretary to use specific wording for the ballot question.  The remainder of the averments and

characterizations contained in the corresponding paragraph are specifically DENIED.  To the extent the corresponding paragraph contains conclusions of law, no response is required.

47.    It is ADMITTED that H.R. 783 directs the Secretary to place the proposed constitutional amendment on the General Election ballot on November 8, 2016, and to use specific wording, as accurately set forth in the corresponding paragraph.  By way of further answer, to the extent that Petitioners merely cite the language of the concurrent resolution, the resolution speaks for itself.

48.    ADMITTED.

49.    It is ADMITTED that the two versions of the ballot question differ, as indicated in ¶ 48 of Petitioners' Complaint.  By way of further response, the averments contained in the corresponding paragraph refer to the language of H.R. 783 and the Secretary's ballot question, both of which speak for themselves.  The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.  To the extent the corresponding paragraph contains conclusions of law, no response is required.

50.    ADMITTED.

51.    ADMITTED.

52.    ADMITTED.

53.    ADMITTED.

54.     It is ADMITTED that voters were presented with ballot materials containing the original language of the ballot question.  It is DENIED that primary election ballots "contained" the question as a matter of law.  Regardless of whether it was printed on the papers and programmed into the electronic voting systems, the passage of H.R. 783 removed the question from the ballot—the official ballot certification listing the candidates and questions to be voted on was amended to reflect its removal.  The ballot question appearing on the ballot in April 2016 was of no legal consequence.

55.     It is ADMITTED only that Petitioners' Exhibit L accurately represents the Pennsylvania Department of State's website.  The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.  To the extent the corresponding paragraph contains conclusions of law, no response is required.

56.     This paragraph is a conclusion of law to which no response is required.

57.      ADMITTED.

58.     ADMITTED.

59.     ADMITTED.

60.     This paragraph is a conclusion of law to which no response is required. To the extent that Petitioners merely cite language in the Commonwealth Court's opinion, the opinion speaks for itself.

12

61.     This paragraph is a conclusion of law to which no response is required. To the extent that Petitioners merely cite language in the Commonwealth Court's opinion, the opinion speaks for itself.

62.     This paragraph is a conclusion of law to which no response is required.

63.     ADMITTED.

64.     ADMITTED.

65.     ADMITTED.

66.     ADMITTED.

67.     This paragraph is a conclusion of law to which no response is required.

68.     This paragraph is a conclusion of law to which no response is required.

69.     It is ADMITTED only that the Secretary stated his intention to adopt the ballot question contained in H.R. 783, as accurately set forth in Petitioners' Exhibit M.  The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.

70.     It is ADMITTED only that the ballot question contained in H.R. 783 and adopted for use by the Secretary does not make any reference to the current retirement age of 70.  The remainder of the averments and characterizations contains in the corresponding paragraph are specifically DENIED.

71.     It is ADMITTED only that the ballot question contained in H.R. 783 and adopted for use by the Secretary does not make any reference to the current

retirement age of 70.   The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.  To the extent the corresponding paragraph contains conclusions of law, no response is required.

72.   It is ADMITTED only that Petitioners' Exhibit H represents the Secretary's brief.  By the way of further answer, to the extent that Petitioners merely cite the Secretary's brief, the brief speaks for itself.  The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.  To the extent the corresponding paragraph contains conclusions of law, no response is required.

73.   This paragraph is a conclusion of law to which no response is required. To the extent that Petitioners merely cite language in a court's opinion, the opinion speaks for itself.

74.   This paragraph is a conclusion of law to which no response is required. To the extent that Petitioners merely cite language in a court's opinion, the opinion speaks for itself.

75.   This paragraph is a conclusion of law to which no response is required. To the extent that Petitioners merely cite language in a court's opinion, the opinion speaks for itself.

76.   This paragraph is a conclusion of law to which no response is required.

77.    This paragraph is a conclusion of law to which no response is required.

14

78.   This paragraph is a conclusion of law to which no response is required.

79.   This paragraph is a conclusion of law to which no response is required.

80.   It is ADMITTED only that the question contained in H.R. 783 and adopted for use by the Secretary does not make any reference to the current retirement age of 70.   The remainder of the averments and characterizations contained in the corresponding paragraph are specifically DENIED.

81.   The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.   To the extent the corresponding paragraph contains conclusions of law, no response is required.

82.   The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.   To the extent the corresponding paragraph contains conclusions of law, no response is required.

83.   The Secretary is without sufficient knowledge to ADMIT or DENY the averments in the corresponding paragraph of the Complaint and they are therefore specifically DENIED.   To the extent the corresponding paragraph contains conclusions of law, no response is required.

## **COUNT I**

84.   The Secretary incorporates ¶¶ 1-83 as if fully set forth.

85.    This paragraph is a conclusion of law to which no response is required.

86.    This paragraph is a conclusion of law to which no response is required.

87.    This paragraph is a conclusion of law to which no response is required.

88.    This paragraph is a conclusion of law to which no response is required.

89.    This paragraph is a conclusion of law to which no response is required.

90.    This paragraph is a conclusion of law to which no response is required.

91.    This paragraph is a conclusion of law to which no response is required.

92.    This paragraph is a conclusion of law to which no response is required.

93.    This paragraph is a conclusion of law to which no response is required.

94.    This paragraph is a conclusion of law to which no response is required.

95.    This paragraph is a conclusion of law to which no response is required. To the extent the averments of this paragraph are factual in nature, they are specifically DENIED.

96.    This paragraph is a conclusion of law to which no response is required.

97.    This paragraph is a conclusion of law to which no response is required.

WHEREFORE, the Secretary respectfully requests the Court forego oral argument and rule on the merits, as briefed by the parties, as expeditiously as possible, and enter judgment, together with such further relief, as the Court deems appropriate and just.

## NEW MATTER

In further answer to the Complaint filed by Petitioners, the Secretary avers the following new matter:

98.   The Secretary incorporates ¶¶ 1-97 as if fully set forth.

99.   Petitioners' claims are barred in whole or in part by the doctrine of laches.

100.   Petitioners could have pursued relief as early as April 12, 2016, when the General Assembly signed H.R. 783, as set forth in Exhibit K to Petitioners' Complaint.

101.   If not in April 2016, Petitioners could have pursued relief on or about May 13, 2016, when the Secretary stated his intention to adopt the ballot question contained in H.R. 783, as set forth in Exhibit M to Petitioners' Complaint.

102.   Petitioners could have also pursued relief when the Secretary, through his application for leave to file post-submission communication filed in *Costa v. Cortés* (Pa. Cmwlth., 251 M.D. 2016, filed June 15, 2016), which the Commonwealth Court granted, submitted a letter to the court from Solicitor General Bruce L. Castor, Jr., dated June 14, 2016, wherein the Solicitor General, on behalf of the Office of the Attorney General, conveyed approval of the form of the ballot question, as set forth in H.R. 783.  *See* Ex. 1, Marks Aff. ¶ 12, at 2.

103.   For the ballot question to proceed on the November 2016 ballot, the first round of advertisements must be published in newspapers no later than August 8, 2016.  *See* Pa. Const. art. XI, § 1; *see also* Ex. 1, Marks Aff. ¶ 15, at 3.

104.   The first round of newspaper advertisements, including the language of the ballot question, began being published on August 2, 2016, with a majority of the advertisements scheduled to run in newspapers between August 3, 2016 and August 6, 2016.  *See* Ex. 1, Marks Aff. ¶ 17, at 3.

105.   The final edit date for the first round of advertisements was July 27, 2016.  *See* Ex. 1, Marks Aff. ¶ 16, at 3.

106.   Petitioners waited to pursue relief at a point in the amendment process where they were almost certain to miss the first round of constitutionally-required advertising of the joint resolution.

107.   The estimated cost for publishing the proposed constitutional amendment in each of the three months is over $230,000.  *See* Ex. 1, Marks Aff. ¶ 20, at 3.

108.   The estimated total cost for all three publications is $697,004.98.  *See* Ex. 1, Marks Aff. ¶ 20, at 3.

109.   The second round of advertisements is scheduled to be published between September 2, 2016 and September 8, 2016, with a final edit date of August 29, 2016.  *See* Ex. 1, Marks Aff. ¶ 18, at 3.

110.   The third round of advertisements is scheduled to be published between October 1, 2016 and October 7, 2016, with a final edit date of September 26, 2016. *See* Ex. 1, Marks Aff. ¶ 19, at 3.

111.   In order to properly effectuate the constitutionally-required advertisements, the Department of State requires lead time prior to the final edit date to translate the final text of the advertisement to Spanish, and to proof and approve the ad copy for the English and Spanish versions of the advertisement in numerous sizes for the various different-sized publications.  *See* Ex. 1, Marks Aff. ¶ 4, at 1.

112.   The county boards of election are required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an application no later than August 30, 2016.  *See* 25 P.S. § 3146.5(a) and 25 Pa.C.S. § 3508(b)(1); *see also* Ex. 1, Marks Aff. ¶ 21, at 3.

113.   The county boards of elections are required to transmit absentee ballots and balloting materials to all other covered uniformed-service and overseas voters who submitted an application no later than September 23, 2016.  *See* 25 P.S. § 3146.5(a) and 25 Pa.C.S. § 3508(b)(1); *see also* Ex. 1, Marks Aff. ¶ 21, at 3.

114.   No later than August 10, 2016, the county boards of election must prepare, and make available on the county's website, an election notice, which is used by covered uniformed-service and overseas voters in conjunction with the

Federal write-in absentee ballot, that includes the ballot question.  *See* 25 Pa.C.S. § 3514(a)(1) and (d); *see also* Ex. 1, Marks Aff. ¶ 22, at 3.

115.   Petitioners' claims are barred in whole or in part for failure to state a claim.

116.   Article XI, Section 1 of the Pennsylvania Constitution grants the General Assembly plenary authority to determine the "time" and "manner" of the presentation of the proposed constitutional amendment to the voters, subject only to the requirement that such presentation occur at least three months after action by the General Assembly.  *See* Pa. Const. art. XI, § 1.

117.   The General Assembly, pursuant to Sections 201(c), 605 and 1110(b) of the Election Code, 25 P.S. §§ 2621(c), 2755 and 3010(b), has given the Secretary the authority to determine the form of this and other ballot questions.

118.   In accordance with their statutory powers and duties under the Election Code, the Secretary originally drafted, and the Office of the Attorney General approved, a ballot question on the judicial retirement age.  *See* Ex. 1, Marks Aff. ¶ 7, at 2.

119.   Following brief litigation in this Court brought by the Senate leadership regarding the wording of the proposed ballot question, the General Assembly passed H.R. 783, which directs the Secretary to place a revised version of the judicial age

ballot question on the General Election ballot on November 8, 2016. *See* Ex. 1, Marks Aff. ¶ 9, at 2.

120.   Whether H.R. 783 is a valid exercise of the General Assembly's constitutional power, given the Secretary's explicit authority to draft ballot questions under the Election Code, is one of the issues pending on appeal before this Court in *Costa v. Cortés* (Pa., No. 70 MAP 2016).

121.   Because of the uncertainty concerning both the nature and timing of court rulings regarding the ballot question, the Secretary voluntarily changed the form of the ballot question to conform to H.R. 783, and the Office of the Attorney General approved the revised ballot question. *See* Ex. 1, Marks Aff. ¶ 10, at 2.

122.   The Secretary had to take swift action on the ballot question in order to meet constitutionally-prescribed publication deadlines and to ensure that the question is properly presented to voters in November 2016.

123.   Petitioners' claims are non-justiciable, including under the political question doctrine.

124.   Petitioners' claims are barred in whole or in part by the presumption that acts of the General Assembly are constitutional.

125.   Petitioners' claims are barred in whole or in part by the standard set forth in *Stander v. Kelley*, 250 A.2d 474 (Pa. 1969).

126.   Petitioners argue that the ballot question is misleading; however, Petitioners comprehend the ballot question and are able to articulate what is proposed to happen by the language.

127.   The plain English statement prepared by the Office of the Attorney General clearly states the purpose, limitations, and effects of the ballot question on the people of the Commonwealth.  *See* Ex. 1, Marks Aff. ¶ 12, at 2.

128.   The Office of the Attorney General's plain English statement, in addition to being published in newspapers as part of the pre-election advertisements, is required to be posted in at least three places in or about all polling places.  *See* 25 P.S. § 2621.1; *see also* Ex. 1, Marks Aff. ¶ 14, at 2.

129.   The county boards of election are also required to include the Office of the Attorney General's plain English statement, along with the text of the proposed amendment and the ballot question, in the notice of elections published in a newspaper in the county between three and 10 days before the election.  *See* 25 P.S. §§ 2621.1 and 3041; *see also* Ex. 1, Marks Aff. ¶ 13, at 2.

130.   Petitioners' claims are barred in whole or in part because the ballot question drafted by the Secretary in his discretion is entitled to great deference, and neither the Pennsylvania Constitution nor the Election Code authorizes individual members of the public to edit the ballot question.

WHEREFORE, the Secretary respectfully requests the Court forego oral argument and rule on the merits, as briefed by the parties, as expeditiously as possible, and enter judgment, together with such further relief, as the Court deems appropriate and just.

Respectfully submitted,

*s/ Timothy E. Gates*
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*Counsel for Pedro A. Cortés,*
*Secretary of the Commonwealth*

DATE:  August 3, 2016

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on August 3, 2016, I caused to be served a true and correct copy of the foregoing document titled Answer and New Matter of Secretary of the Commonwealth Pedro A. Cortés to Complaint for Declaratory and Injunctive Relief to the following:

**VIA PACFile and/or E-mail:**

Richard A. Sprague, Esq.
Brooke Spigler Cohen, Esq.
Jordan Richard Conaboy, Esq.
William Howard Trask, Esq.
Sprague & Sprague
135 S. 19th Street, Suite 400
Philadelphia, PA 19103
*Counsel for Petitioners*

George Bochetto, Esq.
Thomas E. Groshens, Esq.
John A. O'Connell, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Amicus Curiae Costa, Leach and Tartaglione*

Matthew H. Haverstick, Esq.
Mark E. Seiberling, Esq.
Joshua J. Voss, Esq.
Kleinbard LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA 19103
*Counsel for Amicus Curiae Corman and Scarnati*

 *s/ Timothy E. Gates*
Timothy E. Gates
Chief Counsel
Pennsylvania Department of State

24

## <u>VERIFICATION</u>

The undersigned, Jonathan Marks, Commissioner of the Bureau of Commissions, Elections and Legislation, verifies that the statements made in the foregoing Answer and New Matter of Secretary of the Commonwealth Pedro Cortés to Complaint for Declaratory and Injunctive Relief are true and correct to the best of his knowledge, information and belief.  The undersigned understands that statements therein are made subject to the penalties of 18 Pa.C.S § 4904 relating to unsworn falsification to authorities.

_____
Jonathan Marks
Commissioner
Bureau of Commissions, Elections
and Legislation
Pennsylvania Department of State

DATE:  August 3, 2016

# EXHIBIT 1

# AFFIDAVIT

I, Jonathan Marks, do hereby state and verify that the statements made below are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities and am making this statement under penalty of perjury.

1. I am employed by the Department of State (Department) as the Commissioner of the Bureau of Commissions, Elections and Legislation (BCEL). As part of my duties, I supervise the administration of the Department's duties relating to elections. Under my authority as Commissioner, I am responsible for managing the process by which the Department meets the constitutional requirements regarding the publication of proposed constitutional amendments.

2. Pursuant to Article XI, § 1 of the Pennsylvania Constitution, after the General Assembly passes a proposed constitutional amendment, the Secretary of the Commonwealth shall cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published in each of the three months prior to the next general election. If the next General Assembly also passes the proposed constitutional amendment, the Secretary of the Commonwealth shall again cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published at least three months after the General Assembly's vote and prior to being submitted to the qualified electors in the form of a ballot question.

3. The Department contracts with Mid-Atlantic Newspaper Services, Inc. (MANSI) Media for the provision of services related to the publication of proposed constitutional amendments.

4. Department staff work extensively with MANSI to effectuate the publication of proposed constitutional amendments in accordance with Article XI, § 1. In order to properly effectuate publication, the Department requires lead time prior to the final edit date to have an outside vendor translate the final text of the advertisement to Spanish, which must then be reviewed by bilingual staff at the Department. The printer then develops ad copy for the English and Spanish versions of the advertisements in numerous sizes for the various different-sized publications. Each separate ad copy must be proofed and approved by the Department. Any changes or corrections result in new ad copy that must once again be reviewed and approved.

5. On October 22, 2013, Joint Resolution 2013-3 (H.B. 79), proposing an amendment the constitution further providing for compensation and retirement of justices, judges, and justices of the peace, was filed with the Secretary of the Commonwealth.

6. On November 17, 2015, Joint Resolution 2015-1 (H.B. 90), again proposing an amendment the constitution further providing for compensation and retirement of

Marks Affidavit
Page 2

justices, judges, and justices of the peace, was filed with the Secretary of the
Commonwealth.

7.  The Secretary prepared a ballot question for Joint Resolution 2015-1, and the Office of
the Attorney General approved the ballot question and provided the plain English
statement to the Secretary on December 9, 2015.

8.  Pursuant to the explicit text in the authorizing joint resolutions, the Secretary scheduled
the ballot question for the General Primary to be held on April 26, 2016.

9.  House Resolution 783 of 2016 (H.R. 783), a concurrent resolution adopted by the
majorities in both houses of the General Assembly on April 12, 2016, directs the
Secretary of the Commonwealth to remove the ballot question for Proposed
Constitutional Amendment 1 (mandatory judicial retirement age) from the General
Primary ballot on April 26, 2016, and to place a revised version of the ballot question on
the General Election ballot on November 8, 2016.

10. Given the uncertainty due to the nature and timing of court rulings regarding the ballot
question, as well as the impending publication deadlines, the Secretary of the
Commonwealth voluntarily changed the form of the ballot question to conform to the text
of H.R. 783 and submitted it on May 31, 2016, to the Office of the Attorney General for
approval under the terms of 25 P.S. § 2621.1.  A copy of the transmission memorandum
to the Office of the Attorney General is attached hereto as Exhibit A.

11. Pursuant to the requirements of 25 P.S. § 2621.1, whenever a proposed constitutional
amendment shall be submitted to the qualified electors, the Attorney General shall
prepare a statement in plain English which indicates the purpose, limitations and effects
of the ballot question on the people of the Commonwealth.  The Secretary of the
Commonwealth is required to include such statement in the publications required by
Article XI, § 1 of the Pennsylvania Constitution and certify such statement to the county
boards of elections.

12. In a letter dated June 14, 2016, Solicitor General Bruce L. Castor, Jr., on behalf of the
Office of the Attorney General, conveyed approval of the form of the ballot question, as
set forth in H.R. 783, and transmitted a copy of the plain English statement to the
Department.  A copy of the letter and enclosures in attached hereto as Exhibit B.

13. As set forth in 25 P.S. §§ 2621.1 and 3041, the county boards of election must include
the plain English statement, along with the text of the proposed amendment and the ballot
question, in the notice of elections published by the board in a newspaper in the county
between three and 10 days before the election.

14. The county boards of election, in accordance with 25 P.S. § 2621.1, must also require that
at least three copies of the Attorney General's plain English statement be posted in or
about the polling place outside of the enclosed space for voting.

Marks Affidavit
Page 3

15. For the revised Proposed Constitutional Amendment 1 to be properly placed on the November 2016 ballot pursuant to the requirements of Article XI, § 1 of the Pennsylvania Constitution, the first round of advertisements must be published no later than August 8, 2016.

16. In order to meet that timeframe, advertising space had to be reserved in newspapers, and the Secretary had to provide the text of the advertisements, including the language of the ballot question, to MANSI no later than July 27, 2016.

17. The first round of newspaper advertisements, including the language of the ballot question, began being published on August 2, 2016, with a majority of the advertisements scheduled to run in newspapers between August 3, 2016 and August 6, 2016. A copy of the publication dates from MANSI is attached hereto as Exhibit C.

18. The second round of advertisements is scheduled to be published between September 2, 2016 and September 8, 2016, with a final edit date of August 29, 2016. *See* Exhibit C.

19. The third round of advertisements is scheduled to be published between October 1, 2016 and October 7, 2016, with a final edit date of September 26, 2016. *See* Exhibit C.

20. The estimated total cost for the three publications relating to the proposed constitutional amendment providing for the mandatory retirement of jurists is $697,004.98, with each round of advertisements estimated to cost approximately $232,000.00. *See* Exhibit C.

21. The county boards of election are required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an application no later than August 30, 2016, and to all other covered uniformed-service and overseas voters who submitted an application no later than September 23, 2016.

22. No later than August 10, 2016, the county boards of election must prepare, and make available on the county's website, an election notice, which is used by covered uniformed-service and overseas voters in conjunction with the Federal write-in absentee ballot, that includes the ballot question.

**Jonathan Marks, Commissioner**
**Bureau of Commissions, Elections**
**and Legislation**
**Department of State**

DATE:  August 3, 2016

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL



**SUBJECT:**    Proposed Constitutional Amendment 1 – Mandatory Judicial Retirement Age

**TO:**         Robert A. Mulle
Executive Deputy Attorney General
Office of Attorney General, Civil Law Division

Amy M. Elliott
Chief Deputy Attorney General
Legal Review Section
Office of Attorney General, Civil Law Division

**FROM:**    Timothy E. Gates
Chief Counsel
Department of State

**DATE:**    May 31, 2016

The Pennsylvania General Assembly, acting pursuant to its authority in Article XI of the Pennsylvania Constitution, passed joint resolutions in 2013 and again in 2015 to propose an amendment to Article V, Section 16(b) of the Constitution, which would raise the mandatory judicial retirement age from 70 to 75 years. Following each passage, and in accordance with the duties imposed on him by Article XI, the Secretary of the Commonwealth (Secretary) advertised the proposed amendment in 2014 and again in early 2016.

Pursuant to the Secretary's duties imposed on him by the Election Code, the Secretary drafted, and the Office of the Attorney General approved, the language for the ballot question. The Office of the Attorney General composed a "Plain English Statement" analyzing the effects of the proposed amendment. In addition to the text of the amendment, the ballot question and the Plain English Statement were published in the 2016 advertisements. This proposed amendment on judicial retirement age was designated Proposed Constitutional Amendment 1. Pursuant to the explicit text in the authorizing joint resolutions, it was scheduled for the 2016 General Primary to be held April 26, 2016.

On April 6, 2016, the House of Representatives passed House Resolution 783 (H.R. 783), a concurrent resolution, which (1) directed the Secretary to remove Proposed Constitutional Amendment 1 from the April 2016 ballot certification; (2) directed county election authorities to remove Ballot Question 1 from ballot materials; (3) directed the Secretary to disregard any votes

Exhibit A

cast on Proposed Constitutional Amendment 1, and not to certify any results; (4) directed the Secretary to place Ballot Question 1 on the ballot for the November 2016 General Election, using a specified wording; and (5) directed the Secretary to advertise Ballot Question 1 again in each of the three months leading up to the General Election on November 8, 2016. The Senate passed H.R. 783 on April 11, 2016.

Following the passage of H.R. 783, the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine Tartaglione, duly-elected members of the Pennsylvania Senate (Petitioners) sought relief in Commonwealth Court by filing a petition for review on April 14, 2016. Petitioners also filed an application requesting a preliminary injunction to enjoin the Secretary from implementing H.R. 783. The court held a hearing on April 19, 2016, and issued a decision the following day denying the preliminary injunction. In conformity with the court's order of April 20, 2016, the Secretary removed Proposed Constitutional Amendment 1 from the official ballot certification for the 2016 General Primary, and efforts were made at the polling places to inform voters of its status.

The merits of Petitioners' application for summary relief are currently pending before Commonwealth Court. The matter has been briefed by the parties and oral argument is scheduled for June 9, 2016.

For Proposed Constitutional Amendment 1 to proceed on the November 2016 ballot, the first rounds of advertisements must be published no later than August 8, 2016. Because the nature and timing of future court rulings creates uncertainty concerning the ballot question language that should be employed in the 2016 General Election, and in order to resolve that uncertainty in time for the pre-election advertising that must begin in August and be arranged in July, the Secretary has decided to revise the ballot question for Proposed Constitutional Amendment 1 to conform to the text contained in H.R. 783. The revised ballot question is attached to this memorandum for your review and approval.[1] The Secretary would appreciate if your office would transmit the Office of the Attorney General's approval of this wording, along with the Plain English Statement, to him as soon as possible, but in any event by June 15, 2016. The entire package, including the ballot question and the Plain English Statement, must be translated to Spanish and given to the Department of State's vendor, MANSI Media, by July 15, 2016, to ensure accurate and timely placement of the advertisements prior to the 2016 General Election.

---

[1] The language of the ballot question submitted here was previously addressed by the Office of the Attorney General in connection with an Application for Extraordinary Relief filed with the Supreme Court by the Pennsylvania Senate Majority Caucus and the President Pro Tempore and the Majority Leader of the Senate. *See In re: Proposed Constitutional Amendment 1, Ballot Question*, No. 29 M.M. 2016 (Pa. 2016).

If you have any questions regarding this matter, please do not hesitate to contact me.

Enclosure

cc:    The Honorable Pedro A. Cortés, Secretary of the Commonwealth
       H. Geoffrey Moulton, Jr., Deputy General Counsel, Governor's Office of General Counsel

REVISED PROPOSED BALLOT QUESTION 1

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
HARRISBURG, PA. 17120

16TH FLOOR
STRAWBERRY SQUARE
HARRISBURG, PA 17120
(717)787-3391

KATHLEEN G. KANE
ATTORNEY GENERAL

June 14, 2016

Timothy E. Gates
Chief Counsel
Department of State
301 North Office Building
401 North Street
Harrisburg, PA  17120

In Re:  Proposed Constitutional Amendment 1
Mandatory Retirement Age

Dear Mr. Gates:

The Office is in receipt of your May 31, 2016, request for approval of the wording of the ballot question for proposed Constitutional Amendment 1 and for transmission of a Plain English Statement. After reviewing your submission, the Office approves the wording of Revised Proposed Ballot Question 1. This approval should not be construed as an acknowledgement of the General Assembly's authority to designate the specific wording of the ballot question. This approval is limited to the form of the question as prepared by the Department of State, and presented to this Office on May 31, 2016.

Enclosed is a copy of the Plain English Statement originally transmitted to the Department on December 9, 2015. After reviewing all relevant material, the Office has determined that a revised Plain English Statement is unnecessary. The enclosed statement continues to adequately describe the purposes, limitations, and effects of the proposed ballot question. The transmission of the Statement should not be construed as acknowledging the General Assembly's authority to mandate, by resolution, that a particular Plain English Statement be utilized.

The Office of Attorney General is aware of the on-going litigation regarding proposed Constitutional Amendment 1. The Office takes no position on the litigation. The approval of the question and transmission of the Plain English Statement should only be viewed as the Office discharging its duties under the Election Code.

Sincerely,

Bruce L. Caston, Jr.
Solicitor General

Enclosure

Exhibit B

## REVISED PROPOSED BALLOT QUESTION 1

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

**Plain English Statement**
**Joint Resolution No. 2015-1**

Amending the Mandatory Judicial Retirement Age

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the justices of the Pennsylvania Supreme Court, judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia, and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.



## 2016 Constitutional Amendment - JUDGES BALLOT v1

| Run Date | Newspaper | Section-Location | Ad Size | Description | Column Width | Ad Depth | Total Cost |
|----------|-----------|------------------|---------|-------------|--------------|----------|------------|
| 8/2/2016 | EMLENTON PROGRESS-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 8/2/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,727.64 |
| 8/2/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $296.10 |
| 8/2/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $368.55 |
| 8/3/2016 | ADV - JUNIATA SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $350.91 |
| 8/3/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $669.69 |
| 8/3/2016 | CRANBERRY EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $696.15 |
| 8/3/2016 | DCNN - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,572.48 |
| 8/3/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 8/3/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | FOREST CITY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $464.52 |
| 8/3/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $686.07 |
| 8/3/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | x Half Page BW | Half Pg (10x13), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 8/3/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $870.66 |
| 8/3/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 6.5 | $310.05 |
| 8/3/2016 | MUNCY LUMINARY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 8/3/2016 | ORBISONIA VALLEY LOG | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 8/3/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | x Full Page BW | Full Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,120.58 |
| 8/3/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 8/3/2016 | PORT ROYAL TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 8/3/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/3/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 8/3/2016 | WELLSBORO-MANSFIELD GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/3/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 8/3/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $619.92 |
| 8/3/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $593.46 |
| 8/4/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNIATA COUNTIES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $969.57 |
| 8/4/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,611.20 |
| 8/4/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW | 1 | 1 | $3,611.20 |
| 8/4/2016 | ALTOONA MIRROR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,683.80 |
| 8/4/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,571.03 |
| 8/4/2016 | BEDFORD DAILY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.06 |
| 8/4/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,297.80 |
| 8/4/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,297.80 |
| 8/4/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $444.60 |

Exhibit C

| 8/4/2016 | BLOOMSBURG PRESS-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,938.51 |
|---|---|---|---|---|---|---|---|
| 8/4/2016 | BRADFORD ERA | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 8/4/2016 | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 8/4/2016 | BUTLER EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 8/4/2016 | CARLISLE SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 8/4/2016 | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $422.40 |
| 8/4/2016 | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 8/4/2016 | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,326.15 |
| 8/4/2016 | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.38 |
| 8/4/2016 | CORRY EVENING JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 8/4/2016 | DANVILLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 8/4/2016 | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Full Page BW | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $2,053.14 |
| 8/4/2016 | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $946.89 |
| 8/4/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,382.85 |
| 8/4/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,382.85 |
| 8/4/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,903.23 |
| 8/4/2016 | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $810.18 |
| 8/4/2016 | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 8/4/2016 | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $405.72 |
| 8/4/2016 | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $944.37 |
| 8/4/2016 | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 8/4/2016 | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 8/4/2016 | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $928.62 |
| 8/4/2016 | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 8/4/2016 | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $887.67 |
| 8/4/2016 | INDIANA GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,282.68 |
| 8/4/2016 | JOHNSTOWN TRIBUNE DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,945.25 |
| 8/4/2016 | KANE REPUBLICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $493.92 |
| 8/4/2016 | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,866.31 |
| 8/4/2016 | LATROBE BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/4/2016 | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 8/4/2016 | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $871.92 |
| 8/4/2016 | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 8/4/2016 | LITITZ RECORD-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $829.08 |
| 8/4/2016 | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $994.77 |
| 8/4/2016 | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (5col x 8) | 1 | 1 | $505.05 |
| 8/4/2016 | MAINLINE - CRESSON MAINLINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - EBENSBURG MOUNTAINEER-HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $842.31 |
| 8/4/2016 | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.99 |
| 8/4/2016 | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 8 | 10.5 | $1,603.56 |
| 8/4/2016 | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,124.55 |
| 8/4/2016 | MILTON-LEWISBURG STANDARD-JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 8/4/2016 | NEW BETHLEHEM LEADER-VINDICATOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 8/4/2016 | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |

| 8/4/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
|---|---|---|---|---|---|---|---|
| 8/4/2016 | OIL CITY DERRICK-FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,112.20 |
| 8/4/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,054.87 |
| 8/4/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 8/4/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 8/4/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 8/4/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,906.32 |
| 8/4/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $26,906.32 |
| 8/4/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 8/4/2016 | TRIBUNE-REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,670.19 |
| 8/4/2016 | KITTANNING LEADER TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 8/4/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 8/4/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 8/4/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,644.93 |
| 8/4/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $704.97 |
| 8/4/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,987.90 |
| 8/4/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $1,987.90 |
| 8/4/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.38 |
| 8/4/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 8/4/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $609.84 |
| 8/4/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $855.23 |
| 8/4/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,246.39 |
| 8/4/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $830.97 |
| 8/4/2016 | SHARON HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,216.34 |
| 8/4/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,290.87 |
| 8/4/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 8/4/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.95 |
| 8/4/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,199.52 |
| 8/4/2016 | TITUSVILLE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 8/4/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $826.56 |
| 8/4/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 8/4/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 8/4/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,460.15 |
| 8/4/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.77 |
| 8/4/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $877.59 |
| 8/4/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.77 |
| 8/4/2016 | WILKES BARRE CITIZENS VOICE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,051.28 |
| 8/4/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,895.00 |
| 8/4/2016 | WILLIAMSPORT SUN-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 8/4/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 8/4/2016 | HAZLETON STANDARD-SPEAKER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,238.42 |
| 8/5/2016 | CARBONDALE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 8/5/2016 | GREENE COUNTY MESSENGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,207.08 |
| 8/5/2016 | HOY FIN DE SEMANA | Main News, RHP, FF | x Full Page BW | Full Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL | 1 | 1 | $1,578.95 |
| 8/5/2016 | MILFORD PIKE COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $696.43 |
| 8/5/2016 | BLAIRSVILLE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,045.17 |
| 8/5/2016 | SNYDER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 8/5/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 8/6/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| **9/2/2016** | **CARBONDALE NEWS** | **Main News, RHP, FF** | **x Half Page BW** | **Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW** | **6** | **10.5** | **$464.31** |
| **9/2/2016** | **GREENE COUNTY MESSENGER** | **Main News, RHP, FF** | **x Half Page BW** | **Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW** | **6** | **10.5** | **$1,207.08** |
| **9/2/2016** | **HOY FIN DE SEMANA** | **Main News, RHP, FF** | **x Full Page BW** | **Full Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL** | **1** | **1** | **$1,578.95** |
| **9/2/2016** | **MILFORD PIKE COUNTY COURIER** | **Main News, RHP, FF** | **x Half Page BW** | **Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW** | **1** | **1** | **$696.43** |
| **9/2/2016** | **BLAIRSVILLE DISPATCH** | **Main News, RHP, FF** | **x Half Page BW** | **Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW** | **6** | **10.5** | **$1,045.17** |
| **9/2/2016** | **SNYDER COUNTY TIMES** | **Main News, RHP, FF** | **x Half Page BW** | **Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW** | **6** | **10.5** | **$497.07** |

| 9/2/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
|---|---|---|---|---|---|---|---|
| 9/3/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 9/6/2016 | EMLENTON PROGRESS-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 9/6/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,727.64 |
| 9/6/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $296.10 |
| 9/6/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $368.55 |
| 9/7/2016 | ADV - JUNIATA SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $350.91 |
| 9/7/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $669.69 |
| 9/7/2016 | CRANBERRY EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $696.15 |
| 9/7/2016 | DCNN - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,572.48 |
| 9/7/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 9/7/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | FOREST CITY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $464.52 |
| 9/7/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $686.07 |
| 9/7/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | x Half Page BW | Half Pg (10x13), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 9/7/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $870.66 |
| 9/7/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 6.5 | $310.05 |
| 9/7/2016 | MUNCY LUMINARY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 9/7/2016 | ORBISONIA VALLEY LOG | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 9/7/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | x Full Page BW | Full Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,120.58 |
| 9/7/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 9/7/2016 | PORT ROYAL TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 9/7/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 9/7/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 9/7/2016 | WELLSBORO-MANSFIELD GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 9/7/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 9/7/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $619.92 |
| 9/7/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $593.46 |
| 9/8/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNIATA COUNTIES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $969.57 |
| 9/8/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,611.20 |
| 9/8/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW | 1 | 1 | $3,611.20 |
| 9/8/2016 | ALTOONA MIRROR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,683.80 |
| 9/8/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,571.03 |
| 9/8/2016 | BEDFORD DAILY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.06 |
| 9/8/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,297.80 |
| 9/8/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,297.80 |
| 9/8/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $444.60 |
| 9/8/2016 | BLOOMSBURG PRESS-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,938.51 |
| 9/8/2016 | BRADFORD ERA | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 9/8/2016 | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 9/8/2016 | BUTLER EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 9/8/2016 | CARLISLE SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 9/8/2016 | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $422.40 |
| 9/8/2016 | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 9/8/2016 | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,326.15 |
| 9/8/2016 | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.38 |
| 9/8/2016 | CORRY EVENING JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 9/8/2016 | DANVILLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 9/8/2016 | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Full Page BW | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $2,053.14 |

| 9/8/2016 | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $946.89 |
|---|---|---|---|---|---|---|---|
| 9/8/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,382.85 |
| 9/8/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,382.85 |
| 9/8/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,903.23 |
| 9/8/2016 | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $810.18 |
| 9/8/2016 | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 9/8/2016 | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $405.72 |
| 9/8/2016 | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $944.37 |
| 9/8/2016 | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 9/8/2016 | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 9/8/2016 | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $928.62 |
| 9/8/2016 | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 9/8/2016 | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $887.67 |
| 9/8/2016 | INDIANA GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,282.68 |
| 9/8/2016 | JOHNSTOWN TRIBUNE DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,945.25 |
| 9/8/2016 | KANE REPUBLICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $493.92 |
| 9/8/2016 | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,866.31 |
| 9/8/2016 | LATROBE BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 9/8/2016 | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 9/8/2016 | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $871.92 |
| 9/8/2016 | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 9/8/2016 | LITITZ RECORD-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $829.08 |
| 9/8/2016 | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $994.77 |
| 9/8/2016 | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (5col x 8) | 1 | 1 | $505.05 |
| 9/8/2016 | MAINLINE - CRESSON MAINLINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - EBENSBURG MOUNTAINEER-HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $842.31 |
| 9/8/2016 | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.99 |
| 9/8/2016 | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 8 | 10.5 | $1,603.56 |
| 9/8/2016 | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,124.55 |
| 9/8/2016 | MILTON-LEWISBURG STANDARD-JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 9/8/2016 | NEW BETHLEHEM LEADER-VINDICATOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 9/8/2016 | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |
| 9/8/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 9/8/2016 | OIL CITY DERRICK-FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,112.20 |
| 9/8/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,054.87 |
| 9/8/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 9/8/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 9/8/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 9/8/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,906.32 |
| 9/8/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $26,906.32 |
| 9/8/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 9/8/2016 | TRIBUNE-REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,670.19 |
| 9/8/2016 | KITTANNING LEADER TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 9/8/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 9/8/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 9/8/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,644.93 |
| 9/8/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $704.97 |
| 9/8/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,987.90 |
| 9/8/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $1,987.90 |
| 9/8/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.38 |
| 9/8/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 9/8/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $609.84 |

| Date | Publication | Main News | Page | Description | # | | Price |
|------|-------------|-----------|------|-------------|---|---|-------|
| 9/8/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $855.23 |
| 9/8/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,246.39 |
| 9/8/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $830.97 |
| 9/8/2016 | SHARON HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,216.34 |
| 9/8/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,290.87 |
| 9/8/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 9/8/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.95 |
| 9/8/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,199.52 |
| 9/8/2016 | TITUSVILLE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 9/8/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $826.56 |
| 9/8/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 9/8/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 9/8/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,460.15 |
| 9/8/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.77 |
| 9/8/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $877.59 |
| 9/8/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.77 |
| 9/8/2016 | WILKES BARRE CITIZENS VOICE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,051.28 |
| 9/8/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,895.00 |
| 9/8/2016 | WILLIAMSPORT SUN-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 9/8/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 9/8/2016 | HAZLETON STANDARD-SPEAKER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,238.42 |
| 10/1/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 10/4/2016 | EMLENTON PROGRESS-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 10/4/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,727.64 |
| 10/4/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $296.10 |
| 10/4/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $368.55 |
| 10/5/2016 | ADV - JUNIATA SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $350.91 |
| 10/5/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $669.69 |
| 10/5/2016 | CRANBERRY EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $696.15 |
| 10/5/2016 | DCNN - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,572.48 |
| 10/5/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 10/5/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | FOREST CITY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $464.52 |
| 10/5/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $686.07 |
| 10/5/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | x Half Page BW | Half Pg (10x13), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 10/5/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $870.66 |
| 10/5/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 6.5 | $310.05 |
| 10/5/2016 | MUNCY LUMINARY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 10/5/2016 | ORBISONIA VALLEY LOG | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 10/5/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | x Full Page BW | Full Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,120.58 |
| 10/5/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 10/5/2016 | PORT ROYAL TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 10/5/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 10/5/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 10/5/2016 | WELLSBORO-MANSFIELD GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 10/5/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 10/5/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $619.92 |
| 10/5/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $593.46 |
| 10/6/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNIATA COUNTIES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $969.57 |
| 10/6/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,611.20 |
| 10/6/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW | 1 | 1 | $3,611.20 |
| 10/6/2016 | ALTOONA MIRROR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,683.80 |
| 10/6/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,571.03 |

| 10/6/2016 | BEDFORD DAILY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.06 |
|---|---|---|---|---|---|---|---|
| 10/6/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,297.80 |
| 10/6/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,297.80 |
| 10/6/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/6/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/6/2016 | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $444.60 |
| 10/6/2016 | BLOOMSBURG PRESS-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,938.51 |
| 10/6/2016 | BRADFORD ERA | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 10/6/2016 | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 10/6/2016 | BUTLER EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 10/6/2016 | CARLISLE SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 10/6/2016 | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $422.40 |
| 10/6/2016 | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 10/6/2016 | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,326.15 |
| 10/6/2016 | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.38 |
| 10/6/2016 | CORRY EVENING JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 10/6/2016 | DANVILLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 10/6/2016 | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Full Page BW | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $2,053.14 |
| 10/6/2016 | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $946.89 |
| 10/6/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,382.85 |
| 10/6/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/6/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,382.85 |
| 10/6/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/6/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/6/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/6/2016 | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,903.23 |
| 10/6/2016 | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $810.18 |
| 10/6/2016 | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 10/6/2016 | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $405.72 |
| 10/6/2016 | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $944.37 |
| 10/6/2016 | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 10/6/2016 | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 10/6/2016 | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $928.62 |
| 10/6/2016 | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 10/6/2016 | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $887.67 |
| 10/6/2016 | INDIANA GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,282.68 |
| 10/6/2016 | JOHNSTOWN TRIBUNE DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,945.25 |
| 10/6/2016 | KANE REPUBLICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $493.92 |
| 10/6/2016 | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,866.31 |
| 10/6/2016 | LATROBE BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 10/6/2016 | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 10/6/2016 | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $871.92 |
| 10/6/2016 | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 10/6/2016 | LITITZ RECORD-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $829.08 |
| 10/6/2016 | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $994.77 |
| 10/6/2016 | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (5col x 8) | 1 | 1 | $505.05 |
| 10/6/2016 | MAINLINE - CRESSON MAINLINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/6/2016 | MAINLINE - EBENSBURG MOUNTAINEER-HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/6/2016 | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/6/2016 | MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/6/2016 | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/6/2016 | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $842.31 |
| 10/6/2016 | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.99 |
| 10/6/2016 | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 8 | 10.5 | $1,603.56 |
| 10/6/2016 | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,124.55 |
| 10/6/2016 | MILTON-LEWISBURG STANDARD-JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 10/6/2016 | NEW BETHLEHEM LEADER-VINDICATOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 10/6/2016 | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |

| Date | Publication | | | Description | | | Amount |
|---|---|---|---|---|---|---|---|
| 10/6/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 10/6/2016 | OIL CITY DERRICK-FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,112.20 |
| 10/6/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,054.87 |
| 10/6/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 10/6/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 10/6/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 10/6/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,906.32 |
| 10/6/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $26,906.32 |
| 10/6/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 10/6/2016 | TRIBUNE-REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,670.19 |
| 10/6/2016 | KITTANNING LEADER TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 10/6/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 10/6/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 10/6/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,644.93 |
| 10/6/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $704.97 |
| 10/6/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,987.90 |
| 10/6/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $1,987.90 |
| 10/6/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.38 |
| 10/6/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 10/6/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $609.84 |
| 10/6/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $855.23 |
| 10/6/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,246.39 |
| 10/6/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $830.97 |
| 10/6/2016 | SHARON HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,216.34 |
| 10/6/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,290.87 |
| 10/6/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 10/6/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.95 |
| 10/6/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,199.52 |
| 10/6/2016 | TITUSVILLE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 10/6/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $826.56 |
| 10/6/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 10/6/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 10/6/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,460.15 |
| 10/6/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.77 |
| 10/6/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $877.59 |
| 10/6/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.77 |
| 10/6/2016 | WILKES BARRE CITIZENS VOICE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,051.28 |
| 10/6/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,895.00 |
| 10/6/2016 | WILLIAMSPORT SUN-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 10/6/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 10/6/2016 | HAZLETON STANDARD-SPEAKER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,238.42 |
| 10/7/2016 | CARBONDALE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 10/7/2016 | GREENE COUNTY MESSENGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,207.08 |
| 10/7/2016 | HOY FIN DE SEMANA | Main News, RHP, FF | x Full Page BW | Full Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL | 1 | 1 | $1,578.95 |
| 10/7/2016 | MILFORD PIKE COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $696.43 |
| 10/7/2016 | BLAIRSVILLE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,045.17 |
| 10/7/2016 | SNYDER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 10/7/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| | Susquehanna Design and Printing | | | | | | $850.00 |
| | **TOTAL** | | | | | | **$697,004.98** |
| | Confidential and proprietary information of MANSI Media | | | | | | |

# Exhibit S

Received 8/4/2016 4:44:50 PM Supreme Court Middle District

Filed 8/4/2016 4:44:00 PM Supreme Court Middle District
75 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

## NO. 75 MAP 2016

### RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Appellants,**

**v.**

### PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Appellee.**

### APPLICATION FOR SUMMARY RELIEF OF PLAINTIFFS/APPELLANTS RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.

Plaintiffs/Appellants Richard A. Sprague, Esq., Hon. Ronald D. Castille, and Hon. Stephen Zappala, Sr. (collectively, "Plaintiffs") respectfully submit this Application for Summary Relief under Pennsylvania Rule of Appellate Procedure 1532(b) and, in support thereof, state as follows:

## **INTRODUCTION**

The Secretary's Answer to Plaintiff's Complaint simply requests from this Court a license to do the right and lawful thing in compliance with the Pennsylvania Constitution. Even now, facing the protestations of certain members

of the General Assembly, the Secretary is unwilling to expressly abandon the position he advanced less than 5 months ago when he argued before this Court that a ballot question in the very form now set to be presented to the electorate in the November 2016 general election—which omits reference to the current constitutionally-mandated retirement age and the fact that the amendment will raise it by five years—would mislead the voters of Pennsylvania.  The Secretary, by essentially limiting his request of this Court to a prompt decision—*any decision*—appears to tacitly acknowledge that this form of ballot question is no less deceiving now than it was in March when the Secretary sought to keep the form of wording of the question off the ballot in order to preserve the sanctity of the voting booth and the legitimacy of the constitutional amendment process in this Commonwealth.  Inferred from the Secretary's refusal to advocate for the ballot question as presently composed is a recognition by the Secretary that Pennsylvania voters are currently set to be presented in the November 2016 general election with a misleading ballot question devoid of the information necessary to make informed decisions on whether to approve or reject the proposed constitutional amendment. Just as the Secretary argued before this Court in March, any ballot question on the proposed constitutional amendment which does not advise voters of the current limitation on judicial tenure and that the current constitutionally-mandated judicial retirement age will "be *changed* to 75 *instead of* 70 . . . would likely leave the

voter wondering what the current requirement is—or worse yet, leave the voter

with the impression that there is no requirement at all." (*See* Secretary's March 11,

2016 Answer to the Emergency Application for Extraordinary Relief, Plaintiffs'

Complaint, Ex. H at p.7) (emphasis in original).

The Secretary contends, however, that a group of Pennsylvania senators and

the uncertainty resulting from their pending lawsuit compelled the Secretary's

decision to certify the presently-worded ballot question—which will undoubtedly

deceive voters—for placement on the November 2016 general election ballot.  To

relieve his uncertainty, the Secretary invites this Court to intercede and preserve

the Pennsylvania voters' ability to cast informed votes on the proposed

constitutional amendment before it is too late.

The posture of this case is unique.  Just over two weeks after Plaintiffs

petitioned this Court to exercise extraordinary jurisdiction, the parties submit to

this Court's authority a pure question of law and no material disagreement over the

controlling facts and issues set forth in Plaintiffs' Complaint.  The most pressing

concern right now is time.  As the Secretary advises in his Answer to Plaintiffs'

Complaint, if the Court agrees with the nearly identical positions articulated in

Plaintiffs' Complaint and in the Secretary's March 11, 2016 submission to this

Court—that the Pennsylvania electorate will be defrauded if presented with the

form of ballot question at issue in this case—then the Court should declare the

ballot question unlawful in the coming days to ensure sufficient time for the Secretary to comply with his constitutional and statutory responsibilities. The Plaintiffs agree with the Secretary.

The pleadings are now closed, no issues of material fact remain, and the parties have all taken the position before this Court at one time or another that the ballot question as presently worded does not satisfy the controlling legal standard announced in *Stander v. Kelley* because it does not "fairly, accurately and clearly appri[s]e the voter of the question or issue to be voted on." *Stander v.* Kelley, 250 A.2d 474, 480 (Pa. 1969). Accordingly, this Court should, as expeditiously as possible, declare unlawful the presently-worded ballot question and direct the Secretary to present voters in the November 2016 general election with a ballot question accurately advising that the proposed constitutional amendment will raise the current constitutionally-mandated judicial retirement age of 70 to age 75. Such an Order will ensure that voters are afforded the right to vote in the November 2016 general election on the General Assembly's proposal to amend the Pennsylvania Constitution to raise the current constitutionally-mandated judicial retirement age from 70 to 75, and it will preserve every voter's right to "be fully advised of proposed changes" to the Pennsylvania Constitution. *Commw. ex rel. Schnader v. Beamish*, 164 A. 615, 616-17 (Pa. 1932).

## PLAINTIFFS' APPLICATION FOR SUMMARY RELIEF

1.      Plaintiffs herby seek summary relief in the form of a declaratory judgment and injunction pursuant to Pennsylvania Rule of Appellate Procedure 1532(b), which provides that: "At any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear."  Pa.R.A.P 1532(b).

2.      On July 21, 2016, Plaintiffs filed in the Commonwealth Court of Pennsylvania a Petition for Review in the form of a Complaint seeking an Order: (1) declaring unlawful the ballot question the Secretary currently intends to present to the electorate in the November 2016 general election regarding the General Assembly's proposal to amend the Pennsylvania Constitution to raise the present constitutionally-mandated judicial retirement age from 70 to 75; (2) enjoining the Secretary from placing the ballot question on the November 2016 general election ballot in its current form; and (3) directing the Secretary to present the proposed constitutional amendment to the qualified voters of the Commonwealth of Pennsylvania in a ballot question that advises of the true nature of the proposed amendment, which is to amend the Pennsylvania Constitution to raise the compulsory judicial retirement age from 70, as is currently required under the Pennsylvania Constitution, to the proposed age of 75.  Also on July 21, 2016,

Plaintiffs petitioned this Court on an emergency basis to assume extraordinary jurisdiction over the Complaint Plaintiffs had filed in the Commonwealth Court.

3.      On July 27, 2016, this Court granted Plaintiffs' Emergency Application for Extraordinary Relief, assumed plenary jurisdiction over this case, and directed the Secretary to file an Answer to Plaintiffs' Complaint by August 3, 2016.

4.      On August 3, 2016, the Secretary filed an Answer to Plaintiffs' Complaint.

5.      The Secretary's Answer makes it clear that there are no material facts in dispute.

6.      The Secretary does not explicitly defend the ballot question as presently worded or aver that his intention to place the question on the November 2016 general election ballot is based on his determination that the ballot question clearly advises voters of the issue to be voted on, or that it withstands constitutional scrutiny.  The Secretary instead admits that political forces and the purported need to achieve "certainty" led him to determine that the presently-construed ballot question should be presented to voters in the November 2016 general election.  Moreover, the Secretary admits that he came before this Court less than 5 months ago and argued, consistent with the position advanced by Plaintiffs in this case, that presenting the electorate with the ballot question in its

present form would deprive voters of required information and deceive them in the voting booth.

7.     Indeed, the "WHEREFORE" clause of the Secretary's New Matter does not even request that the Court uphold the ballot question at issue.  Instead, the Secretary merely requests that the Court rule "as expeditiously as possible, and enter judgment, together with such further relief, as this Court deems appropriate and just."  (*See* Secretary's Answer and New Matter at p. 23.)

8.      Plaintiffs agree that expeditious relief is warranted.

9.     Plaintiffs' right to relief is clear.

10.    There is a risk, as articulated by the Secretary, that if this case is not resolved in the coming days then the electorate will be altogether deprived of the opportunity to vote in the November 2016 general election on the General Assembly's proposal to raise the constitutionally-mandated judicial retirement age from 70 to 75.

11.    Time is of the essence, there are no material facts in dispute, and all parties agree that the Court should resolve this matter as expeditiously as possible.

**WHEREFORE,** Plaintiffs request that this Honorable Court enter an Order (1) declaring unlawful the following ballot question: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which

7

they attain the age of 75?"; (2) precluding the Secretary from placing this question

on the November 2016 general election ballot; and (3) directing the Secretary to

present the voters in the November 2016 general election with a ballot question

accurately advising of the nature and purpose of the General Assembly's proposal,

which is to amend the Pennsylvania Constitution to raise the current

constitutionally-mandated judicial retirement age from 70 to 75.

Respectfully submitted,

**SPRAGUE & SPRAGUE**

By:  /s/ Richard A. Sprague
     RICHARD A. SPRAGUE (I.D. # 04266)
     BROOKE SPIGLER COHEN (I.D. # 204648)
     JORDANN R. CONABOY (I.D. # 319337)
     WILLIAM H. TRASK (I.D. # 318229)
     The Wellington Bldg., Suite 400
     135 S. 19th Street
     Philadelphia, Pennsylvania 19103
     (215) 561-7681

## **<u>VERIFICATION</u>**

I, Richard A. Sprague, Esquire, herby verify that the facts in the foregoing

document are true and correct to the best of my knowledge, information and belief.

I understand that the statements in the foregoing are made subject to the penalties

of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: August 4, 2016                          /s/ Richard A. Sprague
                                                        Richard A. Sprague, Esquire

## <u>PROOF OF SERVICE</u>

I, Jordann R. Conaboy, Esquire, herby certify that on this 4th day of August,

2016, I caused true and correct copies of the foregoing to be served on the

individuals listed below *via* the Court's electronic PACFile service and e-mail:

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent Pedro A. Cortés*

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

# Exhibit T

Received 8/9/2016 9:20:00 AM Supreme Court Middle District

Filed 8/9/2016 9:20:00 AM Supreme Court Middle District
75 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

---

## NO. 75 MAP 2016

---

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Appellant,**

**v.**

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Appellee.**

---

## BRIEF OF PLAINTIFFS/APPELLANTS
## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND
## HON. STEPHEN ZAPPALA, SR.

---

**SPRAGUE & SPRAGUE**
RICHARD A. SPRAGUE (I.D. # 04266)
BROOKE SPIGLER COHEN (I.D. # 204648)
JORDANN R. CONABOY (I.D. # 319337)
WILLIAM H. TRASK (I.D. # 318229)
The Wellington Bldg., Suite 400
135 S. 19th Street
Philadelphia, Pennsylvania 19103
(215) 561-7681

*Counsel for Plaintiffs/Appellants
Richard A. Sprague, Hon. Ronald
D. Castille and Hon. Stephen Zappala, Sr.*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ...................................................................................v

INTRODUCTION ............................................................................................1

I.     STATEMENT OF JURISDICTION ...............................................................2

II.    ORDER OR OTHER DETERMINATION IN QUESTION .........................2

III.   SCOPE AND STANDARD OF REVIEW.....................................................3

IV.    STATEMENT OF QUESTION INVOLVED.................................................3

V.     STATEMENT OF THE CASE ......................................................................3

       A.     FORM OF THE ACTION AND PROCEDURAL HISTORY.............3

       B.     STATEMENT OF FACTS....................................................................4

              1.     Constitutionally-Mandated Judicial Retirement Ages in
                     Pennsylvania ................................................................................4

              2.     The General Assembly's Current Proposal to Raise the
                     Constitutionally-Mandated Judicial Retirement Age ...............6

              3.     The Secretary's Original Ballot Question ................................7

              4.     Controversy Surrounding the Pennsylvania Judiciary
                     Casts Doubt Over the Electorate's Willingness to
                     Extend the Tenure of the Commonwealth's Jurists..................9

              5.     This Court's Denial of Attempts to Revise the Secretary's
                     Original Ballot Question..........................................................11

              6.     Further Attempts to Strike Portions of the Secretary's
                     Original Ballot Question..........................................................14

7.    The Secretary's Determination that Portions of His Original Ballot Question Should be Stricken ..........................14

8.    Plaintiffs' Challenge to the Wording of the Ballot Question ......................................................................17

VI.   SUMMARY OF ARGUMENT..................................................19

VII.  ARGUMENT..............................................................................21

A.   THE BALLOT QUESTION'S FAILURE TO INDICATE THAT THE PROPOSED CONSTITUTIONAL AMENDMENT WILL RAISE AN EXISTING COMPULSORY JUDICIAL RETIREMENT AGE BY FIVE YEARS RATHER THAN IMPOSE A COMPULSORY RETIREMENT AGE FOR THE FIRST TIME RENDERS IT FUNDAMENTALLY MISLEADING AND UNLAWFUL....................................................21

B.   NEITHER THE PUBLICATION OF THE ATTORNEY GENERAL'S PLAIN ENGLISH STATEMENT NOR THE PUBLICATION OF THE TEXT OF THE PROPOSED AMENDMENT CAN RENDER LAWFUL THE DEFECTIVE, MISLEADING BALLOT QUESTION .....................27

VIII. CONCLUSION..........................................................................30

CERTIFICATION OF COMPLIANCE

PROOF OF SERVICE

APPENDIX

"1"    COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF WITH EXHIBITS A-N

EXHIBITS TO APPENDIX 1

A. STAFF REPORT OF THE GENERAL ASSEMBLY OF THE COMMONWEALTH OF PENNSYLVANIA, BALLOT QUESTIONS

AND PROPOSED AMENDMENTS TO THE PENNSYLVANIA CONSTITUTION, A COMPILATION WITH STATISTICS FROM 1958 TO 2006

B. H.B. 79, 2013 REG. SESS. (PA. 2013)

C. LEGISLATIVE HISTORY OF H.B. 79, 2013 REG. SESS. (PA. 2013)

D. H.B. 90, 2015 REG. SESS. (PA. 2015)

E. LEGISLATIVE HISTORY OF H.B. 90, 2015 REG. SESS. (PA. 2015

F. PUBLIC NOTICE BY SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS FOR THE APRIL 26, 2016 PRIMARY ELECTION

G. MARCH 6, 2016 EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, AND SENATE MAJORITY LEADER JAKE CORMAN

H. MARCH 11, 2016 ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO THE EMERGENCY APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, AND SENATE MAJORITY LEADER JAKE CORMAN

I. MARCH 22, 2016 JOINT APPLICATION FOR EXTRAORDINARY RELIEF BY PENNSYLVANIA SENATE MAJORITY CAUCUS, SENATE PRESIDENT PRO TEMPORE JOE SCARNATI, SENATE MAJORITY LEADER JAKE CORMAN, SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS, THE PENNSYLVANIA DEPARTMENT OF STATE, AND OFFICE OF ATTORNEY GENERAL

J.  H.R. 783, 2016 REG. SESS. (PA. 2016)

K. HISTORY OF H.R. 783, 2016 REG. SESS. (PA. 2016)

L.  PENNSYLVANIA DEPARTMENT OF STATE, TUESDAY, APRIL
    26, 2016 OFFICIAL RETURNS

M. MAY 15, 2016 AFFIDAVIT OF JONATHAN MARKS,
    COMMISSIONER BUREAU OF COMMISSIONS, ELECTIONS
    AND LEGISLATION, DEPARTMENT OF STATE

N.  COSTA V. CORTES, NO. 251 M.D. 2016 (PA. COMMW. CT.
    JULY 6, 2016)

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Askew v. Firestone*,
421 So. 2d 151 (Fla. 1982) .......................................................... 23, 24

*Bergdoll v. Kane*,
731 A.2d 1261 (Pa. 1999) ............................................................. 27

*Commw. ex rel. Schnader v. Beamish*,
164 A. 615 (Pa. 1932) .................................................................. 26

*Costa v. Cortes*,
No. 251 M.D. 2016, 2016 Pa. Commw. LEXIS 310
(Pa. Commw. Ct. Apr. 20, 2016) ..................................................... 15

*Costa v. Cortes*,
No. 251 M.D. 2016, 2016 Pa. Commw. LEXIS 307
(Pa. Commw. Ct. July 6, 2016) .................................................. *passim*

*Driscoll v. Corbett*,
69 A.3d 197 (Pa. 2013) ................................................................ 4, 6

*Ex parte Tipton*,
93 S.E.2d 640 (S.C. 1956) ........................................................... 28, 29

*In re Proposed Constitutional Amendment 1, Ballot Question*,
No. 29 MM 2016 (Pa. Mar. 23, 2016) ............................................. 14

*Lane v. Lukens*,
283 P. 532 (Idaho 1929) ............................................................. 24, 28

*Stander v. Kelley*,
250 A.2d 474 (Pa. 1969) ......................................................... *passim*

*Stilp v. Commonwealth*,
905 A.2d 918 (Pa. 2006) ................................................................ 3

*Wadhams v. Bd. of Cty. Comm'rs*,
567 So. 2d 414 (Fla. 1990) ........................................................ 23, 26

**Constitution and Statutes**

Pa. Const., Art. V ...............................................................................*passim*

Pa. Const., Art. XI................................................................. 6, 7, 8

25 P.S. § 2621(c) ...................................................................7, 8

25 P.S. § 2621.1 ................................................................... 8

25 P.S. § 2755 ................................................................ 7, 8

42 Pa. C.S. § 726 ................................................................. 2

**Other**

26 Am. Jur. 2d *Elections* § 287 (2015) ................................ 22

**INTRODUCTION**

The rights at stake in this action are as fundamental as the issue is clear.  The question presently slated to appear on the ballot in the upcoming November 8, 2016 general election regarding a proposed amendment to the Pennsylvania Constitution's mandatory judicial retirement provision is manifestly deceptive and will deprive voters of their right to be adequately informed of what they are being asked to decide.  Defendant/Appellee Secretary of the Commonwealth Pedro A. Cortés (the "Secretary") intends to present the electorate with the following ballot question: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?"  Glaringly absent from this wording is any indication to voters that they are being asked to *raise* an *existing* constitutionally-mandated judicial retirement age by 5 years, from 70 to 75.  The question is unlawfully misleading and should not be permitted to appear on the election ballot in this form.

Indeed, the Secretary does not even argue to this Court that the ballot question passes constitutional muster and should therefore be upheld, because it is clear that the present ballot question wording is misleading.  Rather, the Secretary admits that the alleged need for "certainty" is the only reason he determined that the electorate in the November 2016 general election should be presented with a

ballot question that he previously argued to this Court would deceive voters. But the law requires that the ballot question fairly, accurately and clearly apprise voters of the issue to be voted on and thus precludes the Secretary from sacrificing clarity for certainty. To meet the legal standard set forth by this Court, any ballot question the Secretary presents to voters regarding the General Assembly's proposal to raise the constitutionally-mandated judicial retirement age to 75 must advise that the Constitution currently requires state court jurists to retire at the age of 70.

## I.     STATEMENT OF JURISDICTION

On July 27, 2016, this Court exercised its extraordinary jurisdiction powers pursuant to 42 Pa. C.S. § 726 and assumed original plenary jurisdiction over this matter involving constitutional issues of immediate public importance.

## II.    ORDER OR OTHER DETERMINATION IN QUESTION

This is an original jurisdiction matter. Thus, there is no prior determination or order under review. This matter concerns the following ballot question the Secretary intends to place on the November 2016 general election ballot, which Plaintiffs contend is misleading and unlawful, regarding the General Assembly's proposal to amend the Pennsylvania Constitution to raise the current mandatory judicial retirement age from 70 to 75:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and

2

magisterial district judges be retired on the last day of the
calendar year in which they attain the age of 75?

## III.   SCOPE AND STANDARD OF REVIEW

Where, as here, this Court has assumed plenary jurisdiction over the matter

and the question involved is legal, the "scope of review is plenary and [the] standard

of review is *de novo*." *Stilp v. Commonwealth*, 905 A.2d 918, 930 (Pa. 2006).

## IV.   STATEMENT OF QUESTION INVOLVED

Whether the Court should declare unlawful and strike the Secretary's ballot

question concerning the General Assembly's proposal to amend the Pennsylvania

Constitution to change the compulsory judicial retirement age from 70 to 75 where

the ballot question misleadingly fails to advise voters that the proposed amendment

will raise an existing constitutionally-mandated judicial retirement age by five

years rather than impose a new requirement.

Suggested Answer: Yes.

## V.   STATEMENT OF THE CASE

### A.   FORM OF THE ACTION AND PROCEDURAL HISTORY

On July 21, 2016, Plaintiffs/Appellants Richard A. Sprague, Hon. Ronald D.

Castille and Hon. Stephen Zappala, Sr. (collectively, "Plaintiffs") commenced this

action in the Commonwealth Court through the filing of a Complaint seeking

declaratory and injunctive relief.  On the same day, Plaintiffs filed with this Court

an Emergency Application for Extraordinary Relief, seeking this Court's exercise

3

of plenary jurisdiction over the action that Plaintiffs had initiated in the

Commonwealth Court.  This Court granted Plaintiffs' Emergency Application for

Extraordinary Relief and assumed plenary jurisdiction on July 27, 2016.

### B.   STATEMENT OF FACTS

#### 1.   Constitutionally-Mandated Judicial Retirement Ages in Pennsylvania

The current Pennsylvania Constitution, adopted in 1968, is the fifth to

govern the Commonwealth since the United States declared its independence in

1776.  The four previous Pennsylvania Constitutions—adopted in 1776, 1790,

1838 and 1874, respectively—did not prescribe any age by which Supreme Court

justices, judges and magisterial district judges of the Commonwealth were required

to retire.  Following a Constitutional Convention held in 1967 and 1968, however,

Pennsylvania voters adopted the presently-controlling Pennsylvania Constitution,

including a revised judiciary article imposing a mandatory retirement age for all of

the Commonwealth's judicial officers.

Specifically, Article V, Section 16(b) of the 1968 Pennsylvania Constitution,

as originally adopted, required that all judicial officers of the Commonwealth retire

immediately upon attaining the age of 70.  *See Driscoll v. Corbett*, 69 A.3d 197,

200 (Pa. 2013) ("Section 16(b), as adopted in 1968, stated: 'Justices, judges and

justices of the peace shall be retired upon attaining the age of seventy years.'").

This requirement remained in effect until 2001, when 67.5% of the qualified

4

electors approved the General Assembly's proposed amendment to Article V,

Section 16(b), by answering "yes" to the following ballot question:

> Shall the Constitution of Pennsylvania be amended to provide that
> justices of the Supreme Court, judges and justices of the peace shall
> be retired on the last day of the calendar year in which they attain the
> age of 70 years, ***rather than on the day they attain the age of 70***?

(*See* App'x 1 at Ex. A, p. 53 (Staff Report of the General Assembly of the

Commonwealth of Pennsylvania, Ballot Questions and Proposed Amendments to

the Pennsylvania Constitution, A Compilation with Statistics from 1958 to 2006)

(emphasis added).)  As a result of the voters' approval, Article V, Section 16(b) of

the Pennsylvania Constitution was amended in 2001 to require that the

Commonwealth's judicial officers need not retire on their 70th birthday, but

instead, may remain in office until the last day of the calendar year in which they

reach the age of 70.  (*Id.*)

In the years following the 2001 amendment to Article V, Section 16(b),

members of the General Assembly introduced multiple resolutions proposing to

further amend the Pennsylvania Constitution to either raise the constitutionally-

mandated judicial retirement age beyond 70 or to remove the mandatory retirement

age from the Constitution.  *See, e.g.,* H.B. 2657, 2010 Reg. Sess. (Pa. 2010); H.B.

2129, 2012 Reg. Sess. (Pa. 2012).  In 2013, in the wake of various unsuccessful

attempts to increase or abolish the mandatory retirement age through legislative

acts, several groups of Pennsylvania jurists "sought to renew the attack on Article V, Section 16(b) via multiple legal actions commenced in both federal and state courts." *Driscoll*, 69 A.3d at 200. This Court joined the federal courts in rejecting these legal challenges to Article V, Section 16(b), noting in a 2013 decision that the only way to increase or eliminate the constitutionally-mandated judicial retirement age "is to pursue further amendment to the Pennsylvania Constitution." *Id.* at 215.

> ### 2. The General Assembly's Current Proposal to Raise the Constitutionally-Mandated Judicial Retirement Age

On October 22, 2013, the General Assembly completed the first step of the constitutional amendment process, as set forth in Article XI, Section 1 of the Pennsylvania Constitution, which requires that any proposal to amend the Constitution must be approved by a majority vote of both houses of the General Assembly in two consecutive legislative sessions before being "submitted to the qualified electors of the State" and "approved by a majority of those voting thereon." Pa. Const. Art. XI, Sec. 1. On that date, the General Assembly passed H.B. 79, a joint resolution proposing to amend Article V, Section 16(b) to require that the Commonwealth's jurists retire on the last day of the year in which they attain the age of 75, rather than 70 as presently required by the Pennsylvania Constitution. (*See* App'x 1 at Ex. B (H.B. 79, 2013 Reg. Sess. (Pa. 2013)) and Ex.

C (H.B. 79 legislative history).)  In accordance with the requirements of Article XI, Section 1 of the Pennsylvania Constitution and H.B. 79, following the General Assembly's affirmative vote, the Secretary published notice of the proposed constitutional amendment in newspapers throughout the Commonwealth.  During the following legislative session, on November 16, 2015, the General Assembly passed H.B. 90, a joint resolution identical to the preceding session's H.B. 79, proposing to amend Article V, Section 16(b) to require that the Commonwealth's jurists retire on the last day of the year in which they attain 75, rather than 70 as the Constitution currently requires.  (*See* App'x 1 at Ex. D (H.B. 90, 2015 Reg. Sess. (Pa. 2015)) and Ex. E (H.B. 90 legislative history).)

### 3.     The Secretary's Original Ballot Question

Consistent with the requirements of the Election Code, 25 P.S. § 2621(c) and 25 P.S. § 2755, H.B. 90 directed the Secretary to devise a ballot question reflecting the General Assembly's proposed amendment to Article V, Section 16(b) and to submit that ballot question "to the qualified electors of this Commonwealth at the first primary, general or municipal election . . . which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly."

(App'x 1 at Ex. D (H.B. 90).)[1]  The Secretary, in accordance with the requirements of Article XI, Section 1 of the Pennsylvania Constitution, thereafter published notice of the proposed amendment in newspapers throughout the Commonwealth. These publications were accompanied, as required by the Election Code, by a "plain English statement" prepared by the Attorney General explaining "the purpose, limitations and effects of the ballot question on the people of the Commonwealth."  25 P.S. § 2621.1.

The public notice prepared by the Secretary explained that voters would be asked to approve or reject the General Assembly's proposed amendment to Article V, Section 16(b) by answering "yes" or "no" to the following ballot question developed by the Secretary:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, ***instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70***?

(App'x 1 at Ex. F (emphasis added).)  Election officials thereafter prepared ballots for the April 26, 2016 primary election containing the above question.

---

[1] The Election Code provides that the Secretary of the Commonwealth shall "certify to county boards of elections for primaries and elections . . .  the form and wording of constitutional amendments or other questions to be submitted to the electors of the State at large," and that "proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary of the Commonwealth . . . ."  25 P.S. § 2621(c), § 2755.

4.       **Controversy Surrounding the Pennsylvania Judiciary Casts Doubt Over the Electorate's Willingness to Extend the Tenure of the Commonwealth's Jurists**

While the General Assembly was considering its second, consecutive joint resolution proposing to amend the Pennsylvania Constitution to increase the constitutionally-mandated judicial retirement age from 70 to 75, the Pennsylvania Supreme Court became embroiled in statewide controversy, gaining national media attention and causing a well-known spike in negative opinions among the Commonwealth's electorate about the Pennsylvania judiciary.  In August 2015, following former Pennsylvania Supreme Court Justice Joan Orie Melvin's May 1, 2013 resignation from judicial service, the Court of Judicial Discipline of the Commonwealth of Pennsylvania entered an Opinion and Order officially removing her from office and deeming her ineligible for future judicial service as a result of her four felony convictions, including for theft/diversion of services and criminal conspiracy.  *See In re: Joan Orie Melvin Justice of the Supreme Court of Pennsylvania*, No. 7 JD 2012 (Aug. 14, 2015 Pa. Ct. of Jud. Discipline).

Later in 2015, Pennsylvania citizens, lawyers, politicians, and the Governor began calling for then-Justice Michael Eakin to resign from the Pennsylvania Supreme Court as a result of the public disclosure of racist and misogynistic emails the former Justice had exchanged with members of the judiciary, members of the Office of Attorney General, and other individuals and state officials.  On March

24, 2016, the Court of Judicial Discipline of the Commonwealth of Pennsylvania acknowledged former Justice Eakin's resignation from the Pennsylvania Supreme Court and imposed a $50,000 fine based on the finding that his use of a pseudonymous email address to exchange emails containing imagery of "sexism, racism, and bigotry" with officers of the court and state officials demonstrated the former Justice's "arrogance" and "seriously jeopardized the reputation of the judiciary." *See In re: J. Michael Eakin Justice of the Supreme Court of Pennsylvania*, No. 13 JD 2015 (Mar. 24, 2016 Pa. Ct. of Jud. Discipline).

Former Justice Orie Melvin's removal and Justice Eakin's resignation occurred in the wake of former Justice Seamus McCaffery's resignation from the Supreme Court. Former Justice McCaffery's judicial service ended as a result of a widely-publicized email scandal—similar to that which ensnared former Justice Eakin—over the exchange of pornographic, misogynistic, and racist emails. Meanwhile, as these controversies involving multiple Supreme Court Justices unfolded, the media scrutinized various state trial court judges and magisterial district judges who were criminally convicted and accused of engaging in misconduct. By the end of 2015, the mass media attention surrounding the Pennsylvania court system cast doubt over the electorate's willingness to extend the tenure of state court jurists.

### 5.    This Court's Denial of Attempts to Revise the Secretary's Original Ballot Question

Against this controversial backdrop, a group of legislators sought to revise the ballot question the Secretary had developed for the April 2016 primary election regarding the General Assembly's proposed amendment to Article V, Section 16(b). Specifically, these legislators sought to strike from the ballot question devised by the Secretary any reference to the embattled Supreme Court as well as any indication that the amendment would increase the constitutionally-mandated judicial retirement age by five years.

On March 6, 2016, eight days before then-Justice Eakin officially announced his resignation from the Pennsylvania Supreme Court, the Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joseph Scarnati, and Senate Majority Leader Jacob Corman filed an "Emergency Application for Extraordinary Relief" asking this Court to "strike the following terms and phrases" from the ballot question the Secretary drafted for the April 2016 primary election:

> Shall the Pennsylvania Constitution be amended to require that Justices ~~of the Supreme Court~~, judges and justices of the peace ~~(known as magisterial district judges)~~ be retired on the last day of the calendar year in which they attain the age of 75 years~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70~~?

(App'x 1 at Ex. G (Senators' Emergency Application for Extraordinary Relief ).)[2]

On March 11, 2016, the Secretary filed an Answer in Opposition to the Emergency Application for Extraordinary Relief, arguing that the Senators' Application should be denied because the form of the ballot question advocated for therein "would deny Pennsylvania voters relevant information regarding the proposed constitutional amendment." (App'x 1 at Ex. H, p. 7 (March 11, 2016 Answer of Secretary of the Commonwealth Pedro A. Cortés).)   In particular, the Secretary argued that "the phrase 'instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70' should remain on the ballot question" because any ballot question that does not advise voters that "the *existing* language in the Constitution would be *changed* to 75 *instead of* 70 . . . would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is no requirement at all." (*Id*. at p. 17 (emphasis in original).)   The Secretary further argued in his brief to this Court that the Senators' attempt to strike from the ballot question language apprising voters that the Constitution currently requires state court jurists to retire at the age of 70 would result in voters being deprived "of

---

[2] The Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joseph Scarnati, and Senate Majority Leader Jacob Corman are hereinafter referred to collectively as the "Senators."

relevant information on the ballot itself regarding the mandatory retirement age requirement as it currently exists in the Pennsylvania Constitution."  (*Id.* at p. 16.)

Just eleven days after the Secretary opposed the Senators' proposed form of ballot question, however, the Senators, the Secretary, and other state officials filed a Joint Application for Extraordinary Relief requesting that this Court approve a stipulation providing that the Secretary would: (1) remove from the April 26, 2016 primary election ballot the question the Secretary had initially developed for that election concerning the General Assembly's proposal to raise the mandatory judicial retirement age from 70 to 75; (2) direct the county boards of elections to do the same; and (3) place on the November 8, 2016 general election ballot the following question:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

(App'x 1 at Ex. I (Joint Application for Extraordinary Relief dated March 22, 2016).)[3]  On March 23, 2016, this Court entered an Order denying the Senators' Emergency Application for Extraordinary Relief and the Joint Application seeking

---

[3] This ballot question, which the Secretary intends to present to the electorate in the November 2016 general election, is nearly identical to the ballot question that the Secretary opposed in his March 11, 2016 filing with this Court.  The only two differences—both of which are irrelevant to this case—are that the Secretary's currently-proposed ballot question does not omit reference to the Supreme Court and substitutes "justices of the peace" with "magisterial district judges."

13

approval of the Stipulated Resolution. *See In re Proposed Constitutional Amendment 1, Ballot Question*, No. 29 MM 2016 (Pa. Mar. 23, 2016).

> **6.** **Further Attempts to Strike Portions of the Secretary's Original Ballot Question**

Following this Court's March 23, 2016 Order, groups of legislators introduced resolutions directing the Secretary to omit from the ballot question any reference to the current constitutional requirement that state court jurists retire at the age of 70—the same language that the Senators had unsuccessfully asked this Court to strike from the April 2016 ballot. In addition, the resolutions introduced in the General Assembly directed the Secretary to remove the proposed constitutional amendment from the April 2016 primary election ballot and to instead place the proposed amendment on the November 2016 general election ballot in a form set forth by the General Assembly.

On April 6, 2016, the House of Representatives approved one such resolution, H.R. 783, and the Senate approved the concurrent resolution on April 11, 2016. (App'x 1 at Ex. J (H.R. 783) and Ex. K (H.R. 783 legislative history).)

> **7.** **The Secretary's Determination that Portions of His Original Ballot Question Should be Stricken**

On April 14, 2016, three days after the General Assembly approved H.R. 783, a group of legislators opposed to the measure challenged it in the Commonwealth Court (the "*Costa* case"). The petitioners in that case, Senators

Joy Costa, Daylin Leach, and Christine M. Tartaglione, filed an Application for a

Preliminary Injunction seeking to enjoin the Secretary from implementing H.R.

783 on the grounds that the concurrent resolution: (1) unconstitutionally directed

the Secretary to infringe on the rights of voters who had already cast absentee

ballots; (2) should have been presented to the Governor for his approval; and (3)

compelled the Secretary to act contrary to his duties with respect to the legal

process governing the adoption of constitutional amendments. *Costa v. Cortes*,

2016 Pa. Commw. LEXIS 310, at *1 (Pa. Commw. Ct., Apr. 20, 2016).

Ultimately, the *Costa* case petitioners sought to prevent the General Assembly's

proposal to amend the Constitution to raise the constitutionally-mandated judicial

retirement age by 5 years from appearing on the November 2016 general election

ballot.

On April 20, 2016, the Commonwealth Court, in an unpublished

Memorandum Opinion by the Honorable P. Kevin Brobson, found that Senators

Costa, Leach, and Tartaglione did not meet the high burden required to obtain

preliminary injunctive relief and therefore declined to preliminarily enjoin H.R.

783 in advance of the April 2016 primary election. *Id.*  Since Judge Brobson's

decision came just six days before the April 2016 primary election, the Secretary's

previously-devised ballot question concerning the proposed constitutional

amendment to raise the judicial retirement age remained on the ballot, as the final

15

primary election ballots had already been distributed prior to Judge Brobson's decision.

As a result, although the Secretary was prohibited from conducting an official tally of the vote, the April 2016 primary election ballots in each precinct across the Commonwealth contained the following ballot question developed and certified by the Secretary:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

According to the Pennsylvania Department of State, of the 2,395,250 Pennsylvania voters who responded to the ballot question, 50.99% voted "no" and 49.01% voted "yes." (*See* App'x 1 at Ex. L (Pennsylvania Department of State, Tuesday, April 26, 2016 Official Returns).)

On July 6, 2016, a panel of the Commonwealth Court, in an Opinion authored by Judge Brobson, held that the General Assembly acted within its authority by passing the portions of H.R. 783 withdrawing the proposed constitutional amendment to Article V, Section 16(b) from the April 2016 primary election ballot and placing the proposed amendment on the November 2016 general election ballot. (*See* App'x 1 at Ex. N (*Costa*, 251 M.D. 2016 (Jul. 6,

2016)).)  The propriety of the language of the revised ballot question regarding the General Assembly's proposed amendment to Article V, Section 16(b) was neither raised nor addressed in the *Costa* case.

### 8.  Plaintiffs' Challenge to the Wording of the Ballot Question

On July 21, 2016, Plaintiffs filed their Complaint in the Commonwealth Court challenging the wording of the ballot question the Secretary intends to present to voters regarding the General Assembly's proposed constitutional amendment to raise the current constitutionally-mandated judicial retirement age from 70 to 75.  This was just fifteen days after the Commonwealth Court in *Costa* paved the way for a November 2016 vote on the proposed constitutional amendment.  Plaintiffs' Complaint alleges that the ballot question is unlawfully misleading because it does not advise that the Constitution currently requires state court jurists to retire at the age of 70, and will thus deceive voters into thinking they are being asked to impose a constitutionally-mandated judicial retirement age where none exists.  Plaintiffs therefore request the following relief: (1) a declaration that the ballot question is unlawful; (2) an injunction precluding the Secretary from placing the question as presently worded on the November 2016 general election ballot; and (3) an order directing the Secretary to present voters with a ballot question advising that the proposed amendment would result in the

current constitutionally-mandated judicial retirement age being raised from 70 to 75.

On the same day they filed their Complaint in the Commonwealth Court, July 21, 2016, Plaintiffs filed with this Court an Emergency Application for Extraordinary Relief requesting that this Court assume plenary jurisdiction over the Commonwealth Court action.  (*See* Emergency Application for Extraordinary Relief dated July 21, 2016.)  The Secretary did not oppose this Court's exercise of jurisdiction but simply advocated for a swift resolution.  (*See* Secretary's Answer to Plaintiffs' Emergency Application for Extraordinary Relief dated July 25, 2016.) On July 27, 2016, this Court assumed jurisdiction over the action, entering an Order granting Plaintiffs' Emergency Application for Extraordinary Relief and directing the Secretary to file an Answer to Plaintiffs' Complaint by August 3, 2016.

The Secretary timely filed an Answer and New Matter on August 3, 2016. (*See* Secretary's Answer and New Matter dated August 3, 2016.)  The Secretary's Answer and New Matter admits the majority of the factual averments in Plaintiffs' Complaint and does not request that the Court declare the currently-proposed ballot question lawful or uphold it.  In fact, the Secretary requests no relief other than that this Court render its determination "as expeditiously as possible."  (*Id.* at p. 23.)

18

Because the Secretary does not request that this Court uphold the ballot question at issue in this case and there are no genuine issues of material fact, Plaintiffs filed an Application for Summary Relief on August 4, 2016.  Plaintiffs' Application, which is currently pending before this Court, requests that the Court enter judgment in Plaintiffs' favor based on the pleadings that the Plaintiffs and the Secretary have filed to date.

## VI.   <u>SUMMARY OF ARGUMENT</u>

By asking whether the Constitution should be amended to require the Commonwealth's jurists to retire at age 75, but omitting that the Constitution presently provides for a mandatory judicial retirement age of 70, the ballot question that the Secretary intends to present to the electorate this November violates the Secretary's fundamental obligation to clearly and accurately apprise voters of the issue to be decided.  Simply, where, as here, the proposed constitutional amendment is to change existing language rather than to add new language, the ballot question must convey ***how*** the existing constitutional provision will be ***changed***, not merely what the new language will be.  As the Secretary has previously argued to this Court, without informing voters of the current mandatory judicial retirement age in the Pennsylvania Constitution, the ballot question concerning the General Assembly's proposed constitutional amendment to raise that age by five years is patently deceptive.  Voters both for and against restricting

19

the tenure of state court jurists will be misled by the ballot question into voting contrary to their intentions, and the election results will not reflect their true will. Such voter deception on an issue as important as amending the Constitution cannot be tolerated.

Moreover, as the Secretary has previously acknowledged, the fatally defective ballot question cannot be cured by supplemental information provided in the newspaper advertisements or postings of the "plain English statement" that the Election Code requires. It is the ballot, and not the supplemental notices, that is directly before the voter when his vote is cast. And the law is clear that the ballot question itself must fairly and accurately advise voters of the issue they are being asked to decide.

The misleading ballot question must be stricken, and the Secretary should be ordered to present voters in the November 2016 general election with a ballot question accurately advising that the proposed constitutional amendment will raise the current constitutionally-mandated judicial retirement age from 70 to 75.

## VII.  ARGUMENT

### A.   THE BALLOT QUESTION'S FAILURE TO INDICATE THAT THE PROPOSED CONSTITUTIONAL AMENDMENT WILL RAISE AN EXISTING COMPULSORY JUDICIAL RETIREMENT AGE BY FIVE YEARS RATHER THAN IMPOSE A COMPULSORY RETIREMENT AGE FOR THE FIRST TIME RENDERS IT FUNDAMENTALLY MISLEADING AND UNLAWFUL

This Court has prescribed the standard by which the lawfulness of a ballot question concerning a proposed constitutional amendment must be judged: "Does the question as stated on the ballot fairly, accurately and clearly appri[s]e the voter of the question or issue to be voted on?"  *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969).  The answer in this case is decidedly "no."  The ballot question that the Secretary proposes to present to the electorate asks only whether the Constitution should be amended to require Pennsylvania Supreme Court justices, judges, and magisterial district judges to retire at age 75, and not whether the current mandatory judicial retirement age of 70 should be increased by five years.  By omitting the key fact that the amendment seeks to *raise the current constitutionally-mandated judicial retirement age* rather than impose a compulsory retirement age for the first time, the ballot question the Secretary intends to present to the electorate in the November 2016 general election unlawfully fails to advise voters of the true nature and purpose of the proposed

21

amendment.  *See* 26 Am. Jur. 2d Elections § 287 (2015) ("An election ballot must advise the voters of the true meaning and ramifications of any constitutional amendment on which they are asked to vote."); *accord Stander*, 250 A.2d at 480 (Pa. 1969).

Indeed, the Secretary has made this precise argument to this Court in opposing the very ballot question language that he now seeks to present to the electorate.  In a March 2016 filing, the Secretary explained that omitting the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70" from the ballot question at issue would mislead the electorate.  (App'x 1 at Ex. H, pp. 16-17 ("Amending the Ballot Question in [this] manner . . . would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all.").)  The Secretary's reasoning holds equally true today, and the omission of this phrase or equivalent language from the current proposed ballot question renders it unlawfully deceptive.[4]

As the Secretary acknowledged in his March 2016 submission to this Court, there is an important distinction between the information a voter must have to understand the nature and purpose of a proposed constitutional amendment that

_____

[4] Notably, the Secretary does not advocate otherwise.  Rather than ask this Court to declare the currently-proposed ballot question lawful, the Secretary asks only that the Court promptly render a decision that "the Court deems appropriate and just."  (*See* Secretary's Answer and New Matter at p. 23.)

adds a new provision to the Constitution and one that changes the wording of an existing constitutional requirement.  (App'x 1 at Ex. H, pp. 17, 20-23.)  Where a proposed constitutional amendment will add an entirely new provision to the Constitution, voters may be sufficiently informed by a ballot question that reflects only what the new language will be.  But where, as here, a proposed constitutional amendment will *change the language of an existing provision* of the Constitution, voters cannot understand the true nature and purpose of the amendment without knowing the present state of the Constitution and the change to be made to it. Thus, in a case such as this one, the "issue to be voted on" is the manner in which the existing constitutional provision will be changed by the amendment, and the "question as stated on the ballot [must] fairly, accurately and clearly appri[s]e the voter" of this change by reference to the current constitutional requirement. *Stander*, 250 A.2d at 480; *see also, e.g., Wadhams v. Bd. of Cty. Comm'rs*, 567 So. 2d 414, 416 (Fla. 1990) (holding ballot question regarding proposed amendment to county charter was impermissibly deceptive where it contained the new provision as it would appear subsequent to amendment, which permitted Charter Review Board to meet only once every four years, but failed to inform voters that there was presently no restriction on such meetings and that the purpose of the amendment was to curtail the Board's right to meet); *Askew v. Firestone*, 421 So. 2d 151, 155-56 (Fla. 1982) (holding ballot question was unlawfully misleading where it stated

that amendment would prohibit former legislators and elected officers from lobbying before state government for a period of two years unless they file adequate financial interest disclosures, but failed to inform voters that there was already a total ban on such lobbying for a two-year period regardless of financial disclosure); *cf. Lane v. Lukens*, 283 P. 532 (Idaho 1929) (holding constitutional amendment was void where ballot question regarding the amendment asked if terms of office of governor and other state officials "shall be limited to four years" rather than whether their terms of office should extended from the existing two-year term to a four-year term).

The problem with the ballot question at issue here "lies not with what [it] says, but, rather with what it does not say": that the amendment seeks to raise the current compulsory judicial retirement age by five years. *Askew*, 421 So. 2d at 156. Without knowledge that the Pennsylvania Constitution presently mandates judicial retirement at age 70, the average voter will not understand from the ballot question in its present form that the nature and purpose of the proposed amendment is to raise the existing compulsory retirement age rather than to impose such a requirement for the first time.

The Commonwealth Court implicitly acknowledged in its *Costa* Opinion that reference to the current constitutionally-mandated judicial retirement age is necessary to understand the purpose of the proposed constitutional amendment. In

24

order to give meaning to the statement that the proposed amendment would "amend section 16(b) of Article V of the Pennsylvania Constitution to provide that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75," the Commonwealth Court felt it necessary to include a footnote explaining that "Section 16(b) of Article V of the Pennsylvania Constitution currently provides that Pennsylvania justices, judges, and magisterial district judges be retired on the last day of the year in which they attain the age of 70."  (App'x 1 at Ex. N, p. 3; *see also id.* at p. 4, n.4 (explaining that the proposed constitutional amendment "would raise the mandatory judicial retirement age to 75").)[5]

Significantly, the omission of any reference to the Pennsylvania Constitution's current mandatory judicial retirement age of 70 makes the presently-proposed ballot question misleading to, and likely to elicit unintended responses from, voters on both sides of the issue.  Voters in favor of restricting the tenure of state court jurists but who are unaware that the Pennsylvania Constitution currently

_____

[5] It is also telling, as the Secretary previously argued to this Court, that the ballot question on which the electors voted to amend the constitutional judicial retirement age provision to its current form contained precisely the type of comparative language that is needed in the instant ballot question.  In 2001, a majority of voters answered the following ballot question in the affirmative: "Shall the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, *rather than on the day they attain the age of 70*?" (App'x 1 at Ex. A, p. 53) (emphasis added).)

requires them to retire at age 70 will be misled into voting "yes" on the ballot question, when they would in fact oppose the measure if fully informed.  At the same time, voters who oppose limiting the tenure of judges but who are unaware of the current constitutionally-mandated judicial retirement age will be misled into voting "no" on the ballot question, when they would in fact favor the measure if they understood that a "no" vote would mean judges must retire five years earlier than the amendment proposes.  In either case, the ballot question as currently proposed is deceptive, and the results of an election using that form of ballot question will not reflect the true will of the voters.  As this Court has explained, such a result must not be permitted:

> The Constitution is the fundamental law of our Commonwealth, and in matters relating to alterations or changes in its provisions, the courts must exercise the most rigid care to preserve to the people the right assured to them by that instrument.  ***No method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes***.

*Commw. ex rel. Schnader v. Beamish*, 164 A. 615, 616-17 (Pa. 1932) (emphasis added); *see also Wadhams v. Bd. of Cty. Comm'rs*, 567 So.2d 414, 418 (Fla. 1990) ("Deception of the voting public is intolerable and should not be countenanced.")

The ballot question on the proposed constitutional amendment must inform voters of the current mandatory judicial retirement age of 70 in order to adequately advise of the proposed change the amendment will make: raising the current compulsory retirement age by five years.  Because the form of ballot question the

Secretary intends to place before the electorate in the November 2016 election

omits such necessary information, it cannot stand, and the relief Plaintiffs seek

from this Court should be granted.[6]

**B.   NEITHER THE PUBLICATION OF THE ATTORNEY GENERAL'S PLAIN ENGLISH STATEMENT NOR THE PUBLICATION OF THE TEXT OF THE PROPOSED AMENDMENT CAN RENDER LAWFUL THE DEFECTIVE, MISLEADING BALLOT QUESTION**

The Secretary, having previously advanced a contrary position before this

Court, appears to suggest in recent filings that the ballot question can omit

information necessary to apprise voters of the nature and purpose of the proposed

constitutional amendment so long as such information is included in the requisite

newspaper advertisements and postings at polling places.  (Secretary's New Matter

at ¶¶ 127-129, *but see* App'x 1 at Ex. H, p. 20.)  More specifically, the Secretary

seems to indicate that the misleading nature of the ballot question at issue in this

case can somehow be rectified by publication of the text of the proposed

constitutional amendment and the plain English statement authored by the

Attorney General.  (Secretary's New Matter at ¶¶ 127-129.)  These supplemental

publications, the Secretary contends, "clearly state[] the purpose, limitations and

---

[6] There can be no question that this Court has the authority to declare a ballot question unlawful and to grant appropriate relief. *See Bergdoll v. Kane*, 731 A.2d 1261 (Pa. 1999) (affirming order of the Commonwealth Court finding ballot question unlawful and declaring vote thereon null and void); *Stander*, 250 A.2d at 480 (adjudicating whether ballot question adequately and clearly informed voters of the issue to be voted on).

effects of the ballot question on the people of the Commonwealth." (*Id*.)  As this Court counseled in *Stander*, however, and as the Secretary previously argued before this Court, it is the ***ballot question itself***—not supplemental materials published in connection therewith—that must "fairly, accurately and clearly appri[s]e the voter of the question or issue to be voted on."  250 A.2d at 480.

Courts in other jurisdictions faced with this issue are in accord with *Stander*, persuasively and unequivocally holding that the ballot question itself must convey the meaning and ramifications of the proposed constitutional amendment.  In one such case, the South Carolina Supreme Court rejected the very argument advanced herein by the Secretary and explained its reasoning as follows:

> Respondents suggest, however, that whatever defect or insufficiency may have existed in the ballot was cured by the fact that the full text of the proposing resolution was posted in each voting place as required by [the South Carolina] Code. We do not agree. ***It is the ballot, not the posted notice, with which the voter comes into direct contact. The reasonable assumption is that he reads the question proposed on the ballot, and that his vote is cast upon his consideration of the question as so worded.***

*Ex parte Tipton*, 93 S.E.2d 640, 644 (S.C. 1956) (citations omitted) (emphasis added); *see also Lane v. Lukens*, 283 P. 532 (Idaho 1929) (holding that publication of the proposed amendment is distinct from the submission of the question to the voters on the ballot—"the only method of submitting a public question to the

28

individual voter"—and that the ballot question must advise of the "actual issue to be determined").

As in this case, when the ballot question—voters' only assured contact with the proposed amendment—is improperly or misleadingly worded, no effort to cure that defect through a separate, expository publication is effective. The "vote is cast upon [the voter's] consideration of the question as so worded." *Tipton*, 93 S.E.2d at 644. For this reason, the "first and most important question" in determining the propriety of a ballot question is, appropriately, "[d]oes the question ***as stated on the ballot*** fairly, accurately and clearly appri[s]e the voter of the question or issue to be voted on?" *Stander*, 250 A.2d at 480 (emphasis added).

The Secretary is familiar with this principal. Indeed, just five short months ago, the Secretary rebutted the very argument he now seems to adopt when it was raised by a group of senators urging this Court to revise the ballot question to its present form, stating:

> The fact that the voter does not have the benefit of the [plain English] statement while he or she is interacting with the ballot itself lends even more weight to the position that the ballot question should be as informative as possible within the confines of the 75-word limitation in the Election Code.

(App'x 1 at Ex. H, p. 20.)

As is plain from this Court's pronouncement in *Stander*, the language of the ballot question, alone, is determinative of whether the ballot question is lawful. If

the ballot question is misleading, it must be stricken.  No document published in connection therewith can render lawful a deceptive ballot question like the one here.

These well-established legal principles demonstrate that the Secretary was correct in his prior argument to this Court and that he is wrong now.  The fatal defect in the misleading ballot question at issue here may not be cured through the advertising or publication outside the voting booth of the text of the proposed constitutional amendment or the "plain English statement."  Because the nature and purpose of the General Assembly's proposed amendment to raise the current constitutionally-mandated judicial retirement age from 70 to 75 cannot be ascertained from the text of the ballot question itself, the ballot question as presently composed cannot be presented to the Pennsylvania electorate in the November 2016 general election.

## VIII.  **CONCLUSION**

Based on the foregoing brief and Plaintiffs' previous filings in this case, Plaintiffs respectfully request that this Honorable Court enter an Order: (1) declaring unlawful the following ballot question: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?"; (2) precluding the Secretary from placing this ballot

30

question on the November 2016 general election ballot; and (3) directing the

Secretary to present the voters in the November 2016 general election with a ballot

question accurately advising of the nature and purpose of the General Assembly's

proposal, which is to amend the Pennsylvania Constitution to raise the current

constitutionally-mandated judicial retirement age from 70 to 75.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By:  /s/ Richard A. Sprague
      RICHARD A. SPRAGUE (I.D. # 04266)
      BROOKE SPIGLER COHEN (I.D. # 204648)
      JORDANN R. CONABOY (I.D. # 319337)
      WILLIAM H. TRASK (I.D. # 318229)
      The Wellington Bldg., Suite 400
      135 S. 19th Street
      Philadelphia, Pennsylvania 19103
      (215) 561-7681


Dated: August 9, 2016

## <u>CERTIFICATE COMPLIANCE</u>

I, Jordann R. Conaboy, Esquire, hereby certify, pursuant to Pennsylvania Rules of Appellate Procedure 2135(a)(1) and 2135(d), that the word count for the foregoing Brief, including footnotes, and headings but not including the cover, tables, signature block, or proof of service, is less than 14,000 words. Accordingly, this Brief complies with the aforesaid Rules.

Dated: August 9, 2016

/s/ Jordann R. Conaboy

Jordann R. Conaboy, Esquire

**PROOF OF SERVICE**

I, Jordann R. Conaboy, Esquire, herby certify that on this 9th day of August,

2016, I caused true and correct copies of the foregoing to be served on the

individuals listed below *via* the Court's electronic PACFile service and e-mail:

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent Pedro A. Cortés*

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

# Exhibit U



# Supreme Court of Pennsylvania

Middle District

Amy Dreibelbis, Esq.
Deputy Prothonotary
Elizabeth E. Zisk
Chief Clerk

601 Commonwealth Avenue, Suite 4500
P.O. Box 62575
Harrisburg, PA 17106
(717) 787-6181
www.pacourts.us

July 27, 2016

Jordann Richard Conaboy, Esq.
Sprague & Sprague
Wellington Building, Suite 400
135 South 19th Street
Philadelphia, PA  19103

RE:   Sprague, R., et al, Aplts v. Sec. Cortes
      No. 75 MAP 2016

Dear Mr. Conaboy:

   Enclosed please find a certified copy of the Order Granting the Emergency Application for Extraordinary Relief at No. 100 MM 2016.  This matter has been transferred to the above appeal docket number.

   Pursuant to Pa.R.A.P. 2185(a), the briefs including the original and reproduced records are due on/or before the due date shown below:

| Participant Role | Participant Name | Paperbook Type | Copies | Due Date |
|---|---|---|---|---|
| Appellant | Richard A. Sprague, Hon. Ronald D. Castille, Hon. Stephen Zappala | Brief | 15 | 08/09/2016 |
| Appellant | Richard A. Sprague, Hon. Ronald D. Castille, Hon. Stephen Zappala | Reproduced Record | 10 | 08/09/2016 |

   <u>Appellee's Brief is to be filed by **8/16/2016**.  Appellants' Reply Brief is to be filed by **8/18/2016**.</u>  <u>All briefs</u> must be filed via e-filing or in person **by 10:00 a.m.** on their respective due dates.  All parties must be served by e-service, email, fax or personal service.  The moving party's brief is to be submitted with the reproduced record (unless excused or delay authorized in accordance with Pa.R.A.P. 2151(d) and 2154(b)), and a certificate of service.  Serve (2) copies (1 copy if proceeding in forma pauperis) on every other party to the proceedings.  Pa.R.A.P. 2111(b) provides that copies of the lower court opinions must be appended to the appellant/petitioner's brief.  These rules will be strictly enforced and no briefs shall be accepted for filing that do not comply with these requirements.

   If this is a cross appeal, your attention is also directed to Pa.R.A.P. 2136 to determine which party is considered the appellant/respondent for the purpose of establishing the briefing schedule.

   Reproduced records are not required to be filed for parties proceeding In Forma Pauperis.

   In order to facilitate the newly instituted electronic records management system, the Office of the Prothonotary requests that all filers leave the original copy of any document submitted for filing  (one copy of Reproduced Record, if applicable) unbound.  All remaining copies of briefs and reproduced records should be bound in compliance with Pa.R.A.P. 124 (a)(5).

Rec'd 7/29/16 und

In addition to the paper copies of the items listed above, an electronic copy provided on Compact Discs (CDs) will be accepted and would be appreciated.   Acceptable electronic formats, at this time, are PDFs, TIFFs, and Word documents.   Said disc should be accompanied by an averment that the material on the CD is a complete and accurate representation of the paper version.

Very truly yours,
Office of the Prothonotary

cc:  Bruce Lee Castor Jr., Esq.
Timothy Eugene Gates, Esq.
Kathleen Marie Kotula, Esq.



### Supreme Court of Pennsylvania

## Checklist of Rule Requirements for Filing an Appellate Brief

Always consult the Pennsylvania Rules of Appellate Procedure prior to any filing. Specific information on the filing of a brief and reproduced record can be found in Chapter 21 of the Pennsylvania Rules of Appellate Procedure.

I. Conformance to Requirements (Pa.R.A.P. 2101)

Any brief or reproduced record submitted for filing must comply in substance and form with the applicable rules of appellate procedure. Nonconformity may be waived by the Court depending on the circumstances of the individual case, or as justice may require. Nevertheless failure to conform to the applicable rules may result in sanctions, including but not limited to dismissal of the appellate action.

II. Contents of Briefs

    A. Appellant's Brief (Pa.R.A.P. 2111)

        1. Contents
           a. Statement of Jurisdiction (Pa.R.A.P. 2114).
           b. Order or other determination in question (Pa.R.A.P. 2115).
           c. Statement of the Scope and Standard of Review (Pa.R.A.P. 2111).
           d. Statement of the Questions involved (Pa.R.A.P. 2116).
           e. Statement of the Case (Pa.R.A.P. 2117).
           f. Summary of Argument (Pa.R.A.P. 2118).
           g. Argument for Appellant (Pa.R.A.P. 2119).
           h. A short conclusion stating the precise relief sought.
           i. Opinions and pleadings specified in Subdivisions (2) and (3) below.

        2. Opinions Below
        Attach all opinions from any court or administrative proceeding below which relate to the determination to be reviewed. If an opinion has been reported state that fact and give the appropriate citation (Pa.R.A.P. 2111(b)).

        3. Length of Brief **Cannot exceed 14,000 words.** Documents of 30 pages or less produced on word processor or typewriter are deemed to comply with the limit. Longer documents require a certification that the statement complies with the limit of 14,000 words. *Pa.R.A.P. 2135 (a)(1) & 2135 (d)*.

        4. Pleadings
        If the matter falls under Pa.R.A.P. 2151(c) (relating to original hearing cases) and no reproduced record is required, any pleadings relevant to the case or from which a question for review arises shall be appended to the brief (Pa.R.A.P. 2111(c)).

    B. Appellee's Brief (Pa.R.A.P. 2112)
        1. Contents
           a. Summary of Argument (Pa.R.A.P. 2118).
           b. Argument for Appellee (Pa.R.A.P. 2119).
         2. Matters included only if challenged

      a. Counter-Statement of the Questions involved.

      b. Counter-Statement of the Case.

   3. Length of brief **Cannot exceed 14,000 words.** Documents of 30 pages or less produced on word processor or typewriter are deemed to comply with the limit. Longer documents require a certification that the statement complies with the limit of 14,000 words. Pa.R.A.P. 2135 (a)(1) & 2135 (d).

C. Reply Brief  (Pa.R.A.P. 2113)

   1. Appellant may file a reply brief in response to issues found in the appellee's brief that were not raised in appellant's initial brief, and limited to those issues.  An Appellee may file a similarly limited brief in the case of a cross-appeal. See Pa.R.A.P. 2136 for detailed information regarding briefs in cases involving cross-appeals.

   2. A reply brief may be filed as a response to a draft or plan pursuant to Pa.R.A.P. 134.

   3. No other briefs may be filed without leave of Court.

   4. Length of reply brief **Cannot exceed 7,000 words.** Documents of 15 pages or less produced on word processor or typewriter are deemed to comply with the limit. Longer documents require a certification that the statement complies with the limit of 7,000 words. Pa.R.A.P. 2135 (a)(1) & 2135 (d).

III. Reproduced Records

A. Where not required (Pa.R.A.P. 2151)

   1. Certain individual cases or classes of cases.

   2. In forma pauperis status.

   3. If the record is already before the Court in an original hearing case.

   4. By application, if the cost is disproportionate or for other sufficient reason.

B. Contents (Pa.R.A.P. 2152; Pa.R.A.P. 2153)

   1. All relevant docket entries, orders, opinions and related matter.

   2. Relevant portions of pleadings, charge or findings.

   3. Any additional portion of the record directed to the Court's attention.

   4. Omit all immaterial formal matter.

   5. Note - omitted material is not precluded from reliance or review.

C. Designation of Contents (Pa.R.A.P. 2154)

   1. Appellant shall file a designation of contents of the record he/she plans to reproduce and a brief statement of issues to be presented no later than 30 days prior to the due date of the appellant's brief and serve it upon all parties unless appellant deems it necessary to proceed under the large record provision of Pa.R.A.P. 2154(b). Irrelevant material should be avoided.

   2. If desired, Appellee may file and serve a counter designation of the record within 10 days of service of appellant's designation.

   3. Costs of reproduction will be allocated according to Pa.R.A.P. 2155.

   4. In exceptional circumstances, appellee may file a Supplemental reproduced record (Pa.R.A.P. 2156).

*A limited checklist is provided for purposes of convenience.  Please note that not all circumstances are covered by this checklist, and all filings are governed by the appropriate rules of court.*

\_\_ Appropriate Cover (Pa.R.A.P. 2172)
  - A light colored material that will permit writing (no plastic) (Pa.R.A.P. 2172(d))
  - Name of court (a)(1)
  - Docket number (a)(2)
  - Proper caption of the case (a)(3): Full and complete.
  - Title of document with designation of the order appealed (a)(4) and (a)(5)
  - Name(s) of counsel (a)(6)
  - Properly bound (Pa.R.A.P. 124(a)(5)

\_\_ Table of Contents and properly numbered pages (Pa.R.A.P. 2173; Pa.R.A.P. 2174)

\_\_ Table of Citations (Pa.R.A.P. 2174; Pa.R.A.P. 2111)

\_\_ Substantive content as described in Section II above

\_\_ Meets page limits and physical characteristics (Pa.R.A.P. 124; Pa.R.A.P. 2135)

\_\_ Principal Briefs **Cannot exceed 14,000 words.**

\_\_ Reply Briefs **Cannot exceed 7,000 words.**

\_\_ Paper size 8½ inches by 11 inches

\_\_ Printed matter 6½ inches by 9 inches

\_\_ Original Signature in ink on one designated copy

\_\_ Proof of Service (Pa.R.A.P. 121; Pa.R.A.P. 122)

\_\_ Reproduced record (Pa.R.A.P. 2152-2156; Section IV above)

\_\_ Correct number of copies (Pa.R.A.P. 2187)
  - 15 copies to be filed with Court
  - 10 copies of the reproduced record to be filed with Court
  - 2 copies to be served on opposing party

\_\_ Exception in forma pauperis:
  - 15 copies to be filed with Court
  - 1 copy to be served on opposing party

# Exhibit V

Received 8/12/2016 9:34:00 AM Supreme Court Middle District

Filed 8/12/2016 9:34:00 AM Supreme Court Middle District
75 MAP 2016

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

_____

No. 75 MAP 2016
_____

RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND
HON. STEPHEN ZAPPALA, SR.,

Petitioners/Appellants,

v.

PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH,
IN HIS OFFICIAL CAPACITY,

Respondent/Appellee.

_____

**ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A.
CORTÉS TO PETITIONERS'/APPELLANTS' APPLICATION FOR
SUMMARY RELIEF**
_____

AND NOW, Pedro A. Cortés, Secretary of the Commonwealth ("Secretary"),

by and through his undersigned counsel, respectfully submits this answer to

Petitioners' application for summary relief, and in support thereof avers as follows:

1.      ADMITTED in part; DENIED in part.   It is ADMITTED that

Petitioners seek summary relief pursuant to Pa.R.A.P. 1532(b).  It is DENIED that

such relief should be granted in favor of Petitioners.  To the contrary, this Court

should deny Petitioners' application for summary relief and dismiss Petitioners'

complaint with prejudice.

2.     ADMITTED, with qualification that Petitioners' complaint speaks for itself.

3.     ADMITTED.

4.     DENIED as stated.  On August 3, 2016, the Secretary filed an answer to Petitioners' complaint and new matter.

5.     ADMITTED.   By way of further response, the Secretary's answer speaks for itself.

6.     DENIED as stated.  By way of further response, the Secretary filed an answer with new matter on August 3, 2016, which speaks for itself.  Petitioners' characterizations in the corresponding paragraph are specifically DENIED.  The Secretary intends to fully defend the ballot question that he drafted pursuant to his authority under the Election Code.

7.     DENIED as stated.  By way of further response, the Secretary filed an answer with new matter on August 3, 2016, which speaks for itself.  Petitioners' characterizations in the corresponding paragraph are specifically DENIED.  To the contrary, the Secretary requests that this Court uphold the ballot question at issue, which was drafted by the Secretary pursuant to his statutory authority under the Election Code.

8.     ADMITTED only that expeditious relief is warranted.  By way of further response, this Court should deny Petitioners' application for summary relief and dismiss Petitioners' complaint with prejudice.

9.     DENIED.

10.    ADMITTED only that expedited relief is necessary.  The remainder of Petitioners' characterizations are DENIED.

11.    ADMITTED.  By way of further response, this Court should deny Petitioners' application for summary relief and dismiss Petitioners' complaint with prejudice.

WHEREFORE, the Secretary respectfully requests this Honorable Court deny Petitioners' application for summary relief, enter judgment in his favor, and dismiss Petitioners' complaint with prejudice.

Respectfully submitted,

*s/ Timothy E. Gates*
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
DATE:  August 12, 2016                                          (717) 783-0736

3

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on August 12, 2016, I caused to be served a true and correct copy of the foregoing document titled Answer of Secretary of the Commonwealth Pedro A. Cortés to Petitioners' Application for Summary Relief to the following:

**VIA PACFile and/or E-mail:**

Richard A. Sprague, Esq.
Brooke Spigler Cohen, Esq.
Jordan Richard Conaboy, Esq.
William Howard Trask, Esq.
Sprague & Sprague
135 S. 19th Street, Suite 400
Philadelphia, PA 19103
*Counsel for Petitioners*

Matthew H. Haverstick, Esq.
Mark E. Seiberling, Esq.
Joshua J. Voss, Esq.
Kleinbard LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA  19103
*Counsel for Amicus Curiae Corman and Scarnati*

George Bochetto, Esq.
Thomas E. Groshens, Esq.
John A. O'Connell, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Amicus Curiae Costa, Leach and Tartaglione*

 *s/ Timothy E. Gates*
Timothy E. Gates
Chief Counsel
Pennsylvania Department of State

# Exhibit W

Filed 8/16/2016 9:18:00 AM Supreme Court Middle District
75 MAP 2016

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

_____

No. 75 MAP 2016
_____

RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND
HON. STEPHEN ZAPPALA, SR.,

Petitioners/Appellants,

v.

PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH,
IN HIS OFFICIAL CAPACITY,

Respondent/Appellee.

_____

**CROSS-APPLICATION FOR SUMMARY RELIEF OF
SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS**
_____

AND NOW, Pedro A. Cortés, Secretary of the Commonwealth ("Secretary"),

by and through his undersigned counsel, pursuant to Pa.R.A.P. 1532(b), submits this

cross-application, asking this Court to grant summary relief in his favor, and in

support thereof avers as follows:

1.      On July 21, 2016, Petitioners in this case, Richard A. Sprague, the

Honorable Ronald D. Castille and the Honorable Stephen Zappala, Sr., filed a

Complaint for Declaratory and Injunctive Relief in Commonwealth Court's original

jurisdiction, naming the Secretary as the Respondent.

2.     On July 27, 2016, this Court granted Petitioners' Emergency Application for Extraordinary Relief and assumed plenary jurisdiction over the case.

3.     The Secretary filed an answer and new matter on August 3, 2016.

4.     Pennsylvania Rule of Appellate Procedure 1532(b) provides that "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter[,] the court may on application enter judgment if the right of the applicant thereto is clear."  Pa.R.A.P. 1532(b).

5.     In evaluating a request for summary relief, the Court applies the same standards that apply on summary judgment.  *See Myers v. Commonwealth*, 128 A.3d 846, 849 (Pa. Cmwlth. 2015).   Summary relief under Pa.R.A.P. 1532(b) is appropriate where the moving "party's right to judgment is clear and no issues of material fact are in dispute."  *Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008).

6.     There are no material facts in dispute.

7.     For the reasons set forth in the Secretary's brief (which is incorporated herein by reference) filed on August 16, 2016, the Secretary's right to relief is clear and he is entitled to judgment as a matter of law.

WHEREFORE, the Secretary respectfully requests this Honorable Court grant this application; find the ballot question, as presently drafted, lawful; and direct that this matter be closed.

Respectfully submitted,
*s/ Timothy E. Gates*
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*Counsel for Pedro A. Cortés,*
*Secretary of the Commonwealth*

DATE:  August 16, 2016

3

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on August 16, 2016, I caused to be served a true and correct copy of the foregoing document titled Application for Summary Relief of Secretary of the Commonwealth Pedro A. Cortés to the following:

**VIA PACFile and/or E-mail:**

| | |
|---|---|
| Richard A. Sprague, Esq. | Matthew H. Haverstick, Esq. |
| Brooke Spigler Cohen, Esq. | Mark E. Seiberling, Esq. |
| Jordan Richard Conaboy, Esq. | Joshua J. Voss, Esq. |
| William Howard Trask, Esq. | Kleinbard LLC |
| Sprague & Sprague | One Liberty Place, 46th Floor |
| 135 S. 19th Street, Suite 400 | 1650 Market Street |
| Philadelphia, PA 19103 | Philadelphia, PA  19103 |
| *Counsel for Petitioners* | *Counsel for Amicus Curiae Corman and Scarnati* |

George Bochetto, Esq.
Thomas E. Groshens, Esq.
John A. O'Connell, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Amicus Curiae Costa, Leach and Tartaglione*

   *s/ Timothy E. Gates*
   Timothy E. Gates
   Chief Counsel
   Pennsylvania Department of State

## IN THE SUPREME COURT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. SPRAGUE, HON. | : |
| RONALD D. CASTILLE AND HON. | : |
| STEPHEN ZAPPALA, SR., | : |
| | : |
| Petitioners/Appellants, | : |
| | :   No. 75 MAP 2016 |
| v. | : |
| | : |
| PEDRO A. CORTÉS, SECRETARY OF | : |
| THE COMMONWEALTH, IN HIS | : |
| OFFICIAL CAPACITY, | : |
| | : |
| Respondent/Appellee. | : |

## ORDER

AND NOW, this _____ day of _____, 2016, upon consideration of the Cross-Application for Summary Relief filed by Secretary of the Commonwealth Pedro A. Cortés, and any response thereto, it is hereby ORDERED that the Application is GRANTED, judgment is entered in favor of the Secretary on all counts of the Complaint; the ballot question, as presently drafted, is deemed lawful; and the Clerk of Court shall mark this matter closed.

BY THE COURT:


_____

, J.

# Exhibit X

Received 8/16/2016 9:28:19 AM Supreme Court Middle District

Filed 8/16/2016 9:28:00 AM Supreme Court Middle District
75 MAP 2016

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

_____

### No. 75 MAP 2016

_____

### RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

Petitioners/Appellants,

v.

### PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH, IN HIS OFFICIAL CAPACITY,

Respondent/Appellee.

_____

### BRIEF OF RESPONDENT/APPELLEE, PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH, IN RESPONSE TO PETITIONERS'/APPELLANTS' APPLICATION FOR SUMMARY RELIEF AND IN SUPPORT OF CROSS-APPLICATION FOR SUMMARY RELIEF

_____

Timothy E. Gates, Chief Counsel
Kathleen M. Kotula, Deputy Chief Counsel
Ian B. Everhart, Assistant Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

Date:  August 16, 2016

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ...................................................................................iv

COUNTER-STATEMENT OF THE SCOPE AND STANDARD OF REVIEW....1

COUNTER-STATEMENT OF THE QUESTIONS INVOLVED ...........................2

COUNTER-STATEMENT OF THE CASE .........................................................3

    I.     The Mandatory Judicial Retirement Age ....................................................3

    II.    The Joint Resolutions and the Original Ballot Question...........................3

    III.   The First Emergency Application for Extraordinary Relief .....................5

    IV.   The General Assembly's Passage of H.R. 783............................................6

    V.    The Litigation in Response to H.R. 783....................................................7

    VI.   The 2016 General Primary Election..........................................................8

    VII.  The Pre-Election Advertisements and the Revised Ballot Question..........9

    VIII. The 2016 General Election....................................................................10

    IX.   The Present Challenge to the Wording of the Ballot Question................11

SUMMARY OF ARGUMENT ..............................................................................13

ARGUMENT ........................................................................................................15

    I.     The Ballot Question Adopted by the Secretary and Approved by
           OAG is Fair, Accurate, and Clearly Apprises Voters of the Question
           or Issue to be Voted On. ........................................................................16

        A.   The Secretary Has the Statutory Authority to Formulate the
              Ballot Question....................................................................................16

B.    The Ballot Question Fairly, Accurately, and Clearly Apprises Voters of the Question or Issue to be Voted On. .................................19

C.    Petitioners Themselves Understand the Meaning and Effect of the Ballot Question. .........................................................22

D.    The Circumstances and Information Have Evolved From the Time of the Original Ballot Question. .................................................24

II.    The Secretary and the General Assembly Are Entitled to Act Free of Interference under the Political Question Doctrine. ..........................25

III.    The Ballot Question as Currently Composed Does Not Infringe on Petitioners' Due Process Rights. ............................................28

IV.    Petitioners' Request for Relief is Barred by the Doctrine of Laches.......29

CONCLUSION ........................................................................33

CERTIFICATE OF WORD COUNT

CERTIFICATE OF SERVICE

EXHIBITS

1.    H.B. 79, 2013 Reg. Sess. (Pa. 2013)

2.    H.B. 79 Legislative History

3.    H.B. 90, 2015 Reg. Sess. (Pa. 2015)

4.    H.B. 90 Legislative History

5.    August 3, 2016, Affidavit of Jonathan Marks, Commissioner of the Bureau of Commissions, Elections and Legislation, with Exhibits A-C

6.    Original Ballot Question and Plain English Statement

7.    Public Notice (Advertisement) by the Secretary of the Commonwealth for the 2016 Primary Election

8.    H.B. 783, 2015 Reg. Sess. (Pa. 2015)

9.    H.B. 783 Legislative History

10.   May 13, 2016, Affidavit of Jonathan Marks, Commissioner of the Bureau of Commissions, Elections and Legislation

11.   April 19, 2016, Notes of Testimony, *Costa v. Cortés*, No. 251 M.D. 2016 (Pa. Cmwlth.), Jonathan Marks, Commissioner of the Bureau of Commissions, Elections and Legislation

# TABLE OF AUTHORITIES

**Pages(s)**

**Cases**

*Adams Elec. Coop., Inc. v. Commonwealth,*
  853 A.2d 1162 (Pa. Cmwlth. 2004).....................................................1

*Askew v. Firestone,*
  421 So.2d 151 (Fla. 1982) ...............................................................21

*Burton v. State of Ga.,*
  953 F.2d 1266 (11th Cir. 1992) .......................................................29

*Calloway v. Pa. Bd. of Prob. & Parole,*
  857 A.2d 218 (Pa. Cmwlth. 2004)......................................................1

*Costa v. Cortés,*
  No. 251 M.D. 2016 (Pa. Cmwlth.) ........................................... 7, 8, 30

*Driscoll v. Corbett,*
  69 A.3d 197 (Pa. 2013).....................................................................3

*First Citizens Nat. Bank v. Sherwood,*
  879 A.2d 178 (Pa. 2005)..................................................................27

*Jubelirer v. Rendell,*
  953 A.2d 514 (Pa. 2008)....................................................................1

*Nat'l Audubon Soc'y, Inc. v. Davis,*
  307 F.3d 835 (9th Cir. 2002) ...........................................................29

*Office of Gov'r v. Donahue,*
  98 A.3d 1223 (Pa. 2014)..................................................................22

*Oncken v. Ewing,*
  8 A.2d 402 (Pa. 1939)......................................................................19

*Pa. St. Ass'n of Jury Comm'rs v. Commw.,*
  78 A.3d 1020 (Pa. 2013)..................................................................17

**Cases (cont'd)**

*Pap's A.M. v. City of Erie*,
   719 A.2d 273 (Pa. 1998)..................................................................................27

*R. v. Com., Dep't of Pub. Welfare*,
   636 A.2d 142 (Pa. 1994)..................................................................................28

*Sernovitz v. Dershaw*,
   127 A.3d 783 (Pa. 2015)..................................................................................29

*Stander v. Kelley*,
   246 A.2d 649 (Pa. 1968)..................................................................................30

*Stander v. Kelley*,
   250 A.2d 474 (Pa. 1969)............................................................ 18, 19, 20, 23, 31

*Stilp v. Commw.*,
   905 A.2d 918 (Pa. 2006)....................................................................................1

*Stilp v. Hafer*,
   718 A.2d 290 (Pa. 1998)..................................................................................30

*Sweeney v. Tucker,*
   375 A.2d 698 (Pa. 1977)............................................................................. 25, 26

*Wadhams v. Bd of Cty. Comm'rs*,
   567 So.2d 414 (Fla. 1990) ................................................................................21

**Statutes**

25 Pa.C.S. § 3508(b)(1) ....................................................................................10

25 P.S. § 2621(c)...................................................................................... 17, 27

25 P.S. § 2621.1 ................................................................................ 21, 22, 29, 32

25 P.S. § 2755 ........................................................................................ 5, 17, 27

25 P.S. § 3010(b)........................................................................................ 17, 18

25 P.S. § 3041 ..................................................................................................22

**Statutes (cont'd)**

25 P.S. § 3146.5(a)..................................................................................10

**Constitutional Provisions**

Pa. Const. art. V, § 16(b) (1968)...............................................................3

Pa. Const. art. V, § 16(b) (2001)...............................................................3

Pa. Const. art. XI, § 1................................................................... *passim*

**Rules**

Pa.R.A.P. 1532(b) ....................................................................................1

**Other Authorities**

H.B. 79, 2013 Reg. Sess. (Pa. 2013)......................................................3, 4

H.B. 90, 2015 Reg. Sess. (Pa. 2015)..........................................................4

H.R. 783, 2015 Reg. Sess. (Pa. 2015)................................................ *passim*

## **COUNTER-STATEMENT OF THE SCOPE AND STANDARD OF REVIEW**

This Court assumed plenary jurisdiction over this matter; thus, its "scope of review is plenary and [the] standard of review is *de* novo." *Stilp v. Commw.*, 905 A.2d 918, 930 (Pa. 2006). Additionally, under Pennsylvania Rule of Appellate Procedure 1532(b), and applicable precedent, the scope of review and standard of review is well-established for cases where there are no material facts in dispute:

> 'An application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.' *Calloway v. Pa. Bd. of Prob. & Parole,* 857 A.2d 218, 220 n. 3 (Pa. Cmwlth. 2004); *Adams Elec. Coop., Inc. v. Commonwealth,* 853 A.2d 1162, 1164 n. 1 (Pa. Cmwlth. 2004), *aff'd per curiam,* 585 Pa. 3, 887 A.2d 1213 (2005).

*Jubelirer v. Rendell*, 953 A.2d 514, 521 (Pa. 2008).

## <u>COUNTER-STATEMENT OF THE QUESTIONS INVOLVED</u>

I.      Whether Petitioners fail to assert a justiciable controversy where the Secretary of the Commonwealth drafted, and the Office of Attorney General approved, a ballot question that is fair, accurate, and clearly apprises voters of the question or issue to be voted on, in compliance with the Pennsylvania Constitution and the Election Code, and consistent with the ballot question directed by the General Assembly?

*Suggested answer:*  Yes.

II.     Whether this Court should decline to exercise its plenary powers to alter language in the proposed ballot question, and thereby afford deference to the Secretary of the Commonwealth and the General Assembly, who are not acting *ultra vires*, but are acting within the powers allocated to them by the Pennsylvania Constitution?

*Suggested answer:*  Yes.

III.    Whether the ballot question as currently composed infringes on Petitioners' due process rights under the Pennsylvania Constitution?

*Suggested answer:*  No.

IV.     Whether Petitioners' request for relief should be denied because of the doctrine of laches?

*Suggested answer:*  Yes.

2

## <u>COUNTER-STATEMENT OF THE CASE</u>

### I.     The Mandatory Judicial Retirement Age

In its current form, Article V, Section 16(b) of the Pennsylvania Constitution requires Pennsylvania jurists to retire on the last day of the calendar year in which the jurist turns 70.  *See* Pa. Const. art. V, § 16(b).  As originally adopted in 1968, however, Article V, Section 16(b) of the Pennsylvania Constitution required jurists to retire *immediately* "upon attaining the age of [70] years."  Pa. Const. art. V, § 16(b) (1968).  The electorate voted to amend the language in 2001 to "specify [the existing requirement] that retirement must occur on December 31st of the year the jurist turns 70."  *Driscoll v. Corbett*, 69 A.3d 197, 200 (Pa. 2013) (citing Pa. Const. art. V, § 16(b) (2001)) (*see also* App'x 1 to Pet'rs.' Br. at Ex. A, p. 53).

### II.     The Joint Resolutions and the Original Ballot Question

On October 22, 2013, the Pennsylvania General Assembly, acting pursuant to its authority in Article XI of the Pennsylvania Constitution, passed H.B. 79, a joint resolution seeking to amend Article V, Section 16(b) of the Pennsylvania Constitution.  (Ex. 1 (H.B. 79, 2013 Reg. Sess. (Pa. 2013)) and Ex. 2 (H.B. 79 Legislative History)).  The amendment proposed raising the mandatory retirement age of jurists to age 75.  (Ex. 1).  In accordance with the requirements of Article XI, Section 1 of the Pennsylvania Constitution, the Secretary of the Commonwealth published notice of the proposed constitutional amendment in newspapers

throughout the Commonwealth in the months before the General Election on November 4, 2014.  (Compl. ¶ 18).

A little more than two years later, on November 17, 2015, the next consecutive session of the General Assembly passed H.B. 90, a joint resolution identical to the preceding legislative session's H.B. 79.  (Ex. 3 (H.B. 90, 2015 Reg. Sess. (Pa. 2015)) and Ex. 4 (H.B. 90 Legislative History)).  Pursuant to the Secretary's duties imposed on him by the Election Code, the Secretary and the Department of State drafted, and the Office of Attorney General ("OAG") approved, the language for the ballot question.  (Ex. 5, ¶ 7, at p. 2 (Marks Aff.)).  The ballot question as originally drafted stated as follows:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

(Ex. 6 (Ballot Question) and Ex. 7 (Advertisement)).  OAG composed a "Plain English Statement" analyzing the purpose, limitations and effects of the proposed amendment.  (Ex. 6 (Plain English Statement) and Ex. 7).  In addition to the text of the proposed amendment, the Secretary published notice of the ballot question and the Plain English Statement in newspapers across the Commonwealth in January, February and March 2016.  (Compl. ¶ 21; Ex. 7).  This proposed amendment on

4

judicial retirement age was designated Proposed Constitutional Amendment 1. (Ex. 7). Pursuant to the explicit text in the authorizing joint resolutions, Proposed Constitutional Amendment 1 was scheduled to be placed on the ballot for the April 26, 2016 General Primary election.[1] (Ex. 1 and 3).

### III.   The First Emergency Application for Extraordinary Relief

Certain members of the Republican leadership in the State Senate filed an Emergency Application for Relief in this Court on March 6, 2016, objecting to the ballot question drafted by the Secretary and seeking a modification. (App'x 1 to Pet'rs.' Br. at Ex. 7). On March 22, 2016, the parties to that action[2] filed a Joint Application for Emergency Relief and asked this Court to approve a stipulated resolution that would have, *inter alia*, moved the ballot question to the November 2016 ballot with revised language.[3] (App'x 1 to Pet'rs.' Br. at Ex. I). On March 23,

---

[1] Specifically, the joint resolutions provided that the Secretary "shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the ***first primary, general or municipal election*** which meets the requirements of and is in conformance with section 1 of Article XI of the Constitutional of Pennsylvania and ***which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly***." (Ex. 1 and 3) (emphasis added). Section 605 of the Election Code, 25 P.S. § 2755, requires proposed constitutional amendments to be submitted to the electorate on a November ballot. However, that section of the Election Code begins with qualifying language that states "[u]nless the General Assembly shall prescribe otherwise with respect to . . . the manner and time of submitting to the qualified electors of the State any proposed amendment or amendments to the Constitution . . . ." *Id.*

[2] As of that date, the parties to the action were the Pennsylvania Senate Majority Caucus, the President Pro Tempore and the Majority Leader of the Pennsylvania Senate, the Secretary, the Pennsylvania Department of State, and the OAG.

[3] The Secretary and the Department of State agreed to participate in the Joint Application for Emergency Relief in order to bring certainty to a process that had been rendered uncertain by the

2016, this Court denied both the Joint Application for Emergency Relief and the Emergency Application for Extraordinary Relief.  (App'x 1 to Pet'rs.' Br. at Ex. I).

## IV.    The General Assembly's Passage of H.R. 783

On April 6, 2016, the House of Representatives passed H.R. 783, labeled a concurrent resolution.  (Ex. 9 (H.R. 783 Legislative History)).  Among other things, H.R. 783 directed the Secretary to remove Proposed Constitutional Amendment 1 from the General Primary ballot on April 26, 2016, and place a revised version of the ballot question on the General Election ballot on November 8, 2016, as follows:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

(Ex. 8 (H.R. 783, 2015 Reg. Sess. (Pa. 2015)).

The Senate passed H.R. 783 on April 11, 2016.  (Ex. 9).  H.R. 783 does not by its terms call for presentment to the Governor for approval or veto (rather, it calls for transmission directly to the Secretary); it was not, in fact, presented to the Governor.  (Ex. 8 and Ex. 9).

---

Application for Extraordinary Relief.  Had this Court approved the stipulated resolution, the ballot question would have been moved to the November 2016 ballot, with new language, under the auspices of a court order and in time for the counties to remove the question from the April 2016 ballot.  As noted in text, this Court denied the Joint Application.

6

## V.     The Litigation in Response to H.R. 783

On April 14, 2016, less than two weeks prior to the then-pending General Primary election on April 26, 2016, the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine M. Tartaglione ("*Costa* Petitioners"), duly-elected members of the Pennsylvania Senate, filed a Petition for Review in the Nature of a Complaint for Declaratory and Equitable Relief, which alleged violations of the state constitution and statutes, and the anticipated violation of certain absentee voters' rights to vote, and sought injunctive relief. *See* Pet., *Costa v. Cortés*, No. 251 M.D. 2016 (Pa. Cmwlth.) (filed Apr. 14, 2016). H.R. 783 was the basis for the *Costa* Petitioners' complaints. The *Costa* Petitioners also filed an application for special relief requesting a preliminarily injunction to enjoin the Secretary from implementing H.R. 783. *See* Appl., *Costa* (filed Apr. 15, 2016).

Commonwealth Court held a hearing on the *Costa* Petitioners' injunctive request on April 19, 2016, and issued a decision the following day, on April 20, 2016. *See* Op. and Order, *Costa* (filed Apr. 20, 2016).[4] The Honorable P. Kevin Brobson of the Commonwealth Court denied the *Costa* Petitioners' Application for

---

[4] On April 28, 2016, Judge Brobson amended the Memorandum Opinion, but he did not alter the Order of April 20, 2016. On July 7, 2016, Commonwealth Court issued an Order re-designating the Memorandum Opinion as a published Opinion. *See* Order, *Costa* (filed July 7, 2016).

Summary Relief in the Nature of a Preliminary Injunction as part of his April 20, 2016, ruling.  *Id.*

Thereafter, the parties in the case briefed the legal issues, and a panel of the Commonwealth Court heard oral argument on the cross-applications for summary relief on June 9, 2016.

On July 6, 2016, Commonwealth Court issued an Order and Opinion granting the Senate Republicans' application for summary relief, and denying *Costa* Petitioners' application.  The court held that H.R. 783 is a valid exercise of the General Assembly's "time" and "manner" powers under Article XI, Section 1 of the Pennsylvania Constitution.  *See Costa v. Cortés*, No. 251 M.D. 2016 (filed July 6, 2016 (Brobson, J.)), slip op. at 14-15.

## VI.    The 2016 General Primary Election

The General Primary election was held on April 26, 2016.  (App'x 1 to Pet'rs.' Br. at Ex. L).  In conformity with Judge Brobson's Order of April 20, 2016, the Secretary removed Proposed Constitutional Amendment 1 from the official ballot certification, and efforts were made at the polling places to inform voters of its status.  (Ex. 10, ¶ 5, at p. 1 (Marks Aff.)).  However, Judge Brobson's ruling came just six days before the primary election on April 26, 2016, and the county boards of election could not physically remove the ballot question from the ballot.  (Compl. ¶ 53). Accordingly, voters were presented with ballot materials containing the original

language for Proposed Constitutional Amendment 1.  (Answer, ¶ 54).  Pursuant to

H.R. 783, which Judge Brobson declined to enjoin, the Secretary did not conduct an

official tabulation, computation, or canvass of the votes for Proposed Constitutional

Amendment 1.  (Answer, ¶ 54; Ex. 10, ¶ 5, at p. 1 (Marks Aff.)).

## VII.   The Pre-Election Advertisements and the Revised Ballot Question

For Proposed Constitutional Amendment 1 to proceed on the November 2016

ballot, the first round of advertisements had to be published no later than August 8,

2016. (Ex. 5, ¶ 15, at p. 3 (Marks Aff.)).  In order to meet that deadline, the Secretary

had to reserve advertising space in newspapers, and provide the text of the

advertisements, *including the language of the ballot question*, no later than July 27,

2016.  (Ex. 5, ¶ 16, at p. 3 (Marks Aff.)).  Thus, in late May, given uncertainty

concerning both the nature and timing of future court rulings in the *Costa* case, and

in order to resolve that uncertainty in time for the pre-election advertising that had

to be arranged in July 2016 and begin in August 2016, the Secretary decided to

voluntarily amend his wording of the ballot question to conform to the text of

Proposed Constitutional Amendment 1 contained in H.R. 783.  (Ex. 5, ¶ 10, at p. 2

(Marks Aff.)).  The Secretary submitted the revised ballot question to OAG for

approval.  (Ex. 5, ¶ 10, at p. 2, Ex. A (Marks Aff.)).  On June 14, 2016, Solicitor

General Bruce L. Castor, Jr., on behalf of OAG, approved the form of Proposed

Constitutional Amendment 1, as set forth in H.R. 783, and provided a copy of the

Plain English Statement, which he noted was the same as the original Plain English Statement. (Ex. 5, ¶ 12, at p. 2, Ex. B (Marks Aff.)).

The Secretary published the first round of advertisements in newspapers between August 2, 2016 and August 6, 2016. (Ex. 5, ¶ 17, at p. 3 (Marks Aff.)). The second round of advertisements must be accomplished no later than September 8, 2016, and the third round of advertisements must be accomplished no later than October 8, 2016. *See* Pa. Const. art. XI, § 1. The deadline to provide or alter the text of the advertisement for the second round of publication is August 29, 2016, and the deadline to change the text for the October publication is September 26, 2016. (Ex. 5, ¶¶ 18-19, at p. 3 (Marks Aff.)).

## VIII. The 2016 General Election

Proposed Constitutional Amendment 1 will be submitted to the electorate on the ballot for the General Election on November 8, 2016. (Ex. 8). The county boards of election are required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an application no later than August 30, 2016, and to all other covered uniformed-service and overseas voters who submitted an application no later than September 23, 2016. *See* 25 P.S. § 3146.5(a) and 25 Pa.C.S. § 3508(b)(1).

In terms of civilian absentee ballots, provisional ballots and Election Day ballots, the county boards of election require at least five weeks, if not more, prior

10

to Election Day to finalize and print those balloting materials.  (Ex. 11, at p. 72 and 76 (N.T., Apr. 19, 2016, *Costa v. Cortés*, No. 251 M.D. 2016 (Pa. Cmwlth.), J. Marks)) (testifying at the preliminary injunction hearing that the county boards of election needed approximately five weeks prior to the 2016 primary election to finalize ballots).

### IX.    The Present Challenge to the Wording of the Ballot Question

On July 21, 2016, Petitioners/Appellants in this case, Richard A. Sprague, the Honorable Ronald D. Castille and the Honorable Stephen Zappala, Sr. ("Petitioners"), filed a Complaint for Declaratory and Injunctive Relief ("Sprague Complaint") in Commonwealth Court's original jurisdiction, naming Secretary of the Commonwealth Pedro A. Cortés ("Secretary") as the Respondent/Appellee.

The Sprague Complaint seeks one count of declaratory and injunctive relief on the basis that the ballot question required by H.R. 783, and adopted by the Secretary, will infringe on Petitioners' state constitutional right to vote on an amendment to the Pennsylvania Constitution, as well as Petitioners' due process rights under the Pennsylvania Constitution.  On the same day they filed their complaint, Petitioners also filed an Emergency Application for Extraordinary Relief, asking this Court to assume plenary jurisdiction over this matter. The Secretary filed an answer to the Emergency Application on July 25, 2016, and agreed that this Court should exercise extraordinary jurisdiction so as to finally put the matter to rest.  The

Secretary disagreed with the merits of Petitioners' claims and requested relief.  This Court granted Petitioners' Emergency Application for Extraordinary Relief on July 27, 2016.

The Secretary filed an answer to Petitioners' complaint and new matter on August 3, 2016.  The parties agree—there are no material issues of fact in dispute. As such, Petitioners have moved for summary relief, and the Secretary, contemporaneous with the filing of this brief, has filed a cross-application for summary relief.  The Honorable Joseph B. Scarnati and the Honorable Jacob Corman III ("*Amicus* Senators") have filed an *amicus curiae* brief.

## SUMMARY OF ARGUMENT

Petitioners ask this Court to rewrite the ballot question relating to the mandatory judicial retirement age.  Petitioners argue that the ballot question as currently composed is fundamentally misleading and unlawful.  Petitioners also claim the ballot question infringes on their due process rights under the Pennsylvania Constitution.  Petitioners' arguments must be rejected for a number of reasons.

*First,* the ballot question as formulated by H.R. 783, adopted by the Secretary and approved by OAG is fair, accurate, and clearly apprises voters of the question or issue to be voted on.  The ballot question meets all the requirements in the law and should be used in November.  In fact, Petitioners' argument that the current ballot question is misleading is belied by their own ability to clearly comprehend the ballot question and articulate the proposed change to the Constitution's mandatory judicial retirement age.  To the extent Petitioners' contentions have any merit— which they do not—any defect is wholly cured by the newspaper publications required under Article XI, Section 1 of the Pennsylvania Constitution, and the notices required to be posted in the polling place.

*Second*, the Secretary and the General Assembly are entitled to act free of interference under the political question doctrine.  Both the executive and the legislative branches of government acted within the power conferred upon them by the Constitution.  As a consequence of that authority, the Secretary understood that

13

there were many different ways to frame a ballot question, and so he ultimately adopted the language of the ballot question as set forth in H.R. 783, which meets the legal requirements of being fair, accurate and clear.

*Finally*, the doctrine of laches bars Petitioners' eleventh-hour request for relief.

For these reasons, this Court should deny Petitioners' application for summary relief, enter judgment in the Secretary's favor, and dismiss Petitioners' complaint with prejudice.  This matter must conclude expeditiously so that certainty regarding the ballot question can finally be attained.

## **ARGUMENT**

This case concerns the wording of the ballot question related to the mandatory judicial retirement age.  Petitioners have spent much time in their filings with this Court theorizing about the Secretary's motives for amending the ballot question and postulating about what they perceive to be a lack of willingness on his part to defend the ballot question.  Petitioners' assertions are simply without merit.  The Secretary unequivocally requests this Court uphold the ballot question as currently composed that *he* adopted pursuant to *his* statutory authority under the Election Code, and asks that the Sprague Complaint be dismissed with prejudice.

The Secretary has acted with diligence and vigilance throughout the constitutional amendment process, has fulfilled his constitutional mandate, has followed the various directions of the General Assembly, and has kept county election officials and voters properly informed.

The overarching concerns for the Secretary in this (and other) litigation has been (and continues to be) the need for certainty given the impending dates on the election calendar—*first*, for the 2016 primary election, *and now*, for the 2016 November election.  All along, the Secretary has stressed the importance of certainty in order to ensure the orderly administration of the election on the proposed amendment; the timely publication of the pre-election advertisements; and his obligation to properly present the proposed amendment to the voters.

The need for certainty is what caused the Secretary to agree to the Republican Leadership's ballot question in the initial round of litigation, and it is also what caused the Secretary to voluntarily amend the wording of the ballot question to conform to H.R. 783.  Because the General Assembly's authority to specify the ballot question language through H.R. 783 was then (as now) uncertain, and because the need to prepare the advertisements was imminent, the Secretary endeavored to bring some certainty to the process, which has been anything but certain for the past several months.

Thus, aside from the Secretary's arguments set forth below about why this Court should deny relief to Petitioners and dismiss the Sprague Complaint with prejudice, the Secretary also respectfully requests this Court to render a decision as expeditiously as possible.

**I.     The Ballot Question Adopted by the Secretary and Approved by OAG is Fair, Accurate, and Clearly Apprises Voters of the Question or Issue to be Voted On.**

**A.     The Secretary Has the Statutory Authority to Formulate the Ballot Question.**

Article XI, Section 1 of the Pennsylvania Constitution grants the General Assembly plenary authority to determine the "time" and "manner" of the presentation of the proposed constitutional amendment to the voters, subject only to the requirement that such presentation occur at least three months after action by the

General Assembly.[5]  The General Assembly, pursuant to Sections 201(c), 605 and 1110(b) of the Election Code, 25 P.S. §§ 2621(c), 2755 and 3010(b), gives the Secretary the authority to determine the form of this and other ballot questions.

Here, in accordance with their statutory powers and duties under the Election Code, the Secretary originally drafted, and OAG, who owes a special duty in ensuring a process that complies with the Constitution, approved a ballot question on the judicial retirement age.  Following brief litigation in this Court regarding the wording of the proposed ballot question, the General Assembly passed H.R. 783.

Whether H.R. 783 is a valid exercise of the General Assembly's constitutional power, given the Secretary's explicit authority to draft ballot questions under the Election Code, is one of the issues pending on appeal before this Court in *Costa v. Cortés*, No. 70 MAP 2016 (Pa.).  Because of the uncertainty concerning both the nature and timing of court rulings regarding the ballot question, the Secretary voluntarily changed the form of the ballot question to conform to H.R. 783, and OAG approved the revised ballot question.[6]

---

[5] *See* Pa. Const. art. XI, § 1 (providing that "such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time *at least three months after being so agreed to by the two Houses*, as the General Assembly shall prescribe") (emphasis added).

[6] H.R. 783, like any other act of the General Assembly, is entitled to a presumption of constitutionality, and no court has struck down the concurrent resolution.  *See Pa. St. Ass'n of Jury Comm'rs v. Commw.*, 78 A.3d 1020, 1032 (Pa. 2013) ("Indeed, a legislative enactment will not be deemed unconstitutional unless it clearly, palpably, and plainly violates the Constitution.")

Of course, as with any Constitutional amendment, there are many ways to draft a question, which ultimately have the same meaning and effect.  The Election Code sets a limit of seventy-five words for a ballot question, 25 P.S. § 3010(b), providing the outer bounds for the Secretary as he drafts the wording.

Indeed, ballot questions are not self-drafting.  The Secretary has considered a number of different ways to phrase the question, and, for the reasons explained above, has now settled on one apparently not to the liking of Petitioners.  But whether any particular phrasing, selected from the universe of permissible options, is "better" or "worse" than another, in the view of Petitioners (or other outsiders to the process who happen to have an opinion) is not properly part of the analysis.  The existence of one permissible form does not render all others impermissible.  The validity of the present version ought to be analyzed on its own merits, and assessed as to whether it "fairly, accurately and clearly apprize[s] the voter of the question or issue to be voted on."  *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969).  It need not be held up against some supposedly superior version championed by outsiders.

Were this Court to grant the requested relief—an order directing the Secretary to use the language that Petitioners prefer—then all future ballot questions would be subject to challenge by any voter who believes that he or she could do better.  As a practical matter, the Election Code must be read to grant the Secretary broad

discretion as to the particular language that will appear on the ballot. This Court should decline Petitioners' invitation to serve as the Secretary's editor.

### B. The Ballot Question Fairly, Accurately, and Clearly Apprises Voters of the Question or Issue to be Voted On.

Petitioners allege that the ballot question at issue is misleading and unlawful. (Pet'rs.' Br. at 21). Petitioners' arguments fail for several reasons.

Under the Pennsylvania Constitution, questions on constitutional amendments must "fairly, accurately and clearly apprize the voter of the question or issue to be voted on." *Stander*, 250 A.2d at 480. Where "the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions . . . it may be proper and necessary for a court to nullify an election. But where the irregularity complained of could not reasonably have misled the voters," there is no cause for judicial relief. *Oncken v. Ewing*, 8 A.2d 402, 404 (Pa. 1939).

The ballot question as currently drafted and set to appear on the November ballot (prescribed by H.R. 783, independently adopted by the Secretary, and approved by OAG) satisfies the *Stander* requirements. As the ballot question clearly and accurately states, if adopted by the voters, this amendment would set the judicial retirement age at the end of the year in which the jurist turns 75.

A closer review of the facts of the *Stander* case provides even greater support that the ballot question here passes constitutional scrutiny. The ballot question

19

challenged in *Stander* was "but a tiny and minuscular statement of the very *lengthy* provisions of the proposed Judiciary Article V." *Stander*, 250 A.2d at 480 (emphasis added). The amendment at issue was a *complete* revision of Article V relating to the Judiciary. For that revision, the ballot question submitted to the electorate read as follows:

> 'JUDICIARY—Ballot Question V: Shall Proposal 7 on the JUDICIARY, adopted by the Constitutional Convention, establishing a unified judicial system, providing directly or through Supreme Court rules, for the qualifications, selection, tenure, removal, discipline and retirement of, and prohibiting certain activities by justices, judges, and justices of the peace, and related matters, be approved?'

*Id.* Clearly, there is nothing in the *Stander* ballot question explaining any of the several substantive changes that would result from a "yes" vote, *including explaining that a retirement age of 70 was being imposed on jurists for the first time*.

Despite this lack of information, this Court upheld the ballot question and determined that it "fairly, accurately and clearly apprized the voter of the question or issue to be voted on." *Id*. This Court reached this conclusion because it determined that the ballot question was buttressed by other information—namely, the publications showing the proposed changes to the Constitution and notices (like the OAG's Plain English Statement) available in the polling places. *Id.* Thus, under the principles of *Stander*, Petitioners are not entitled to relief.

Moreover, Petitioners' reliance on the two Florida cases is not persuasive. As *Amicus* Senators aptly point out in their brief, in both cases, the Florida Supreme

20

Court did not take issue with the ballot question *per se*, but invalidated the election because a Florida statute requiring a summary of the chief purpose of the amendment was not satisfied.  *See Wadhams v. Bd of Cty. Comm'rs*, 567 So.2d 414, 416 (Fla. 1990); *Askew v. Firestone*, 421 So.2d 151, 154 (Fla. 1982).

Finally, to the extent Petitioners' contentions have any merit—which they do not—any defect is wholly cured by the newspaper publications required under Article XI, Section 1 of the Pennsylvania Constitution, and the notices required to be posted in the polling place by section 201.1 of the Election Code, 25 P.S. § 2621.1.  Voters will have the chance to examine the actual text of the changes to be wrought by their vote, along with OAG's Plain English Statement explaining the effects of the change as follows:

> Presently, the Pennsylvania Constitution provides that justices, judges, and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years.  Justices of the peace are currently referred to as magisterial district judges.

> If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

(Ex. 5, ¶ 12, at p. 2, Ex. B (Marks Aff.)).  And, even though the ballot question has changed, the Plain English Statement has remained the same throughout the entire process.   (*Cf.* Ex. 6 and Ex. 5, Ex. B (Marks Aff.)).   Thus, through the advertisements, voters will have been exposed to the same Plain English Statement

a total of six times—three times prior to the primary election and three times prior to the November election.

As noted above, this Plain English Statement, in addition to being published in various newspapers, will be posted in at least three distinct areas in all polling places. *See* 25 P.S. § 2621.1. Additionally, the county boards of election must include the Plain English Statement, along with the text of the proposed amendment and ballot question, in the notice of election published by the board in a newspaper in the county between three and 10 days prior to the election. *See* 25 P.S. §§ 2621.1 and 3041.

### C. Petitioners Themselves Understand the Meaning and Effect of the Ballot Question.

Petitioners in this case approach this suit under the guise that the ballot question is misleading. However, Petitioners themselves comprehend the ballot question and are able to articulate the proposed change to the mandatory judicial retirement age.[7] Petitioners appear to argue on behalf of voters across the Commonwealth whom they perceive to be uninformed and uneducated—somewhat analogous to a class action lawsuit. However, Petitioners' interests are not aligned to the class they purport to represent.

---

[7] To state a claim for a declaratory judgment, a party must allege an interest which is direct, substantial and immediate, and must demonstrate the existence of a real or actual controversy, as the courts of this Commonwealth are generally proscribed from rendering decisions in the abstract. *Commw. Office of Gov'r v. Donahue*, 98 A.3d 1223, 1229 (Pa. 2014).

Petitioners are certainly not harmed by the ballot question, and they should not be permitted to represent the interests of the entire electorate. The presumption underlying their lawsuit is that they do not believe common voters in the Commonwealth will comprehend the proposed ballot question and that Petitioners must instead step in to protect uninformed common voters from confusion. This presumption is not only insulting, it is fundamentally flawed, and has been rejected by this Court. *See Stander*, 250 A.2d at 280 ("In a Republican or Democratic form of Government, similar contention is made after almost every election—the people didn't know or did not understand what (or whom) they were really voting for. This generalization has never been proved and will not be assumed by us.")

Finally, the electorate themselves are likely more aware of this proposed amendment than they were earlier this year. The ballot question and the related litigation brought even before the case *sub judice*, has garnered media attention across the Commonwealth with news articles, reports and editorials, reaching the citizens in this Commonwealth and beyond.[8]

---

[8] *See e.g.* Karen Langley, *Ballot Question on Pennsylvania Judges' Retirement Age may be Delayed*, Pittsburg Post-Gazette, Apr. 7, 2016, at http://www.post-gazette.com/news/politics-state/2016/04/07/Ballot-question-on-Pennsylvania-judges-retirement-age-may-be-delayed/stories/201604070023.

*See also* Matt Miller, *Pa. Court Backs Delaying Referendum on Upping Judge Retirement Age to Fall Election*, PennLive, July 6, 2016, at http://www.pennlive.com/news/2016/07/pa_court_backs_delaying_refere.html.

23

Because Petitioners themselves comprehend the proposed ballot question, they are not harmed, and the Court should dismiss their complaint in its entirety.

### D.    The Circumstances and Information Have Evolved From the Time of the Original Ballot Question.

No doubt, the Secretary consulted the ballot question from 2001 when he drafted the original ballot question in this matter, but a steadfast comparison to that ballot question is not warranted.  The proposed amendment in 2001 changed the Constitution to require retirement of jurists at a set time period at the end of the calendar year, as opposed to the retirements occurring on a rolling basis throughout the year.  That amendment was more about creating efficiencies and certainties in how the judicial retirement system operated.  Here, this proposed amendment is merely raising the age of retirement by five years.  With that premise in mind, it is easy to see why more information was necessary in the actual ballot question in 2001—how the retirement system itself worked was being changed.

Additionally, in the time since the Secretary drafted the original question, the General Assembly has spoken through H.R. 783.  The General Assembly has made its intent known to the Secretary with regard to the ballot question, and even went

---

A Google search of *Pennsylvania Judicial Retirement Age Amendment* returns additional examples of media coverage related to this matter in the news tab of the search results, https://www.google.com/#q=pennsylvania+Judicial+retirement+age+amendment&tbm-nws.

so far as to direct him to use the specified wording.  The General Assembly, as the originator of the proposed amendment, is entitled to deference, particularly where, as here, the Secretary does not disagree.

## II.   The Secretary and the General Assembly Are Entitled to Act Free of Interference under the Political Question Doctrine.

Petitioners object to the present form of the ballot question, and in several places in Petitioners' submissions to this Court, they seek an order prohibiting the Secretary from using this version they disfavor.  *See* Compl., ¶ 38; *see also* Appl. for Summary Relief at 8.  To the extent Petitioners might claim that the Secretary or the legislature are acting *ultra vires*, review by this Court would be wholly permissible under the political question doctrine.[9]

Petitioners allege no such aberrant departure from constitutional order.  Rather than claiming that the Secretary and the legislature do not have the power to fix the question to be presented to the voters, the gravamen of their complaint is that the Secretary and the legislature do have that power, but Petitioners just do not like how

---

[9] A political question is not involved when a court concludes that another branch acted within the power conferred upon it by the Constitution:

> "In such cases . . . the court does not refuse judicial review; it exercises it.  It is not dismissing an issue as nonjusticiable; it adjudicates.  It is not refusing to pass upon the power of the political branches; it passes upon it, only to affirm that they had the power which had been challenged and that nothing in the Constitution prohibited the particular exercise of it."

*Sweeney v. Tucker,* 375 A.2d 698, 705 (Pa. 1977) (quoting Louis Henkin, *Is There A "Political Question" Doctrine?*, 85 Yale L.J. 597, 606 (1976)).

they have exercised that power.  This Court should not afford them any relief on that basis.

Our Constitution allocates certain powers to the executive, legislative and judicial branches of government.  One corollary resulting from this system is that each branch may act in its respective sphere within the limits set by the Constitution, and is entitled to act free of interference from the other branches.  *Sweeney v. Tucker*, 375 A.2d 698, 705 (Pa. 1977) ("Under the principle of separation of the powers of government, however, no branch should exercise the functions exclusively committed to another branch.").  While not perfectly coextensive, the political question doctrine flows directly from the doctrine of separation of powers.

The *Sweeney* Court appeared to endorse one scholar's description of the doctrine: "a political question exists when 'the Constitution has committed to another agency of government the autonomous determination of the issue raised.'" *Sweeney*, 375 A.2d at 705 (quoting Herbert Wechsler, *Toward Neutral Principles of Constitutional Law*, 73 Harv. L. Rev. 1, 7–8 (1959)).

As previously discussed, Article XI empowers the General Assembly to determine the "manner" in which a constitutional amendment is to be submitted to the electorate.  Other litigation presently before this Court considers the power of the General Assembly to exercise this authority through a concurrent resolution.  *See Costa*, No. 70 MAP 2016 (Pa.) (considering validity of H.R. 783).  But in passing

H.R. 783, the legislature was not acting in a vacuum: the General Assembly had previously, by statute, charged the Secretary with determining "the form and wording of constitutional amendments" "with the approval of the Attorney General." 25 P.S. §§ 2621(c), 2755. Thus, the manner had been prescribed by the General Assembly either generally, through the Election Code, or specially, through H.R. 783, regardless of the outcome of the *Costa* appeal.[10]

The ballot language adopted by the Secretary complies with all constitutional requirements and standards of due process. *See infra* Part III (due process threshold of patent and fundamental unfairness not met in this case). On many occasions, this Court has pronounced its aversion to arrogating itself powers beyond those granted in the Constitution; in particular, it has disclaimed the prerogative to exercise the powers granted to the legislature. *Pap's A.M. v. City of Erie*, 719 A.2d 273, 281 (Pa. 1998), *rev'd on other grounds,* 529 U.S. 277 (2000) ("To aggregate to ourselves the power to write legislation would upset the delicate balance in our tripartite system of government."); *First Citizens Nat. Bank v. Sherwood*, 879 A.2d 178, 182 (Pa. 2005) (declining to interfere with statutory scheme developed by legislature on

---

[10] Authority over the manner ultimately flows from the people, through the Constitution, which grants it to the General Assembly, which in turn, has charged the Secretary with determining the form of the ballot question through the Election Code and/or H.R. 783. The Secretary acts here only as the steward of the duties granted to him by the legislature, not from some inherent or independent power. An attack on the language developed by the Secretary should thus be analyzed identically to an attack on language developed by the legislature itself and prescribed *in haec verba*.

separation of powers grounds).  This Court should yet again reaffirm those principles and decline to order the changes sought by Petitioners.

### III.   The Ballot Question as Currently Composed Does Not Infringe on Petitioners' Due Process Rights.

The Sprague Complaint alleges a violation of due process rights under the Pennsylvania Constitution.  *See* Compl. ¶ 91.  Neither the complaint nor the Sprague Brief further discuss nor cite any authority for this claim, beyond simply making the conclusory statement.

There is limited case law concerning due process rights under the state constitution in the context of confusing or misleading ballot questions, but state due process rights are similar to federal due process rights.  *See R. v. Com., Dep't of Pub. Welfare*, 636 A.2d 142, 152 (Pa. 1994) ("[W]e have recognized how closely [state constitution due process] guarantees resemble those provided by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.").  The Court should consider the persuasive authority of relevant federal cases, including from other states where referendum and initiative votes are a more common feature of the political process.

Many federal courts have settled on a standard of "patent and fundamental unfairness" in determining whether an election satisfies due process:

> When the ballot language purports to identify the proposed amendment by briefly summarizing its text, then substantive due process is satisfied—and the election is not "patently and fundamentally

28

unfair"—so long as the summary does not so plainly mislead voters about the text of the amendment that "they do not know what they are voting for or against"; that is, they do not know which or what amendment is before them.

*Burton v. State of Ga.*, 953 F.2d 1266, 1270 (11th Cir. 1992).

Where voters are given the opportunity to examine the full text of the ballot materials, this type of unfair process is avoided. *Burton*, 953 F.2d at 1269; *accord Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 858-59 (9th Cir. 2002).

In the present case, voters will be made abundantly aware of the topic of the amendment, and in the event any voter is confused, he or she may consult the text of the changes, and/or the Plain English Statement made available in multiple copies in every polling place. 25 P.S. § 2621.1.

Accordingly, Petitioners' claim that their due process rights are violated must fail.

## IV.    Petitioners' Request for Relief is Barred by the Doctrine of Laches.

Petitioners should be barred by the doctrine of laches from engaging this Court at this late stage of the constitutional amendment process. "[L]aches bars relief when there has been a delay arising from the claimant's failure to exercise due diligence in instituting an action, and such delay has resulted in prejudice to the other party." *Sernovitz v. Dershaw*, 127 A.3d 783, 789 (Pa. 2015).

Petitioners have had several opportunities to pursue relief. The ballot question about which Petitioners complain was passed by the General Assembly on April 11,

2016.  Through several filings in the *Costa* case, including on May 13, 2016, and June 15, 2016, the Secretary advised Commonwealth Court that he adopted the ballot question as set forth in H.R. 783, and approved by OAG.  Yet, Petitioners failed to avail themselves of these opportunities, opting instead for an eleventh-hour filing. Petitioners gained no new information in the intervening months, and whatever the merits of their claims now, they were the same back when the General Assembly originally adopted H.R. 783.

"Whether laches is established requires a factual determination based upon the circumstances of each case." *Stilp v. Hafer*, 718 A.2d 290, 293 (Pa. 1998).  For example, in *Stander v. Kelley*, 246 A.2d 649 (Pa. 1968), the trial court was presented with a request by a petitioner to enjoin the Secretary of the Commonwealth from printing questions pertaining to Constitutional amendments on the April 23, 1968 ballot.  Procedurally, the proposed amendments were first advertised in the first week of April 1968, the initial complaint was filed April 11, 1968, and the election was to be held on April 23, 1968.  The trial court refused to enter the injunctive relief because of the doctrine of laches.  The Pennsylvania Supreme Court found that decision was not a clear abuse of discretion or a palpable error of law.  *Id*. Subsequently, the petitioner filed an amended pleading seeking permanent injunctive relief, which was denied by the trial court.  This Court affirmed the dismissal of the action on substantive grounds and, in a footnote, commented on the

timing of the litigation.  *See Stander*, 250 A.2d at 476 n.1.  The Secretary submits that this footnote is *dicta*.

Even if that footnote were controlling, however, the situation here calls for the application of the doctrine of laches to bar Petitioners' request for relief.  To that end, the ballot language at issue in this case was first known in April 2016.  Petitioners did nothing.  In fact, they waited until July 21, 2016, to finally bring their request and seek this Court's intervention.  The ballot language at issue has already been published once, and it will be published again at the beginning of September, following a final edit date of August 29, 2016.  Petitioners waited to pursue relief at a point in the amendment process where the Secretary had already completed one of the three required pre-election advertisements.[11]  And, unless this matter is decided quickly, it may be too late for the Secretary to make any changes to the September 2016 publication, or for the county boards of election to make changes to the military-overseas absentee ballots.[12]

---

[11] Petitioners have by no means requested a delay of the ballot question, but to the extent this Court would consider ordering the ballot question be placed on the ballot in 2017, that presents a problem for the Department of State.  Next year is a judicial election year.  That means that the legal machinery for retention elections commences in early January, and the process for electing justices and judges starts in February.  All of this would occur before the amendment can make it to the ballot.  If the amendment is on the ballot in 2017 and is approved by the electorate, the constitutional amendment becomes effective immediately, meaning the mandatory retirement age for justices, judges and magisterial district justices will change in the midst of the elections for those judicial offices.

[12] It is anticipated that some may argue that late changes to the ballot are not uncommon.  However, the requested relief in this case (an altered ballot question) is different than the relief sought in an objection to a nomination petition or paper.  In an objection case, it is only a matter of whether a

31

Petitioners' delay is especially concerning considering that an altered ballot question (which Petitioners suggest as a remedy) would be almost certain to miss the first round of advertising of the joint resolution.[13]

Petitioners offer no valid explanation for their failure to timely pursue relief from this Court.[14]   By virtue of their delay, Petitioners readily contributed to the emergent nature of the relief they seek, and their request for relief should be denied.

---

candidate is either removed from the ballot or remains on the ballot.  Here, it would seem less than desirable to have different ballots with different versions of the ballot question being voted on at different stages in the November election process.

[13] Article XI, Section 1 of the Pennsylvania Constitution provides, in relevant part, that following passage of a proposed constitutional amendment by a majority of the members of both houses of the General Assembly in two consecutive sessions:

> the Secretary of the Commonwealth shall cause the same again to be published . . . and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe[.]

Pa. Const. art. XI, § 1.  By its express terms, Article XI, Section 1 requires only publication of the "proposed amendment or amendments."  However, Section 2621.1 of the Election Code, 25 P.S. § 2621.1, requires the Secretary to include the Plain English Statement in the advertisements. Implicit in the Election Code requirement is that the Secretary actually include the ballot question so that the citizens are aware of what the Plain English Statement is referencing.

[14] Petitioners submit that the basis for their delay was to determine if the *Costa* case would moot the need for the instant lawsuit.  *See* Pet'rs.' Reply to New Matter, ¶ 99.  Petitioners' excuse for the delay, however, is somewhat contrary to the position they took with this Court that the two cases "do not present a single overlapping issue."  *See* Pet'rs.' Reply, ¶4, *Costa v. Cortes*, No. 100 M.M. 2016 (filed July 26, 2016).

## **CONCLUSION**

For these reasons, the Secretary respectfully requests this Honorable Court deny Petitioners' application for summary relief, grant the Secretary's cross-application for summary relief, and dismiss Petitioners' complaint with prejudice.

Respectfully submitted,

*s/ Timothy E. Gates*
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Ian B. Everhart
Attorney I.D. No. 318947
Assistant Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*Counsel for Pedro A. Cortés,
Secretary of the Commonwealth*

Date:  August 16, 2016

33

## CERTIFICATE OF WORD COUNT

Pursuant to Pa.R.A.P. 2135(d), I, Timothy E. Gates, Chief Counsel for the Pennsylvania Department of State, hereby certify that this filing contains 9,049 words and, thus, complies with the word count limit imposed by Pa.R.A.P. 2135(a)(1).  In making this certification, I have relied on the word count of the word processing system used to prepare this filing.

*s/ Timothy E. Gates*
Timothy E. Gates
Chief Counsel
Pennsylvania Department of State

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on August 16, 2016, I caused to be served a true and correct copy of the foregoing document titled Brief of Appellee, Secretary of the Commonwealth Pedro A. Cortés to the following:

**VIA PACFile and/or E-mail:**

| | |
|---|---|
| Richard A. Sprague, Esq. | Matthew H. Haverstick, Esq. |
| Brooke Spigler Cohen, Esq. | Mark E. Seiberling, Esq. |
| Jordan Richard Conaboy, Esq. | Joshua J. Voss, Esq. |
| William Howard Trask, Esq. | Kleinbard LLC |
| Sprague & Sprague | One Liberty Place, 46th Floor |
| 135 S. 19th Street, Suite 400 | 1650 Market Street |
| Philadelphia, PA 19103 | Philadelphia, PA  19103 |
| *Counsel for Petitioners* | *Counsel for Amicus Curiae Corman and Scarnati* |

George Bochetto, Esq.
Thomas E. Groshens, Esq.
John A. O'Connell, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Amicus Curiae Costa, Leach and Tartaglione*

*s/ Timothy E. Gates*
Timothy E. Gates
Chief Counsel
Pennsylvania Department of State

# EXHIBIT 1

PRINTER'S NO. 58

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No. 79   Session of 2013

INTRODUCED BY HARPER, MCGEEHAN, QUINN, KRIEGER, DEAN, BOBACK,
GOODMAN, GODSHALL, LONGIETTI, GILLEN, EVERETT, MOUL,
DENLINGER AND PEIFER, JANUARY 10, 2013

REFERRED TO COMMITTEE ON JUDICIARY, JANUARY 10, 2013

A JOINT RESOLUTION

1   Proposing an amendment to the Constitution of the Commonwealth
2     of Pennsylvania, further providing for compensation and
3     retirement of justices, judges and justices of the peace.

4     The General Assembly of the Commonwealth of Pennsylvania

5   hereby resolves as follows:

6     Section 1.  The following amendment to the Constitution of

7   Pennsylvania is proposed in accordance with Article XI:

8     That section 16(b) of Article V be amended to read:

9   § 16.  Compensation and retirement of justices, judges and

10             justices of the peace.

11     * * *

12     (b)  Justices, judges and justices of the peace shall be

13   retired on the last day of the calendar year in which they

14   attain the age of [70] 75 years. Former and retired justices,

15   judges and justices of the peace shall receive such compensation

16   as shall be provided by law. Except as provided by law, no

17   salary, retirement benefit or other compensation, present or

18   deferred, shall be paid to any justice, judge or justice of the

1   peace who, under section 18 or under Article VI, is suspended,

2   removed or barred from holding judicial office for conviction of

3   a felony or misconduct in office or conduct which prejudices the

4   proper administration of justice or brings the judicial office

5   into disrepute.

6       * * *

7      Section 2.  (a)  Upon the first passage by the General

8   Assembly of this proposed constitutional amendment, the

9   Secretary of the Commonwealth shall proceed immediately to

10   comply with the advertising requirements of section 1 of Article

11   XI of the Constitution of Pennsylvania and shall transmit the

12   required advertisements to two newspapers in every county in

13   which such newspapers are published in sufficient time after

14   passage of this proposed constitutional amendment.

15      (b)  Upon the second passage by the General Assembly of this

16   proposed constitutional amendment, the Secretary of the

17   Commonwealth shall proceed immediately to comply with the

18   advertising requirements of section 1 of Article XI of the

19   Constitution of Pennsylvania and shall transmit the required

20   advertisements to two newspapers in every county in which such

21   newspapers are published in sufficient time after passage of

22   this proposed constitutional amendment. The Secretary of the

23   Commonwealth shall submit this proposed constitutional amendment

24   to the qualified electors of this Commonwealth at the first

25   primary, general or municipal election which meets the

26   requirements of and is in conformance with section 1 of Article

27   XI of the Constitution of Pennsylvania and which occurs at least

28   three months after the proposed constitutional amendment is

29   passed by the General Assembly.

# EXHIBIT 2

7/20/2016                              Bill Information (History) - House Bill 79; Regular Session 2013-2014 - PA General Assembly

# Pennsylvania General Assembly
http://www.legis.state.pa.us/cfdocs/billInfo/bill_history.cfm?syear=2013&sind=0&body=H&type=B&bn=79                                     07/20/2016 03:01 PM

Home / Bill and Amendments / Bill Information

# Bill Information - History

## House Bill 79; Regular Session 2013-2014

**Sponsors:**   HARPER, McGEEHAN, QUINN, KRIEGER, DEAN, BOBACK, GOODMAN, GODSHALL, LONGIETTI,
GILLEN, EVERETT, MOUL, DENLINGER, PEIFER, FREEMAN, MILNE, MURT, KORTZ, WATSON,
BARBIN and CALTAGIRONE

**Printer's No.(PN):**   58*

**Short Title:**   A Joint Resolution proposing an amendment to the Constitution of the Commonwealth of Pennsylvania,
further providing for compensation and retirement of justices, judges and justices of the peace.

**Actions:**   PN 0058   Referred to JUDICIARY, Jan. 10, 2013

Reported as committed, May 14, 2013

First consideration, May 14, 2013

Laid on the table, May 14, 2013

Removed from table, June 20, 2013

Second consideration, June 24, 2013

Re-committed to APPROPRIATIONS, June 24, 2013

Re-reported as committed, June 25, 2013

Third consideration and final passage, June 28, 2013 (157-44)

In the Senate

Referred to JUDICIARY, June 30, 2013

Reported as committed, Oct. 1, 2013

First consideration, Oct. 1, 2013

Second consideration, Oct. 2, 2013

Third consideration and final passage, Oct. 15, 2013 (44-6)

(Remarks see Senate Journal Page 1028-1029), Oct. 15, 2013

Signed in House, Oct. 16, 2013

Signed in Senate, Oct. 21, 2013

Filed in the Office of the Secretary of the Commonwealth, Oct. 22, 2013

Pamphlet Laws Resolution No. 3

* denotes current Printer's Number
? How to Read a Bill   ? About PDF Documents

# EXHIBIT 3

CORRECTIVE REPRINT
PRIOR PASSAGE - J.R. 2013-3

PRIOR PRINTER'S NO. 80                                  PRINTER'S NO. 251

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE BILL

## No.   90       Session of 2015

INTRODUCED BY HARPER, CALTAGIRONE, BARBIN, BOBACK, CARROLL,
   COHEN, DIAMOND, FREEMAN, GILLEN, GODSHALL, GOODMAN, GRELL,
   GROVE, KRIEGER, LONGIETTI, MURT, PETRI, SCHLOSSBERG, WATSON
   AND GIBBONS, JANUARY 21, 2015

REFERRED TO COMMITTEE ON JUDICIARY, JANUARY 21, 2015

A JOINT RESOLUTION

1  Proposing an amendment to the Constitution of the Commonwealth
2     of Pennsylvania, further providing for compensation and
3     retirement of justices, judges and justices of the peace.

4     The General Assembly of the Commonwealth of Pennsylvania

5  hereby resolves as follows:

6     Section 1.  The following amendment to the Constitution of

7  Pennsylvania is proposed in accordance with Article XI:

8     That section 16(b) of Article V be amended to read:

9  § 16.  Compensation and retirement of justices, judges and

10             justices of the peace.

11     * * *

12     (b)  Justices, judges and justices of the peace shall be

13  retired on the last day of the calendar year in which they

14  attain the age of [70] 75 years. Former and retired justices,

15  judges and justices of the peace shall receive such compensation

16  as shall be provided by law. Except as provided by law, no

1   salary, retirement benefit or other compensation, present or

2   deferred, shall be paid to any justice, judge or justice of the

3   peace who, under section 18 or under Article VI, is suspended,

4   removed or barred from holding judicial office for conviction of

5   a felony or misconduct in office or conduct which prejudices the

6   proper administration of justice or brings the judicial office

7   into disrepute.

8       * * *

9       Section 2.   (a)   Upon the first passage by the General

10  Assembly of this proposed constitutional amendment, the

11  Secretary of the Commonwealth shall proceed immediately to

12  comply with the advertising requirements of section 1 of Article

13  XI of the Constitution of Pennsylvania and shall transmit the

14  required advertisements to two newspapers in every county in

15  which such newspapers are published in sufficient time after

16  passage of this proposed constitutional amendment.

17      (b)   Upon the second passage by the General Assembly of this

18  proposed constitutional amendment, the Secretary of the

19  Commonwealth shall proceed immediately to comply with the

20  advertising requirements of section 1 of Article XI of the

21  Constitution of Pennsylvania and shall transmit the required

22  advertisements to two newspapers in every county in which such

23  newspapers are published in sufficient time after passage of

24  this proposed constitutional amendment. The Secretary of the

25  Commonwealth shall submit this proposed constitutional amendment

26  to the qualified electors of this Commonwealth at the first

27  primary, general or municipal election which meets the

28  requirements of and is in conformance with section 1 of Article

29  XI of the Constitution of Pennsylvania and which occurs at least

30  three months after the proposed constitutional amendment is

1  passed by the General Assembly.

# EXHIBIT 4

7/20/2016                    Bill Information (History) - House Bill 90; Regular Session 2015-2016 - PA General Assembly

# Pennsylvania General Assembly
http://www.legis.state.pa.us/cfdocs/billinfo/bill_history.cfm?syear=2015&sind=0&body=H&type=B&bn=90

07/20/2016 03:05 PM

Home / Bill and Amendments / Bill Information

# Bill Information - History

## House Bill 90; Regular Session 2015-2016

**Sponsors:**   HARPER, CALTAGIRONE, BARBIN, BOBACK, CARROLL, COHEN, DIAMOND, FREEMAN, GILLEN, GODSHALL, GOODMAN, GRELL, GROVE, KRIEGER, LONGIETTI, MURT, PETRI, SCHLOSSBERG, WATSON, GIBBONS and DAVIS

**Printer's No.(PN):**   251* , 80

**Short Title:**   A Joint Resolution proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for compensation and retirement of justices, judges and justices of the peace.

**Actions:**

| | |
|---|---|
| PN 0080 | Referred to JUDICIARY, Jan. 21, 2015 |
| PN 0251 | Corrective Reprint, Printer's No. 251, Jan. 28, 2015 |
| | Reported as committed, Feb. 3, 2015 |
| | First consideration, Feb. 3, 2015 |
| | Laid on the table, Feb. 3, 2015 |
| | Removed from table, Feb. 4, 2015 |
| | Second consideration, Feb. 9, 2015 |
| | Re-committed to APPROPRIATIONS, Feb. 9, 2015 |
| | Re-reported as committed, Feb. 10, 2015 |
| | Third consideration and final passage, Feb. 10, 2015 (154-44) |
| | (Remarks see House Journal Page 157), Feb. 10, 2015 |

In the Senate

Referred to JUDICIARY, Feb. 13, 2015

Reported as committed, Feb. 17, 2015

First consideration, Feb. 17, 2015

Laid on the table, April 15, 2015

Removed from table, April 15, 2015

Laid on the table, June 1, 2015

Removed from table, June 1, 2015

Laid on the table, June 24, 2015

Removed from table, June 24, 2015

Re-referred to APPROPRIATIONS, June 30, 2015

Re-reported as committed, Oct. 27, 2015

Second consideration, Oct. 28, 2015

Third consideration and final passage, Nov. 16, 2015 (36-13)

(Remarks see Senate Journal Page 1190), Nov. 16, 2015

Signed in House, Nov. 17, 2015

Signed in Senate, Nov. 17, 2015

Bill Information (History) - House Bill 90; Regular Session 2015-2016 - PA General Assembly

Filed in the Office of the Secretary of the Commonwealth, Nov. 17, 2015

Pamphlet Laws Resolution No. 1

\* denotes current Printer's Number
② How to Read a Bill   ② About PDF Documents

# EXHIBIT 5

custom

# AFFIDAVIT

I, Jonathan Marks, do hereby state and verify that the statements made below are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities and am making this statement under penalty of perjury.

1. I am employed by the Department of State (Department) as the Commissioner of the Bureau of Commissions, Elections and Legislation (BCEL). As part of my duties, I supervise the administration of the Department's duties relating to elections. Under my authority as Commissioner, I am responsible for managing the process by which the Department meets the constitutional requirements regarding the publication of proposed constitutional amendments.

2. Pursuant to Article XI, § 1 of the Pennsylvania Constitution, after the General Assembly passes a proposed constitutional amendment, the Secretary of the Commonwealth shall cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published in each of the three months prior to the next general election. If the next General Assembly also passes the proposed constitutional amendment, the Secretary of the Commonwealth shall again cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published at least three months after the General Assembly's vote and prior to being submitted to the qualified electors in the form of a ballot question.

3. The Department contracts with Mid-Atlantic Newspaper Services, Inc. (MANSI) Media for the provision of services related to the publication of proposed constitutional amendments.

4. Department staff work extensively with MANSI to effectuate the publication of proposed constitutional amendments in accordance with Article XI, § 1. In order to properly effectuate publication, the Department requires lead time prior to the final edit date to have an outside vendor translate the final text of the advertisement to Spanish, which must then be reviewed by bilingual staff at the Department. The printer then develops ad copy for the English and Spanish versions of the advertisements in numerous sizes for the various different-sized publications. Each separate ad copy must be proofed and approved by the Department. Any changes or corrections result in new ad copy that must once again be reviewed and approved.

5. On October 22, 2013, Joint Resolution 2013-3 (H.B. 79), proposing an amendment the constitution further providing for compensation and retirement of justices, judges, and justices of the peace, was filed with the Secretary of the Commonwealth.

6. On November 17, 2015, Joint Resolution 2015-1 (H.B. 90), again proposing an amendment the constitution further providing for compensation and retirement of

Case 1:16-cv-02169-RDM   Document 17   Filed 11/08/16   Page 454 of 692

Marks Affidavit
Page 2

> justices, judges, and justices of the peace, was filed with the Secretary of the
> Commonwealth.

7. The Secretary prepared a ballot question for Joint Resolution 2015-1, and the Office of
   the Attorney General approved the ballot question and provided the plain English
   statement to the Secretary on December 9, 2015.

8. Pursuant to the explicit text in the authorizing joint resolutions, the Secretary scheduled
   the ballot question for the General Primary to be held on April 26, 2016.

9. House Resolution 783 of 2016 (H.R. 783), a concurrent resolution adopted by the
   majorities in both houses of the General Assembly on April 12, 2016, directs the
   Secretary of the Commonwealth to remove the ballot question for Proposed
   Constitutional Amendment 1 (mandatory judicial retirement age) from the General
   Primary ballot on April 26, 2016, and to place a revised version of the ballot question on
   the General Election ballot on November 8, 2016.

10. Given the uncertainty due to the nature and timing of court rulings regarding the ballot
    question, as well as the impending publication deadlines, the Secretary of the
    Commonwealth voluntarily changed the form of the ballot question to conform to the text
    of H.R. 783 and submitted it on May 31, 2016, to the Office of the Attorney General for
    approval under the terms of 25 P.S. § 2621.1. A copy of the transmission memorandum
    to the Office of the Attorney General is attached hereto as Exhibit A.

11. Pursuant to the requirements of 25 P.S. § 2621.1, whenever a proposed constitutional
    amendment shall be submitted to the qualified electors, the Attorney General shall
    prepare a statement in plain English which indicates the purpose, limitations and effects
    of the ballot question on the people of the Commonwealth. The Secretary of the
    Commonwealth is required to include such statement in the publications required by
    Article XI, § 1 of the Pennsylvania Constitution and certify such statement to the county
    boards of elections.

12. In a letter dated June 14, 2016, Solicitor General Bruce L. Castor, Jr., on behalf of the
    Office of the Attorney General, conveyed approval of the form of the ballot question, as
    set forth in H.R. 783, and transmitted a copy of the plain English statement to the
    Department. A copy of the letter and enclosures in attached hereto as Exhibit B.

13. As set forth in 25 P.S. §§ 2621.1 and 3041, the county boards of election must include
    the plain English statement, along with the text of the proposed amendment and the ballot
    question, in the notice of elections published by the board in a newspaper in the county
    between three and 10 days before the election.

14. The county boards of election, in accordance with 25 P.S. § 2621.1, must also require that
    at least three copies of the Attorney General's plain English statement be posted in or
    about the polling place outside of the enclosed space for voting.

Marks Affidavit
Page 3

15. For the revised Proposed Constitutional Amendment 1 to be properly placed on the November 2016 ballot pursuant to the requirements of Article XI, § 1 of the Pennsylvania Constitution, the first round of advertisements must be published no later than August 8, 2016.

16. In order to meet that timeframe, advertising space had to be reserved in newspapers, and the Secretary had to provide the text of the advertisements, including the language of the ballot question, to MANSI no later than July 27, 2016.

17. The first round of newspaper advertisements, including the language of the ballot question, began being published on August 2, 2016, with a majority of the advertisements scheduled to run in newspapers between August 3, 2016 and August 6, 2016.  A copy of the publication dates from MANSI is attached hereto as Exhibit C.

18. The second round of advertisements is scheduled to be published between September 2, 2016 and September 8, 2016, with a final edit date of August 29, 2016.  *See* Exhibit C.

19. The third round of advertisements is scheduled to be published between October 1, 2016 and October 7, 2016, with a final edit date of September 26, 2016.  *See* Exhibit C.

20. The estimated total cost for the three publications relating to the proposed constitutional amendment providing for the mandatory retirement of jurists is $697,004.98, with each round of advertisements estimated to cost approximately $232,000.00.  *See* Exhibit C.

21. The county boards of election are required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an application no later than August 30, 2016, and to all other covered uniformed-service and overseas voters who submitted an application no later than September 23, 2016.

22. No later than August 10, 2016, the county boards of election must prepare, and make available on the county's website, an election notice, which is used by covered uniformed-service and overseas voters in conjunction with the Federal write-in absentee ballot, that includes the ballot question.

**Jonathan Marks, Commissioner**
**Bureau of Commissions, Elections**
**and Legislation**
**Department of State**

DATE: August 3, 2016

COMMONWEALTH OF PENNSYLVANIA
DEPARTMENT OF STATE
OFFICE OF CHIEF COUNSEL


pennsylvania
DEPARTMENT OF STATE

SUBJECT:   Proposed Constitutional Amendment 1 -- Mandatory Judicial Retirement Age

TO:        Robert A. Mulle
           Executive Deputy Attorney General
           Office of Attorney General, Civil Law Division

           Amy M. Elliott
           Chief Deputy Attorney General
           Legal Review Section
           Office of Attorney General, Civil Law Division

FROM:      Timothy E. Gates
           Chief Counsel
           Department of State

DATE:      May 31, 2016

---

The Pennsylvania General Assembly, acting pursuant to its authority in Article XI of the Pennsylvania Constitution, passed joint resolutions in 2013 and again in 2015 to propose an amendment to Article V, Section 16(b) of the Constitution, which would raise the mandatory judicial retirement age from 70 to 75 years. Following each passage, and in accordance with the duties imposed on him by Article XI, the Secretary of the Commonwealth (Secretary) advertised the proposed amendment in 2014 and again in early 2016.

Pursuant to the Secretary's duties imposed on him by the Election Code, the Secretary drafted, and the Office of the Attorney General approved, the language for the ballot question. The Office of the Attorney General composed a "Plain English Statement" analyzing the effects of the proposed amendment. In addition to the text of the amendment, the ballot question and the Plain English Statement were published in the 2016 advertisements. This proposed amendment on judicial retirement age was designated Proposed Constitutional Amendment 1. Pursuant to the explicit text in the authorizing joint resolutions, it was scheduled for the 2016 General Primary to be held April 26, 2016.

On April 6, 2016, the House of Representatives passed House Resolution 783 (H.R. 783), a concurrent resolution, which (1) directed the Secretary to remove Proposed Constitutional Amendment 1 from the April 2016 ballot certification; (2) directed county election authorities to remove Ballot Question 1 from ballot materials; (3) directed the Secretary to disregard any votes

Exhibit A

cast on Proposed Constitutional Amendment 1, and not to certify any results; (4) directed the Secretary to place Ballot Question 1 on the ballot for the November 2016 General Election, using a specified wording; and (5) directed the Secretary to advertise Ballot Question 1 again in each of the three months leading up to the General Election on November 8, 2016.  The Senate passed H.R. 783 on April 11, 2016.

Following the passage of H.R. 783, the Honorable Jay Costa, the Honorable Daylin Leach, and the Honorable Christine Tartaglione, duly-elected members of the Pennsylvania Senate (Petitioners) sought relief in Commonwealth Court by filing a petition for review on April 14, 2016.  Petitioners also filed an application requesting a preliminary injunction to enjoin the Secretary from implementing H.R. 783.  The court held a hearing on April 19, 2016, and issued a decision the following day denying the preliminary injunction.  In conformity with the court's order of April 20, 2016, the Secretary removed Proposed Constitutional Amendment 1 from the official ballot certification for the 2016 General Primary, and efforts were made at the polling places to inform voters of its status.

The merits of Petitioners' application for summary relief are currently pending before Commonwealth Court.  The matter has been briefed by the parties and oral argument is scheduled for June 9, 2016.

For Proposed Constitutional Amendment 1 to proceed on the November 2016 ballot, the first rounds of advertisements must be published no later than August 8, 2016.  Because the nature and timing of future court rulings creates uncertainty concerning the ballot question language that should be employed in the 2016 General Election, and in order to resolve that uncertainty in time for the pre-election advertising that must begin in August and be arranged in July, the Secretary has decided to revise the ballot question for Proposed Constitutional Amendment 1 to conform to the text contained in H.R. 783.  The revised ballot question is attached to this memorandum for your review and approval.[1]  The Secretary would appreciate if your office would transmit the Office of the Attorney General's approval of this wording, along with the Plain English Statement, to him as soon as possible, but in any event by June 15, 2016.  The entire package, including the ballot question and the Plain English Statement, must be translated to Spanish and given to the Department of State's vendor, MANSI Media, by July 15, 2016, to ensure accurate and timely placement of the advertisements prior to the 2016 General Election.

---

[1] The language of the ballot question submitted here was previously addressed by the Office of the Attorney General in connection with an Application for Extraordinary Relief filed with the Supreme Court by the Pennsylvania Senate Majority Caucus and the President Pro Tempore and the Majority Leader of the Senate.  *See In re: Proposed Constitutional Amendment 1, Ballot Question*, No. 29 M.M. 2016 (Pa. 2016).

If you have any questions regarding this matter, please do not hesitate to contact me.

Enclosure

cc:     The Honorable Pedro A. Cortés, Secretary of the Commonwealth
        H. Geoffrey Moulton, Jr., Deputy General Counsel, Governor's Office of General Counsel

REVISED PROPOSED BALLOT QUESTION 1

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?



COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL
HARRISBURG, PA. 17120

16TH FLOOR
STRAWBERRY SQUARE
HARRISBURG, PA 17120
(717)787-3391

KATHLEEN G. KANE
ATTORNEY GENERAL

June 14, 2016

Timothy E. Gates
Chief Counsel
Department of State
301 North Office Building
401 North Street
Harrisburg, PA 17120

In Re:  Proposed Constitutional Amendment 1
Mandatory Retirement Age

Dear Mr. Gates:

The Office is in receipt of your May 31, 2016, request for approval of the wording of the ballot question for proposed Constitutional Amendment 1 and for transmission of a Plain English Statement. After reviewing your submission, the Office approves the wording of Revised Proposed Ballot Question 1. This approval should not be construed as an acknowledgement of the General Assembly's authority to designate the specific wording of the ballot question. This approval is limited to the form of the question as prepared by the Department of State, and presented to this Office on May 31, 2016.

Enclosed is a copy of the Plain English Statement originally transmitted to the Department on December 9, 2015. After reviewing all relevant material, the Office has determined that a revised Plain English Statement is unnecessary. The enclosed statement continues to adequately describe the purposes, limitations, and effects of the proposed ballot question. The transmission of the Statement should not be construed as acknowledging the General Assembly's authority to mandate, by resolution, that a particular Plain English Statement be utilized.

The Office of Attorney General is aware of the on-going litigation regarding proposed Constitutional Amendment 1. The Office takes no position on the litigation. The approval of the question and transmission of the Plain English Statement should only be viewed as the Office discharging its duties under the Election Code.

Sincerely,

Bruce L. Castor, Jr.
Solicitor General

Enclosure

Exhibit B

REVISED PROPOSED BALLOT QUESTION 1

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

**Plain English Statement**
**Joint Resolution No. 2015-1**

Amending the Mandatory Judicial Retirement Age

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the Justices of the Pennsylvania Supreme Court, Judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia, and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

## 2016 Constitutional Amendment - JUDGES BALLOT v1

| Run Date | Newspaper | Section-Location | Ad Size | Description | Column Width | Ad Depth | Total Cost |
|---|---|---|---|---|---|---|---|
| 8/2/2016 | EMLENTON PROGRESS-NEWS | Main News, RHP, FF | ½ Half Page BW | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 8/2/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,727.64 |
| 8/2/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $296.10 |
| 8/3/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $358.55 |
| 8/3/2016 | ADV - JUNIATA SENTINEL | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $330.51 |
| 8/3/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $469.69 |
| 8/3/2016 | CRANBERRY EAGLE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.15 |
| 8/3/2016 | DCNR - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,572.48 |
| 8/3/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $164.31 |
| 8/3/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/3/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/3/2016 | FOREST CITY NEWS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $164.53 |
| 8/3/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $665.07 |
| 8/3/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | ½ Half Page BW | Half Pg (10x13), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 8/3/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $870.66 |
| 8/3/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 6.5 | $310.05 |
| 8/3/2016 | MUNCY LUMINARY | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 8/3/2016 | ORBISONIA VALLEY LOG | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 8/3/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | ½ Full Page BW | Fu.Il Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,130.58 |
| 8/3/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 8/3/2016 | PORT ROYAL TIMES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.45 |
| 8/3/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/3/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 8/3/2016 | WELLSBORO MANSFIELD GAZETTE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/3/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 8/3/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $613.92 |
| 8/3/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $533.46 |
| 8/4/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNIATA COUNTIES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $989.57 |
| 8/4/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | ½ Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,611.20 |
| 8/4/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | ½ Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW | 1 | 1 | $3,611.20 |
| 8/4/2016 | ALTOONA MIRROR | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,683.80 |
| 8/4/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,571.03 |
| 8/4/2016 | BEDFORD DAILY GAZETTE | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.06 |
| 8/4/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,297.80 |
| 8/4/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,297.80 |
| 8/4/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | ½ Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $444.60 |

Exhibit C

| 8/4/2016 | BLOOMSBURG PRESS-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,938.51 |
|---|---|---|---|---|---|---|---|
| 8/4/2016 | BRADFORD ERA | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 8/4/2016 | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 8/4/2016 | BUTLER EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 8/4/2016 | CARLISLE SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 8/4/2016 | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $422.45 |
| 8/4/2016 | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 8/4/2016 | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,326.15 |
| 8/4/2016 | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.28 |
| 8/4/2016 | COR AY EVENING JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 8/4/2016 | DANVILLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 8/4/2016 | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Half Page BW | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $2,053.14 |
| 8/4/2016 | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $546.49 |
| 8/4/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,382.85 |
| 8/4/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - PARKLAND NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAUQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,382.85 |
| 8/4/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - PARKLAND NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAUQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 8/4/2016 | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,903.23 |
| 8/4/2016 | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $610.18 |
| 8/4/2016 | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 8/4/2016 | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $405.72 |
| 8/4/2016 | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $944.37 |
| 8/4/2016 | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 8/4/2016 | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 8/4/2016 | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $928.62 |
| 8/4/2016 | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 8/4/2016 | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $487.67 |
| 8/4/2016 | INDIANA GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,282.68 |
| 8/4/2016 | JOHNSTOWN TRIBUNE-DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,365.25 |
| 8/4/2016 | KANE REPUBLICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $439.92 |
| 8/4/2016 | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,866.31 |
| 8/4/2016 | LATROBE BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 8/4/2016 | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 8/4/2016 | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $871.92 |
| 8/4/2016 | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 8/4/2016 | LITITZ RECORD EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $429.08 |
| 8/4/2016 | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $594.77 |
| 8/4/2016 | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (Secl x 8) | 1 | 1 | $505.05 |
| 8/4/2016 | MAINLINE - CRESSON MAINLINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - EBENSBURG MOUNTAINEER-HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 8/4/2016 | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $842.31 |
| 8/4/2016 | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.59 |
| 8/4/2016 | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,603.56 |
| 8/4/2016 | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,324.55 |
| 8/4/2016 | MILTON-LEWISBURG STANDARD-JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 8/4/2016 | NEW BETHLEHEM LEADER-VINDICATOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 8/4/2016 | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |

| Date | Publication | Section | Size | Caption | | | Amount |
|---|---|---|---|---|---|---|---|
| 8/1/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 8/4/2016 | OIL CITY DERRICK-FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,112.20 |
| 8/4/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,058.87 |
| 8/4/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 8/4/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 8/4/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 8/4/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,906.32 |
| 8/4/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $26,906.32 |
| 8/4/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 8/4/2016 | TRIBUNE-REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,620.19 |
| 8/4/2016 | KITTANNING LEADER TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 8/4/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 8/4/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 8/4/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,664.93 |
| 8/5/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $704.97 |
| 8/4/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,587.90 |
| 8/4/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $3,587.90 |
| 8/4/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.18 |
| 8/4/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 8/7/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $609.84 |
| 8/4/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $155.23 |
| 8/3/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,235.39 |
| 8/4/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $830.97 |
| 8/4/2016 | SHARON HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,235.34 |
| 8/4/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,290.87 |
| 8/4/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 8/4/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.95 |
| 8/4/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,199.52 |
| 8/4/2016 | TITUSVILLE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 8/4/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $826.56 |
| 8/4/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 8/4/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 8/4/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,160.15 |
| 8/4/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.77 |
| 8/4/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $677.59 |
| 8/4/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.77 |
| 8/7/2016 | WILKES BARRE CITIZENS VOICE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,051.28 |
| 8/4/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | x Half Page BW | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,859.00 |
| 8/4/2016 | WILLIAMSPORT SUN GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 8/7/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 8/4/2016 | HAZLETON STANDARD SPEAKER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,038.42 |
| 8/5/2016 | CARBONDALE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 8/5/2016 | GREENE COUNTY MESSENGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,207.08 |
| 8/5/2016 | HOJA EN DE SEMANA | Main News, RHP, FF | x Full Page BW | Full Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL | 1 | 1 | $1,578.95 |
| 8/5/2016 | MILFORD PIKE COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $606.43 |
| 8/5/2016 | BLAIRSVILLE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,045.17 |
| 8/5/2016 | SNYDER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $437.07 |
| 8/5/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $437.07 |
| 8/6/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.95 |
| 9/2/2016 | CARBONDALE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 9/2/2016 | GREENE COUNTY MESSENGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,207.08 |
| 9/2/2016 | HOJA EN DE SEMANA | Main News, RHP, FF | x Full Page BW | Full Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL | 1 | 1 | $1,578.95 |
| 9/2/2016 | MILFORD PIKE COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $606.43 |
| 9/2/2016 | BLAIRSVILLE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,045.17 |
| 9/2/2016 | SNYDER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $437.07 |

| Date | Newspaper | Section | Ad Size | Description | | | Price |
|---|---|---|---|---|---|---|---|
| 9/2/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $437.07 |
| 9/3/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 9/5/2016 | EMLENTON PROGRESS-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 9/5/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 8 | 10.5 | $10,727.64 |
| 9/5/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $396.10 |
| 9/6/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $368.55 |
| 9/7/2016 | ADV - JUNIATA SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BERKS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $150.91 |
| 9/7/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $569.69 |
| 9/7/2016 | CRANBERRY EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $696.15 |
| 9/7/2016 | DCVN - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,572.48 |
| 9/7/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $464.31 |
| 9/7/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/7/2016 | LVPG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/7/2016 | FOREST CITY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $434.52 |
| 9/7/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $636.07 |
| 9/7/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | x Half Page BW | Half Pg (10x10), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 9/7/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $870.66 |
| 9/7/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6.5 | 10.5 | $310.05 |
| 9/7/2016 | MUNCY LUMINARY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 9/7/2016 | ORBISONIA VALLEY LOG | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 9/7/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | x Full Page BW | Full Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,120.58 |
| 9/7/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 9/7/2016 | FORT ROYAL TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.46 |
| 9/7/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.39 |
| 9/7/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 9/7/2016 | WELLSBORO-MANSFIELD GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.39 |
| 9/7/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 9/7/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $519.92 |
| 9/7/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $593.46 |
| 9/8/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNIATA COUNTIES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $369.57 |
| 9/8/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $3,811.20 |
| 9/8/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | x Half Page BW | Half Pg (10 x), B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW | 1 | 1 | $3,811.20 |
| 9/8/2016 | ALTOONA MIRROR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 4 | 10.5 | $2,583.80 |
| 9/8/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10.5 | $2,571.03 |
| 9/8/2016 | BEDFORD DAILY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $506.06 |
| 9/8/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,397.80 |
| 9/8/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $1,397.80 |
| 9/8/2016 | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AS, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $444.60 |
| 9/8/2016 | BLOOMSBURG PRESS-ENTERPRISE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,558.51 |
| 9/8/2016 | BRADFORD ERA | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 9/8/2016 | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 9/8/2016 | BUTLER EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 9/8/2016 | CARLISE SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 9/8/2016 | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $422.40 |
| 9/8/2016 | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 9/8/2016 | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,339.15 |
| 9/8/2016 | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.38 |
| 9/8/2016 | CORRY EVENING JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $563.85 |
| 9/8/2016 | DANVILLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $437.07 |
| 9/8/2016 | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Half Page BW | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $2,059.14 |

| Date | Publication | Section | Size | Caption | | | Price |
|---|---|---|---|---|---|---|---|
| 9/8/2016 | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $346.89 |
| 9/8/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,582.85 |
| 9/8/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $1,382.85 |
| 9/8/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - PARKLAND-NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 9/8/2016 | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $5,903.23 |
| 9/8/2016 | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $810.18 |
| 9/8/2016 | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 9/8/2016 | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $425.72 |
| 9/8/2016 | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $944.37 |
| 9/8/2016 | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 9/8/2016 | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 9/8/2016 | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $938.62 |
| 9/8/2016 | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 9/8/2016 | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $697.67 |
| 9/8/2016 | INDIANA GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,232.58 |
| 9/8/2016 | JOHNSTOWN TRIBUNE DEMOCRAT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,945.25 |
| 9/8/2016 | KANE REPUBLICAN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $433.92 |
| 9/8/2016 | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,805.31 |
| 9/8/2016 | - LATROBE BULLETIN | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $558.39 |
| 9/8/2016 | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 9/8/2016 | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $871.92 |
| 9/8/2016 | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 9/8/2016 | LITITZ RECORD-EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $829.04 |
| 9/8/2016 | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $931.37 |
| 9/8/2016 | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (Ecol x 8) | 1 | 1 | $505.05 |
| 9/8/2016 | MAINLINE - GRESSON MAINLINER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - EBENSBURG MOUNTAINEER-HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | - MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 9/8/2016 | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $943.31 |
| 9/8/2016 | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.59 |
| 9/8/2016 | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 8 | 10.5 | $1,609.56 |
| 9/8/2016 | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,324.55 |
| 9/8/2016 | MILTON LEWISBURG STANDARD-JOURNAL | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 9/8/2016 | NEW BETHLEHEM LEADER-VINDICATOR | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.59 |
| 9/8/2016 | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |
| 9/8/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 9/8/2016 | OIL CITY DERRICK-FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,212.20 |
| 9/8/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,054.87 |
| 9/8/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 9/8/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 9/8/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Half Page BW | Full Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 9/8/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page BW | Half Pg (Ecol x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,506.32 |
| 9/8/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Full Page BW | Full Pg (Ecol x 10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $26,506.32 |
| 9/8/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 9/8/2016 | TRIBUNE-REVIEW | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,970.19 |
| 9/8/2016 | KITTANNING LEADER-TIMES | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 9/8/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 9/8/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 9/8/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,844.93 |
| 9/8/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $504.97 |
| 9/8/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,987.90 |
| 9/8/2016 | READING EAGLE | Main News, RHP, FF | x Half Page BW | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $1,987.90 |
| 9/8/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.33 |
| 9/8/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 9/8/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page BW | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $509.84 |

| Date | Newspaper | | | Description | | | Price |
|---|---|---|---|---|---|---|---|
| 9/8/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $555.23 |
| 9/8/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,246.39 |
| 9/8/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $330.97 |
| 9/8/2016 | SHARON HERALD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,216.34 |
| 9/8/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,290.87 |
| 9/8/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 9/8/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (Tool x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.55 |
| 9/8/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,193.52 |
| 9/8/2016 | TITUSVILLE HERALD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 9/8/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $926.56 |
| 9/8/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 9/8/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 9/8/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,643.15 |
| 9/8/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.77 |
| 9/8/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $877.53 |
| 9/8/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.27 |
| 9/8/2016 | WILKES BARRE CITIZENS VOICE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,061.28 |
| 9/8/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (Tool x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,855.00 |
| 9/8/2016 | WILLIAMSPORT SUN-GAZETTE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 9/8/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 9/8/2016 | HAZELTON STANDARD-SPEAKER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,258.42 |
| 10/1/2016 | CAMERON COUNTY ENDEAVOR | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.45 |
| 10/1/2016 | EMLENTON PROFESS-NEWS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (10.25 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $709.64 |
| 10/1/2016 | PHILADELPHIA TRIBUNE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,727.64 |
| 10/5/2016 | SAXTON BROAD TOP BULLETIN | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $296.10 |
| 10/5/2016 | SHIPPENSBURG NEWS-CHRONICLE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $368.55 |
| 10/5/2016 | ADV - JUNATA SENTINEL | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | ADV - NEWPORT NEWS-SUN | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BEKAS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - HAMBURG ITEM | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | BMN - BIRDSBORO NEWS OF SOUTHERN BEKAS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | CAMERON COUNTY ECHO | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.91 |
| 10/5/2016 | CHESTER COUNTY PRESS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $569.69 |
| 10/5/2016 | CRANBERRY EAGLE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $696.15 |
| 10/5/2016 | DCNN - NEWS OF DELAWARE COUNTY | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $1,572.68 |
| 10/5/2016 | DUSHORE SULLIVAN REVIEW | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $454.31 |
| 10/5/2016 | LVFG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVFG - EMMAUS EAST PENN PRESS SALISBURY PRESS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | FOREST CITY NEWS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 7 | 10.5 | $164.52 |
| 10/5/2016 | HAWLEY NEWS EAGLE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $666.07 |
| 10/5/2016 | MCMURRAY ALMANAC | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (10x18), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,000.00 |
| 10/5/2016 | MIDDLETOWN PRESS & JOURNAL | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $330.65 |
| 10/5/2016 | MONTROSE SUSQUEHANNA COUNTY INDEPENDENT | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 6.5 | $310.05 |
| 10/5/2016 | MUNCY LUMINARY | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $553.85 |
| 10/5/2016 | OPELOSNA VALLEY LOG | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $277.92 |
| 10/5/2016 | PHILADELPHIA AL DIA | Main News, RHP, FF | ¼ Half Page B/W | Full Pg (10 x 11), B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 1 | 1 | $5,120.58 |
| 10/5/2016 | NEW PITTSBURGH COURIER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,607.13 |
| 10/5/2016 | PORT ROYAL TIMES | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $530.45 |
| 10/5/2016 | POTTER LEADER-ENTERPRISE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 10/5/2016 | TIONESTA FOREST PRESS | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $376.74 |
| 10/5/2016 | WELLSBORO MANSFIELD GAZETTE | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $663.39 |
| 10/5/2016 | WESTFIELD FREE PRESS-COURIER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $430.92 |
| 10/5/2016 | WYOMING COUNTY PRESS EXAMINER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $553.85 |
| 10/5/2016 | YEAGERTOWN COUNTY OBSERVER | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $593.45 |
| 10/5/2016 | ADV - ADVANCE PUBLICATIONS PERRY & JUNATA COUNTIES | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $919.57 |
| 10/5/2016 | ADV - DUNCANNON RECORD | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | ADV - PERRY COUNTY TIMES | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (10 x 8), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $5,611.20 |
| 10/5/2016 | ALLENTOWN MORNING CALL | Main News, RHP, FF | ¼ Half Page B/W | Half Pg (10x8), B&W, CAPTION: Amendment on Ballot SPANISH Ad, NEW | 1 | 1 | $5,611.20 |
| 10/5/2016 | ALTOONA MIRROR | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,683.00 |
| 10/5/2016 | BEAVER COUNTY TIMES | Main News, RHP, FF | ¼ Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,571.03 |

| Date | | Newspaper | Section | Size | Caption | | | Price |
|---|---|---|---|---|---|---|---|---|
| 10/5/2016 | | BEDFORD DAILY GAZETTE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $606.06 |
| 10/5/2016 | | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,297.80 |
| 10/5/2016 | | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $0.00 |
| 10/5/2016 | | BMN - BERKS MONT NEWSPAPERS INC | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | 6 | 10.5 | $1,297.80 |
| 10/5/2016 | | BMN - BOYERTOWN AREA TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | | BMN - KUTZTOWN PATRIOT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | 6 | 10.5 | $0.00 |
| 10/5/2016 | | BLAKESLEE JOURNAL OF POCONO PLATEAU | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 6.5 | $414.60 |
| 10/5/2016 | | BLOOMSBURG PRESS ENTERPRISE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,928.51 |
| 10/5/2016 | | BRADFORD ERA | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,065.33 |
| 10/5/2016 | | BROOKVILLE JEFFERSONIAN DEMOCRAT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 10/5/2016 | | BUTLER EAGLE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,060.92 |
| 10/5/2016 | | CARLISLE SENTINEL | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,442.07 |
| 10/5/2016 | | CENTRE COUNTY GAZETTE | Main News, RHP, FF | x Half Page B/W | Half Pg (10.25" x 8"), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $472.40 |
| 10/5/2016 | | CENTRE DAILY TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,016.00 |
| 10/5/2016 | | CHAMBERSBURG PUBLIC OPINION | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,326.15 |
| 10/5/2016 | | CLEARFIELD PROGRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $583.38 |
| 10/5/2016 | | DANVILLE NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $503.85 |
| 10/5/2016 | | DELAWARE COUNTY TIMES | Main News, RHP, FF | x Full Page B/W | FULL Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 9.5 | $497.07 |
| 10/5/2016 | | DUBOIS COURIER-EXPRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,059.14 |
| 10/5/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | | 6 | 10.5 | $365.83 |
| 10/5/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | | 6 | 10.5 | $1,382.85 |
| 10/5/2016 | LVPG - PARKLAND NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVPG - LEHIGH VALLEY PRESS GROUP | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | | 6 | 10.5 | $1,382.85 |
| 10/5/2016 | LVPG - BETHLEHEM PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVPG - PARKLAND NORTHWESTERN PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | | 6 | 10.5 | $0.00 |
| 10/5/2016 | LVPG - WHITEHALL-COPLAY PRESS, NORTHAMPTON PRESS, CATASAQUA PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot SPANISH AD, NEW MATERIAL | | 6 | 10.5 | $0.00 |
| 10/5/2016 | | EASTON EXPRESS-TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,903.23 |
| 10/5/2016 | | ELLWOOD CITY LEDGER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $810.18 |
| 10/5/2016 | | ERIE TIMES-NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,447.17 |
| 10/5/2016 | | FULTON COUNTY NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $426.72 |
| 10/5/2016 | | GETTYSBURG TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.37 |
| 10/5/2016 | | BUCKS COUNTY COURIER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,874.06 |
| 10/5/2016 | | DOYLESTOWN INTELLIGENCER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,055.69 |
| 10/5/2016 | | GREENVILLE RECORD-ARGUS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $392.62 |
| 10/5/2016 | | HANOVER EVENING SUN | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,501.29 |
| 10/5/2016 | | HUNTINGDON DAILY NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $387.67 |
| 10/5/2016 | | INDIANA GAZETTE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,282.68 |
| 10/5/2016 | | JOHNSTOWN TRIBUNE DEMOCRAT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,945.25 |
| 10/5/2016 | | KANE REPUBLICAN | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $493.92 |
| 10/5/2016 | | LNP MEDIA GROUP - LANCASTER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,656.31 |
| 10/5/2016 | | LATROBE BULLETIN | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $562.19 |
| 10/5/2016 | | LEBANON DAILY NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,757.07 |
| 10/5/2016 | | LEHIGHTON TIMES NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $471.92 |
| 10/5/2016 | | LEWISTOWN SENTINEL | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,304.73 |
| 10/5/2016 | | LITITZ RECORD-EXPRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $829.08 |
| 10/5/2016 | | LOCK HAVEN EXPRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $934.77 |
| 10/5/2016 | | MAINLINE - MAINLINE NEWSPAPERS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW (5col x 8) | 1 | 1 | $505.05 |
| 10/5/2016 | | MAINLINE - CRESSON MAINLINER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/5/2016 | | MAINLINE - EBENSBURG MOUNTAINEER HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/5/2016 | | MAINLINE - NANTY GLO JOURNAL | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/5/2016 | | MAINLINE - NORTHERN CAMBRIA STAR-COURIER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/5/2016 | | MAINLINE - PORTAGE DISPATCH | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $0.00 |
| 10/5/2016 | | MARTINSBURG MORRISONS COVE HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $412.31 |
| 10/5/2016 | | MEADVILLE TRIBUNE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,431.99 |
| 10/5/2016 | | MEYERSDALE NEW REPUBLIC | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 4 | 10.5 | $1,903.56 |
| 10/5/2016 | | MILFORD PIKE COUNTY DISPATCH | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,119.55 |
| 10/5/2016 | | MILTON-LEWISBURG STANDARD JOURNAL | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 8 | $474.72 |
| 10/5/2016 | | NEW BETHLEHEM LEADER VINDICATOR | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $555.03 |
| 10/5/2016 | | NEW CASTLE NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,658.16 |

| Date | Publication | Section | Ad Size | Description | | | Price |
|---|---|---|---|---|---|---|---|
| 10/9/2016 | NORRISTOWN TIMES HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 10/9/2016 | OIL CITY DERRICK FRANKLIN NEWS HERALD-CLARION NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,112.20 |
| 10/9/2016 | HARRISBURG PATRIOT NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,054.87 |
| 10/9/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 5 | 10 | $0.00 |
| 10/9/2016 | PHILADELPHIA DAILY NEWS | Main News, RHP, FF | x Full Page B/W | Fu Pg, B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 5 | 10 | $0.00 |
| 10/9/2016 | PHILADELPHIA EL HISPANO | Main News, RHP, FF | x Full Page B/W | Fu Pg, B&W, CAPTION: Amendment on Ballot, NEW MATERIAL | 5 | 10 | $1,342.00 |
| 10/9/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page B/W | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $26,906.32 |
| 10/9/2016 | PHILADELPHIA INQUIRER | Main News, RHP, FF | x Half Page B/W | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, SPANSH AD NEW | 1 | 1 | $26,906.32 |
| 10/9/2016 | CONNELLSVILLE DAILY COURIER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 10/9/2016 | TRIBUNE REVIEW | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $4,670.19 |
| 10/9/2016 | KITTANNING LEADER TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,017.45 |
| 10/9/2016 | PITTSBURGH POST-GAZETTE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $10,343.97 |
| 10/9/2016 | POTTSTOWN MERCURY | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,092.42 |
| 10/9/2016 | POTTSVILLE REPUBLICAN HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,644.93 |
| 10/9/2016 | PUNXSUTAWNEY SPIRIT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $704.97 |
| 10/9/2016 | READING EAGLE | Main News, RHP, FF | x Half Page B/W | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,587.90 |
| 10/9/2016 | READING EAGLE | Main News, RHP, FF | x Half Page B/W | Half Pg (10.5 x 8.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW | 1 | 1 | $1,587.90 |
| 10/9/2016 | RENOVO RECORD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $331.38 |
| 10/9/2016 | RIDGWAY RECORD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $550.62 |
| 10/9/2016 | SAINT MARYS DAILY PRESS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $509.84 |
| 10/9/2016 | SAYRE MORNING TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 9 | 10.5 | $855.23 |
| 10/9/2016 | SCRANTON TIMES-TRIBUNE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,235.29 |
| 10/9/2016 | SHAMOKIN NEWS-ITEM | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $830.57 |
| 10/9/2016 | SHARON HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,316.34 |
| 10/9/2016 | SOMERSET DAILY AMERICAN | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,293.87 |
| 10/9/2016 | STROUDSBURG POCONO RECORD | Main News, RHP, FF | x Half Page B/W | Half Pg (11.542 x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,306.42 |
| 10/9/2016 | SOUTH SCHUYLKILL NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $378.55 |
| 10/9/2016 | SUNBURY DAILY ITEM | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,199.52 |
| 10/9/2016 | TITUSVILLE HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $564.48 |
| 10/9/2016 | TOWANDA DAILY REVIEW | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $826.56 |
| 10/9/2016 | UNIONTOWN HERALD-STANDARD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,974.23 |
| 10/9/2016 | WARREN TIMES OBSERVER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,314.81 |
| 10/9/2016 | WASHINGTON OBSERVER-REPORTER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,460.15 |
| 10/9/2016 | WAYNE INDEPENDENT | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $742.37 |
| 10/9/2016 | WAYNESBORO RECORD HERALD | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $477.59 |
| 10/9/2016 | WEST CHESTER DAILY LOCAL NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,057.77 |
| 10/9/2016 | WILKES-BARRE CITIZENS VOICE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $2,051.28 |
| 10/9/2016 | WILKES BARRE TIMES LEADER | Main News, RHP, FF | x Half Page B/W | Half Pg (6col x 10.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,895.00 |
| 10/9/2016 | WILLIAMSPORT SUN-GAZETTE | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,392.93 |
| 10/9/2016 | YORK RECORD DISPATCH SUNDAY NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $3,514.77 |
| 10/9/2016 | HAZLETON STANDARD-SPEAKER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $1,238.42 |
| 10/9/2016 | CARBONDALE NEWS | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $554.31 |
| 10/7/2016 | GREENE COUNTY MESSENGER | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $5,307.08 |
| 10/9/2016 | HOY FIN DE SEMANA | Main News, RHP, FF | x Full Page B/W | Fu Pg (10x10.5), B&W, CAPTION: Amendment on Ballot, SPANISH AD NEW MATERIAL | 1 | 1 | $1,578.95 |
| 10/7/2016 | MILFORD PIKE COUNTY COURIER | Main News, RHP, FF | x Half Page B/W | Half Pg (10.25 x 6.5), B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 1 | 1 | $696.43 |
| 10/7/2016 | BLAIRSVILLE DISPATCH | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $1,045.17 |
| 10/7/2016 | SNYDER COUNTY TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| 10/7/2016 | UNION COUNTY TIMES | Main News, RHP, FF | x Half Page B/W | Half Pg, B&W, CAPTION: Amendment on Ballot, Ad Copy NEW | 6 | 10.5 | $497.07 |
| | Susquehanna Design and Printing | | | | | | $850.00 |
| | **TOTAL** | | | | | | **$697,004.88** |
| | Confidential and proprietary information of MANSI Media | | | | | | |

# EXHIBIT 6

### Proposed Constitutional Amendment 1
### Amending the Mandatory Judicial
### Retirement Age

### Ballot Question

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

YES

NO

## Plain English Statement of Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the justices of the Pennsylvania Supreme Court, judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia, and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

(Excerpted from App'x 1
to Pet'rs.' Br. at Ex. G)

# EXHIBIT 7

# • P U B L I C  N O T I C E •

# PROPOSED AMENDMENTS TO THE CONSTITUTION OF PENNSYLVANIA

The following are true and correct copies of joint resolutions of the General Assembly of Pennsylvania proposing two amendments to the Constitution of Pennsylvania. Consistent with the procedures prescribed by Article XI, Section 1 of the Constitution, the General Assembly first proposed the amendments during the 2013 session and approved them for a second time during the 2015 session of the legislature. As required by Article XI, Section 1 of the Constitution and statutory law, the Secretary of the Commonwealth has caused the proposed amendments to be published here.

Pursuant to law, the Secretary of the Commonwealth will submit the proposed amendments to the electors of Pennsylvania in the form of two ballot questions at the General Primary to be held on April 26, 2016. If a ballot question is approved by a majority of electors voting on it, the corresponding amendment becomes part of the Constitution.

Those parts of the joint resolutions that appear in **bold print** are the words of the Constitution that are proposed by the General Assembly for addition or deletion. If an amendment were approved, the words <u>underlined</u> would be added to the Constitution and the words in brackets (e.g., [**Constitution**]) would be deleted. The unbolded words would remain unchanged in the Constitution.

Following the proposed amendments is the text of the questions that will be placed on the ballot. Below each question is a "Plain English Statement" prepared by the Office of Attorney General, and published as required by law, indicating the purpose, limitations and effects of the ballot question upon the people of this Commonwealth.

Anyone who needs help reading this advertisement or who needs the text of the proposed amendments in an alternative format may call or write the Pennsylvania Department of State, Bureau of Commissions, Elections and Legislation, Room 210 North Office Building, Harrisburg, PA 17120, (717) 787-5280, ra-BCEL@pa.gov.

Pedro A. Cortés, Secretary of the Commonwealth

---

## JOINT RESOLUTION 2015-1

Proposing an amendment to the Constitution of the Commonwealth of Pennsylvania, further providing for compensation and retirement of justices, judges and justices of the peace.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following amendment to the Constitution of Pennsylvania is proposed in accordance with Article XI:

That section 16(b) of Article V be amended to read:

§ 16. Compensation and retirement of justices, judges and justices of the peace.

* * *

(b) Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [**70**] **75** years. Former and retired justices, judges and justices of the peace shall receive such compensation as shall be provided by law. Except as provided by law, no salary, retirement benefit or other compensation, present or deferred, shall be paid to any justice, judge or justice of the peace who, under section 18 or under Article VI, is suspended, removed or barred from holding judicial office for conviction of a felony or misconduct in office or conduct which prejudices the proper administration of justice or brings the judicial office into disrepute.

* * *

Section 2. (a) Upon the first passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this proposed constitutional amendment.

(b) Upon the second passage by the General Assembly of this proposed constitutional amendment, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of this proposed constitutional amendment. The Secretary of the Commonwealth shall submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly.

---

### PROPOSED CONSTITUTIONAL AMENDMENT 1
AMENDING THE MANDATORY JUDICIAL RETIREMENT AGE

#### Ballot Question

Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?

#### Plain English Statement of the Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.

Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years. Justices of the peace are currently referred to as magisterial district judges.

If the ballot question were to be approved, justices, judges and magisterial district judges would be retired on the last day of the calendar year in which they attain the age of 75 years rather than the last day of the calendar year in which they attain the age of 70 years.

This amendment to the mandatory retirement age would be applicable to all judges and justices in the Commonwealth, including the justices of the Pennsylvania Supreme Court, judges of the Commonwealth Court, Superior Court, county courts of common pleas, community courts, municipal courts in the City of Philadelphia, and magisterial district judges.

The ballot question is limited in that it would not amend any other provisions of the Pennsylvania Constitution related to the qualification, election, tenure, or compensation of the justices, judges or magisterial district judges.

The effect of the ballot question would be to allow all justices, judges, and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years. This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

---

## JOINT RESOLUTION 2015-2

Proposing integrated amendments to the Constitution of the Commonwealth of Pennsylvania, eliminating the Traffic Court of Philadelphia.

The General Assembly of the Commonwealth of Pennsylvania hereby resolves as follows:

Section 1. The following integrated amendments to the Constitution of Pennsylvania are proposed in accordance with Article XI:

(1) That section 1 of Article V be amended to read:

§ 1. Unified judicial system.

The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the Supreme Court, the Superior Court, the Commonwealth Court, courts of common pleas, community courts, municipal [**and traffic**] courts in the City of Philadelphia, such other courts as may be provided by law and justices of the peace. All courts and justices of the peace and their jurisdiction shall be in this unified judicial system.

(2) That the heading and subsection (c) of section 6 of Article V be amended to read:

§ 6. Community courts; Philadelphia Municipal Court [**and Traffic Court**].

* * *

(c) In the City of Philadelphia there shall be a municipal court [**and a traffic court**]. The number of judges and the jurisdiction [**of each**] shall be as provided by law. [**These courts**] <u>This court</u> shall exist so long as a community court has not been established or in the event one has been discontinued under this section.

(3) That subsection (d) of section 10 of Article V be amended to read:

§ 10. Judicial administration.

* * *

(d) The Chief Justice and president judges of all courts with seven or less judges shall be the justice or judge longest in continuous service on their respective courts; and in the event of his resignation from this position the justice or judge next longest in continuous service shall be the Chief Justice or president judge. The president judges of all other courts shall be selected for five-year terms by the members of their respective courts[**,** <u>except that the president judge of the traffic court in the City of Philadelphia shall be appointed by the Governor</u>]. A Chief Justice or president judge may resign such position and remain a member of the court. In the event of a tie vote for office of president judge in a court which elects its president judge, the Supreme Court shall appoint as president judge one of the judges receiving the highest number of votes.

* * *

(4) That subsection (b) of section 12 of Article V be amended to read:

§ 12. Qualifications of justices, judges and justices of the peace.

* * *

(b) [**Judges of the traffic court in the City of Philadelphia and justices**] <u>Justices</u> of the peace shall be members of the bar of the Supreme Court or shall complete a course of training and instruction in the duties of their respective offices and pass an examination prior to assuming office. Such courses and examinations shall be as provided by law.

(5) That subsection (a) of section 15 of Article V be amended to read:

§ 15. Tenure of justices, judges and justices of the peace.

(a) The regular term of office of justices and judges shall be ten years and the regular term of office for judges of the municipal court [**and traffic court**] in the City of Philadelphia and of justices of the peace shall be six years. The tenure of any justice or judge shall not be affected by changes in judicial districts or by reduction in the number of judges.

* * *

Section 2. (a) Upon the first passage by the General Assembly of these proposed constitutional amendments, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of these proposed constitutional amendments.

(b) Upon the second passage by the General Assembly of these proposed constitutional amendments, the Secretary of the Commonwealth shall proceed immediately to comply with the advertising requirements of section 1 of Article XI of the Constitution of Pennsylvania and shall transmit the required advertisements to two newspapers in every county in which such newspapers are published in sufficient time after passage of these proposed constitutional amendments. The Secretary of the Commonwealth shall submit the proposed constitutional amendments under section 1 of this resolution to the qualified electors of this Commonwealth as a single ballot question at the first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendments are passed by the General Assembly.

---

### PROPOSED CONSTITUTIONAL AMENDMENT 2
ABOLITION OF THE PHILADELPHIA TRAFFIC COURT

#### Ballot Question

Shall the Pennsylvania Constitution be amended to abolish the Philadelphia Traffic Court?

#### Plain English Statement of the Office of Attorney General

The purpose of the ballot question is to amend the Pennsylvania Constitution to abolish the Traffic Court in the City of Philadelphia.

Presently, the Pennsylvania Constitution provides for the Traffic Court in the City of Philadelphia as part of the unified judicial system. If the ballot question were to be approved, the Traffic Court in the City of Philadelphia would be abolished by removing all references to the Traffic Court and the judges of the Traffic Court in the City of Philadelphia from the Pennsylvania Constitution.

Legislation enacted in 2013 transferred the functions performed by the Traffic Court to the Philadelphia Municipal Court. As a result, violations of the Vehicle Code previously adjudicated by the Traffic Court are presently being adjudicated by the Philadelphia Municipal Court. The proposed amendment would officially abolish the Traffic Court by removing all references to the Traffic Court and its judges from the Pennsylvania Constitution.

This ballot question is limited to whether the Traffic Court in the City of Philadelphia should be abolished. The ballot question would not amend any other provisions of the Pennsylvania Constitution beyond the removal of all references to the Traffic Court and its judges.

The effect of the ballot question would be to abolish the Traffic Court in the City of Philadelphia. As discussed above, legislation enacted in 2013 transferred the functions of the Traffic Court to the Philadelphia Municipal Court. This amendment would officially abolish the Traffic Court by removing all references to the Traffic Court and its judges from the Pennsylvania Constitution.

---

# EXHIBIT 8

PRIOR PRINTER'S NO. 3071                    PRINTER'S NO. 3091

## THE GENERAL ASSEMBLY OF PENNSYLVANIA

# HOUSE RESOLUTION

## No. 783 Session of 2015

INTRODUCED BY HARPER AND MARSICO, APRIL 4, 2016

AS RE-REPORTED FROM COMMITTEE ON RULES, HOUSE OF
REPRESENTATIVES, AS AMENDED, APRIL 5, 2016

### A CONCURRENT RESOLUTION

1  Further providing for submission to the electorate of a
2    constitutional amendment on retirement for justices, judges
3    and justices of the peace.

4   WHEREAS, Pursuant to Article XI of the Constitution of

5  Pennsylvania, the General Assembly has proposed an amendment to

6  section 16(b) of Article V of the Constitution of Pennsylvania

7  providing that justices, judges and justices of the peace be

8  retired on the last day of the calendar year in which they

9  attain the age of 75; and

10   WHEREAS, In October 2013, a majority of both houses of the

11  General Assembly passed Joint Resolution No. 2013-JR3 and

12  presented it to the Secretary of the Commonwealth, who published

13  it pursuant to section 1 of Article XI of the Constitution of

14  Pennsylvania; and

15   WHEREAS, In November 2015, in the General Assembly next

16  afterwards chosen, a majority of both houses of the General

17  Assembly passed Joint Resolution No. 2015-JR1 and presented it

18  to the secretary; and

1    WHEREAS, Pursuant to ~~section~~ SECTIONS 201(c), 201.1 AND 605     <--
2    of the act of June 3, 1937 (P.L.1333, No.320), known as the
3    Pennsylvania Election Code, the secretary prepared a ballot
4    question as Proposed Constitutional Amendment 1, which was
5    approved by the Attorney General, and published along with the
6    proposed amendment and the plain English statement prepared by
7    the Office of Attorney General pursuant to section 1 of Article
8    XI of the Constitution of Pennsylvania; and

9    WHEREAS, Proposed Constitutional Amendment 1 is scheduled to
10   appear on the ballot for primary election on April 26, 2016; and

11   ~~WHEREAS, The General Assembly believes that the ballot~~          <--
12   ~~question as prepared by the secretary contains unnecessary~~
13   ~~language and consequently may be confusing to electors; and~~
14   ~~WHEREAS, On March 6, 2016, the General Assembly filed an~~
15   ~~application asking the Pennsylvania Supreme Court to order that~~
16   ~~the ballot question be amended; and~~

17   ~~WHEREAS, On March 23, 2016, the Supreme Court denied approval~~
18   ~~of a stipulated resolution between the parties, noting that~~
19   ~~"such denial shall not be construed as condoning or constraining~~
20   ~~any future legislative or executive action by the parties"; and~~

21   WHEREAS, The General Assembly has prepared a revised ballot
22   question for Proposed Constitutional Amendment 1 which ~~avoids~~    <--
23   ~~confusion and,~~ IN THE VIEW OF THE GENERAL ASSEMBLY, more          <--
24   accurately reflects the language of Joint Resolution No. 2013-
25   JR3 and Joint Resolution No. 2015-JR1; and

26   WHEREAS, There is insufficient time to publish the revised
27   ballot question before primary election on April 26, 2016, as
28   required by section 1 of Article XI of the Constitution of
29   Pennsylvania; and

30   WHEREAS, Under section 802 of the Pennsylvania Election Code,

1   only persons registered and enrolled as members of a political

2   party are entitled to vote in any primary election of that

3   party; and

4       WHEREAS, More than 1 million Pennsylvania registered voters

5   are not registered and enrolled as members of one of the two

6   major political parties and therefore are not entitled to vote

7   in the primary election of either of those political parties;

8   and

9       WHEREAS, Many of those registered voters may be unaware of

10  their right to vote on Proposed Constitutional Amendment 1

11  during the primary election on April 26, 2016, and consequently

12  may not cast a vote on the ballot question; and

13      WHEREAS, Proposed Constitutional Amendment 1 is a matter of

14  Statewide importance to all citizens of the Commonwealth, not

15  merely registered members of the two major political parties;

16  and

17      WHEREAS, If Proposed Constitutional Amendment 1 were to be

18  placed on the ballot for the general election on November 8,

19  2016, the secretary will have sufficient time to publish the

20  revised ballot question as required under the Constitution of

21  Pennsylvania and registered voters who are not members of one of

22  the two major political parties will be more likely to

23  participate in the decision to approve or disapprove Proposed

24  Constitutional Amendment 1; and

25      WHEREAS, Under section 1 of Article XI of the Constitution of

26  Pennsylvania, it is within the authority of the General Assembly

27  to prescribe the manner and time at which proposed amendments to

28  the Constitution are submitted to the qualified electors of the

29  Commonwealth for approval; therefore be it

30      RESOLVED (the Senate concurring), That ~~the General Assembly~~   <--

20160HR0783PN3091                    - 3 -

1  ~~direct~~ the Secretary of the Commonwealth ~~to~~ remove the ballot   <--

2  question for Proposed Constitutional Amendment 1 from the ballot

3  certification for the primary election on April 26, 2016; and be

4  it further

5      RESOLVED, That ~~the General Assembly direct the secretary to~~   <--

6  ~~direct~~ the county boards of election ~~to~~ remove, to the extent   <--

7  possible, the ballot question for Proposed Constitutional

8  Amendment 1 from the ballot; and be it further

9      RESOLVED, That ~~the General Assembly direct~~ the secretary ~~to~~   <--

10 disregard any vote on Proposed Constitutional Amendment 1 in the

11 primary election on April 26, 2016, and ~~prohibit the secretary~~   <--

12 ~~from making~~ THE SECRETARY NOT MAKE a tally of votes cast on   <--

13 Proposed Constitutional Amendment 1; and be it further

14     RESOLVED, That the General Assembly direct the secretary to

15 place Proposed Constitutional Amendment 1 on the ballot for the

16 general election on November 8, 2016, in the following form:

17         Shall the Pennsylvania Constitution be amended to require

18         that justices of the Supreme Court, judges, and

19         magisterial district judges be retired on the last day of

20         the calendar year in which they attain the age of 75

21         years?;

22 and be it further

23     RESOLVED, That, to ensure compliance with section 1 of

24 Article XI of the Constitution of Pennsylvania, the General

25 Assembly direct the secretary to publish the ballot question for

26 Proposed Constitutional Amendment 1 as revised along with the

27 proposed amendment and the plain English statement previously

28 prepared by the Office of Attorney General, in each of the three

29 months prior to the general election on November 8, 2016; and be

30 it further

20160HR0783PN3091                   - 4 -

1    RESOLVED, That, upon passage by a majority of both houses of

2  the General Assembly, this concurrent resolution be transmitted

3  to the Secretary of the Commonwealth for implementation.

# EXHIBIT 9

# Pennsylvania General Assembly

http://www.legis.state.pa.us/cfdocs/billinfo/bill_history.cfm?syear=2015&sind=0&body=H&type=R&bn=783

# Bill Information - History

## House Resolution 783; Regular Session 2015-2016

**Sponsors:**  HARPER and MARSICO

**Printer's No.(PN):**  3091* , 3071

**Short Title:**  A Concurrent Resolution further providing for submission to the electorate of a constitutional amendment on retirement for justices, judges and justices of the peace.

**Actions:**

| | |
|---|---|
| PN 3071 | Referred to JUDICIARY, April 4, 2016 |
| | Reported as committed, April 5, 2016 |
| | Re-committed to RULES, April 5, 2016 |
| PN 3091 | Re-reported as amended, April 5, 2016 |
| | Adopted, April 6, 2016 (110-77) |
| | (Remarks see House Journal Page ), April 6, 2016 |

In the Senate

Referred to RULES AND EXECUTIVE NOMINATIONS, April 7, 2016

Reported as committed, April 11, 2016

Adopted, April 11, 2016 (32-17)

(Remarks see Senate Journal Page ), April 11, 2016

Signed in House, April 12, 2016

Signed in Senate, April 12, 2016

\* denotes current Printer's Number
⑦ How to Read a Bill   ⑦ About PDF Documents

# EXHIBIT 10

# AFFIDAVIT

I, Jonathan Marks, do hereby state and verify that the statements made below are true and correct to the best of my knowledge, information and belief. I understand that false statements made herein are subject to the penalties of 18 Pa. C.S.A. Section 4904 relating to unsworn falsification to authorities and am making this statement under penalty of perjury.

1. I am employed by the Department of State (Department) as the Commissioner of the Bureau of Commissions, Elections and Legislation (BCEL). As part of my duties, I supervise the administration of the Department's duties relating to elections. Under my authority as Commissioner, I am responsible for managing the process by which the Department meets the constitutional requirements regarding the publication of proposed constitutional amendments.

2. Pursuant to Article XI, § 1 of the Pennsylvania Constitution, after the General Assembly passes a proposed constitutional amendment, the Secretary of the Commonwealth shall cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published in each of the three months prior to the next general election. If the next General Assembly also passes the proposed constitutional amendment, the Secretary of the Commonwealth shall again cause the proposed constitutional amendment to be published in at least two newspapers in every county in which such newspapers are published at least three months after the General Assembly's vote and prior to being submitted to the qualified electors in the form of a ballot question.

3. Pursuant to the requirements of 25 P.S.§ 2621.1, whenever a proposed constitutional amendment shall be submitted to the qualified electors, the Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth. The Secretary of the Commonwealth is required to include such statement in the publications required by Article XI, § 1 of the Pennsylvania Constitution and certify such statement to the county boards of elections.

4. The Department contracts with Mid-Atlantic Newspaper Services, Inc. (MANSI) Media for the provision of services related to the publication of proposed constitutional amendments.

5. In accordance with the Commonwealth Court's order dated April 20, 2016, the Secretary of the Commonwealth removed Proposed Constitutional Amendment 1 from the official ballot certification and efforts were made at the polling places via a notice to inform voters of its status. A copy of the email to the counties with the amended certification and sample polling place notice is attached hereto as Exhibit A.

6. House Resolution 783 of 2016 (H.R. 783), a concurrent resolution adopted by the majorities in both houses of the General Assembly on April 12, 2016, directed the Secretary of the Commonwealth to remove the ballot question for Proposed Constitutional

Marks Affidavit
Page 2

Amendment 1 from the General Primary ballot on April 26, 2016, and to place a revised version of the ballot question on the General Election ballot on November 8, 2016.

7.  In order for the revised Proposed Constitutional Amendment 1 to be properly placed on the November 2016 ballot pursuant to the requirements of Article XI, § 1 of the Pennsylvania Constitution, the first round of advertisements must be published no later than August 8, 2016.

8.  In order to meet that timeframe, advertising space must be reserved in newspapers.  The text of the advertisements, including the language of the ballot question, must be provided to MANSI no later than July 27, 2016.

9.  Given the uncertainty due to the nature and timing of this litigation, as well as the impending publication deadlines, the Secretary of the Commonwealth voluntarily changed the form of the ballot question to conform to the text of H.R. 783 and intends to submit it to the Office of the Attorney General for approval under the terms of 25 P.S. § 2621.1.

5/13/2016
Date

Jonathan Marks, Commissioner
Bureau of Commissions, Elections
and Legislation
Department of State

# EXHIBIT 11

```
 1                IN THE COMMONWEALTH COURT OF PENNSYLVANIA

 2   Senator Jay Costa, Pa. 43rd District,      :
     Senator Daylin Leach, Pa. 17th District,   :
 3   in their Official Capacities, and Senator  :
     Christine M. Tartaglione, Pa. 2nd District, :
 4   in her Official Capacity and individually  :
     on behalf of qualified electors in the     :
 5   Commonwealth of Pennsylvania,              :
                         Petitioners            :
 6             v.                               :   No. 251 MD 2016
     Secretary Pedro A. Cortes, Senator Joseph  :
 7   B. Scarnati, Pa. 25th District, and Senator :
     Jacob Corman III, Pa. 34th District, each  :
 8   in their Official Capacities,              :
                         Respondents            :
 9

10

11                     TRANSCRIPT OF PROCEEDINGS

12   Before:    THE HONORABLE P. KEVIN BROBSON, Judge

13   Date:      April 19, 2016, 9:33 a.m.

14   Place:     Commonwealth Court of Pennsylvania
                Pennsylvania Judicial Center
15              601 Commonwealth Avenue, Courtroom No. 3001
                Harrisburg, Pennsylvania
16

17

18   APPEARANCES:

19              G. Alexander Bochetto, Esquire
                John A. O'Connell, Esquire
20                 For - Petitioners

21              Kathleen M. Kotula, Esquire
                Timothy E. Gates, Esquire
22                 For - Secretary Pedro A. Cortes, Respondent

23              Matthew H. Haverstick, Esquire
                Mark E. Seiberling, Esquire
24                 For - Senator Joseph B. Scarnati and Senator
                   Jacob Corman III, Respondents
25
```

1    were -- I think your testimony was that there are 3,517

2    machines for the county?

3            THE WITNESS:  Yes, Your Honor.

4            THE COURT:  How many polling places are we talking

5    about?

6            THE WITNESS:  About 1300.

7            THE COURT:  1300 polling places?

8            THE WITNESS:  Yeah.  Some of them have two

9    machines.  Some of them have three.

10           THE COURT:  Okay.  Thank you very much.

11           THE WITNESS:  Thank you.

12           THE COURT:  Is the witness released, Mr. Bochetto?

13           MR. BOCHETTO:  Yes, Your Honor.  Thank you.

14           THE COURT:  Mr. Haverstick?

15           MR. HAVERSTICK:  Yes, Your Honor.

16           THE COURT:  Ms. Kotula?

17           MS. KOTULA:  Yes, Your Honor.

18           THE COURT:  You are released.  Thank you for your

19   testimony.

20           Mr. Bochetto, please call your next witness.

21           MR. BOCHETTO:  The next witness will be an employee

22   of the Department of State, Jonathan Marks.

23           THE COURT:  Mr. Marks, please approach.

24           (Whereupon, Jonathan Marks was sworn.)

25                   DIRECT EXAMINATION

000481a

1       Q       So what was the deadline by which counties really

2   need to start printing those ballots?  The practical

3   deadline, not talking about a legal one; the practical

4   deadline.

5       A       Again, all of these things depend somewhat on the

6   county.  But in doing research regarding how counties might

7   respond to the Vodvarka ruling, we learned -- I think we

8   received responses from 40-some of the counties; and the

9   dates ranged anywhere from March 21st for finalizing

10  balloting materials to April 1st.

11      Q       And why -- why -- from an election administration

12  standpoint, why is it that counties -- why is there a

13  practical deadline?  What is it that has to happen on the

14  back end of the process where counties have to make a

15  decision to essentially move forward, even if the ballot

16  isn't settled?

17      A       I think -- you know, the way elections are

18  administered today -- you know, 15, 20 years ago, the

19  majority of the Commonwealth had lever voting machines.  So

20  making late changes simply required locking the lever and

21  maybe, you know, obscuring the -- the ballot label on a

22  particular office.

23              The overwhelming majority of the voting systems are

24  electronic in nature.  They're computers, essentially.  And

25  they tabulate the votes electronically.  They have to be

72

1    interacting with a computer with a touch screen and making

2    your selections that way.  So those are the three basic,

3    different categories of voting systems.

4        Q    Do you know how many counties use the optical scan

5    voting system?

6        A    I believe 17 counties use optical scan as their

7    primary voting system.

8        Q    And then the remaining counties use the other types

9    of systems that you discussed?

10       A    That's correct.  Yes.

11       Q    What was the practical deadline for counties to

12   essentially program their election day ballots on those

13   voting systems?

14       A    The practical deadline, as I said, varies from

15   county to county.  It was basically by the last week of

16   March; as what we were hearing from counties, that was their

17   deadline to complete the programming because of all the

18   things that have to occur after -- after the programming.

19            And I failed to mention this earlier, one of the --

20   one of the reasons counties were required to go to electronic

21   voting systems or to at least provide for them was so that

22   disabled voters would have to the opportunity to vote.  Part

23   of that process requires the preparation of audio files for

24   the electronic voting systems.  All of these things are, you

25   know, somewhat time-consuming.

76

Received 8/18/2016 9:24:29 AM Supreme Court Middle District

Filed 8/18/2016 9:24:00 AM Supreme Court Middle District
75 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

---

## NO. 75 MAP 2016

---

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Appellants,**

**v.**

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Appellee.**

---

## REPLY BRIEF OF PLAINTIFFS/APPELLANTS RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.

---

**SPRAGUE & SPRAGUE**
RICHARD A. SPRAGUE (I.D. # 04266)
BROOKE SPIGLER COHEN (I.D. # 204648)
JORDANN R. CONABOY (I.D. # 319337)
WILLIAM H. TRASK (I.D. # 318229)
The Wellington Bldg., Suite 400
135 S. 19th Street
Philadelphia, Pennsylvania 19103
(215) 561-7681

*Counsel for Plaintiffs/Appellants*
*Richard A. Sprague, Hon. Ronald*
*D. Castille and Hon. Stephen Zappala, Sr.*

# TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ........................................................................ ii

INTRODUCTION .................................................................................1

ARGUMENT ......................................................................................3

I.    THE SECRETARY WAS CORRECT WHEN HE ARGUED
BEFORE THIS COURT THAT THE BALLOT QUESTION
MISLEADINGLY OMITS REQUISITE INFORMATION
ABOUT THE CURRENT CONSTITUTIONAL JUDICIAL
RETIREMENT AGE REQUIREMENT ..........................................................3

    A.    The Ballot Question Is Unlawful Under This
Court's Precedent ....................................................................4

    B.    The Supplemental Publications Required by the
Election Code Are Irrelevant Because the Ballot
Question Itself Is Misleading .........................................................8

II.    THE POLITICAL QUESTION DOCTRINE IS INAPPLICABLE,
AND THE SECRETARY'S MISLEADING AND UNLAWFUL
PROPOSED BALLOT QUESTION IS NOT SHIELDED FROM
JUDICIAL REVIEW ...........................................................................10

III.    PLAINTIFFS UNQUESTIONABLY HAVE STANDING
TO BRING THIS ACTION ....................................................................14

IV.    THE CONCLUSION THAT THE BALLOT QUESTION IS
MISLEADING DOES NOT REST ON A PRESUMPTION
THAT THE ELECTORATE IS UNEDUCATED .................................................17

V.    THE DOCTRINE OF LACHES DOES NOT APPLY TO
PLAINTIFFS' CHALLENGE TO THE LAWFULNESS
OF THE BALLOT QUESTION AND CANNOT BAR RELIEF ..............18

CONCLUSION ...................................................................................22

i

# <u>TABLE OF AUTHORITIES</u>

**PAGE(S)**

**Cases**

*Askew v. Firestone*,
  421 So. 2d 151 (Fla. 1982) ............................................................. 7, 8

*Bergdoll v. Kane*,
  731 A.2d 1261 (Pa. 1999) ...................................................... *passim*

*Costa v. Cortes,*
  251 Md. 2016, 2016 Pa. Commw. LEXIS 307 (July 6, 2016) ......................... 20

*Ex parte Tipton*,
  93 S.E.2d 640 (S.C. 1956) ................................................................. 8

*Hosp. & Health Sys. Ass'n of Pa. v. Commonwealth*,
  77 A.3d 587 (Pa. 2013) ......................................................... 11, 12, 13

*Lane v. Lukens*,
  283 P. 532 (Idaho 1929) ................................................................... 9

*Robinson Twp. v. Commonwealth*,
  83 A.3d 901 (Pa. 2013) ........................................................ 11,13,14

*Sprague v. Casey*,
  550 A.2d 184 (Pa. 1988) ....................................................... *passim*

*Stander v. Kelley*,
  250 A.2d 474 (Pa. 1969) ....................................................... *passim*

*Sweeney v. Tucker*,
  375 A.2d 698 (Pa. 1977) ................................................................. 14

*Wadhams v. Bd. of Cty. Comm'rs*,
  567 So. 2d 414 (Fla. 1990) .......................................................... 7, 18

*Weiner v. Sec'y of Commonwealth*,
  558 A.2d 185 (Pa. Commw. Ct. 1989) .................................... 12, 15,19

## **INTRODUCTION**

"An educated citizenry is a vital requisite for our survival as a free people." This maxim often associated with Thomas Jefferson aptly describes what is at stake in this action and why Plaintiffs are fighting to protect the constitutional right of the citizens of this Commonwealth to cast informed votes on a proposed amendment to the Pennsylvania Constitution.

What is most notable about the arguments presented by the Secretary and *Amicus Curiae* ("*Amici*") is that while both summarily assert that the proposed ballot question is clear, neither rebuts the principle contention that without knowing what the Pennsylvania Constitution currently provides regarding the judicial retirement age, many voters will be induced by the ballot question to vote contrary to their true intentions. Absent being informed through the ballot question that the Constitution presently requires judicial retirement at age 70, voters that oppose restricting the age of state court jurists would be prompted to vote "no" on the proposed amendment, while voters seeking to limit the tenure of state court jurists would be prompted to vote "yes." In either case, the ballot question will lead to a result that does not reflect the voters' true will—the very definition of misleading and precisely what the decisions of this Court prohibit. Thus, the Secretary's claim that granting the requested relief here would expose all future ballot questions to unwarranted challenge rings hollow. Plaintiffs do not merely

"champion" a "better" version of the proposed ballot question, as the Secretary

contends, they seek to ensure that the electorate will not be presented with a ballot

question that is patently deceitful.

It is difficult to understand how the very same ballot question wording that

the Secretary argued just a few months ago would mislead voters now "meets the

legal requirements of being fair, accurate and clear."  And the Secretary offers no

real explanation for his change of position or valid substantive basis to support it.

Instead, the Secretary urges this Court to avoid the issue altogether, contending

that the Plaintiffs' action should be dismissed on the collateral grounds that

Plaintiffs have not been misled or because relief is barred under the political

question doctrine or by the doctrine of laches.  These contentions lack any legal or

factual basis and only serve to further expose the weakness of the Secretary's

position on the merits.

The relief Plaintiffs request from this Court is both necessary and warranted to

preserve the fundamental right of the Pennsylvania electorate to vote on amendments

to the Pennsylvania Constitution.  Plaintiffs thus respectfully request that the Court

expeditiously order such relief to ensure that Pennsylvania voters may be presented

with a ballot question in the November 2016 general election that fairly, accurately,

and clearly apprises them that they are being asked to decide whether to raise the

current constitutionally-mandated judicial retirement age of 70 by five years.

2

## ARGUMENT

**I.  THE SECRETARY WAS CORRECT WHEN HE ARGUED BEFORE THIS COURT THAT THE BALLOT QUESTION MISLEADINGLY OMITS REQUISITE INFORMATION ABOUT THE CURRENT CONSTITUTIONAL JUDICIAL RETIREMENT AGE REQUIREMENT**

Like the ballot question at issue in this case, the most glaring deficiency of the Secretary's brief lies with what it does not say.  The Secretary fails to rebut the obvious and decisive truth at the heart of this case: the omission from the ballot question of any reference to the Pennsylvania Constitution's current requirement that state court jurists retire at the age of 70 will likely mislead voters into voting contrary to their intentions.  Moreover, the Secretary offers no valid explanation or justification for abandoning this very argument, which he made before this Court just five months ago, or for drafting a deceptive ballot question that gives no indication that voters are being asked to raise an existing constitutionally-mandated judicial retirement age from 70 to 75.

Indeed, the Secretary does not even claim that he drafted the ballot question at issue to comply with the requirements prescribed by this Court for a ballot question concerning a proposed constitutional amendment.  Rather, the Secretary defends his choice of wording as based solely on a purported "need for certainty" amid a politically-charged dispute among legislators and public officials over how the ballot question should be worded.  But clarity, not certainty, is the only proper

3

consideration for this Court in ruling upon the lawfulness of a ballot question.  The Court should thus pay heed to the brief the Secretary submitted to this Court in March, when he was free from political pressures, arguing that omission from the ballot question of the current constitutional requirement for judicial retirement is likely to mislead voters.

### A.    The Ballot Question Is Unlawful Under This Court's Precedent

There can be no real dispute concerning this Court's jurisdiction to determine the lawfulness of the ballot question at issue under the standard set forth by the Court in *Stander v. Kelley*, which provides that "the question as stated on the ballot [must] fairly, accurately and clearly appri[s]e the voter of the question or issue to be voted on."  250 A.2d 474, 480 (1969).[1]  And as the Secretary has previously argued to this Court, whether a ballot question contains sufficient information to comply with this standard depends on the nature of the proposed amendment to which the ballot question pertains.

Some constitutional amendments will result in an entirely new constitutional provision or article, while others will change existing constitutional language.

---

[1] Although he concedes that the present matter is governed by this Court's decision in *Stander*, the Secretary cites a host of federal cases and attacks a straw man by erroneously contending that Plaintiffs' claim fails against the standard those cases used to assess whether ballot questions complied with the due process clause of the federal Constitution.  (Secretary's Br. at pp. 28-29.) The relief Plaintiffs request in this case, however, is based on their rights under the Pennsylvania Constitution to vote on amendments to that document.  Accordingly, *Stander* controls, and the federal cases cited by the Secretary have no bearing on this case.

Where a proposed constitutional amendment will result in the adoption of a new constitutional provision or article, notice within the ballot question of the existing language of the Constitution generally is not necessary to sufficiently inform voters of the issue for which their approval is sought.  But if a proposed amendment will change the language of an existing constitutional provision, the "issue to be voted on" is how the text of the Constitution will be altered, and the ballot question must clearly, fairly, and accurately apprise voters of that proposed alteration.  For this reason, the Secretary correctly argued before this Court in March that because the amendment at issue would actually change existing text of the Constitution, "the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution" is "relevant information" that must appear in the ballot question itself.  (*See* Plaintiffs' Br., App'x 1 at Ex. H [Secretary's March 11, 2016 Brief], pp. 16-17).

The ballot question at issue in *Stander* sought the approval of a proposed amendment adopted by a constitutional convention to add an entirely new judiciary article to the Pennsylvania Constitution.  Accordingly, because no existing constitutional provision was subject to change, voters could intelligently vote on whether the new article should be adopted without knowing the language of the constitution as it existed at the time of the vote, and this Court held that a ballot question describing the proposed new judiciary article fairly, accurately and clearly

apprised voters of the issue they were being asked to decide.  *Stander, 250* A.2d at 480.

In contrast to *Stander*, the "issue to be voted on" with respect to the General Assembly's current proposed amendment is whether the current constitutionally-mandated judicial retirement age should be ***raised*** from 70 to 75.  The Secretary therefore correctly argued to this Court in March that in order to "clearly state[] the legislature's proposal with respect to the amendment," a ballot question concerning the proposed amendment must advise voters that "the *existing* language in the Constitution would be ***changed*** to 75 ***instead of*** 70" if the electorate approves the proposed amendment.  (*See* Plaintiffs' Br., App'x 1 at Ex. H [Secretary's March 11, 2016 Brief], p. 17) (italics in original; bold emphasis added).  Otherwise, as the Secretary put it, the ballot question "would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all."  (*Id.*)

Courts in other jurisdictions have also recognized that a ballot question concerning a proposed change to existing language must inform voters of the current state of the law in order to properly apprise them of the proposed amendment on which they are voting.  The Secretary attempts to distinguish the Florida Supreme Court's opinions in this regard by claiming that the Court did not "take issue with the ballot question '*per se*,'" but invalidated election results

6

stemming from the ballot questions at issue because the ballot questions violated a

Florida statute.  (*See* Secretary's Br. at p. 21.)

Omitted from the Secretary's analysis, however, is any mention that the

Florida statute at issue merely codifies a standard that is substantively identical to

the one set forth by this Court in *Stander*.  As the Florida Supreme Court has

explained, the pertinent Florida statue concerning ballot questions dealing with

proposed constitutional amendments "requires . . . that the ballot be fair and advise

the voter sufficiently to enable him intelligently to cast his ballot."  *Askew v.*

*Firestone*, 421 So. 2d 151, 155 (Fla. 1982).  The purpose of the Florida statute "is

to assure that the electorate is advised of the true meaning, and ramifications, of an

amendment."  *Id.* at 165.  In other words, in Florida, as in Pennsylvania, the law

requires that a ballot question concerning a proposed constitutional amendment

must clearly apprise voters of the issue on which they are being asked to vote.

Specifically, the Florida Supreme Court has held that in order to comply with this

legal requirement, a ballot question concerning a proposed constitutional

amendment that will change existing language of the state Constitution must

accurately apprise voters of "material changes to the existing constitutional

provision."  *Wadhams v. Bd. of Cty. Comm'rs*, 567 So. 2d 414, 416 (Fla. 1990);

*Askew*, 421 So. 2d at 155-56.

This same principal applies in Pennsylvania pursuant to *Stander*.   In this case, the "***question as stated on the ballot***" must "fairly, accurately and clearly appri[s]e" voters that the Pennsylvania Constitution currently requires state court judicial officers to retire at the age of 70, as the issue to be voted on is whether this compulsory retirement age should be raised by 5 years to 75.  *Stander, 250* A.2d at 480 (emphasis added).  A change to the Pennsylvania Constitution's compulsory judicial retirement age "must stand on its own merits and not be disguised as something else."  *Askew*, 421 So. 2d at 156.  In sum, the Secretary was correct when he came before this Court in March and argued that voters will be misled by a ballot question that does not reference the current constitutionally-mandated judicial retirement age.

> **B.    The Supplemental Publications Required by the Election Code Are Irrelevant Because the Ballot Question Itself Is Misleading**

The Secretary and *Amici* encourage this Court to stray from *Stander* and look beyond the ballot question itself in determining whether it is lawfully worded, despite the Secretary's previous argument to the contrary.  But this Court in *Stander*, as well as high courts in other jurisdictions, have made clear that an unlawfully-misleading ballot question cannot be rendered lawful through the supplemental publication of the proposed amendment or other expository materials.  *See, e.g., Stander, 250* A.2d at 480; *Ex parte Tipton*, 93 S.E.2d 640, 644

(S.C. 1956); *Lane v. Lukens*, 283 P. 532 (Idaho 1929); *see also,* Plaintiffs' Br. at

pp. 27-30.  The Secretary cites no authority to suggest otherwise.

    *Stander* does not support the current contention of the Secretary that a

misleading ballot question regarding a proposed constitutional amendment should

be upheld if it is "buttressed by other information" regarding the proposed

amendment.  (*See* Secretary's Br. at p. 20.)  Rather, the Court in *Stander* stated in

unequivocal terms that the threshold issue is whether a voter can understand the

effect of the proposed constitutional amendment by looking at the ballot question

itself.  *See Stander*, 250 A.2d at 480 (explaining that the clarity of the ballot

question is "[t]he first and most important question").  The *Stander* Court noted

that the "question as printed on the ballots is but a tiny and minuscular statement of

the very lengthy provisions of the proposed Judiciary Article V" simply to

highlight the fact that it would have been impossible for the Secretary of the

Commonwealth in that case to print the entire new proposed judiciary article on the

ballot.  *Id*.  But this Court upheld the ballot question at issue in *Stander* only

because it concluded that the "question as stated on the ballot" itself sufficiently

apprised voters of the pertinent proposed amendment to the Pennsylvania

Constitution.  *Id.*  Because the same cannot be said in this case, the Secretary

should not be permitted to present the ballot question at issue to voters in the

November 2016 general election.

## II. THE POLITICAL QUESTION DOCTRINE IS INAPPLICABLE, AND THE SECRETARY'S MISLEADING AND UNLAWFUL PROPOSED BALLOT QUESTION IS NOT SHIELDED FROM JUDICIAL REVIEW

The suggestion by the Secretary (and *Amici*) that this action presents non-justiciable issues under the political question doctrine has no merit. Contrary to the Secretary's (and *Amici*'s) blatant mischaracterization of the relief sought, Plaintiffs do not ask this Court to rewrite the ballot question at issue or to direct the exact language the Secretary must use for the ballot question. Nor has the Court been asked to "exercise powers granted to the legislature." (Secretary's Br. at p. 27.)

Rather, Plaintiffs ask this Court to review the Secretary's ballot question regarding the proposed constitutional amendment and take the following actions: (1) declare the ballot question unlawful; (2) preclude the Secretary from presenting the ballot question to the electorate in its current, misleading form, which omits what the Secretary previously acknowledged is requisite information; and (3) direct that any ballot question presented to the electorate include the information necessary to clearly and adequately advise voters of the issue they are deciding,[2] as required under this Court's precedent. These actions to protect the constitutional

---

[2] In this case, that means advising that the amendment will change the language of an existing provision of the Constitution (mandating judicial retirement at age 70) and what that change is (raising that age to 75).

10

right of Pennsylvania citizens to cast informed votes on proposed constitutional amendments are not only permissible exercises of this Court's authority, they are part of the Court's constitutional duty. *See Robinson Twp. v. Commw.*, 83 A.3d 901, 927 (Pa. 2013) ("[I]t is the province of the Judiciary to determine whether the Constitution or laws of the Commonwealth require or prohibit the performance of certain acts." (internal quotations omitted)); *Hosp. & Health Sys. Ass'n of Pa. v. Commw.*, 77 A.3d 587, 597-98 (Pa. 2013) (explaining that courts "will not abdicate [their] responsibility to insure that government functions within the bounds of constitutional prescription under the guise of deference to a co-equal branch of government" (internal quotations and alterations omitted)).

The Secretary wrongly contends, without support, that because he is charged by statute with determining "the form and wording of constitutional amendments or other questions to be submitted to the electorate," and the General Assembly is empowered to determine the "manner" in which a proposed constitutional amendment is to be submitted to the electorate, only claims that the Secretary or legislature "are acting *ultra vires*" and lack "the power to fix the [ballot] question to be presented to the voters" are justiciable.  (Secretary's Br. at p. 25.)  He argues that this Court cannot afford relief where the Secretary exercised prescribed power in an unlawful manner.  (*Id.* at pp. 25-26.)  The law holds otherwise.

Indeed, this Court's opinion in *Stander* is definitive that it is the province and duty of this Court to determine whether a ballot question regarding a proposed constitutional amendment is sufficiently clear as to be lawful. And this Court and the Commonwealth Court have repeatedly ruled upon other substantially similar challenges to unlawful ballot questions, thus leaving no doubt that Plaintiffs' claims in this case are justiciable and not precluded by the political question doctrine. *See*, *e.g.*, *Bergdoll v. Kane*, 731 A.2d 1261, 1267-70 (Pa. 1999); *Sprague v. Casey*, 550 A.2d 184, 187 (Pa. 1988) ("*Sprague*"); *Weiner v. Sec'y of Commw.*, 558 A.2d 185, 188 (Pa. Commw. Ct. 1989).[3]

The Secretary cannot avoid this determinative precedent by distorting the requested relief and claiming infringement upon his (and/or the General Assembly's) powers. Concomitant to this Court's authority to determine whether a ballot question passes constitutional muster is, of course, the authority to prescribe the requirements for a ballot question to do so. As set forth above, because the ballot question at issue in this case concerns an amendment to existing language of a constitutional provision, to meet the requirements of *Stander*, the ballot question

---

[3] In addressing a claim that the political question doctrine precluded challenge to a legislative budget measure, this Court held that "regardless of the extent to which the political branches are responsible for budgetary matters, they are not permitted to enact budget-related legislation that violates the constitutional rights of Pennsylvania citizens." *Hospital & Health Systems*, 77 A.3d at 598. By the same token, here, regardless of the extent to which the Secretary and/or the General Assembly are responsible for the wording of a ballot question on a proposed constitutional amendment, they are not permitted to submit a ballot question to the electorate in a form that violates the constitutional rights of Pennsylvania citizens.

must inform voters of the current language and how it will be changed.  An Order by this Court directing that the ballot question must contain such information in no way violates the principle of separation of powers.  Rather, such an order will simply reinforce, and is required by, this Court's precedent.

Likewise misplaced is the Secretary's (and *Amici*'s) suggestion that the ballot question is entitled to deference and should be "free of interference" from the Court because the Secretary ultimately decided to present the electorate with a ballot question that is the same as the ballot question set forth in a resolution adopted by the General Assembly.  "[T]he political question doctrine does not exist to remove a question of law from the Judiciary's purview merely because another branch has stated its own opinion of the salient legal issue."  *Hosp. & Health Sys.*, 77 A.3d at 598.[4]

The limited political question doctrine simply has no application here.  *See Robinson*, 83 A.3d at 930 (holding political question doctrine inapplicable where "[t]he nature of the citizens' claims requires nothing more than the exercise of

---

[4] Moreover, neither the General Assembly nor its authority has any bearing on this case. Accordingly, any presumption otherwise applicable to legislative action is inapplicable here, where no legislative action is the subject of review.

powers within the courts' core province: the vindication of a constitutional right"). And there is no bar to the relief that Plaintiffs rightfully seek.[5]

### III.   PLAINTIFFS UNQUESTIONABLY HAVE STANDING TO BRING THIS ACTION

The Secretary absurdly suggests that a ballot question is subject to challenge only by those voters sufficiently misled by the Secretary's deceptive language so as to be unaware of any reason to challenge it in the first place.  The dizzying circularity of the Secretary's novel proposal would result in the preclusion of all pre-election ballot challenges—essentially, the Secretary argues that the voter's becoming aware of his right to relief simultaneously divests him of the standing to seek it.

*Stander* requires that a ballot question fairly, accurately and clearly apprise the voter of the issue to be decided.  Nowhere does *Stander* provide that each voter challenging a ballot question for failing to meet this standard must demonstrate detrimental reliance on the misleading ballot question or that he is incapable himself of understanding it.  Neither reliance nor realized harm is necessary to

---

[5] Notably, the case relied upon by the Secretary (and *Amici*), *Sweeney v. Tucker*, 375 A.2d 698 (Pa. 1977), does not support application of the political question doctrine.  The *Sweeney* Court rejected the argument by a group of legislators that the action in that case, challenging on due process grounds the expulsion of a House member, was not justiciable because the Pennsylvania Constitution commits the power to expel a member exclusively to the House of Representatives. 375 A.2d at 703, 712.  As this Court explained "[c]ourts will refrain from resolving a dispute and reviewing the actions of another branch only where 'the determination whether the action taken is within the power granted by the Constitution has been entrusted exclusively and finally to the political branches of government *for 'self-monitoring'*.'"  *Robinson*, 83 A.3d at 928 (quoting *Sweeney*, 375 A.2d at 706) (emphasis added).  This is not such a case.

challenge a ballot question under *Stander* or other decisions of this Court resolving lawsuits over ballot measures.  *See, e.g., Bergdoll*, 731 A.2d at 1269; *Sprague*, 550 A.2d at 187; *Weiner*, 558 A.2d at 186.

To accept the Secretary's position would not only impose new prerequisites to a ballot question challenge not found in any controlling—or even persuasive—precedent, it would also lead to an absurd result.  Under the Secretary's unsupported theory, a person is precluded from challenging a ballot question if his personal experience or research informs him prior to an election that the proposed ballot question does not reflect the true nature and effect of the corresponding proposed constitutional amendment.  Thus, if this Court were to agree with the Secretary that a challenge to a ballot question can be brought only by a voter who is both actually misled by the ballot question and cognizant of the fact that he has been misled, then it would necessarily follow that a ballot question concerning a proposed constitutional amendment may only be challenged after the election.  Not only would such a holding cause confusion and delay in the implementation of the corresponding constitutional amendment if passed, but it would also conflict with this Court's prior recognition that a voter can obtain pre-election injunctive and

declaratory relief with respect to an unlawful ballot question.[6] *See, e.g., Sprague*, 550 A.2d at 186.

More importantly, the law in this Commonwealth is clear that Plaintiffs here have standing to bring this action as taxpayers, attorneys sworn to defend the Constitution, and electors entitled to vote on amendments to the Pennsylvania Constitution. *See Bergdoll*, 731 A.2d at 1269 (rejecting Secretary of the Commonwealth's contention that only a criminal defendant affected by the proposed constitutional amendment to the confrontation clause had standing to challenge the ballot question because the interest sought to be protected was the fundamental right to vote on proposed constitutional amendments, which is a personal and individual right of every elector, and any alleged restriction or infringement of that right "must be carefully and meticulously scrutinized"); *Sprague*, 550 A.2d at 187 (finding petitioner Sprague (also a Plaintiff herein) had standing to challenge placement of judicial seats on the ballot regardless of whether the challenged action substantially impacted him in a direct and immediate manner, since "[j]udicial relief is appropriate because the determination of the constitutionality of the election is a function of the courts, and redress through other channels is unavailable" (internal citations omitted)).

---

[6] The Secretary's position is also at odds with his unfounded claim that Plaintiffs' action should be barred by the doctrine of laches. On the one hand, the Secretary contends that a prospective plaintiff must wait until after he or she has been misled in the voting booth before standing is conveyed, but, on the other, he contends that any deferred action should be barred as untimely.

**IV. THE CONCLUSION THAT THE BALLOT QUESTION IS MISLEADING DOES NOT REST ON A PRESUMPTION THAT THE ELECTORATE IS UNEDUCATED**

In an effort to avoid the principal set forth by the *Stander* Court and the inescapable conclusion that the ballot question at issue is misleading, the Secretary reasons that any suggestion that voters are less than fully familiar with each and every discrete provision of the Pennsylvania Constitution is "insulting." (Secretary's Br. at p. 23.)  This suggestion is disingenuous, particularly given the Secretary's previous argument to this Court that the ballot question language at issue would mislead voters who are unaware that the Constitution currently requires state judicial officers to retire on the last day of the year in which they turn 70.  (*See* App'x 1 at Ex. H [Secretary's March 11, 2016 Brief], pp. 16-17).  And, more significantly, the Secretary's argument is at odds with this Court's holding that a ballot question itself must clearly apprise voters of the actual and intended purpose of the corresponding proposed constitutional amendment.

The ballot question at issue in this case is misleading on its face and must be stricken.  Even voters who have a working familiarity with the Pennsylvania Constitution will be misled into thinking that the proposed amendment seeks to impose a constitutionally-mandated judicial retirement age where none exists, rather than to raise the existing compulsory retirement age by 5 years.  Indeed, it is precisely because the Pennsylvania Constitution is a complex document of which

17

relatively few voters have an intimate, comprehensive knowledge that this Court requires every ballot question concerning a proposed constitutional amendment to fairly, accurately and clearly apprise voters of the true effect of the amendment.[7]

**V.     THE DOCTRINE OF LACHES DOES NOT APPLY TO PLAINTIFFS' CHALLENGE TO THE LAWFULNESS OF THE BALLOT QUESTION AND CANNOT BAR RELIEF**

The Secretary's argument that Plaintiffs' request for relief is barred by the doctrine of laches is both legally and factually unsupportable.  As a legal matter, the Secretary provides no authority for the proposition that laches could bar a request for permanent equitable relief concerning a constitutional amendment ballot question challenged as misleading and unlawful.  Nor could he, since under the binding precedent of this Court, Plaintiffs would be entitled to challenge the ballot question on the grounds set forth in their Complaint even after the November 2016 general election if the ballot question at issue were submitted to the electorate.  *See*, *e.g*., *Stander*, 250 A.2d at 478 (holding challenge to ballot

---

[7] The Secretary suggests that the publicity generated by this lawsuit (as well as other pending litigation) may have sufficiently informed otherwise uninformed voters and thereby rendered the instant lawsuit unnecessary.  This argument is as unavailing as it is circular.  The law requires that a ballot question fairly, accurately and clearly apprise the voter of the effect of the proposed amendment.  It does not permit the Secretary to rely on the publicity generated from the dereliction of his constitutional and statutory responsibilities in lieu of fulfilling his obligations at the outset.  A voter's ability to sue and generate publicity (limited, according to the Secretary, to those voters failing to recognize the need to do so) does not relieve the Secretary of his obligation to devise a lawful ballot question. "[T]he burden of informing the public should not fall only on the press and opponents of the measure -- ***the ballot . . . must do this***."  *Wadhams*, 567 So. 2d at 417 (emphasis added).

question regarding constitutional amendment was justiciable even after being voted upon and approved by the electorate); *Bergdoll*, 731 A.2d at 1269 (affirming declaration that vote on improper ballot question was null and void after general election in which the question appeared on the general election ballot).

As this Court observed in *Bergdoll*, "it is the right of every elector to vote on amendments to our Constitution in accordance with its provisions," and "any alleged restriction or infringement of that right strikes at the heart of orderly constitutional government, and must be carefully and meticulously scrutinized." 731 A.2d at 1269.  This case involves a right and constitutional issue too important to be denied review on the basis of laches.  *See, e.g.*, *Sprague*, 550 A.2d at 188 (holding that "laches and prejudice can never be permitted to amend the Constitution," and laches would not "operate to prevent the court from declaring an act void in violation of the constitution, even if the traditional elements of laches had been established"); *Weiner*, 558 A.2d at 187 ("Regardless of the Commissioner's concern for the difficulties of the task at hand in deleting ballot questions [less than a week before the election], where executive branch and local government election officials are at issue, the ***only*** equities which overwhelmingly warrant [the court's] concern are the obstacles to the electors' free and deliberative choice." (emphasis in original)).

19

Even as a factual matter, the Secretary's laches argument clearly fails, as he cannot meet his burden to show both "a delay arising from [Plaintiffs'] failure to exercise due diligence" and "prejudice . . . resulting from the delay." *Sprague,* 550 A.2d at 187.  As detailed in their Reply to New Matter, Plaintiffs did not fail to exercise due diligence.  Plaintiffs filed the instant action promptly upon it becoming appropriate to do so when the Commonwealth Court denied the relief sought by the petitioners in *Costa v. Cortes*, which requested relief would have precluded the Secretary from presenting the electorate in the November 2016 general election with any ballot question concerning the General Assembly's proposal to raise the constitutional compulsory judicial retirement age from 70 to 75.  *See Costa v. Cortes*, No. 251 M.D. 2016, 2016 Pa. Commw. LEXIS 307 (Pa. Commw. Ct. July 6, 2016).  Had the Commonwealth Court granted the requested relief in the *Costa* case, the Secretary's misleading ballot question could not have been submitted to the electorate, and there would have been no need for Plaintiffs to file the instant lawsuit.[8]

Just 15 days after the Commonwealth Court issued its *Costa* decision, Plaintiffs filed suit in the Commonwealth Court seeking a declaration that the ballot question at issue in this case is unlawfully misleading and requesting an

---

[8] The Secretary disingenuously suggests that this valid argument is somehow inconsistent with Plaintiffs' position that the *Costa* case and the instant case do not present any overlapping issues. There is no such inconsistency.  The *Costa* case had the potential to moot Plaintiffs' action because of the particular ***relief*** requested by the *Costa* petitioners, not because of any shared legal issue.

20

order directing the Secretary to present Pennsylvania voters with a ballot question

accurately advising that the proposed amendment would result in raising the

current constitutionally-mandated judicial retirement age of 70 to 75.  To further

ensure that the case would be resolved as promptly as possible, Plaintiffs

simultaneously filed an Emergency Application requesting that this Court exercise

extraordinary jurisdiction over the case in an expedited manner, which this Court

granted on July 27, 2016.  And Plaintiffs have moved at an extraordinary pace in

this matter, replying to the Secretary's New Matter within a day and seeking

summary relief—all in an effort to obtain a prompt resolution and afford the

Secretary sufficient time to prepare a ballot question for the November 2016

general election that will not deceive voters.

This Court determined in *Stander* that "a bill to enjoin the election" brought

just 12 days before it was scheduled "did not constitute laches."  250 A.2d at 476

n.1.  *A fortiori*, this action, brought months before the scheduled November 2016

election, cannot constitute laches.[9]

Moreover, the Secretary cannot establish prejudice.  "[T]he sort of prejudice

required to raise the defense of laches is some changed condition of the parties

which occurs during the period of, and in reliance on, the delay."  *Sprague*, 550

---

[9] It is irrelevant whether, as the Secretary contends, this determination in *Stander* was *dicta* or binding precedent.  Either way, the Court's finding in *Stander* leads to the inevitable conclusion that laches does not follow from the facts at issue here.

A.2d at 188.  The Secretary does not, and cannot, allege that he has suffered any prejudice in reliance on the alleged "delay."  To the contrary, the Secretary admits that there is still time for the ballot question to be altered before the upcoming election.  Accordingly, the Secretary's laches defense has no merit.

## CONCLUSION

For the reasons set forth in the foregoing Reply Brief and Plaintiffs' previous filings in this case, Plaintiffs respectfully request that this Honorable Court enter an Order: (1) declaring unlawful the following ballot question: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?"; (2) precluding the Secretary from placing this misleading ballot question on the November 2016 general election ballot; and (3) directing the Secretary to present the voters in the November 2016 general election with a ballot question accurately advising of the nature and purpose of the General Assembly's proposal, which is to amend the Pennsylvania Constitution to raise the current constitutionally-mandated judicial retirement age from 70 to 75.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By:  /s/ Richard A. Sprague
    RICHARD A. SPRAGUE (I.D. # 04266)
    BROOKE SPIGLER COHEN (I.D. # 204648)
    JORDANN R. CONABOY (I.D. # 319337)
    WILLIAM H. TRASK (I.D. # 318229)
    The Wellington Bldg., Suite 400
    135 S. 19th Street
    Philadelphia, Pennsylvania 19103
    (215) 561-7681


Dated: August 18, 2016

## **CERTIFICATE OF COMPLIANCE**

I, Jordann R. Conaboy, Esquire, hereby certify, pursuant to Pennsylvania

Rules of Appellate Procedure 2135(a)(1) and 2135(d), that the word count for the

foregoing Reply Brief, including footnotes and headings but not including the

cover, tables, signature block, or proof of service, is less than 7,000 words.

Accordingly, this Reply Brief complies with the aforesaid Rules.


/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

Dated: August 18, 2016

## **PROOF OF SERVICE**

I, Jordann R. Conaboy, Esquire, herby certify that on this 18th day of August,

2016, I caused true and correct copies of the foregoing to be served on the

individuals listed below *via* the Court's electronic PACFile service and e-mail:

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent Pedro A. Cortés*

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

# Exhibit Y

**[J-96-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Defendant | : | |

**OPINION IN SUPPORT OF GRANTING PLAINTIFFS' APPLICATION FOR SUMMARY RELIEF AND DENYING DEFENDANT'S APPLICATION FOR SUMMARY RELIEF**

**JUSTICE TODD**                               **DECIDED:  September 2, 2016**

        The Pennsylvania Constitution is the fundamental law of our Commonwealth, and, in considering matters relating to its amendment, courts must exercise the utmost care to safeguard the rights of the people — especially their right to be presented with a ballot question written in language which fully and clearly apprises them of the fundamental effect of their vote on the proposed constitutional amendment.  In everyday human interaction, in the arts and literature, as well as in legal documents, statutes, and constitutional provisions which govern our day-to-day affairs, there is a categorical difference between the act of creating something entirely new and altering something which already exists.  Language which suggests the former while, in actuality, doing the

latter is, at the very least, misleading, and, at its worst, constitutes a ruse. The proposed ballot question before us employs language which can only be reasonably interpreted as asking the voters to approve a constitutional amendment which would institute a mandatory judicial retirement age for the first time, when, in actuality, the proposed amendment would alter the already existing mandatory retirement age by extending it for an additional five years. As a result, in our view, the ballot question, as presently phrased, is inherently misleading and falls well short of meeting the exacting standard which all ballot questions for the adoption of constitutional amendments must meet. Thus, we would grant Plaintiffs relief and permanently enjoin the Secretary of the Commonwealth from placing on the ballot the language as set forth in H.R. 783 of 2016.

A mandatory retirement age for Pennsylvania judges has been a part of our organic charter of governance for almost 50 years, having first been incorporated by Article V, Section 16(b) of the 1968 Constitution, which was adopted by constitutional convention in March 1968, and approved by the people in April of that year. That provision stated: "Justices, judges and justices of the peace shall be retired upon attaining the age of seventy years." Pa. Const. art. V, § 16(b) (1968). In 2001, the voters were asked to approve a proposed constitutional amendment which permitted "Justices, judges, and justices of the peace" to "be retired on the last day of the calendar year in which they attain the age of 70 years." Pa. Const. art. V, § 16(b) (2001). Notably, the ballot question presented to the people in the May primary of that year explicitly acknowledged the existing requirement of Article V, Section 16(b) as to the day of the year on which mandatory judicial retirement was triggered, thereby giving context to the voters and allowing them to compare the proposed change to the extant

constitutional requirement during the process of casting their vote.[1]  This ballot question

stated:

_____

[1]  As noted by Plaintiffs, there have been four other instances since 1979 in which the Secretary of the Commonwealth has prepared ballot questions on proposed amendments altering existing constitutional provisions, which referred in some manner to how the requirements of the existing constitutional provisions would be changed by the amendments:

**1. Ballot Question 1, November 1979:**

Shall Article V, section 3, and section 13, subsection b, and the Schedule to Article V, section 11 of the Pennsylvania Constitution be amended to permit an increase in the number of judges of the Superior Court from its present number of seven, make changes relating to initial terms of additional judges and further provide for the selection of the president judge of the Superior Court?

**2. Ballot Question 2, November 1997, regarding Article IV, section 9:**

Shall the Pennsylvania Constitution be  amended to require a unanimous recommendation of the board of pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as board members?

**3. Ballot Question 3, November 1997, regarding Article VII, section 14:**

Shall the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside?

**4. Ballot Question 1, November 2003, regarding Article I, section 9:**

Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be

(continued…)

> Shall the Constitution of Pennsylvania be amended to provide that justices of the Supreme Court, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years, *rather than on the day they attain the age of 70*?

Ballot Questions at 53 (emphasis added).[2]

The genesis of the instant litigation was the passage by the General Assembly on October 22, 2013 of H.B. 79, which proposed a constitutional amendment increasing the mandatory judicial retirement age from 70 to 75 years of age. The text of the proposed amendment, which, in accord with standard legislative practice,[3] includes the existing constitutional provision being deleted by the amendment enclosed in brackets, and the replacement provision added by the amendment underlined, states: "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of [70] 75 years." H.B. 79 of 2013, Exhibit B to Plaintiffs'

---

(…continued)

> "confronted with the witnesses against him," instead of the right to "meet the witnesses face to face "?

Ballot Questions and Proposed Amendments to The Pennsylvania Constitution 1958-2006, Joint State Government Commission (May 2007), at 34, 50-51, 55 (hereinafter "Ballot Questions"), Exhibit A to Plaintiffs' Complaint for Declaratory and Injunctive Relief, filed 7/21/16 (alterations omitted).

[2]   Although the 2001 amendment was approved by the voters, subsequent legislative efforts to alter the mandatory retirement age provision stalled. In 2010, a resolution was introduced in the House of Representatives proposing an amendment to completely abolish the mandatory judicial retirement age, H.B. 2657; however, it died in committee. In 2012, a proposed amendment was introduced in the House, H.B. 2129, to raise the mandatory judicial retirement age from 70 to 75 years of age, and it also failed to be voted out of the committee to which it was referred.

[3]   See Pennsylvanians Against Gambling Expansion v. City of Philadelphia, 877 A.2d 383, 412 (Pa. 2005) (discussing the "well-known, uniform practice, long existent, of legislative draftsmen . . . to place in brackets all parts of an existing law intended to be abrogated" by legislation (quoting Commonwealth v. Halberg, 97 A.2d 849, 851-52 (Pa. 1953) (internal quotation marks omitted)).

Complaint for Declaratory and Injunctive Relief.   Following the passage of this resolution, in accordance with the requirements of Article XI, Section 1 of the Pennsylvania Constitution, the Secretary of the Commonwealth ("Secretary")[4] published notice of this proposed amendment.

Thereafter, during the next legislative session in 2015, the General Assembly enacted H.B. 90 on November 22 of that year which contained the same proposed amendment set forth in H.B. 79 and required the Secretary to "comply with the advertising requirements of Article XI, Section 1," and to "submit this proposed constitutional amendment to the qualified electors of this Commonwealth at the first primary, general or municipal election which meets the requirements of and is in conformance with section 1 of Article XI of the Constitution of Pennsylvania and which occurs at least three months after the proposed constitutional amendment is passed by the General Assembly."   H.B. 90 of 2015, Exhibit D to Plaintiffs' Complaint for Declaratory and Injunctive Relief.

The Secretary, pursuant to the requirements of the Election Code,[5] formulated the following question regarding this proposed amendment to appear on the April 26, 2016 primary election ballot, which was notably consistent with the manner in which the referenced 2001 ballot question was presented to the voters:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of

---

[4]  The Secretary at that time was Carol Aichele.

[5]  See 25 P.S. § 2621(c) (mandating that the Secretary "certify to county boards of elections for primaries and elections . . . the form and wording of constitutional amendments . . . to be submitted to the electors"); id. § 2755 ("proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary").

> 75 years, *instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70*?

Public Notice of Proposed Amendment, Exhibit F to Plaintiffs' Complaint for Declaratory and Injunctive Relief (emphasis added).  This ballot question was advertised as required by Article XI, Section 1, and ballots were prepared by local election officials throughout the Commonwealth for the April 26, 2016 primary election using this language.

Although all necessary steps had been taken to present the ballot question to the voters at this year's primary election, on March 6, 2016, the Pennsylvania Senate Majority Caucus, Senate President Pro Tempore Joseph Scarnati, and Senate Majority Leader Jacob Corman ("Senators") filed an Emergency Application for Extraordinary Relief with our Court requesting that we strike certain phrases from the ballot question formulated by the Secretary, in the following manner:

> Shall the Pennsylvania Constitution be amended to require that justices ~~of the Supreme Court~~, judges and justices of the peace (~~known as magisterial district judges~~) be retired on the last day of the calendar year in which they attain the age of 75 years[.]~~, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?~~

Emergency Application for Extraordinary Relief at 29 MM 2016, filed 3/6/16, Exhibit G to Plaintiffs' Complaint for Declaratory and Injunctive Relief, at 1.  They argued that the original terms and phrases which they sought to strike were "confusing, distracting, and misleading to electors," inconsistent with the text of the amendment which they had passed twice, and "nothing more than superfluous and gratuitous commentary, which is more appropriately addressed in the Plain English Statement of [the] Office of Attorney General that accompanies the Ballot Question."  Id. at 1-2.

Of particular relevance to the instant matter, on March 11, 2016, the Secretary filed an answer to this application contending that it should be denied; he asserted that,

by deleting the phrase "instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70," this revision:

> *would actually deprive voters of relevant information* on the ballot itself regarding the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution.

Answer of Secretary of the Commonwealth Pedro A. Cortes at 29 MM 2016, Exhibit H to Plaintiffs' Complaint for Declaratory and Injunctive Relief, at 16 (emphasis added). Elaborating, the Secretary averred:

> This is not an amendment where new language is merely being added to the Constitution.  For this proposed amendment, the existing text would actually change.  . . .  Amending the Ballot Question in the manner suggested by Applicants would likely leave the voter wondering what the current requirement is — or worse yet, leave the voter with the impression that there is currently no requirement at all.

Id. at 17.  We note that the Secretary has not, in any subsequent filing with our Court, expressly repudiated these arguments, and, indeed, in his brief filed with our Court in the instant matter, does not acknowledge that he made these arguments even though he currently takes the opposite position.[6]

Our Court denied this application, as well as a subsequent request via stipulation among the Senators, the Attorney General, and the Secretary[7] for our Court to order this same proposed alteration in the language of the ballot question and for its placement on the November ballot.  On April 6, 2016 — 15 days before the primary election — the General Assembly passed H.R. 783 of 2016.  This resolution ordered the

---

[6]   The Office of Attorney General represented the Secretary in the March litigation, whereas the Chief Counsel of the Department of State represents the Secretary currently.

[7]   The Secretary presently contends that he and the Office of the Attorney General joined in this stipulation "in order to bring certainty to a process that had been rendered uncertain by the Application for Extraordinary Relief."  Appellee's Brief at 5-6 n.3.

county boards of elections to remove "to the extent possible" the Secretary's proposed ballot question, barred the Secretary from tallying votes on the amendment, and specifically directed the Secretary to place on the November ballot the following ballot question using nearly the identical language the Senators proffered in March:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

H.R. 783, Exhibit J to Plaintiffs' Complaint for Declaratory and Injunctive Relief. Thereafter, Plaintiffs brought the instant challenge in the Commonwealth Court on July 21, 2016, and, on that same day, requested that our Court exercise our extraordinary jurisdiction over the matter; we did so on July 27, 2016.

From our perspective, the language set forth in H.R. 783 suffers from precisely the same infirmity identified by the Secretary when it was earlier presented to our Court — namely that, by omitting any indication of an already existing mandatory retirement age for judges, it hides the fact that the voter is being asked to, in actuality, *raise* the current retirement age, and not, as the language suggests, to *impose* a mandatory retirement age for the first time.   This language is inherently misleading and contravenes the fundamental requirement which every ballot question seeking voter approval of an amendment to the Constitution must meet:  that "the question as stated on the ballot fairly, accurately and clearly apprize[s] the voter of the question or issue to be voted on."  Stander v. Kelly, 250 A.2d 474, 480 (Pa. 1969).[8]

---

[8]  As acknowledged in Justice Baer's Opinion at page 9, Stander is the governing test to assess whether the content and meaning of the wording of a ballot question is adequate to enable the voter to understand the true nature of the changes to the Constitution which a proposed amendment will effectuate.  In that regard, we view Justice Baer's reliance on Oncken v. Ewing, 8 A.2d 402 (Pa. 1939), to be misplaced.  Unlike Stander, in Oncken, we were not addressing the *constitutional* requirements for the content of a ballot question.  Rather, our Court was considering the discrete issue of whether the (continued…)

By omitting any indication that there is a current mandatory retirement age in the Constitution, the plain import of the unadorned ballot question language is that a brand new provision requiring all judges of the Commonwealth to retire at age 75 is being added. Yet, the act of adding a wholly new constitutional provision is fundamentally different than the act of altering an existing provision. The addition of a constitutional provision can be considered largely on its terms. By contrast, changing an existing provision requires consideration of the constitutional framework within which the government already functions in some respect. Consequently, to fully assess the wisdom of a change to that framework, the people must be able to evaluate the effect of a proposed change against the Constitution's present design.

The omission of any indication in the proposed ballot question that there is a current mandatory retirement provision quite simply deprives the voter of the opportunity to make this necessary comparison, as it does not allow the voter to assess whether the 75 year age limit set forth in the proposed amendment is more or less preferable than the existing requirement of age 70. Instead, it invites the voter to consider whether a

---

(…continued)

results of an election should be invalidated because the manner of printing of the ballot itself failed to precisely comport with the *statutory* requirements of the Election Code. The alleged fatal flaw in the ballot in that case, which the challenger did not raise prior to the election under the procedures afforded by the Election Code, was that it did not, as required by that Code, contain the words "yes" or "no" next to the question on which the voter was asked to place an "X", even though it instructed the voter to indicate his or her choice by placing an "X" directly opposite the words "For City Charter" if they were in favor of its adoption, or "Against City Charter" if they were opposed to its enactment. As the issue in that case turned on the question of whether a technical defect in the physical appearance of the ballot itself was misleading to the voter and, thus, interfered with his statutory right to make a free choice, it has little application here. Moreover, Stander makes no reference to Oncken, and our research discloses no instance where Oncken has been used by our Court to assess whether the structure and content of the language of a ballot question involving a proposed constitutional amendment was misleading; hence, we consider it to be inapplicable to the resolution of the instant case.

retirement age of 75 for jurists is desirable as compared with no mandatory retirement age at all.  As Plaintiffs have argued, this could have deleterious consequences for all voters:

> Voters in favor of restricting the tenure of state court jurists but who are unaware that the Pennsylvania Constitution currently requires them to retire at age 70 will be misled into voting "yes" on the ballot question, when they would in fact oppose the measure if fully informed.  At the same time, voters who oppose limiting the tenure of judges but who are unaware of the current constitutionally-mandated judicial retirement age will be misled into voting "no" on the ballot question, when they would in fact favor the measure if they understood that a "no" vote would mean judges must retire five years earlier than the amendment proposes.

Plaintiffs' Brief at 25-26.   Indeed, as the Secretary cogently noted in his original response to this language when it was first proposed, this language will "deprive voters of relevant information on the ballot itself regarding the mandatory judicial retirement age requirement as it currently exists in the Pennsylvania Constitution."   Answer of Secretary of the Commonwealth Pedro A. Cortes at 29 MM 2016, at 16; see also id. at 17 ("Amending the Ballot Question in the manner suggested . . . would likely leave the voter wondering what the current requirement is — or worse yet, leave the voter with the impression that there is currently no requirement at all.").[9]  Further, the language of the ballot question, by omitting any indication that it is amending a previously existing mandatory retirement age, is incongruous with the text of the legislative resolution, which clearly indicates, by bracketing and underlining, that it is changing a pre-existing retirement age.  Because, in our view, the ballot question is inherently misleading for all

---

[9]   These assertions by the Secretary regarding the effect the ballot language would have on the electorate undermine Justice Baer's assertion that Plaintiffs' similar claim is somehow illegitimate.  See Justice Baer's Opinion at 12 n.10.

of these reasons, it does not "fairly, accurately and clearly apprize the voter of the question or issue to be voted on." <u>Stander</u>, 250 A.2d at 480.[10]

Justice Baer has posited that Section 201.1 of the Election Code — which tasks the Attorney General with preparing "a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth," and which requires the publication of the statement in advertisements and the posting of three copies of the statement "in or about the voting room outside the enclosed space"[11] — in conjunction with the wording of the ballot question, "ensures that voters will receive all the information that they need to make an informed choice: the proposed constitutional language in the ballot question, and the purpose and effect of such language in the Plain English Statement." Justice Baer's Opinion at 14. Respectfully, we disagree.

As our Court indicated in <u>Stander</u>, "[t]he first and most important question . . . is: Does the question *as stated on the ballot* fairly, accurately and clearly apprize the voter of the question or issue to be voted on?" <u>Stander</u>, 250 A.2d at 480 (emphasis added). It was only *after* our Court answered this question in the affirmative in <u>Stander</u> that we went on to discuss the other means, in addition to the ballot question, by which the legislature required the electorate to be informed of the new provisions of Article V of

---

[10]   Asserting that no context is required, Justice Baer offers that "ballot questions have been presented to voters in this Commonwealth in various forms, some of which include reference to existing constitutional language and some of which do not." <u>See</u> Justice Baer's Opinion at 11 n.9 (discussing <u>Bergdoll v. Commonwealth</u>, 858 A.2d 185 (Pa. Cmwlth. 2004), <u>Pennsylvania Prison Society v. Commonwealth</u>, 776 A.2d 971 (Pa. 2001), and <u>Grimaud v. Commonwealth</u>, 865 A.2d 835 (Pa. 2005)). Critically, none of the cases Justice Baer references involved constitutional challenges to the *wording* of ballot questions on proposed amendments; thus, they have no bearing on the resolution of the instant matter.

[11]   25 P.S. § 2621.1.

the Constitution which it was being asked to add, in their entirety, to our Constitution.[12] Critically, then, we read <u>Stander</u>'s requirement that the ballot question must "fairly, accurately and clearly apprize the voter of the question or issue to be voted on" as precluding the conclusion that a misleading ballot question can be cured by the provision of notice to the voter by other means such as posting or publication of the Plain English Statement.

Requiring strict adherence to <u>Stander</u>'s requirement is, in our view, the only way to ensure that every voter will be provided with the information essential to an informed choice about whether to approve a constitutional amendment.  Although the Plain English Statement is posted somewhere outside of the "enclosed space" where the voter makes his or her final decision, this statement does not appear on the ballot itself, nor does the voter otherwise have access to the posted statement while he or she is reviewing the ballot during the process of voting.  Likewise, given the unfortunate reality of declining newspaper readership, and the fact that the average voter may be faced with overcrowded polling places which force the voter to cast his or her vote under harried circumstances, it simply cannot be presumed that each and every voter will have encountered this Plain English Statement through newspaper advertisement or posting in the outer areas of the polling place as Justice Baer comfortably assumes. <u>See</u>, <u>e.g.</u>, <u>Ex parte Tipton</u>, 93 S.E.2d 640, 644 (S.C. 1956) ("It is the ballot, not the posted notice, with which the voter comes into direct contact.  The reasonable

---

[12]   These requirements, unlike the requirements set forth in the enabling legislation in the instant matter, included a mandate that ten copies of the proposed amendment be distributed to each polling place, and obliged the Secretary to "publish the Constitution showing the changes proposed by the convention in convenient form and send a copy thereof to each elector requesting it." <u>Stander</u>, 250 A.2d at 480.

assumption is that he reads the question proposed on the ballot, and that his vote is cast upon his consideration of the question as so worded.").

Lastly, we reject Justice Baer's characterization of Plaintiffs' challenge as founded on nothing more than that the proposed language could merely be "more informative." Justice Baer's Opinion at 11. We do not consider Stander to require, in a ballot question, a verbatim recitation of the constitutional provisions being changed, or any particular formulation; rather, it simply requires that the Secretary utilize language in the ballot question that "fairly, completely and accurately" conveys the essential impact of the proposed changes on the relevant constitutional provisions. Most fundamentally, this requires conveying whether constitutional language is being wholly added, or modified. Enforcing this requirement is not a matter of this Court mandating a particular linguistic preference, or being "more informative," but fulfilling our elemental duty to uphold the Constitution.

In sum, then, we would grant Plaintiffs' requested relief and enter an order permanently enjoining the Secretary of the Commonwealth from placing on the ballot the language set forth in H.R. 783 of 2016.[13]

---

[13] We find no merit to the Secretary's additional assertions that Plaintiffs' complaint raises a non-justiciable question, or that it is barred by the doctrine of laches. Specifically with regard to laches, our Court has heretofore indicated that, because of the paramount importance of the manner in which a proposed constitutional amendment is presented to the people for consideration, the doctrine of laches was not a bar to our Court's consideration of such matters. See Tausig v. Lawrence, 197 A. 235, 239 (Pa. 1938) ("Because of the intense importance to the people of the commonwealth of matters affecting the amendment of their fundamental law, the doctrine of laches cannot be invoked to prevent the determination of the propriety of the submission of an amendment."); see also Sprague v. Casey, 550 A.2d 184, 188 (Pa. 1988) (rejecting reliance on laches defense in constitutional challenge to scheduling of judicial election in non-municipal election year).

In closing, although the actions of the legislature and the Secretary are at the core of this legal challenge, it bears emphasis that this Court's ultimate focus is on safeguarding the rights of the people.  In that regard, we are reminded of the profound observation by Justice Louis Brandeis that "[t]he most important office . . . is that of private citizen."  Alpheus Thomas Mason, Brandeis: A Free Man's Life 122 (1946).  At no time do the duties of this office attain greater importance than when a citizen contemplates amending the document that establishes the fundamental relationship between the citizen and his or her government.  Given the gravity of this act, we should heed the admonition that "[n]o method of amendment can be tolerated which does not provide the electorate adequate opportunity to be fully advised of proposed changes" to our Constitution.  Commonwealth ex rel Schnader v. Beamish, 164 A. 615, 616-17 (Pa. 1932).  When the people amend our founding charter, they should do so with clear and keen eyes.  Because, in our view, the proposed ballot question does not afford the people that opportunity, we would enjoin its placement on the ballot.

Justice Dougherty joins this opinion and Justice Wecht joins in part.

# Exhibit Z

**[J-96-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | |
|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | :  No. 75 MAP 2016 |
| | : |
| | : |
| Plaintiffs | : |
| | : |
| | : |
| v. | : |
| | : |
| | : |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : |
| | : |
| | : |
| | : |
| Defendant | : |

**OPINION IN SUPPORT OF DENYING PLAINTIFFS' APPLICATION FOR SUMMARY**
**RELIEF AND GRANTING DEFENDANT'S APPLICATION FOR SUMMARY RELIEF**


**JUSTICE BAER**                                    **DECIDED:  September 2, 2016**

For the reasons set forth below, we conclude that Plaintiffs are not entitled to summary relief.

This matter involves a challenge to the November 2016 General Election ballot question, as framed by Defendant Pedro A. Cortés, the Secretary of the Commonwealth ("Secretary"), which seeks to amend the mandatory judicial retirement age set forth in Article V, Section 16(b) of the Pennsylvania Constitution.[1] The issue presented by

---

[1]     Article V, Section 16(b) currently provides, in relevant part, that "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years."  PA. CONST. art. V, § 16(b).

Plaintiffs' complaint is whether the ballot question is unlawful on the ground that it informs the electorate of the proposed amended constitutional language, but does not reference the existing constitutional language.  For the reasons that follow, we would find no legal impediment to the Secretary's statement of the ballot question.

On July 21, 2016, the Honorable Ronald D. Castille, the Honorable Stephen A. Zappala, and Attorney Richard A. Sprague ("Plaintiffs") commenced an action in the Commonwealth Court through the filing of a complaint seeking declaratory and injunctive relief.   Therein, Plaintiffs challenged the Secretary's framing of the constitutional question to be placed on the November 2016 General Election ballot, which states:

> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75?

Plaintiffs contended that the language is unlawfully misleading because it advises voters only of the proposed amended constitutional language and does not inform voters that the existing mandatory judicial retirement age is 70.  Plaintiffs requested a declaration that the ballot question violates Pennsylvania law, and sought to enjoin the Secretary from presenting the question on the general election ballot.

Later that day, Plaintiffs filed in this Court an emergency application requesting that we assume plenary jurisdiction over the action pursuant to 42 Pa.C.S. § 726.[2]  This

---

[2]    Section 726, entitled  "Extraordinary jurisdiction," provides:

Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726.  The Secretary did not oppose Plaintiffs' request for the exercise of plenary jurisdiction.

Court granted Plaintiffs' emergency application on July 27, 2016, and a briefing schedule was established.   Because there are no factual issues in dispute, both parties have filed applications for summary relief.

In their brief to this Court, Plaintiffs contend that the ballot question as framed will infringe upon their purported state constitutional right to vote on an amendment to the Pennsylvania Constitution and their right to due process.   More pointedly, Plaintiffs argue that, by omitting from the ballot question the existing constitutional language to be changed, the Secretary has violated his obligation, set forth by this Court in Stander v. Kelley, 250 A.2d 474 (Pa. 1969), to clearly and accurately apprise voters of the issue to be decided.

Plaintiffs surmise that, because the ballot question does not inform the electorate of the existing judicial mandatory retirement age, voters will assume that they are being asked to institute one.   They further speculate that voters will be more likely to vote "yes" if they believe that they are instituting a mandatory retirement age, rather than increasing the current mandate.   Based on their belief that voters will be misled by the ballot question's current phrasing, Plaintiffs seek a rule that where the proposed constitutional amendment alters existing constitutional language, the ballot question must reference the current provision in addition to the proposed new language.

Plaintiffs cite no Pennsylvania constitutional or statutory provision, nor any on-point Pennsylvania precedent, to support their request for this new ballot question requirement; rather, they cite an Idaho Supreme Court decision from 1929, Lane v. Lukens, 283 P. 532 (Idaho 1929), and two decisions of the Florida Supreme Court, Askew v. Firestone, 421 So.2d 151 (Fla. 1982); Wadhams v. Bd. of Cty. Comm'rs, 567 So.2d 414 (Fla. 1990), none of which carry any precedential value in this Commonwealth.   As discussed infra, in Lane, the Idaho court held that a proposed

ballot question that asked whether executive officers should be "limited" to a term of four years was unconstitutional where the proposed legislative amendment actually sought to extend the term of executive officers from two years to four years.  The court focused on the fact that the proposed amendment sought to expand terms, while the question, as framed, stated the term would be limited.  Because of the conflict between what was proposed (term extensions) and what was asked (term limits), the court struck the ballot question.

In Askew and Wadhams, the Florida Supreme Court struck ballot questions where the queries, as drafted, violated a state statute requiring that a proposed ballot question contain an explanatory statement within the initiative itself.  Specifically, the Florida state law applicable in those cases specified:

> Whenever a constitutional amendment or other public measure is submitted to the vote of the people, the substance of such amendment or other public measure shall be printed in clear and unambiguous language on the ballot . . . .   The substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure.

Fla. Stat. Ann. § 101.161.

Plaintiffs acknowledge that, in Pennsylvania, unlike Florida, the purpose, limitations, and effects of the ballot question on the citizens of the Commonwealth must be set forth in a Plain English Statement drafted by the Attorney General.  25 P.S. § 2621.1 ("Explanation of ballot question").  As such, the Election Code does not require a duplicative description in the ballot question itself.  Nevertheless, Plaintiffs maintain that we should fashion such a requirement.  Plaintiffs conclude that the current drafting of the question is defective and that such defect cannot be cured or ameliorated by the Attorney General's Plain English Statement.

In seeking relief, Plaintiffs request: (1) a declaration that the ballot question is unlawful; (2) an injunction precluding the Secretary from placing the question as

presently worded on the November 2016 General Election Ballot; and (3) an order directing the Secretary (at some uncertain future time) to present voters with a ballot question advising that the proposed amendment would result in the current constitutionally-mandated judicial retirement age being raised from 70 to 75.

In response, the Secretary asserts that he has the exclusive authority to formulate the ballot question pursuant to Sections 201(c), 605, and 1110(b) of the Election Code, 25 P.S. §§ 2621(c), 2755 and 3010(b), and that the only limit on this power, as set forth by Stander, supra, is that the language of the ballot question must fairly, accurately, and clearly apprise the voter of the question or issue on which the electorate must vote.  He notes that in conferring such authority, the legislature intended to grant the Secretary of the Commonwealth broad discretion as to the particular language that will appear on the ballot.  The Secretary maintains that he satisfied all requisites of the law as he exercised his discretion by framing the question in a fair, accurate, and clear manner that apprises voters of the question to be voted on, *i.e.*, whether members of the judiciary must retire at the age of 75.  Thus, the Secretary concludes that his wording of the constitutional question satisfies the requirements of Stander.

The Secretary acknowledges that in any case there will be multiple ways to frame a ballot question, which ultimately have the same meaning and effect.[3]  He

---

[3]     The Secretary explains that he had initially drafted the question in a different form more akin to that suggested by Plaintiffs herein, but altered the phrasing in an attempt to bring certainty to the election matter.  See Brief of Secretary at 9 (stating that in late May of 2016, to resolve uncertainty surrounding the phrasing of the ballot question due to protracted litigation on the issue, the Secretary decided to amend voluntarily his wording of the ballot question to conform to the text of Proposed Constitutional Amendment 1 contained in House Resolution 783).  We emphasize that the issue here is whether the current phrasing of the ballot question is lawful, and neither the Secretary's previous drafts of the question or the Secretary's stances in prior litigation involving the ballot question is germane to this analysis.

contends that whether any particular phrasing is "better" than another is not a proper consideration for the judicial branch in analyzing whether the chosen wording is lawful. The Secretary asserts that if we grant the requested relief and direct him to utilize the language that Plaintiffs prefer, then all future ballot questions would be subject to challenge by any voter who believes that he or she could phrase the ballot question in a more informative way.  Moreover, by granting such relief, he notes that the Court would essentially become the Secretary's editor in future ballot challenges.   Finally, the Secretary asserts several procedural and jurisprudential reasons to bar Plaintiffs' requested relief, including that Plaintiffs' complaint raises a non-justiciable question and is barred by the doctrine of laches.[4]

Recognizing the procedural posture of the case before us, we acknowledge initially that an application for summary relief may be granted if a party's right to judgment is clear and no material issues of fact are in dispute.  Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth, 77 A.3d 587, 602 (Pa. 2013); see also Pa.R.A.P. 1532(b) (providing that "[a]t any time after the filing of a petition for review in an appellate or original jurisdiction matter the court may on application enter judgment if the right of the applicant thereto is clear").  For the reasons set forth infra, we would hold that the Secretary has established a clear right to relief.

Because the cornerstone of our analysis is Article XI, Section 1 of the Pennsylvania Constitution, which sets forth the procedure for amending our Constitution, we begin with an examination of that provision.[5]  Germane to the issue

---

[4]     As we find no merit to Plaintiffs' position, we do not address the remainder of the Secretary's alternative arguments.

[5]     Article XI, Section 1 provides:

Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or
(continued…)

presented, Article XI, Section 1 provides that constitutional amendments may be proposed in the Senate or House of Representatives.  If a majority of each house approves the amendment in two consecutive sessions, then Article XI, Section 1 requires that the Secretary publish the proposed constitutional amendment in newspapers across the Commonwealth in a specified manner.   Such proposed amendments must be submitted to the qualified electors of the state in such manner and at such time as the General Assembly shall prescribe.[6]   Importantly, the

_____

(…continued)

      amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately.

PA. CONST. art XI, § 1.

[6]     In his opinion, Justice Wecht defers to Black's Law Dictionary's definition of the term "amendment" as employed in Article XI, Section 1, and concludes that an "amendment" is a "change made by addition, deletion, or correction."  Slip. Op. at 3 (citing Black's Law Dictionary (10th ed. 2014)).  He proceeds to reason that Article XI, Section 1 is violated here because in order for the electorate to accept a "change" to the constitution, the voter must necessarily know what the constitution currently provides in addition to what it would provide if the amendment were adopted.  Id. at 4.  Respectfully, this position would carry some force if Article XI, Section 1 provided that the "change to the constitutional provision" must be presented to the qualified electorate.  However, Article XI, Section 1 states that the "amendment" must be presented to the qualified electorate, which, as demonstrated infra, the Secretary has (continued…)

Constitution does not speak to the wording of ballot questions but merely provides the General Assembly with the power to decide the manner and time in which to present proposed constitutional amendments to voters.

Pursuant to this constitutional authority, the Legislature prescribed procedures in the Election Code, including 25 P.S. § 3010(b), which states, in relevant part, that "[e]ach question to be voted on shall appear on the ballot labels, in brief form, of not more than seventy-five words, to be determined by the Secretary of the Commonwealth in the case of constitutional amendments . . . ." See also 25 P.S. § 2755 (providing that "proposed constitutional amendments shall be printed on the ballots or ballot labels in brief form to be determined by the Secretary of the Commonwealth with approval of the Attorney General").  Accordingly, the General Assembly afforded the Secretary the discretion to determine the wording of a proposed constitutional amendment ballot question with the Attorney General's approval, and indeed, no party asserts that the Secretary was not the proper wordsmith.

While the forgoing provisions place no explicit requirements on the Secretary's phrasing of the ballot question and, thus, give the Secretary broad authority to formulate questions to appear on the ballot, this Court has held that the Secretary's discretion in phrasing the ballot question is not unfettered.  In this regard, we have indicated that a ballot question must fairly, accurately, and clearly apprise the voter of the question or issue on which the electorate must vote.  Stander, 250 A.2d at 480.[7]  Generally, judicial

---

(…continued)
done by setting forth the language of the proposed constitutional amendment.  Thus, literal compliance with Article XI, Section 1 has been achieved.

[7] In his opinion, Justice Wecht questions whether Stander applies here.  Specifically, he points to the fact that the constitutional amendment at issue in Stander arose from a constitutional convention, rather than through the procedure provided by Article XI, Section 1 utilized in the instant case.  Respectfully, we believe Justice Wecht's concern raises a distinction without a difference.  The question in Stander was whether a ballot (continued…)

interference with a question posed to voters is warranted only where "the form of the ballot is so lacking in conformity with the law and so confusing that the voters cannot intelligently express their intentions." Oncken v. Ewing, 8 A.2d 402, 404 (Pa. 1939) (refusing to nullify results of a voter referendum where the form of the ballot question did not meet technical dictates of the governing statute, but nonetheless sufficiently informed voters of the question).

Requiring such a high burden to invoke judicial interference with the Secretary's phrasing of a proposed constitutional amendment ballot question is consistent with the doctrine of separation of powers, which dictates that each branch of government give due deference to the actions and authority of its sister branches.  As the judiciary is the branch entrusted with interpreting the Constitution, its drafting is left to the other branches of government.  Specifically, our founders wisely delegated to the General Assembly the task of determining the manner by which voters decide on, and the ultimate amended wording of, constitutional amendments.  The General Assembly, in its wisdom, delegated to the Secretary of the Commonwealth the task of formulating the ballot question, which informs the voters of the legislature's proposed constitutional language.  Thus, the question before us is not whether we believe one version of the ballot question is superior to another, nor is it relevant how we would phrase the ballot question if left to our own devices.  Instead, our role in the constitutional amendment

---

(…continued)
question asking voters to approve a proposed constitutional amendment contained sufficient information.  Because this case presents the same issue, Stander is controlling and no party disputes its applicability.  The fact that the General Assembly may use different processes to arrive at its decision to propose a constitutional amendment is irrelevant to how we review whether the ballot question provides the voters with sufficient information on which to consider its adoption.

process is limited to a review of whether the ballot question fairly, accurately and clearly apprises the voter of the question on which the electorate must vote.

This review was elucidated in <u>Stander</u>, the only Pennsylvania authority relied upon by Plaintiffs, which, upon close examination, does not support their position.  The ballot question challenged in <u>Stander</u> was "but a tiny and minuscule statement of the very lengthy provisions of the proposed Judiciary Article V."  <u>Stander</u>, 250 A.2d at 480. The constitutional amendment at issue therein completely revised Article V relating to the judiciary by both altering existing constitutional language and inserting entirely new provisions.  The ballot question submitted to the electorate stated:

> JUDICIARY—Ballot Question V: Shall Proposal 7 on the JUDICIARY, adopted by the Constitutional Convention, establishing a unified judicial system, providing directly or through Supreme Court rules, for the qualifications, selection, tenure, removal, discipline and retirement of, and prohibiting certain activities by justices, judges, and justices of the peace, and related matters, be approved?

<u>Id</u>.

The <u>Stander</u> ballot question did not specifically reference or explain the several substantive changes that would result from a "yes" vote, including that a retirement age of 70 was being imposed on jurists for the first time.  More significantly, the ballot question did not set forth the existing constitutional language of those provisions that were to be amended or reference the particular effects resulting from the amendment. Nonetheless, our Court upheld the ballot question and determined that it "fairly, accurately and clearly apprize[d] the voter of the question or issue to be voted on." <u>Id</u>.

Here, the proposed constitutional amendment would require members of the judiciary to retire at age 75.  The ballot question, as drafted by the Secretary, asks voters the identical inquiry, *i.e.,* whether they wish to amend the Constitution to require members of the judiciary to retire at age 75.  Because the Secretary's framing of the ballot question clearly conveyed the proposed constitutional amendment to the

electorate, we find that this question satisfies the dictates of <u>Stander</u>.  We acknowledge that adopting Plaintiffs' proposed new rule and requiring the Secretary to place the existing constitutional language in the ballot question itself would render the particular ballot question more informative.  Significantly, however, rejection of such a rule does not render the ballot question unlawful. [8]

---

[8]      In fact, ballot questions have been presented to voters in this Commonwealth in various forms, some of which include reference to existing constitutional language and some of which do not.  <u>See</u> <u>e.g.</u> <u>Bergdoll v. Commonwealth</u>, 858 A.2d 185, 190 (Pa. Commw. Ct. 2004), <u>aff'd</u>, 583 Pa. 44, 874 A.2d 1148 (2005) (examining the following ballot question, "Shall the Pennsylvania Constitution be amended to provide that a person accused of a crime has the right to be 'confronted with the witnesses against him,' instead of the right to 'meet the witnesses face to face'?"); Ballot Question 3, November 1997, regarding Article VII, section 14, providing, "Shall the Pennsylvania Constitution be amended to require the enactment of legislation permitting absentee voting by qualified electors who at the time of an election may be absent from the municipality where they reside because their duties, occupation or business require them to be elsewhere, which would change the current law permitting absentee voting by such qualified electors only when they are absent from the entire county where they reside?"; <u>but</u> <u>see</u> <u>Pennsylvania Prison Soc. v. Commonwealth</u>, 776 A.2d 971, 974 (Pa. 2001) (upholding a ballot question asking, "Shall the Pennsylvania Constitution be amended to require a unanimous recommendation of the Board of Pardons before the Governor can pardon or commute the sentence of an individual sentenced in a criminal case to death or life imprisonment, to require only a majority vote of the Senate to approve the Governor's appointments to the Board, and to substitute a crime victim for an attorney and a corrections expert for a penologist as Board members?", without referencing the existing requirement that the recommendation be made by only a majority of the Board of Pardons); <u>Grimaud v. Commonwealth</u>, 865 A.2d 835, 841 (Pa. 2005) (upholding a ballot question inquiring,  "Shall the Pennsylvania Constitution be amended to disallow bail when the proof is evident or presumption great that the accused committed an offense for which the maximum penalty is life imprisonment or that no condition or combination of conditions other than imprisonment of the accused will reasonably assure the safety of any person and the community?",  without reference to the then-current constitutional provision, which disallowed bail only for capital offenders).

Plaintiffs would have us require the Secretary, when formulating a ballot question, to explain the effect of the proposed amendment only when a current constitutional provision is being altered, but not when an entirely new provision is being added.[9]   We find no support for this bifurcated approach as the law of this Commonwealth will be changed regardless of whether a new provision is added or an existing provision is altered.   Instead, pursuant to Pennsylvania's constitutional and statutory procedures for amending the constitution, the purpose, limitations, and effects that the proposed constitutional amendment has on Pennsylvania citizens must appear in the Plain English Statement prepared by the Attorney General.

Section 201.1 of the Election Code, 25 P.S. § 2621.1, entitled "Explanation of ballot question," provides that "[w]henever a proposed constitutional amendment or other State-wide ballot question shall be submitted to the electors of the Commonwealth in referendum, the Attorney General shall prepare a statement in plain English which indicates the purpose, limitations and effects of the ballot question on the people of the Commonwealth."   This provision further requires the Secretary to include the Plain English Statement in the publication of the proposed constitutional amendment and to certify for publication the statement to county board of elections, who shall require at least three copies of such statement to be published in or about each polling place.   Id.

_____

[9]     The presumption underlying Plaintiffs' lawsuit is that the average voter in the Commonwealth will not comprehend the effect of the proposed ballot question as phrased because voters will be unaware of the current mandatory judicial retirement age of 70 and will instead assume that they are being asked to create one.   This general presumption–that voters do not understand the import of their votes–has historically been rejected.   See Stander, 250 A.2d at 480 ("In a Republican or Democratic form of Government, a similar contention is made after almost any election – the people didn't know or did not understand what (or whom) they were really voting for.  This generalization has never been proved and will not be assumed by us.").

In this case, the Attorney General's Plain English Statement explains the purpose and effect of the constitutional amendment as follows:

> The purpose of the ballot question is to amend the Pennsylvania Constitution to require that justices, judges, and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years.
>
> Presently, the Pennsylvania Constitution provides that justices, judges and justices of the peace be retired on the last day of the calendar year in which they attain the age of 70 years.  Justices of the peace are currently referred to as magisterial district judges. . . .
>
> The effect of the ballot question would be to allow all justices, judges and magisterial district judges to remain in office until the last day of the calendar year in which they attain the age of 75 years.  This would permit all justices, judges, and magisterial district judges to serve an additional five years beyond the current required retirement age.

The fact that Pennsylvania currently has a mandatory judicial retirement age of 70, and that it will be increased to 75 if voters adopt the proposed amendment, speaks to the effect of the proposed amendment.   If we were to adopt Plaintiffs' position and require that the Secretary include the purpose and effect of the constitutional amendment in the ballot question itself, not only would we infringe upon the legislature's constitutional prerogative, but we would also render superfluous the Plain English Statement required by Section 201.1 of the Election Code, placed in every advertisement of the proposed constitutional amendment and in every polling facility. Instead, we conclude that the ballot question as worded by the Secretary, in conjunction with the Attorney General's Plain English Statement, ensures that voters will receive all the information that they need to make an informed choice: the proposed constitutional language in the ballot question, and the purpose and effect of such language in the Plain English Statement.  We find nothing in this construct to be unfair or misleading.

Finally, as noted, Plaintiffs' reliance on cases from other jurisdictions is misplaced and does not warrant a contrary result.  The <u>Lane</u> case, decided by the Idaho

Supreme Court in 1929, cited by Plaintiffs is distinguishable.   In <u>Lane</u>, the court, in striking the ballot question, determined that the language used in the ballot question was contrary to the amendment proposed by the state legislature, rendering it impermissibly misleading to voters.   Specifically, the proposed amendment sought to extend the term of the executive branch; yet, the question posed asked whether the term of the executive should be limited.   The <u>Lane</u> court concluded that this wording was clearly deceiving to the electorate as the question explicitly stated the opposite of the proposed amendment.   Here, no such deception has occurred.   The question framed by the Secretary simply reflects the exact language that will result from the proposed amendment.   There is no language explicitly stating the opposite result of the proposed amendment as in <u>Lane</u>, *e.g.*, should a judge's term be *limited* to 75 years, which would be impermissibly misleading under the logic of <u>Lane</u>.

Likewise, the Florida cases cited by Plaintiffs are distinct as Florida required, by statute, that an explanatory statement be included in the ballot question itself.   However, as stated, no such requirement exists pursuant to our constitution or statutory scheme, and it would be improper for this Court to rewrite the Election Code to include such a provision.

Neither Plaintiffs nor the Justices who support their position have cited any authority to conclude that a ballot question is misleading where it does not explain the effect of the proposed amendment, thereby affording this Court the right to interfere with the submission of the challenged ballot question to the qualified electors of Pennsylvania at the time and in the manner prescribed by the General Assembly. Unshackled by the constitutional restraints on our judicial branch of government, we may well embrace the framing of the ballot question as suggested by Plaintiffs for the cogent policy reasons espoused by Justice Todd in her opinion.   However, we cannot

ignore that our ability to grant relief is cabined by adherence to our own constitutional limitations.   As the ballot question as framed by the Secretary is free of legal impediment, it is not for this Court to alter it or, as suggested by the dissent, to remove it from the electorate's consideration.   To do so would deny the citizens of this Commonwealth the very rights that Plaintiffs' action purports to protect.

It is for these reasons that we would grant the application for summary relief filed by the Secretary, deny the application for summary relief filed by Plaintiffs, and dismiss Plaintiffs' complaint with prejudice.

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justices Donohue and Mundy join this opinion.

# Exhibit AA

[J-96-2016]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| Defendant | : | |


**ORDER**


**PER CURIAM**                                    **DECIDED:  September 2, 2016**

        **AND NOW,** this 2nd day of September, 2016, the Court being evenly divided in
its determination as to which parties are entitled to the grant of summary relief, this
Court is without authority to grant relief and the *status quo* of the matter prior to the filing
of the lawsuit is maintained.  See Creamer v. Twelve Common Pleas Judges, 281 A.2d
57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench
original jurisdiction matter challenging gubernatorial appointments to judicial vacancies,
the appropriate disposition was to enter a *per curiam* order noting that the requested
relief could not be granted, thereby maintaining the *status quo* of the matter).


        Chief Justice Saylor did not participate in the consideration or decision of this
matter.

Justice Baer files an Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief in which Justice Donohue and Justice Mundy join.

Justice Todd files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief in which Justice Dougherty joins and Justice Wecht joins in part.

Justice Wecht files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief.

# Exhibit BB

[J-96-2016]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| Defendant | : | |

**OPINION IN SUPPORT OF GRANTING PLAINTIFFS' APPLICATION FOR
SUMMARY RELIEF AND DENYING DEFENDANT'S APPLICATION FOR SUMMARY
RELIEF**

**JUSTICE WECHT**                    **DECIDED:  September 2, 2016**

        The Pennsylvania Constitution reserves to the people "an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper."  PA. CONST. art. I, § 2.  Consistent therewith, Article XI, Section 1 instructs that all proposed constitutional amendments "shall be submitted to the qualified electors of the State."  PA. CONST. art. XI, § 1.  In matters concerning revisions of our charter, this Court must exercise "the most rigid care," and we demand "[n]othing short of a literal compliance" with the specific measures set forth in Article XI. Commonwealth ex rel. Schnader v. Beamish, 164 A. 615, 616-17 (Pa. 1932); Kremer v. Grant, 606 A.2d 433, 438 (Pa. 1992).

For the many reasons that Justice Todd articulates in her thorough and well-reasoned opinion, I too believe that the challenged ballot question fails to satisfy this stringent standard.  I write separately to express my skepticism that the test this Court applied in Stander v. Kelly, 250 A.2d 474, 480 (Pa. 1969) controls here.

Unlike the measure before us, the amendments at issue in Stander were the product of a Constitutional Convention.  See id. at 479 ("These new amendments to or revision[s] of the Constitution were not adopted pursuant to the provisions of Article XI of the Constitution of 1874, but were adopted pursuant to and through a different manner of amendment—the Constitutional Convention.").[1]  Nonetheless, my learned colleagues appear to assume that, to pass constitutional muster under Article XI, Section 1, a ballot question need only "fairly, accurately and clearly apprize [sic] the voter of the question or issue to be voted on."  Stander, 250 A.2d at 480; see Justice Baer's Opinion at 9-10 ("[O]ur role in the constitutional amendment process is limited to a review of whether the ballot question fairly, accurately and clearly apprises the voter of the question on which the electorate must vote."); Justice Todd's Opinion at 8, n.8 ("Stander is the governing test to assess whether the content and meaning of the wording of a ballot question is adequate[.]").

Because our Constitution explicitly defines the amendment process that was used in this case, I would begin my analysis not with Stander, but rather with the text of Article XI, Section 1 itself:

> Amendments to this Constitution may be proposed in the Senate or House of Representatives; and if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays

---

[1]  It is well-established that the Pennsylvania Constitution may be amended either by Convention or by the procedure specified in Article XI, Section 1.  Stander, 250 A.2d at 480.

taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years.  When two or more amendments shall be submitted they shall be voted upon separately.

PA. CONST. art. XI, § 1.

When we construe a provision of the Pennsylvania Constitution, our "ultimate touchstone is the actual language of the Constitution itself," which "must be interpreted in its popular sense, as understood by the people when they voted on its adoption." Jubelirer v. Rendell, 953 A.2d 514, 528 (Pa. 2008); Com. ex rel. Paulinski v. Isaac, 397 A.2d 760, 765 (Pa. 1979) ("Constitutional provisions are not to be read in a strained or technical manner.  Rather, they must be given the ordinary, natural interpretation the ratifying voter would give them.").  To determine the intent of the ratifying voters, we may consider, inter alia, the "text; history (including constitutional convention debates, the address to the people, [and] the circumstances leading to the adoption of the provision); structure; underlying values; and interpretations of other states." Robinson Twp., Washington Cnty. v. Commonwealth, 83 A.3d 901, 944 (Pa. 2013) (quoting Thomas G. Saylor, Prophylaxis in Modern State Constitutionalism: New Judicial Federalism and the Acknowledged Prophylactic Rule, 59 N.Y.U. ANN. SURV. AM. L. 283, 290-91 (2003) (footnotes and internal quotation marks omitted)).

By its terms, Article XI, Section 1 requires that a "proposed amendment or amendments shall be submitted to the qualified electors of the State."  PA. CONST. art.

XI, § 1.   According to its ordinary meaning, the word "amendment" means "a change made by addition, deletion, or correction."   See "Amendment," Black's Law Dictionary (10th ed. 2014).   Article XI requires the electorate to accept or reject the proposed **change** to the constitution.   By definition, in order to do so, a voter necessarily must know two things: (1) what the constitution currently provides and (2) what it would provide if the amendment were adopted.   A ballot question that omits the former (as does the one we examine here) falls short of "literal compliance" with Article XI.[2]   Kremer, 606 A.2d at 438 ("Nothing short of a literal compliance with [Article XI, Section 1] will suffice.").

It is beyond cavil that Article XI, Section 1 is rooted in the principle that the electorate must be informed fully of all proposed constitutional amendments.   For example, the provision imposes strict statewide publication requirements.   It also provides that discrete amendments must be submitted individually to the voters, a requirement which ensures that only specific and narrow ballot questions will be presented to the people for their approval.   See Pennsylvania Prison Soc. v. Com., 776 A.2d 971, 986-87 (Pa. 2001) (explaining that the separate-vote requirement "acts as a safeguard to ensure that our citizenry is fully informed of the proposed amendments to the Constitution."); id. ("[T]he focus of Article XI, § 1 is clearly upon the voter.").

By contrast, in the Convention context, our Constitution does not explicitly mandate these requirements.   Indeed, if the complete revision of Article V at issue in Stander had been accomplished through the Article XI process, it almost certainly would have violated the separate-vote requirement.   See Bergdoll v. Kane, 731 A.2d 1261,

---

[2]     By contrast, as Justice Todd aptly notes, when a proposed amendment seeks to add to the Constitution an entirely new provision, approval of the post-amendment language is the functional equivalent of approving the revision to the Constitution.   See Justice Todd's Opinion at 9.

1270 (Pa. 1999) (holding that a single ballot question encompassing amendments to both Article I, Section 9 and Article V, Section 10(c) violated the separate-vote requirement).[3]

Given the significant differences between the two lawful methods for amending the Pennsylvania Constitution, I cannot accept as a foregone conclusion the proposition that the Stander test controls this case.  In any event, regardless of whether our inquiry is limited to considering if "the question as stated on the ballot fairly, accurately and clearly apprize[s] [*sic*] the voter" of the amendment, or whether the text of the Constitution requires a more specific standard (*i.e.*, the voter sees both the "before" and the "after"), I agree fully with Justice Todd that the ballot question before us cannot survive judicial scrutiny.

Accordingly, I would grant Plaintiffs' application for summary relief and deny Defendant's application for summary relief.

---

[3]     Opining that I have "raise[d] a distinction without a difference," Justice Baer's opinion relies upon the fact that this Court upheld the ballot question in Stander even though it "did not specifically reference or explain the several substantive changes that would result from a 'yes' vote, including that a retirement age of 70 was being imposed on jurists for the first time."  Justice Baer's Opinion at 8 n.7, 10.  This ignores Stander's recognition that it would have been impossible to print on the ballot a comprehensive summary of the proposed Judiciary Article V.  Stander, 250 A.2d at 480 ("It is equally clear and realistic beyond the peradventure of a doubt that a lengthy summary of the proposed Judiciary Article could not have been printed on an election ballot.").  Plainly, this distinction makes all the difference in the world.  A non-deceptive and constitutionally-compliant ballot question could readily have been printed here.

# Exhibit CC

Received 9/2/2016 3:56:32 PM Supreme Court Middle District

Filed 9/2/2016 3:56:00 PM Supreme Court Middle District
75 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

---

## NO. 75 MAP 2016

---

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Plaintiffs/Appellants,**

**v.**

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Defendant/Appellee.**

---

## PLAINTIFFS/APPELLANTS
## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.'S MOTION FOR RECONSIDERATION AND CORRECTION OF THE COURT'S SEPTEMBER 2, 2016 ORDER

---

**SPRAGUE & SPRAGUE**
RICHARD A. SPRAGUE (I.D. # 04266)
BROOKE SPIGLER COHEN (I.D. # 204648)
JORDANN R. CONABOY (I.D. # 319337)
WILLIAM H. TRASK (I.D. # 318229)
The Wellington Bldg., Suite 400
135 S. 19th Street
Philadelphia, Pennsylvania 19103
(215) 561-7681

*Counsel for Plaintiffs/Appellants*
*Richard A. Sprague, Hon. Ronald*
*D. Castille and Hon. Stephen Zappala, Sr.*

Plaintiffs Richard A. Sprague, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr. (collectively, "Plaintiffs") hereby respectfully request that this Court (1) reconsider, vacate and correct its September 2, 2016 Order dismissing this case due to the fact that the Justices of the Court are equally divided with respect to how the case should be resolved; and (2) remand the case back to the Commonwealth Court in order to maintain the status quo prior to the Court's deadlock.

## I.   INTRODUCTION

Before this Court exercised extraordinary jurisdiction over this case pursuant to 42 Pa.C.S. § 726, the case was pending before the Commonwealth Court in its original jurisdiction.  In other words, the status quo before the Justices of this Court became deadlocked in this case was that the parties were awaiting a decision from the Commonwealth Court.  Thus, since the status quo of a case is preserved when the Justices of the Court are equally divided on how the case should be resolved, this matter must be remanded to the Commonwealth Court for an expedited resolution.

## II.   BACKGROUND

On July 21, 2016, Plaintiffs filed a Complaint in the Commonwealth Court challenging the wording of the ballot question Secretary of the Commonwealth Pedro A. Cortés (the "Secretary") intends to present to voters regarding the General Assembly's proposal to raise the current constitutionally-mandated

judicial retirement age from 70 to 75.  (*See* Plaintiffs' July 21, 2016

Commonwealth Court Complaint, a true and correct copy of which is attached as

Appendix 1 to Plaintiffs' July 21, 2016 Emergency Application for Extraordinary

Relief to this Court.)  Plaintiffs' Complaint alleges that the ballot question the

Secretary intends to place before the Commonwealth's electorate in the November

2016 general election regarding the General Assembly's proposed amendment to

the constitutionally-mandated judicial retirement age is unlawfully misleading

because the proposed ballot question does not advise that the Constitution currently

requires state court jurists to retire at the age of 70, and will thus deceive voters

into thinking they are being asked to impose a constitutionally-mandated judicial

retirement age where none exists.  Plaintiffs therefore requested the following

relief: (1) a declaration that the ballot question is unlawful; (2) an injunction

precluding the Secretary from placing the question as presently worded on the

November 2016 general election ballot; and (3) an order directing the Secretary to

present voters with a ballot question advising that the proposed amendment would

result in the current constitutionally-mandated judicial retirement age being raised

from 70 to 75.

   Shortly after filing their Complaint in the Commonwealth Court, Plaintiffs

filed with this Court an Emergency Application for Extraordinary Relief requesting

that this Court assume plenary jurisdiction over the Commonwealth Court action.

(*See* Emergency Application for Extraordinary Relief dated July 21, 2016.)  The Secretary did not oppose this Court's exercise of jurisdiction but simply advocated for a swift resolution.  (*See* Secretary's Answer to Plaintiffs' Emergency Application for Extraordinary Relief dated July 25, 2016.)   On July 27, 2016, this Court assumed jurisdiction over the action, entering an Order granting Plaintiffs' Emergency Application for Extraordinary Relief and directing the Secretary to file an Answer to Plaintiffs' Complaint by August 3, 2016.

After the Secretary filed an Answer to Plaintiffs' Complaint and a New Matter, which Plaintiffs opposed, both sides filed countervailing Applications for Summary Relief in this Court.  The parties thereafter submitted competing merits briefs.

Justices Baer, Donohue and Mundy supported denying Plaintiffs' Application for Summary Relief and granting the Secretary's Application for Summary Relief. (*See* Court's Order dated September 2, 2016.)  Justices Todd, Dougherty and Wecht, on the other hand, supported granting Plaintiffs' Application for Summary Relief and denying the Secretary's Application for Summary Relief.  (*Id.*)  Accordingly, because Justice Saylor recused from this case, the Court ultimately became deadlocked on how to resolve it, and on September 2, 2016, the Court entered the following Order:

> **AND NOW,** this 2nd day of September, 2016, the Court being equally divided in its determination as to which

4

parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained.  See <u>Creamer v. Twelve Common Please Judges</u>, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

(*See Id*.)

## III.   ARGUMENT

Like any other Court, this Court has the authority to reconsider, vacate and correct one of its decisions that is legally and factually flawed.  *See*, e.g., 210 Pa. Code § 63.4 (c).  The Court should exercise this authority here, as its September 2, 2016 Order in this case involving the most fundamental right afforded to the citizens of this Commonwealth—the right to cast informed votes—is wrong as a matter of law and fact.

While it is well settled that a deadlocked appellate court must restore "the status quo," this principle does not necessarily preclude the parties to a case in which a court is deadlocked from having the case decided by a court of law.  This Court's misguidedly relied on *Creamer v. Twelve Common Pleas Judges*, 281 A.2d 57 (Pa. 1971) to quash Plaintiffs' legal challenge and prevent them from ever having their day in Court to protect their rights and the rights of every

5

Pennsylvania citizen to cast informed votes on proposed amendments to the

Pennsylvania Constitution.  Unlike the present case, which was initiated in the

Commonwealth Court and eventually came before this Court pursuant to its

extraordinary jurisdiction powers under 42 Pa.C.S. § 726 ("Section 726"), the legal

matter in *Creamer* was never presented to a lower court and it originated before

this Court as a King's Bench matter in the first instance.  *See  Creamer*, 281 A.2d

at 58.  Thus, when the Court became deadlocked in *Creamer*, in order to maintain

the status quo, the Court was required and left with no other option but to dismiss

the case entirely as if it had never been filed in the first place.

 That is not the situation here.  Indeed, there is a critical distinction with

respect to this case between the Court's King's Bench power and its power of

extraordinary jurisdiction under Section 726.  In a case such a *Creamer*, the Court

exercises its King's Bench power "where no matter is pending in a lower court."

*In re Avellino*, 690 A.2d 1138, 1140-41 (Pa. 1997).  The Court's authority under

Section 726 in a case like this one, however, is much more limited, as

"[e]xtraordinary jurisdiction under [S]ection 726 enables the Court [only] to

assume jurisdiction of a matter pending before a [lower state] court or district

justice."  *Id.*  Accordingly, the "status quo" in a matter that was never before a

lower court but is initiated for the first time in this Court as a King's Bench matter

refers to the state of affairs as it existed before any legal challenge—*i.e.*, as if a

6

legal action was never initiated.  Conversely, the status quo prior to this Court's exercise of Section 726 extraordinary jurisdiction over of a case like this one, which was already commenced in a lower court, is that the case is pending before a lower tribunal.   Thus, because this case was previously pending before—but never ruled upon by—the  Commonwealth Court, the restoration of the status quo requires remand to that lower court in which the matter was pending prior to this Court's exercise of extraordinary jurisdiction under Section 726.

## IV.   CONCLUSION

In order to maintain the status quo before this Court exercised extraordinary jurisdiction and became deadlocked, this case must be remanded to the Commonwealth Court for resolution of Plaintiffs' challenge to the misleading ballot question at issue.

Respectfully submitted,

**SPRAGUE & SPRAGUE**

By: /s/ Richard A. Sprague
　　RICHARD A. SPRAGUE (I.D. # 04266)
　　BROOKE SPIGLER COHEN (I.D. # 204648)
　　JORDANN R. CONABOY (I.D. # 319337)
　　WILLIAM H. TRASK (I.D. # 318229)
　　The Wellington Bldg., Suite 400
　　135 S. 19th Street
　　Philadelphia, Pennsylvania 19103
Dated: September 2, 2016　　(215) 561-7681

7

## **PROOF OF SERVICE**

I, Jordann R. Conaboy, Esquire, herby certify that on this 2nd day of

September, 2016, I caused true and correct copies of the foregoing to be served on

the individuals listed below *via* the Court's electronic PACFile service and e-mail:

<div align="center">

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent Pedro A. Cortés*

</div>

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

# Exhibit DD

Received 9/8/2016 5:56:00 AM Supreme Court Middle District

Filed 9/8/2016 5:56:00 AM Supreme Court Middle District
75 MAP 2016

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

_____

## No. 75 MAP 2016

_____

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND
## HON. STEPHEN ZAPPALA, SR.,

Plaintiffs/Appellants,

v.

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH,
## IN HIS OFFICIAL CAPACITY,

Defendant/Appellee.

_____

## ANSWER OF SECRETARY OF THE COMMONWEALTH PEDRO A. CORTÉS TO PLAINTIFFS'/APPELLANTS' MOTION FOR RECONSIDERATION AND CORRECTION OF THE COURT'S SEPTEMBER 2, 2016 ORDER

_____

## INTRODUCTION

Plaintiffs, in a motion for reconsideration, ask this Court to vacate and/or correct its Order dated September 2, 2016, and remand the case to Commonwealth Court. This Court, however, should not, at this late date on the election calendar, grant Plaintiffs' requested relief, particularly since Plaintiffs on their own accord chose the procedural path that led this Court to assume plenary jurisdiction over this case in the first place.

Remanding the case back to Commonwealth Court at this late date will only cause further uncertainty regarding the ballot question.  The county boards of elections have already distributed the first wave of absentee ballots for the 2016 General Election.  Any further court rulings related to this issue, even if decided on an expedited basis, could adversely impact already-distributed absentee ballots and could put civilian absentee ballots, Election Day ballots, and provisional ballots at risk.

Accordingly, the Secretary of the Commonwealth (Secretary) respectfully requests that this Honorable Court deny Plaintiffs' motion for reconsideration, and reject Plaintiffs' request to remand the case to Commonwealth Court.

## **ARGUMENT**

### I. **THIS COURT ISSUED A FINAL ADJUDICATION ON THE WORDING OF THE BALLOT QUESTION, AND THAT ISSUE MAY NOT BE RE-LITIGATED BEFORE AN INFERIOR TRIBUNAL.**

Plaintiffs argue that this Court's reliance on *Creamer v. Twelve Common Pleas Judges*, 281 A.2d 57 (Pa. 1971), is "misguided," and therefore, this Court's Order dated September 2, 2016, is "wrong as a matter of law and fact."  (Pls' Mot. for Recons. at 5).  Plaintiffs' argument, however, is without merit.

This Court in *Creamer* correctly noted "[i]t is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in statu[s] quo…."  *Creamer*, 281 A.2d at 58 (quoting *First*

2

*Congressional Dist. Election*, 144 A. 735, 739 (Pa. 1928)).  The Court went on to explain that "[t]he rule is not different when this Court, exercising its King's Bench power and the authority vested in it under [Section 205 of] the Appellate Court Jurisdiction Act,[1] is equally divided."  *Creamer*, 281 A.2d at 58-59.  Here, because this Court was evenly divided, its Order dated September 2, 2016, properly directed that it was "without authority to grant relief and the *status quo* of the matter **prior to the filing of the lawsuit** is maintained."  *See* Order, *Sprague v. Cortés*, No. 75 MAP 2016 (Pa. Sept. 2, 2016) (emphasis added) (citing *Creamer, supra*).  This Order clearly conforms to this Court's jurisprudence.

Moreover, Plaintiffs received what they requested from this Court, albeit a contrary outcome.  Plaintiffs initiated this matter before this Court pursuant to Section 726 of the Judicial Code,[2] 42 Pa.C.S. § 726, when it asked this Court to assume plenary jurisdiction.  Plaintiffs were then given a full and fair opportunity to litigate the issue.  In light of previous litigation filed with this Court earlier this year

---

[1] Section 205 of the Appellate Court Jurisdiction Act of 1970 was repealed and replaced by an identical provision in Section 726 of the Judicial Code.  *See* 42 Pa.C.S. § 726.

[2] Section 726 of the Judicial Code provides:

> Notwithstanding any other provision of law, the Supreme Court may, on its own motion or upon petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done.

42 Pa.C.S. § 726.

regarding the wording of the ballot question, Plaintiffs certainly should have anticipated the recusal of Chief Justice Saylor.[3]  Yet, presumably understanding that the Chief Justice's recusal set up the possibility of an evenly divided court, Plaintiffs still chose to bypass Commonwealth Court and asked this Court to assume plenary jurisdiction.

The Secretary did not oppose this Court exercising extraordinary jurisdiction over this matter because of the need for certainty in very short order in a matter of *immediate* public importance.  That the Plaintiffs were unable to obtain the outcome they desired when this Court evenly divided its decision does not alter the fact that this Court's Order is a final adjudication.  To the contrary, when a court is evenly divided, the requested relief is denied by operation of law.  *See Summers v. Kramer*, 114 A. 525, 527 (Pa. 1921) ("[W]hen the sitting judges are equally divided as to the judgment or decree which should be entered, the motion or rule fails . . . .").  In this case, Plaintiffs asked this Court to declare the ballot question misleading and unlawful.  However, Plaintiffs' request for relief failed when this Court entered a final adjudication (even if a split decision) ordering the *status quo*.  Plaintiffs are not now permitted to undo the procedural path they chose in the first place and get a second chance to litigate the case in Commonwealth Court.  To do so would violate

---

[3] *See* Order, *In re: Proposed Constitutional Amendment 1, Ballot Question*, No. 29 M.M. 2016 (Pa. Mar. 23, 2016) (stating that Chief Justice Saylor did not participate in the consideration or decision of the matter).

4

the doctrine of *res judicata* and run afoul of the Pennsylvania Constitution.  After all, it is in this Court that is "reposed the supreme judicial power of the Commonwealth."  Pa. Const. art. V, § 2.  There is no authority for Commonwealth Court to now hear this matter.

Further, to decide otherwise would defeat the purpose of this Court exercising extraordinary jurisdiction in a significant number of election-related cases—the need for a prompt, final decision.  It makes sense for parties in certain election matters to get a case to the highest court as soon as possible and avoid the delay inherent in the appeals process.  However, once this Court assumes plenary jurisdiction over a matter, it is vested with "full and absolute" power over the case.  *See Plenary Jurisdiction, Black's Law Dictionary* (10th ed. 2014).  Win, lose or draw—this Court's exercise of plenary jurisdiction is the end of the line.  Thus, the *status quo* should be as this Court described it in its Order dated September 2, 2016—*i.e.*, the status of the matter *prior to the filing of the lawsuit*.  This Court properly applied the principle of non-disruption and disposed of the case in a way that returns the matter to the state of affairs that existed before the litigation.

## II.  EVEN IF RES JUDICATA DOES NOT APPLY, REMANDING THIS MATTER TO THE COMMONWEALTH COURT WOULD BE AGAINST THE PUBLIC INTEREST.

The county boards of elections have already transmitted the first round of absentee ballots and will be finalizing the civilian absentee ballots, Election Day

ballots, and provisional ballots in less than three weeks.  Remanding this matter to Commonwealth Court at this late stage of the election process invites unnecessary chaos and risk, creating further uncertainty and confusion regarding this ballot question.

As it stands, the ballot question required by H.R. 783, and adopted by the Secretary, will be submitted to the electorate on the ballot for the General Election on November 8, 2016.  Absentee ballots with this version of the ballot question have already been sent out.  The county boards of elections were required to transmit absentee ballots and balloting materials to all covered uniformed-service and overseas voters in extremely remote and isolated areas who submitted an application no later than August 30, 2016.  *See* 25 Pa.C.S. § 3508(b)(1).  Additionally, absentee ballots and balloting materials, for all other covered uniformed-service and overseas voters who submitted an application, must be transmitted no later than September 23, 2016.  *See* 25 Pa.C.S. § 3508(a)(1); *see also* 52 U.S.C. § 20302(a)(8).  Plaintiffs' requested relief in this case is an altered ballot question.  Simply put, there is no way for the county boards of elections to alter absentee ballots that have already been sent, and unless Commonwealth Court on remand would decide the matter in about two weeks or less, it will be too late for the county boards of elections to make any changes to the next round of military-overseas absentee ballots.  Thus, the

Commonwealth is at a point on the election calendar where voting on the ballot question has already begun.

In terms of civilian absentee ballots, provisional ballots, and Election Day ballots, the county boards of elections require at least five weeks, if not more, prior to Election Day to finalize and print those balloting materials. (Ex. 11 to Sec'y's Br. in Support of Summ. Relief). Any delay in the process due to further litigation puts those balloting materials at risk of not being completed on time or being completed incorrectly. That is not the type of risk that Pennsylvania wants or needs in a presidential election year where the state is one of several key swing states that will play a significant role in deciding the presidency.

Finally, with respect to the pre-election advertisements, the Secretary published the first round of advertisements in newspapers between August 2, 2016 and August 6, 2016. (Ex. 5 to Sec'y's Br. in Support of Summ. Relief). The second round of advertisements appeared in newspapers between September 2, 2016 and September 8, 2016, and the third round of advertisements will appear in newspapers between October 1, 2016 and October 7, 2016. (Ex. 5 to Sec'y's Br. in Support of Summ. Relief). The final edit date for the third round of advertisements is September 26, 2016. (Ex. 5 to Sec'y's Br. in Support of Summ. Relief). The advertisements include the text of the ballot question. (Ex. 7 to Sec'y's Br. in Support of Summ. Relief). Clearly, two rounds of advertisements have already been

published and electors have been informed on the current version of the ballot question.  Even if Commonwealth Court were to decide the case on an expedited basis, voters will have been exposed to the current version of the ballot question for a total of three times.  If the Commonwealth Court were to deem the ballot question unconstitutional, there would be no further publications before the election to inform the electorate of the change.  Therefore, the purpose of the second publication, as determined by this Court, will be frustrated.  *See Commw. ex.rel. Woodruff v. King*, 122 A. 279, 280 (Pa. 1923) (the purpose of the second publication "is to advise the electors themselves so that they may vote intelligently [and directly] upon the proposed amendment.")  Consequently, this Court should deny Plaintiffs' request to remand this matter to Commonwealth Court.

## <u>CONCLUSION</u>

For the reasons set forth above, this Honorable Court should deny Plaintiffs' motion for reconsideration, and reject Plaintiffs' request to remand the case to Commonwealth Court.

Respectfully submitted,

<u>s/ Timothy E. Gates</u>
Timothy E. Gates
Attorney I.D. No. 202305
Chief Counsel

Kathleen M. Kotula
Attorney I.D. No. 86321
Deputy Chief Counsel

Pennsylvania Department of State
Office of Chief Counsel
306 North Office Building
Harrisburg, PA 17120
(717) 783-0736

*Counsel for Pedro A. Cortés,
Secretary of the Commonwealth*

Date:  September 8, 2016

## CERTIFICATE OF SERVICE

I, Timothy E. Gates, Chief Counsel of the Pennsylvania Department of State, hereby certify that on September 8, 2016, I caused to be served a true and correct copy of the foregoing document titled Answer of Secretary of the Commonwealth Pedro A. Cortés to Plaintiffs'/Appellants' Motion for Reconsideration and Correction to the Court's September 2, 2016 Order:

**VIA PACFile and/or E-mail:**

Richard A. Sprague, Esq.
Brooke Spigler Cohen, Esq.
Jordan Richard Conaboy, Esq.
William Howard Trask, Esq.
Sprague & Sprague
135 S. 19th Street, Suite 400
Philadelphia, PA 19103
*Counsel for Plaintiffs/Appellants*

George Bochetto, Esq.
Thomas E. Groshens, Esq.
John A. O'Connell, Esq.
Bochetto & Lentz, P.C.
1524 Locust Street
Philadelphia, PA 19102
*Counsel for Amicus Curiae Costa, Leach and Tartaglione*

Matthew H. Haverstick, Esq.
Mark E. Seiberling, Esq.
Joshua J. Voss, Esq.
Kleinbard LLC
One Liberty Place, 46th Floor
1650 Market Street
Philadelphia, PA  19103
*Counsel for Amicus Curiae Corman and Scarnati*

 s/ Timothy E. Gates
Timothy E. Gates
Chief Counsel
Pennsylvania Department of State

# Exhibit EE

[J-96-2016]
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| Defendant | : | |

## ORDER

**PER CURIAM**

Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala ("Plaintiffs") seek reconsideration of this Court's unanimous *per curiam* order dated September 2, 2016, which stated that because the Court was evenly divided, we lacked authority to grant relief in Plaintiffs' challenge to the Secretary of the Commonwealth's phrasing of the judicial retirement age ballot question, and held that "the *status quo* of the matter prior to the filing of the lawsuit is maintained." Sprague v. Cortés, No. 75 MAP 2016, *per curiam* order dated Sep. 2, 2016. In support, the order cited our decision in Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971), for the proposition that, where this Court was evenly divided in an original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting

that the requested relief could not be granted, thereby maintaining the *status quo* of the matter.

Plaintiffs have now sought reconsideration, contending that this Court erred by restoring the *status quo* as it existed prior to filing their lawsuit, and, instead, should have restored the *status quo* as it existed before this Court accepted plenary jurisdiction, *i.e.*, when their challenge was pending in Commonwealth Court. They contend that this Court's reliance upon Creamer to restore the *status quo* that existed prior to commencement of the action is misplaced because Creamer did not involve this Court's exercise of extraordinary jurisdiction over a matter originally commenced in a lower court. Plaintiffs submit that because this Court's reliance on Creamer served to quash their legal challenge and deny them from ever having their day in court, we must vacate our order and remand the matter to Commonwealth Court for disposition.

In his answer, the Secretary contends that this Court entered a final adjudication on the phrasing of the judicial retirement ballot question and that issue may not be relitigated before an inferior tribunal. See PA. CONST. art. V, § 2 (providing that this Court "shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth"). The Secretary argues that our decision in Creamer is dispositive as it held that the universal rule, providing that a matter remains in *status quo* if the judicial body is equally divided, applies even where there is no lower court order for an appellate court to affirm. He contends that Plaintiffs received exactly what they asked for when they sought to have this Court remove their case from the Commonwealth Court and exercise plenary jurisdiction over the matter pursuant to Section 726 of the Judicial Code, *i.e.*, a full and fair opportunity to litigate the issue before the highest court in the Commonwealth so as to obtain a prompt, final decision. Merely because Plaintiffs did not receive the result they desired, the

Secretary argues, does not afford them the right to relitigate the issue in a lower court that lacks authority to hear the case.  Finally, the Secretary submits that remanding the matter to the Commonwealth Court at this late date would be against the public interest because we are at a point on the election calendar where the ballot question has already been advertised in accordance with the constitutional mandate and absentee voting on the ballot question has already begun.

It is well-established that reargument is not a matter of right, but of sound judicial discretion, and will be granted "only when there are compelling reasons therefor." Pa.R.A.P. 2543.  See Note to Pa.R.A.P. 2543 (setting forth compelling reasons such as: (1) where a panel decision is inconsistent with a different panel decision of the same court; (2) where the court has overlooked or misapprehended a fact of record material to the outcome of the case; (3) where the court has overlooked or misapprehended a controlling or directly relevant authority; and (4) where a controlling or directly relevant authority relied upon by the court has been expressly reversed, modified, overruled or otherwise materially affected during the pendency of the matter).

Plaintiffs do not present a compelling reason for reargument, but rather seek a new avenue of relief.  They cite no controlling or directly relevant authority that this Court overlooked, and instead suggest only that our reliance upon Creamer was somehow misplaced.  This claim is unpersuasive.  This Court unanimously agreed that Creamer was controlling as it held that where the Court was evenly divided and there was no previous adjudication by a lower court, we lack authority to grant relief and, thus, must restore the status quo prior to filing the lawsuit.  This is precisely what occurred here.

While Creamer did not involve the additional fact that the plaintiffs had originally filed the action in a lower court and later sought this Court's exercise of extraordinary

jurisdiction, such fact does not alter the legal analysis.  Section 726 of the Judicial Code makes clear that, when exercising extraordinary jurisdiction, this Court is removing the case from the lower court to impose a final order in the matter.  See 42 Pa.C.S. § 726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done").  As acknowledged by Plaintiffs in their original application seeking this Court's invocation of extraordinary jurisdiction under Section 726 of the Judicial Code, there is no longer an action pending in the lower court that requires further adjudication.  See Plaintiffs' Emergency Application for Extraordinary Relief at 11 (asserting that "[i]t is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court.  Consequently, Petitioners respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election.").

The dissenting statement asserts that nothing "precludes the parties from seeking relief in the Commonwealth Court at this juncture, or prevents our Court from remanding the matter for a merits disposition."  Slip Op. at 2 (Todd, J., dissenting).  The dissent proceeds to conclude that it would "remand this case to that tribunal forthwith for expedited resolution."  Respectfully, the dissent conflates the deadlock on the Court relating to the merits of Plaintiffs' challenge to the phrasing of the ballot question and this Court's unanimous *per curiam* order restoring this matter to the *status quo* prior to the filing of the litigation.  This Court deliberately and unanimously considered the application of Creamer to the facts presented and disposed of the case in accordance

with governing precedent.  Plaintiffs do not demonstrate to the contrary.  What Plaintiffs and the dissent now advocate is not this Court's reconsideration of the matter pursuant to Rule 2543, but rather a remand of the case for the Commonwealth Court to consider anew.  Such action, based upon a motion for reconsideration, would be unprecedented, unsupported by legal authority, and outside the scope of Rule 2543.

Accordingly**,** this 16th day of September, 2016, the Application for Reconsideration is **DENIED**.  Additionally, the Application for Leave to File a Reply Brief to the Secretary's Answer filed by Plaintiffs is **GRANTED**.  The Application for Leave to File an Answer to Plaintiff's Application filed by Amicus Curiae is **DENIED**.


Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justice Todd files a dissenting statement in which Justice Wecht joins.

# Exhibit FF

[J-96-2016]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| Defendant | : | |

## DISSENTING STATEMENT IN SUPPORT OF GRANT OF RECONSIDERATION AND REMAND TO THE COMMONWEALTH COURT

**JUSTICE TODD**                                    **FILED:  September 16, 2016**

In these unprecedented and exceptional circumstances, I would grant Plaintiffs' Motion for Reconsideration and Correction of our Court's September 2, 2016 *per curiam* order and would remand this matter to the Commonwealth Court for expedited resolution, on the merits, of the manifestly important issue of whether this ballot question fairly, completely, and accurately apprises the voters of the constitutional change they are being asked to approve in the November election.

Specifically, the plaintiffs in this matter, Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala, have filed a motion for reconsideration of our prior order requesting that our Court remand the matter to the Commonwealth Court.  In our Court's *per curiam* order, we explained that,

because the Court was evenly divided on the question of whether the parties were entitled to summary relief on their respective motions,[1] our Court was "without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained."  Order, 9/2/16, at 1 (citing Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (discussed more fully at length *infra*)).  Nothing in our September 2 order, however, precludes the parties from seeking relief in the Commonwealth Court at this juncture, or prevents our Court from remanding the matter for a merits disposition.

It would appear, based on the averments in Plaintiffs' motion and Defendant's response, that this *per curiam* order has engendered confusion as to whether "maintaining the *status quo*" forecloses Plaintiffs' right to seek further relief in the Commonwealth Court.  See Plaintiffs' Motion for Reconsideration at 5-6 ("This Court's [sic] misguidedly relied on [Creamer] to quash Plaintiffs' legal challenge and prevent them from ever having their day in Court to protect their rights and the rights of every Pennsylvania citizen to cast informed votes on proposed amendments to the Pennsylvania Constitution."); Defendant's Answer at 4 ("Plaintiffs' request for relief failed when this Court entered a final adjudication (even if a split decision) ordering the *status quo*.").

Our *per curiam* order does not bar Plaintiffs from seeking further relief in the Commonwealth Court.  Because of the parties' evident confusion regarding this order, and the public importance of a definitive resolution of the constitutional issue in this case — as to whose merits *no court of this Commonwealth* has yet rendered a

---

[1]  Justices Baer, Donohue, and Mundy would have rejected Plaintiffs' challenge to the ballot question.   I, along with Justices Wecht and Dougherty, would have granted Plaintiffs' application on the basis that the ballot question failed to fairly, completely, and accurately apprise voters of the nature of the constitutional changes on which they were voting.

dispositive final adjudication — it is imperative, under these highly unusual circumstances, to emphasize that our order maintaining the *status quo* should not be read as barring further proceedings in the Commonwealth Court.  I would remand this case to that tribunal forthwith for expedited resolution.

The Majority's disposition is unsupported by any controlling legal authority, inasmuch as the case on which it principally relies, <u>Creamer</u>, does not support denying Plaintiffs their requested relief.[2]  <u>Creamer</u> was a case involving the constitutionality of the Governor's appointment of judges to fill 14 judicial vacancies.  The multiple plaintiffs in those cases challenging the Governor's exercise of his appointment power commenced their various actions in our Court through a variety of means, such as a *quo warranto* action, a petition for a writ of mandamus, and a petition to take original and plenary jurisdiction.  281 A.2d at 63   Therefore, unlike in the matter before us, the actions were brought in our Court's original jurisdiction — no proceedings were pending in any lower court at the time our Court exercised our King's Bench power and assumed plenary jurisdiction over all of these cases.

The 6 members of our Court, who heard that case, while agreeing with respect to 8 of the 14 appointments, became equally divided on the resolution of the question of whether the remaining 6 jurists had been properly appointed by the Governor.  As the Court could not render a final judgment on the merits of that question, and because there were no proceedings pending in a lower court at the time we assumed jurisdiction,

---

[2]  Plaintiffs do not seek reargument before our Court in order to have us reconsider the merits of our evenly divided decision; rather, they ask us to "reconsider, vacate and correct [our] September 2, 2016 Order dismissing this case due to the fact that the Justices of the Court are equally divided with respect to how the case should be resolved; and remand the case back to the Commonwealth Court."  Plaintiffs' Motion for Reconsideration, filed 9/2/16.

the effect of our Court's order was to leave in place the *status quo*, i.e., simply to terminate the litigation in our Court — where it began.

Further, nothing in our Court's *per curiam* order in <u>Creamer</u>, or the respective opinions of the justices in that case, foreclosed any further proceedings thereafter in any other tribunal with jurisdiction to consider anew the merits of the constitutional question which our Court did not decide.  Quite simply, there was nothing of record indicating that the challengers in <u>Creamer</u> sought to pursue any such actions.

In contrast, this action began in the Commonwealth Court, and, thus, was pending in that court at the time we assumed jurisdiction.  Therefore, our Court's inability to render a final judgment on the merits, i.e., our lack of authority to grant the requested relief to any of the parties due to the deadlock, leaves the action pending in the Commonwealth Court as the *status quo*.  Hence, <u>Creamer</u> does not bar Plaintiffs from pursuing relief in the Commonwealth Court at present, and our Court's September 2, 2016 order did not expand the breadth of our holding in <u>Creamer</u> to automatically foreclose further proceedings in the Commonwealth Court in this matter, as the parties have apparently interpreted it.  Clarifying this order to eliminate any misconception as to its lack of preclusive effect is, therefore, a compelling reason to grant reconsideration and allow remand of the matter to the Commonwealth Court.

Consistent with this understanding of <u>Creamer</u>, I reject the Majority's conclusion that "there is no longer an action pending in the lower court that requires further adjudication."  Order, 9/16/16 at 4.  Plaintiffs originally commenced this action in the Commonwealth Court on July 21, 2016, and, on that same day, requested that our Court exercise our extraordinary jurisdiction over the matter.  We granted that request on July 27, 2016.  Pursuant to Pa.R.A.P. 3309(d), our grant of extraordinary jurisdiction had the legal effect of transferring jurisdiction of this action to our Court and *halting* all

proceedings in the Commonwealth Court during the pendency of this matter before our Court.  See Pa.R.A.P. 3309(d) ("Where action is taken under this rule which has the effect of transferring jurisdiction of a matter to the Supreme Court, unless otherwise ordered by the Supreme Court such action shall be deemed the taking of an appeal as of right for the purposes of Chapter 17 (effect of appeals; supersedeas and stays), except that the lower court shall not have the power to grant reconsideration."); Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit *may no longer proceed further in the matter*."(emphasis added)).

Had our Court rendered a dispositive final adjudication on the merits of the parties' respective claims after assuming extraordinary jurisdiction, this action would have been finally concluded, and the Commonwealth Court, of course, could no longer conduct any further proceedings with respect thereto.  Since our Court was evenly divided on the parties' claims, and, thus, did not render a dispositive order finally adjudicating the claims on the merits, the Plaintiffs' action filed in the Commonwealth Court prior to our Court's exercise of extraordinary jurisdiction should re-attain the same posture which it was in when we originally assumed such jurisdiction.  Thus, our Court's September 2 order cannot be read as terminating Plaintiffs' pending action in the Commonwealth Court, but, rather, permits a remand to that court for final adjudication of the parties' claims on the merits.[3]

Finally, and in any event, Section 726 of the Judiciary Code requires our Court, once we have assumed extraordinary jurisdiction, to "enter a final order or otherwise

---

[3]  I consider the language in our order maintaining the *status quo* prior to the filing of the lawsuit as specifying that the ultimate merits of Plaintiffs' constitutional claims regarding the wording of the ballot question remain as they were at that point in time, unresolved, and nothing more.

cause right and justice to be done."  42 Pa.C.S. § 726.  Since our Court has not entered a final order, i.e. one that "disposes of all claims and of all parties," Pa.R.A.P. 341, our Court is mandated by Section 726 to otherwise "cause right and justice to be done." None of the parties have received a final adjudication on the merits of their claims in this matter, and most importantly, the people of this Commonwealth are entitled to a prompt and definitive resolution by the judiciary of this critically important constitutional question.  An immediate remand to the Commonwealth Court is the only available means at this late date which can accomplish such justice.  Consequently, I deem it of the utmost importance to remand this matter for that tribunal to expeditiously undertake that task.  Thus, I would grant Plaintiffs' motion and would remand the matter to the Commonwealth Court.

Justice Wecht joins this Dissenting Statement.

# Exhibit GG

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

## NO. 517 MD 2016

### RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Petitioners/Appellants,**

v.

### PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Respondent/Appellee.**

## NOTICE OF APPEAL OF PETITIONERS/APPELLANTS RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.

Notice is hereby given that Petitioners/Appellants Richard A. Sprague, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr. hereby appeal to the Supreme Court of Pennsylvania from the Order entered in this matter on October 5, 2016. The Order has been entered in the docket as evidenced by attached copy of the docket sheet. This matter did not involve any transcribed proceedings, and Petitioners/Appellants therefore do no request a transcript in accordance with Pennsylvania Rule of Appellate Procedure 1911.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By:  /s/ Richard A. Sprague

      RICHARD A. SPRAGUE (I.D. # 04266)
      BROOKE SPIGLER COHEN (I.D. # 204648)
      JORDANN R. CONABOY (I.D. # 319337)
      WILLIAM H. TRASK (I.D. # 318229)
      The Wellington Bldg., Suite 400
      135 S. 19th Street
      Philadelphia, Pennsylvania 19103
      (215) 561-7681

      *Counsel for Petitioners/Appellants Richard A. Sprague, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr.*

Dated: October 11, 2016

2

## **VERIFICATION**

I, Richard A. Sprague, Esquire, hereby verify that the facts in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that the statements in the foregoing are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: October 11, 2016          /s/ Richard A. Sprague
                                       Richard A. Sprague, Esquire

## **PROOF OF SERVICE**

I, Jordann R. Conaboy, Esquire, hereby certify that on this 11th day of

October, 2016, I caused true and correct copies of the foregoing to be served on the

individuals listed below *via* the Court's electronic PACFile service and e-mail:

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent/Appellee Pedro A. Cortés*

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

4

# Exhibit A

**Miscellaneous Docket Sheet**

**Docket Number:  517 MD 2016**

**Page 1 of 7**

**October 10, 2016**

**Commonwealth Court of Pennsylvania**

| CAPTION |
|---|

Richard A. Sprague, And Hon.
Ronald D. Castille, And Hon.
Stephen Zappala, Sr.,
Petitioners
v.
Pedro A. Cortes, Secretary of the
Commonwealth of Pennsylvania,
In His Official Capacity,
Respondent

| CASE INFORMATION |
|---|

| | | |
|---|---|---|
| Initiating Document: | Petition for Review | |
| Case Status: | Closed | |
| Case Processing Status: | October 5, 2016 | Completed |
| Journal Number: | | |
| Case Category: | Miscellaneous | Case Type(s): |
| | | Declaratory Judgment |

| CONSOLIDATED CASES | RELATED CASES |
|---|---|

| COUNSEL INFORMATION |
|---|

**Petitioner**   **Zappala, Hon. Stephen**
Pro Se:   No
IFP Status:

| | |
|---|---|
| Attorney: | Conaboy, Jordann Richard |
| Law Firm: | Sprague & Sprague |
| Address: | Wellington Building, Suite 400 |
| | 135 South 19th Street |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681 |

Fax No:

| | |
|---|---|
| Attorney: | Sprague, Richard A. |
| Law Firm: | T/A Sprague & Sprague |
| Address: | Attorneys At Law |
| | Wellington Bldg., Suite 400 |
| | 19th and Rittenhouse Square |
| | Philadelphia, PA 19103 |

| | |
|---|---|
| Attorney: | Cohen, Brooke Spigler |
| Law Firm: | Sprague & Sprague |
| Address: | Sprague & Sprague |
| | 135 S 19TH St Ste 400 |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681 |

Fax No:

**Miscellaneous Docket Sheet**                    **Commonwealth Court of Pennsylvania**

**Docket Number:  517 MD 2016**

**Page 2 of 7**

**October 10, 2016**

| COUNSEL INFORMATION |
|---|

**Petitioner**    **Zappala, Hon. Stephen**
Pro Se:       No
IFP Status:

| | |
|---|---|
| Attorney: | Trask, William Howard |
| Law Firm: | Sprague & Sprague |
| Address: | Sprague & Sprague |
| | 135 S 19TH St Ste 400 |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681          Fax No: |

**Petitioner**    **Sprague, Richard A.**
Pro Se:       No
IFP Status:

| | |
|---|---|
| Attorney: | Conaboy, Jordann Richard |
| Law Firm: | Sprague & Sprague |
| Address: | Wellington Building, Suite 400 |
| | 135 South 19th Street |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681          Fax No: |

| | |
|---|---|
| Attorney: | Sprague, Richard A. |
| Law Firm: | T/A Sprague & Sprague |
| Address: | Attorneys At Law |
| | Wellington Bldg., Suite 400 |
| | 19th and Rittenhouse Square |
| | Philadelphia, PA 19103 |

| | |
|---|---|
| Attorney: | Cohen, Brooke Spigler |
| Law Firm: | Sprague & Sprague |
| Address: | Sprague & Sprague |
| | 135 S 19TH St Ste 400 |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681          Fax No: |

| | |
|---|---|
| Attorney: | Trask, William Howard |
| Law Firm: | Sprague & Sprague |
| Address: | Sprague & Sprague |
| | 135 S 19TH St Ste 400 |
| | Philadelphia, PA 19103 |
| Phone No: | (215) 561-7681          Fax No: |

10:14 P.M.

**Miscellaneous Docket Sheet**

**Commonwealth Court of Pennsylvania**

**Docket Number:  517 MD 2016**



**Page 3 of 7**

**October 10, 2016**

| COUNSEL INFORMATION |
|---|

**Petitioner**          **Castille, Hon. Ronald D.**
Pro Se:          No
IFP Status:

| | | |
|---|---|---|
| Attorney: | Conaboy, Jordann Richard | |
| Law Firm: | Sprague & Sprague | |
| Address: | Wellington Building, Suite 400 | |
| | 135 South 19th Street | |
| | Philadelphia, PA 19103 | |
| Phone No: | (215) 561-7681 | Fax No: |

| | | |
|---|---|---|
| Attorney: | Sprague, Richard A. | |
| Law Firm: | T/A Sprague & Sprague | |
| Address: | Attorneys At Law | |
| | Wellington Bldg., Suite 400 | |
| | 19th and Rittenhouse Square | |
| | Philadelphia, PA 19103 | |

| | | |
|---|---|---|
| Attorney: | Cohen, Brooke Spigler | |
| Law Firm: | Sprague & Sprague | |
| Address: | Sprague & Sprague | |
| | 135 S 19TH St Ste 400 | |
| | Philadelphia, PA 19103 | |
| Phone No: | (215) 561-7681 | Fax No: |

| | | |
|---|---|---|
| Attorney: | Trask, William Howard | |
| Law Firm: | Sprague & Sprague | |
| Address: | Sprague & Sprague | |
| | 135 S 19TH St Ste 400 | |
| | Philadelphia, PA 19103 | |
| Phone No: | (215) 561-7681 | Fax No: |

**Respondent**          **Cortés, Pedro A.**
Pro Se:          No
IFP Status:

| | | |
|---|---|---|
| Attorney: | Kotula, Kathleen Marie | |
| Law Firm: | Pennsylvania Department of State | |
| Address: | PA Dept of State | |
| | 306 N Ofc Bldg 401 North St | |
| | Harrisburg, PA 17120-0500 | |
| Phone No: | (717) 783-0736 | Fax No: |

| | | |
|---|---|---|
| Attorney: | Gates, Timothy E. | |
| Address: | Department of State | |
| | Office of Chief Counsel | |
| | 306 N. Office Building | |
| | Harrisburg, PA 17120 | |
| Phone No: | (717) 783-0736 | Fax No: |

| FEE INFORMATION |
|---|

| Fee Dt | Fee Name | Fee Amt | Receipt Dt | Receipt No | Receipt Amt |
|---|---|---|---|---|---|
| 09/19/2016 | Miscellaneous Docket Filing Fee | 65.50 | 09/19/2016 | 2016-CMW-H-002158 | 65.50 |

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.

**Miscellaneous Docket Sheet**                                    **Commonwealth Court of Pennsylvania**

**Docket Number:  517 MD 2016**

**Page 4 of 7**

**October 10, 2016**

| AGENCY/TRIAL COURT INFORMATION |
|---|

Court Below:
County:                                                    Division:
Order Appealed From:                                       Judicial District:
Documents Received:      September 19, 2016                Notice of Appeal Filed:
Order Type:
OTN(s):
Lower Ct Docket No(s):
Lower Ct Judge(s):

| ORIGINAL RECORD CONTENT |
|---|

Original Record Item                        Filed Date          Content Description

**Date of Remand of Record:**

| BRIEFING SCHEDULE |
|---|

**Petitioner**                                     **Respondent**
  Castille, Hon. Ronald D.                           Cortés, Pedro A.
    Appendix                                           **Brief**
                                                     Due:                        Filed: September 26, 2016
    **Brief**
  Due: September 30, 2016       Filed: September 30, 2016

  Sprague, Richard A.
    Appendix

    **Brief**
  Due: September 30, 2016       Filed: September 30, 2016

  Zappala, Hon. Stephen
    Appendix

    **Brief**
  Due: September 30, 2016       Filed: September 30, 2016

| DOCKET ENTRY |
|---|

| Filed Date | Docket Entry / Filer | Representing | Participant Type | Exit Date |
|---|---|---|---|---|
| **September 19, 2016** | Petition for Review Filed | | | |
| | Sprague, Richard A. | | Petitioner | |
| | Castille, Hon. Ronald D. | | Petitioner | |
| | Zappala, Hon. Stephen | | Petitioner | |
| **September 19, 2016** | Exhibit | | | |
| | Conaboy, Jordann Richard | Sprague, Richard A. | Petitioner | |
| | Conaboy, Jordann Richard | Castille, Hon. Ronald D. | Petitioner | |
| | Conaboy, Jordann Richard | Zappala, Hon. Stephen | Petitioner | |

**Miscellaneous Docket Sheet** **Commonwealth Court of Pennsylvania**

**Docket Number: 517 MD 2016**

**October 10, 2016**

**DOCKET ENTRY**

| Filed Date | Docket Entry / Filer | Representing | Participant Type | Exit Date |
|---|---|---|---|---|
| **September 19, 2016** | Application to Expedite | | | |
| | Conaboy, Jordann Richard | Sprague, Richard A. | Petitioner | |
| | Conaboy, Jordann Richard | Castille, Hon. Ronald D. | Petitioner | |
| | Conaboy, Jordann Richard | Zappala, Hon. Stephen | Petitioner | |
| | Cohen, Brooke Spigler | Sprague, Richard A. | Petitioner | |
| | Sprague, Richard A. | Sprague, Richard A. | Petitioner | |
| | Trask, William Howard | Sprague, Richard A. | Petitioner | |
| | Cohen, Brooke Spigler | Zappala, Hon. Stephen | Petitioner | |
| | Cohen, Brooke Spigler | Castille, Hon. Ronald D. | Petitioner | |
| | Sprague, Richard A. | Zappala, Hon. Stephen | Petitioner | |
| | Sprague, Richard A. | Castille, Hon. Ronald D. | Petitioner | |
| | Trask, William Howard | Zappala, Hon. Stephen | Petitioner | |
| | Trask, William Howard | Castille, Hon. Ronald D. | Petitioner | |
| **September 20, 2016** | Entry of Appearance | | | |
| | Kotula, Kathleen Marie | Cortés, Pedro A. | Respondent | |
| | Gates, Timothy E. | Cortés, Pedro A. | Respondent | |
| **September 20, 2016** | Order Filed | | | 09/20/2016 |
| | Per Curiam | | | |
| Document Name: | A response to petitioner's application to expedite shall be filed and served by 4pm, 9-26-16. | | | |
| **September 26, 2016** | Return of Service | | | |
| | Sheriff | | | |
| Document Name: | Sheriff's Return on Yates | | | |
| **September 26, 2016** | Return of Service | | | |
| | Sheriff | | | |
| Document Name: | Sheriff's Return on Cortes | | | |
| **September 26, 2016** | Answer to Application to Expedite | | | |
| | Kotula, Kathleen Marie | Cortés, Pedro A. | Respondent | |
| **September 26, 2016** | Answer and New Matter | | | |
| | Kotula, Kathleen Marie | Cortés, Pedro A. | Respondent | |
| | Gates, Timothy E. | Cortés, Pedro A. | Respondent | |
| Document Name: | of Secretary of the Commonwealth Pedro A. Cortes to Complaint for Declaratory and Injunctive Relief. | | | |
| **September 26, 2016** | Application for Summary Relief | | | |
| | Kotula, Kathleen Marie | Cortés, Pedro A. | Respondent | |
| Document Name: | Application for Summary Relief of Secretary of the Commonwealth Pedro A. Cortes | | | |
| **September 26, 2016** | Respondent's Brief Filed | | | |
| | Cortés, Pedro A. | | Respondent | |
| Document Name: | Brief in Support of Summary Relief | | | |
| **September 26, 2016** | Filed - Other | | | |
| | Kotula, Kathleen Marie | Cortés, Pedro A. | Respondent | |
| Document Name: | App to shorten response time for Pets' reply to new matter and response to Sec. App for Summ. Relief | | | |

Neither the Appellate Courts nor the Administrative Office of Pennsylvania Courts assumes any liability
for inaccurate or delayed data, errors or omissions on the docket sheets.

**Miscellaneous Docket Sheet**                                    **Commonwealth Court of Pennsylvania**

**Docket Number:  517 MD 2016**

**Page 6 of 7**

**October 10, 2016**



| | DOCKET ENTRY | | | |
|---|---|---|---|---|
| Filed Date | Docket Entry / Filer | Representing | Participant Type | Exit Date |
| **September 27, 2016** | Order Granting Application to Expedite | | | 09/27/2016 |
| | Per Curiam | | | |
| Document Name: | It appearing that respondent has filed an app. for summary relief and brief in support, petitioners | | | |
| Comment: | shall file an answer and supporting brief (4 copies) no later than 4:00 pm, Friday, 9-30-16.   The application for summary relief shall be submitted for disposition on the briefs filed by the parties, without oral argument. | | | |
| **September 28, 2016** | Order Filed | | | 09/28/2016 |
| | Per Curiam | | | |
| Document Name: | Respondent's app. to shorten response time is granted.  Any reply to the new matter shall be filed | | | |
| Comment: | and served by 10-5-16. | | | |
| **September 30, 2016** | Answer Filed | | | |
| | Conaboy, Jordann Richard | Sprague, Richard A. | Petitioner | |
| | Conaboy, Jordann Richard | Castille, Hon. Ronald D. | Petitioner | |
| | Conaboy, Jordann Richard | Zappala, Hon. Stephen | Petitioner | |
| Document Name: | Answer in Opposition to Application for Summary Relief | | | |
| **September 30, 2016** | Application for Summary Relief | | | |
| | Conaboy, Jordann Richard | Sprague, Richard A. | Petitioner | |
| | Conaboy, Jordann Richard | Castille, Hon. Ronald D. | Petitioner | |
| | Conaboy, Jordann Richard | Zappala, Hon. Stephen | Petitioner | |
| | Cohen, Brooke Spigler | Sprague, Richard A. | Petitioner | |
| | Sprague, Richard A. | Sprague, Richard A. | Petitioner | |
| | Trask, William Howard | Sprague, Richard A. | Petitioner | |
| | Cohen, Brooke Spigler | Zappala, Hon. Stephen | Petitioner | |
| | Cohen, Brooke Spigler | Castille, Hon. Ronald D. | Petitioner | |
| | Sprague, Richard A. | Zappala, Hon. Stephen | Petitioner | |
| | Sprague, Richard A. | Castille, Hon. Ronald D. | Petitioner | |
| | Trask, William Howard | Zappala, Hon. Stephen | Petitioner | |
| | Trask, William Howard | Castille, Hon. Ronald D. | Petitioner | |
| **September 30, 2016** | Petitioner's Brief Filed | | | |
| | Sprague, Richard A. | | Petitioner | |
| | Castille, Hon. Ronald D. | | Petitioner | |
| | Zappala, Hon. Stephen | | Petitioner | |
| Document Name: | Brief in Support of Cross-Application for Summary Relief and in Opposition to Application | | | |
| Comment: | for Summary Relief | | | |
| **September 30, 2016** | Appendix | | | |
| | Sprague, Richard A. | | Petitioner | |
| | Castille, Hon. Ronald D. | | Petitioner | |
| | Zappala, Hon. Stephen | | Petitioner | |
| Document Name: | Appendix to Brief | | | |

**Miscellaneous Docket Sheet**

**Docket Number: 517 MD 2016**

**Page 7 of 7**

**October 10, 2016**

**Commonwealth Court of Pennsylvania**



| DOCKET ENTRY | | | | |
|---|---|---|---|---|
| Filed Date | Docket Entry / Filer | Representing | Participant Type | Exit Date |
| **October 5, 2016** | Dismissed | | | 10/05/2016 |
| | Leavitt, Mary Hannah | | | |
| Document Name: | Memorandum Opinion (10pgs) | | | |
| Comment: | Upon consideration of Respondent's Application for Summary Relief, and Petitioner's Opposition thereto, it is hereby ORDERED and DECREED that Respondent's Application is GRANTED and the above-referenced Petition for Review is DISMISSED. Petitioner's Cross Applicatio for Summary Relief is DENIED | | | |

| DISPOSITION INFORMATION | | |
|---|---|---|
| Final Disposition: | Yes | |
| Related Journal No: | | Judgment Date: |
| Category: | Decided | Disposition Author:      Leavitt, Mary Hannah |
| Disposition: | Dismissed | Disposition Date:      October 5, 2016 |

Disposition Comment:     Upon consideration of Respondent's Application for Summary Relief, and Petitioner's Opposition thereto, it is hereby ORDERED and DECREED that Respondent's Application is GRANTED and the above-referenced Petition for Review is DISMISSED. Petitioner's Cross Applicatio for Summary Relief is DENIED

Dispositional Filing:

Filed Date:                                                  Filing Author:

# Exhibit HH

Received 10/11/2016 4:36:58 PM Supreme Court Middle District

Filed 10/11/2016 4:36:00 PM Supreme Court Middle District
100 MAP 2016

# IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

---

### NO. _____

---

## RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.,

**Appellants,**

**v.**

## PEDRO A. CORTÉS, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY,

**Appellee.**

---

## EMERGENCY APPLICATION TO EXPEDITE OF APPELLANTS RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR.

---

Appellants Richard A. Sprague, Esquire, Hon. Ronald D. Castille and Hon. Stephen Zappala, Sr. (collectively, "Appellants") respectfully submit this Emergency Application to Expedite pursuant to Pennsylvania Rule of Appellate Procedure 123.[1]  In support of their Application, Appellants aver as follows:

1.      Appellants respectfully submit that this appeal can and should be resolved as expeditiously as possible, without briefing, as the appeal concerns a

---

[1] Appellants filed this Emergency Application to Expedite in the Commonwealth Court along with Appellants' Jurisdictional Statement so that the Supreme Court will have the opportunity to consider this Application in conjunction with Appellants' Jurisdictional Statement.

very time-sensitive matter of extreme public importance and involves only a single straightforward legal question regarding the effect of an Order this Court issued less than six weeks ago holding that this Court lacked the authority to decide Appellants' prior challenge to the ballot question drafted by Appellee Secretary of the Commonwealth Pedro A. Cortés (the "Secretary"), which Appellants contend is unlawfully misleading, concerning the proposed constitutional amendment to raise the constitutionally-mandated judicial retirement age from 70 to 75.

2.     In particular, Appellants respectfully request this Court issue an Order (a) reversing the erroneous single-Judge Opinion and Order of the Honorable Mary Hannah Leavitt, President Judge of the Commonwealth Court of Pennsylvania, holding that the doctrine of *res judicata* relieved the Commonwealth Court of its duty to rule on the merits of Appellants' Petition for Review; and (b) directing the Commonwealth Court to expeditiously decide the merits of that Petition for Review because no court of this Commonwealth has rendered a dispositive final adjudication with respect to Appellants' challenge to the Secretary's ballot question.  (*See* Judge Leavitt's October 5, 2016 Opinion and Order, a true and correct copy of which is attached hereto as Exhibit A.)

3.     Appellants contend that by asking whether the Pennsylvania Constitution should be amended to require the Commonwealth's jurists to retire at age 75, but omitting that the Constitution presently provides for a mandatory

2

judicial retirement age of 70, the ballot question that the Secretary intends to present to the electorate in the general election this November violates the Secretary's fundamental obligation to clearly and accurately apprise voters of the issue to be decided.  Voters both for and against restricting the tenure of state court jurists will be misled by the ballot question into voting contrary to their intentions, and the election results will not reflect their true will.

4.    Accordingly, on September 19, 2016, Appellants filed in the Commonwealth Court a Petition for Review in the Nature of a Complaint seeking a declaration that the Secretary's ballot question is unlawfully misleading and requesting an order precluding the Secretary from placing the ballot question on the November 2016 general election ballot.

5.    After assuming extraordinary jurisdiction, six Justices of this Court recently considered a substantially-identical challenge to the Secretary's ballot question, but the participating Justices were evenly divided and thus deadlocked on how to resolve the question of whether the Secretary's ballot question is unlawfully misleading.[2]

---

[2] Chief Justice Saylor recused *sua sponte* and did not participate in this Court's consideration of Appellants' prior, unresolved challenge to the Secretary's ballot question.

3

6.      As a result of the deadlock, on September 2, 2016, this Court entered the following order:

> **AND NOW,** this 2nd day of September, 2016, the Court being equally divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained.   See Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

(*See* Supreme Court Order dated September 2, 2016, a true and correct copy of which is attached hereto as Exhibit B.)

7.      A few hours after this Court issued its September 2, 2016 Order, Appellants filed an Application for Reconsideration and Correction ("Application for Reconsideration") requesting that the Court amend its Order to clarify that the case shall remain pending in the Commonwealth Court in order to maintain the *status quo* of the lawsuit before this Court exercised its extraordinary jurisdiction.

8.      The Secretary opposed Appellants' Application for Reconsideration.

9.      On September 16, 2016, this Court entered an Opinion and Order denying Appellants' Application for Reconsideration, holding that reconsideration

4

is not the proper procedural avenue through which Appellants' challenge to the Secretary's misleading ballot question should be presented to the Commonwealth Court for resolution.  (*See* Supreme Court Order dated September 16, 2016, a true and correct copy of which is attached hereto as Exhibit C.)

10.    Justice Todd, joined by Justice Wecht, filed a dissenting statement in support of granting Appellants' Application for Reconsideration and maintaining the pendency of the case in the Commonwealth Court to allow "for an expedited resolution."  (*See* Dissenting Statement in Support of Granting Reconsideration and Remand to the Commonwealth Court at p.1, a true and correct copy of which is attached hereto as Exhibit D.)

11.    Justices Todd and Wecht expressly stated—and the Majority Opinion and Order did not dispute—that despite the Court's denial of reconsideration, **"[n]othing in [this Court's] September 2 order . . . precludes the parties from seeking relief in the Commonwealth Court at this juncture.**"  (*Id*. at p. 2.)

12.    Justice Todd and Justice Wecht were correct, as a decision on the merits is the linchpin of the doctrine of *res judicata* and is required in order for the doctrine to apply.  *See In re Stevenson*, 40 A.3d 1212, 1222 (Pa. 2012) ("Under res judicata, a ***final judgment on the merits*** of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. . . .") (ellipsis in original, emphasis added).

5

13.    There can be no *res judicata* without a decision on the merits, and
there was no decision on the merits in this case.  *See Consolidation Coal Co. v.
Dist. 5, United Mine Workers*, 485 A.2d 1118, 1122 (Pa. Super. 1984) ("An
essential prerequisite to the application of the doctrine of *res judicata*, however, is
that a valid and ***final judgment on the merits*** has been entered in a previous
action." (emphasis added)).  *Res judicata* is therefore inapplicable.

14.    Indeed, this Court's September 2, 2016 Order stated that the six
participating Justices were evenly divided with respect to whether the ballot
question at issue is lawful and therefore were "without authority to grant relief" to
***any party***.  (*See* Exhibit B.)  This Court thus held that it lacked the authority to
decide Appellants' challenge to the Secretary's misleading ballot question, as
reflected in the Court's acknowledgment of the "deadlock on the Court ***relating to
the merits*** of [Appellants'] challenge to the phrasing of the ballot question."
(Exhibit C at p. 4 (emphasis added); *see also* Exhibit D at pp. 2-3 (noting that as to
the merits of Appellants' challenge to the wording of the ballot question, "*no court
of the Commonwealth* has yet rendered a dispositive final adjudication" (emphasis
in original).)

15.    Moreover, the legal effect of a deadlock in a jurisdiction's highest
appellate court is the same as if the matter on which the judges are evenly divided
were never presented to the appellate court at all.  *See*, *e.g.*, *Neil v. Biggers*, 409

U.S. 188, 192 (1972) ("The legal effect [of an equally divided U.S. Supreme Court] would be the same if the appeal, or writ of error, were dismissed" (internal quotations omitted)); *United States v. Griggs*, 114 F. Supp. 2d 334, 340 n.2 (M.D. Pa. 2000) ("If the Supreme Court of the United States is equally divided . . . the effect is the same as if no appeal had been taken or if an appeal had been dismissed"); *accord In the Interest of G.C.*, 735 A.2d 1226 (Pa. 1999) (per curiam order that Superior Court decision stands as affirmed due to an equally divided Pennsylvania Supreme Court, just as if the appeal were never filed); *Chester County Children and Youth Services v. Cunningham,* 656 A.2d 1346 (Pa. 1995) (same). Accordingly, the practical and legal effect of the Court's deadlock in Appellants' prior action is as if this Court had never assumed extraordinary jurisdiction over—let alone decided—Appellants' prior challenge to the Secretary's ballot question.

16.     This Court's September 2, 2016 Order, by definition, cannot be "res judicata," which Black's Law Dictionary defines as the "rule that ***a final judgment entered by a court of competent jurisdiction on the merits*** is conclusive as to the rights of the parties and their privies, and as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand, or cause of action . . . ." BLACK'S LAW DICTIONARY, 1305 (6th ed. 1991) (emphasis added). Since this Court did not finally adjudicate the merits of Appellants' prior challenge

to the Secretary's misleading ballot question, Appellants' subsequent challenge simply cannot be precluded by the doctrine of *res judicata*.

17.     In sum, nothing in this Court's September 2, 2016 Order or this Court's September 16, 2016 Opinion and Order precluded Appellants from refiling a challenge to the Secretary's ballot question in the Commonwealth Court or permitted the Commonwealth Court to refuse to decide such a challenge.

18.     Nevertheless, on October 8, 2016, the Honorable Mary Hannah Leavitt, President Judge of the Commonwealth Court of Pennsylvania, issued a single-Judge Opinion granting the Secretary's Application for Summary Relief, denying Appellants' Cross-Application for Summary Relief, and holding that under the doctrine of *res judicata*, this Court's September 2, 2016 Order precluded the Commonwealth Court from ruling on the Petition for Review Appellants filed in the Commonwealth Court on September 19, 2016.

19.     On October 11, 2016, Appellants appealed Judge Leavitt's Opinion and Order to this Court by way of a Notice of Appeal, as Judge Leavitt erred in holding that the doctrine of *res judicata* relieved the Commonwealth Court of its duty to rule on the merits of Appellants' Petition for Review where no court of this Commonwealth has rendered a final adjudication with respect to Appellants' challenge to the Secretary's ballot question.

8

20.     Pennsylvania Rule of Appellate Procedure 105(a) provides that the Rules of Appellate Procedure "shall be liberally construed to secure the just, speedy and inexpensive determination of every matter . . . [and that] [i]n the interest of expediting decision, or for other good cause shown, an appellate court may . . . disregard the requirements or provisions of any of these rules in a particular case on application of a party or on its own motion and may order proceedings in accordance with its direction."  Pa.R.A.P. 105(a).

21.     This appeal undoubtedly warrants the Court's invocation of the letter and spirit of Rule 105.

22.     The public interest strongly favors a judicial determination prior to the November 8, 2016 general election as to whether the Secretary's ballot question is lawful.

23.     Moreover, Appellants respectfully submit that this Court's expedited consideration and resolution of this question without briefing is necessary and appropriate for the following reasons: (1) there are no material facts in dispute; (2) this Court is intimately familiar with the facts and issues in this case; (3) this Court has already considered (without explicitly deciding) the question of whether the Court's September 2, 2016 Order can have a *res judicata effect* on Appellants' subsequent challenge to the Secretary's ballot question, as demonstrated by the discussion in the Court's September 16, 2016 Order denying Appellants'

9

Application for Reconsideration and the statement of Justices Todd and Wecht dissenting therefrom; and (4) absent this Court's prompt intervention, the misleading ballot question at issue will appear on the November 2016 general election ballot without any judicial determination as to whether the ballot question is lawful, thus casting doubt over the legal effect of every vote cast on the ballot question.

WHEREFORE, Appellants respectfully request that this Court reverse Judge Leavitt's single-Judge Order dated October 5, 2016, rule that the doctrine of *res judicata* does not relieve the Commonwealth Court of its duty to adjudicate Appellants' Petition for Review, and direct the Commonwealth Court to expeditiously resolve the merits of Appellants' challenge to the Secretary's ballot question.

Respectfully submitted,

**SPRAGUE & SPRAGUE**


By:  /s/ Richard A. Sprague
     RICHARD A. SPRAGUE (I.D. # 04266)
     BROOKE SPIGLER COHEN (I.D. # 204648)
     JORDANN R. CONABOY (I.D. # 319337)
     WILLIAM H. TRASK (I.D. # 318229)
     The Wellington Bldg., Suite 400
     135 S. 19th Street
     Philadelphia, Pennsylvania 19103
     (215) 561-7681

     *Counsel for Appellants Richard A. Sprague, Hon.
     Ronald D. Castille and Hon. Stephen Zappala, Sr.*

Dated: October 11, 2016

## <u>VERIFICATION</u>

I, Richard A. Sprague, Esquire, hereby verify that the facts in the foregoing document are true and correct to the best of my knowledge, information and belief. I understand that the statements in the foregoing are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

Date: October 11, 2016                    /s/ Richard A. Sprague_____
                                          Richard A. Sprague, Esquire

12

**<u>PROOF OF SERVICE</u>**

I, Jordann R. Conaboy, Esquire, hereby certify that on this 11th day of

October, 2016, I caused true and correct copies of the foregoing to be served on the

individuals listed below *via* the Court's electronic PACFile service and e-mail:

Timothy F. Yates, Esquire
Kathleen Kotulo, Esquire
**Pennsylvania Department of State**
**Office of General Counsel**
306 North Office Building
Harrisburg, PA 17120
*Counsel for Respondent Pedro A. Cortés*

/s/ Jordann R. Conaboy
Jordann R. Conaboy, Esquire

13

# Exhibit A

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Sprague, And          :
Hon. Ronald D. Castille, And     :
Hon. Stephen Zappala, Sr.,       :
          Petitioners           :
                                 :
          v.                     :   No. 517 M.D. 2016
                                 :   Submitted: September 30, 2016
Pedro A. Cortés, Secretary of the :
Commonwealth of Pennsylvania,    :
In His Official Capacity,        :
          Respondent            :


BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                    FILED: October 5, 2016

      Before the Court is an application for summary relief filed by
Respondent, Pedro A. Cortés, Secretary of the Commonwealth of Pennsylvania
(Secretary), that seeks the dismissal of a petition for review filed by Richard A.
Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala
(collectively, Petitioners) challenging the November 2016 General Election ballot
question on whether to change the retirement age for members of the judiciary set
forth in Article V, Section 16(b) of the Pennsylvania Constitution.[1]  Petitioners
seek an order directing the Secretary to present the question in a form that advises
voters that the constitutional amendment will raise the retirement age for members

---

[1] It states, in relevant part:

      (b)   Justices, judges and justices of the peace shall be retired on the last day of
           the calendar year in which they attain the age of 70 years.

PA CONST. art. V, §16(b)

of the judiciary from 70 to 75.  The Secretary asserts, however, that Petitioners'
cause of action is barred by the doctrine of *res judicata*.  Petitioners have filed a
cross application for summary relief on the merits of their claim.

By way of background, on April 12, 2016, the General Assembly
passed House Resolution 783 of 2016, which, in part, directed the Secretary to
place the following ballot question on the November 2016 General Election ballot:

> Shall the Pennsylvania Constitution be amended to require that
> justices of the Supreme Court, judges, and magisterial district
> judges be retired on the last day of the calendar year in which
> they attain the age of 75 years?

H.R. 783, 200th Leg., (Pa. 2016).[2]

On July 21, 2016, Petitioners commenced an action in this Court with
a petition for review seeking declaratory and injunctive relief.  *See Sprague v.*

---

[2] By way of further background, in 2013, the General Assembly enacted House Bill 79, which
proposed a constitutional amendment to raise the judicial retirement age from 70 to 75 years of
age.  H.B. 79, 197th Leg., (Pa. 2013).  During the next legislative session in 2015, the General
Assembly enacted House Bill 90, which contained the same proposed amendment in House Bill
79, and directed the Secretary to submit the proposed constitutional amendment to the qualified
electors at the first primary, general or municipal election, which met the requirements of and
was in conformance with Section 1 of Article XI of the Pennsylvania Constitution.  H.B. 90,
199th Leg., (Pa. 2015).  The Secretary formulated the following question regarding the proposed
amendment, which was intended to appear on the April 26, 2016, primary election ballot:

> Shall the Pennsylvania Constitution be amended to require that justices of the
> Supreme Court, judges and justices of the peace (known as magisterial district
> judges) be retired on the last day of the calendar year in which they attain the age
> of 75 years, instead of the current requirement that they be retired on the last day
> of the calendar year in which they attain the age of 70?

*See* Petition for Review, 9/19/2016, ¶22.  On April 12, 2016, the General Assembly passed
House Resolution 783 of 2016, which ordered county boards of elections to remove "to the
extent possible" the Secretary's proposed ballot question; barred the Secretary from tallying
votes on the amendment; and specifically directed the Secretary to place the revised ballot
question on the November 2016 ballot.  H.R. 783, 200th Leg., (Pa. 2016).

*Cortés*, No. 409 M.D. 2016 (*Sprague I*).  Petitioners challenged the Secretary's framing of the constitutional question to be placed on the November 2016 ballot. Specifically, they claimed that the ballot question was unlawfully misleading because it advised voters that the proposed amendment would require judicial officers to retire at age 75 but did not state that the existing retirement age is 70. Their prayer for relief stated as follows:

> WHEREFORE, Plaintiffs respectfully [sic] that this Court enter an Order: (1) declaring unlawful the ballot question set forth by the General Assembly in H.R. 783 and adopted by the Secretary of the Commonwealth; (2) enjoining the Secretary of the Commonwealth from placing on the November 2016 general election ballot the question set forth in H.R. 783 and approved by the Secretary; and (3) directing the Secretary of the Commonwealth to present the proposed constitutional amendment to the qualified voters of the Commonwealth of Pennsylvania in a form that advises voters of the true nature of the proposed amendment, which is to amend the Pennsylvania Constitution to raise the compulsory retirement age from 70 to 75.

*Sprague I* Petition for Review, at 38.

On the same day that the petition for review in *Sprague I* was filed, Petitioners filed an Emergency Application for Extraordinary Relief in our Supreme Court, asking it to assume plenary jurisdiction over the matter. *Sprague v. Cortés*, No. 75 MAP 2016 (*Sprague II*).  On July 27, 2016, the Supreme Court determined to exercise extraordinary jurisdiction, thereby divesting the Commonwealth Court of jurisdiction.  Noting that there were no facts in dispute, both parties filed applications for summary relief, and supporting briefs, with the Supreme Court.  On September 2, 2016, the Supreme Court entered a *per curiam* order stating that, because the Court was evenly divided on the merits of the petition for review, summary relief would be denied to both parties.  The Supreme

Court ordered that "the status quo of the matter prior to the filing of the lawsuit is maintained." *Sprague II* Order, 9/2/2016, at 1.

Thereafter, Petitioners filed a motion for reconsideration of the September 2, 2016, *per curiam* order. Their motion requested the Supreme Court to amend that order to allow a remand of the matter to Commonwealth Court. By order dated September 16, 2016, a 4-2 majority of the Supreme Court denied Petitioners' motion, explaining that Petitioners did not present a compelling reason for reargument but, rather, sought a new avenue of relief. The Supreme Court also denied Petitioners' request to remand the matter to this Court, holding that "there is no longer an action pending in the lower court that requires further adjudication." *Sprague II* Order, 9/16/2016, at 4.

On September 19, 2016, following the denial of their request for reconsideration and a remand, Petitioners filed the instant Petition for Review in the Nature of a Complaint for Declaratory and Injunctive Relief against the Secretary (*Sprague III*). The prayer for relief states as follows:

> WHEREFORE, Petitioners respectfully [sic] that this Court enter an Order: (1) declaring unlawful the Secretary's ballot question; (2) enjoining the Secretary of the Commonwealth from placing the ballot question on the November 2016 general election ballot; and (3) directing the Secretary of the Commonwealth to present the proposed constitutional amendment to the qualified voters of the Commonwealth of Pennsylvania in a form that advises voters of the true nature of the proposed amendment, which is to amend the Pennsylvania Constitution to raise the compulsory retirement age from 70 to 75.

*Sprague III* Petition for Review, at 48.

On September 26, 2016, the Secretary filed an application for summary relief asserting, in part, that because the Supreme Court has already

4

decided this matter, the doctrines of *res judicata* and collateral estoppel preclude further consideration of the instant petition for review.[3]   Petitioners oppose the application for summary relief.[4]

The doctrine of *res judicata,* or claim preclusion, has been explained as follows:

> [It is] a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any final, valid judgment on the merits by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action. Res judicata applies not only to claims actually litigated, but also to claims that could have been litigated during the first proceeding if they were part of the same cause of action.

*R/S Financial Corporation v. Kovalchick,* 716 A.2d 1228, 1229 (Pa. 1998) (citations omitted).   As our Supreme Court has explained, "[t]he purposes of the rule are the protection of the litigant from the dual burden of relitigating an issue with the same party or his privy and the promotion of judicial economy through

---

[3] In his application for summary relief and accompanying brief, the Secretary also contends that: Petitioners lack standing to challenge the ballot question; re-litigating the Supreme Court's September 2, 2016, *per curiam* order would violate Article V, Section 2 of the Pennsylvania Constitution; their petition for review is barred by the "law of the case" doctrine; the ballot question adopted by the Secretary and approved by the Office of Attorney General is fair, accurate, and clearly apprises voters of the question or issue to be voted on; the Secretary and General Assembly are entitled to act free of interference under the political question doctrine; Petitioners' request for relief is barred by the doctrine of laches; and Petitioners are not entitled to injunctive relief.

[4] "In evaluating a request for summary relief, the Court applies the same standards that apply on summary judgment." *Costa v. Cortes*, 142 A.3d 1004, 1009 (Pa. Cmwlth. 2016). "Summary relief under Pa. R.A.P. 1532(b), therefore, is appropriate where the moving 'party's right to judgment is clear ... and no issues of material fact are in dispute.'" *Id.* (citing *McGarry v. Pennsylvania Board of Probation and Parole,* 819 A.2d 1211, 1214 n.7 (Pa. Cmwlth. 2003)).

prevention of needless litigation." *Id.* (citing *Foster v. The Mutual Fire, Marine and Inland Insurance Company*, 676 A.2d 652, 661 (Pa. 1996) (quoting *Clark v. Troutman*, 502 A.2d 137, 139 (Pa. 1985)). For *res judicata* to apply, "there must be a concurrence of four conditions: (1) identity of the issues, (2) identity of causes of action, (3) identity of persons and parties to the action, and (4) identity of the quality or capacity of the parties suing or sued." *Safeguard Mutual Insurance Company v. Williams*, 345 A.2d 664, 668 (Pa. 1975); *see also Callery v. Municipal Authority of Blythe Township*, 243 A.2d 385, 387 (Pa. 1968).

On September 2, 2016, the Supreme Court entered an unanimous final *per curiam* order stating that, because the Court was evenly divided, it lacked authority to grant Petitioners relief and holding that "the *status quo* of the matter prior to the filing of the lawsuit is maintained." *Sprague II* Order, 9/2/2016, at 1. That was the final and binding decision of the Supreme Court. *See Commonwealth v. Smith*, 836 A.2d 5, 17 (Pa. 2003) (explaining that even "an unexplained *per curiam* decision is certainly binding as the law of that case."). Petitioners then filed a motion for reconsideration of that decision and requested the Supreme Court to remand the matter to this Court. By *per curiam* order of September 16, 2016, the Supreme Court denied Petitioners' application for reconsideration and, further, refused the remand request because "there is no longer an action pending in the lower court that requires further adjudication." *Sprague II* Order, 9/16/2016, at 4.

The present action, filed on September 19, 2016, is brought by the exact same Petitioners as in *Sprague I*; raises the exact same issues as in *Sprague I*; and asserts the exact same cause of action, namely whether the question for the

6

ballot is constitutionally defective.[5]  *Compare Sprague I* Petition for Review, at 38, *with Sprague III* Petition for Review, at 48.  Petitioners' current action is indistinguishable from *Sprague I*.  Because the Supreme Court in *Sprague II* adjudicated the same claim and issues raised by the same parties in *Sprague I*, the doctrine of *res judicata* precludes this Court's consideration of the same claim and issues raised again in *Sprague III*.

In their opposition, Petitioners argue that the instant matter is not barred by the doctrine of *res judicata* because no court in the Commonwealth has rendered a decision on the merits of their claim.  In support of their contention, Petitioners direct this Court to the Supreme Court's September 2, 2016, order in *Sprague II* which states that the Supreme Court is "without authority to grant relief" to any party.  The Court disagrees with Petitioners' construction of that statement.  The Supreme Court's September 2nd *per curiam* order was binding as the law of that case.  The Supreme Court explained this in its September 16, 2016, order, where it denied Petitioners' motion for reconsideration:

> This Court unanimously agreed that *Creamer [v. Twelve Common Pleas Judges*, 281 A.2d 57 (Pa. 1971),] was controlling as it held that where the Court was evenly divided and there was no previous adjudication by a lower court, we lack authority to grant relief and, thus, must restore the *status quo* prior to the filing of the lawsuit.  This is precisely what occurred here.
>
> Section 726 of the Judicial Code makes clear that, when exercising extraordinary jurisdiction, this Court is removing the case from the lower court to *impose a final order in the matter*.

---

[5] The Pennsylvania Constitution states that a proposed amendment "shall be submitted to the qualified electors of the State in such manner, and at such time ... as the General Assembly shall prescribe;" PA. CONST. art. XI, §1.  In *Stander v. Kelley*, 250 A.2d 474, 480 (Pa. 1969), the Pennsylvania Supreme Court stated that a ballot question must fairly, accurately and clearly apprise the voter of the proposed constitutional amendment.

7

> *See* 42 Pa. C.S. §726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done"). As acknowledged by Plaintiffs in their original application seeking this Court's invocation of extraordinary jurisdiction under Section 726 of the Judicial Code, there is no longer an action pending in the lower court that requires further adjudication....

*Sprague II* Order, 9/16/2016, at 3-4 (emphasis added). The Supreme Court removed the case from the Commonwealth Court so that it could "impose a final order in the matter," which it did on September 2, 2016. This order concluded the litigation.

In addition, regarding Petitioners' confusion on the deadlock of the Supreme Court relating to the merits of their challenge, the Supreme Court stated as follows:

> This Court deliberately and unanimously considered the application of *Creamer* to the facts presented and disposed of the case in accordance with governing precedent. Plaintiffs do not demonstrate to the contrary. What Plaintiffs ... advocate is not this Court's reconsideration of the matter pursuant to Rule 2543,[6] but rather a remand of the case for the Commonwealth Court to consider anew.

---

[6] Pennsylvania Rule of Appellate Procedure 2543 provides:

> Reargument before an appellate court is not a matter of right, but of sound judicial discretion, and reargument will be allowed only when there are compelling reasons therefor. An application for reargument is not permitted from a final order of an intermediate appellate court under: (1) the Pennsylvania Election Code; or (2) the Local Government Unit Debt Act or any similar statute relating to the authorization of public debt.

PA. R.A.P. 2543.

*Sprague II* Order, 9/16/2016, at 4-5. The Supreme Court has held that Petitioners' issues and claim have been finally adjudicated. This Court may not revisit that holding.

In sum, in *Sprague II*, the Supreme Court adjudicated the Petitioners' claim raised in the present case (*Sprague III*), and the doctrine of *res judicata* bars Petitioners from re-litigating this claim. Accordingly, the Court grants the Secretary's application for summary relief and dismisses Petitioners' petition for review. Petitioners' cross application for summary relief is denied.

_____
MARY HANNAH LEAVITT, President Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard A. Sprague, And  :
Hon. Ronald D. Castille, And  :
Hon. Stephen Zappala, Sr.,  :
            Petitioners  :
              :
          v.  :  No. 517 M.D. 2016
              :
Pedro A. Cortés, Secretary of the  :
Commonwealth of Pennsylvania,  :
In His Official Capacity,  :
            Respondent  :

## O R D E R

AND NOW, this 5th day of October, 2016, upon consideration of Respondent's Application for Summary Relief, and Petitioners' Opposition thereto, it is hereby ORDERED and DECREED that Respondent's Application is GRANTED and the above-referenced Petition for Review is DISMISSED. Petitioners' Cross Application for Summary Relief is DENIED.

MARY HANNAH LEAVITT, President Judge

Certified from the Record

OCT 0 5 2016

And Order Exit

# Exhibit B

**[J-96-2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| Defendant | : | |

**ORDER**

**PER CURIAM**                                     **DECIDED:  September 2, 2016**

      **AND NOW,** this 2nd day of September, 2016, the Court being evenly divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained.  See <u>Creamer v. Twelve Common Pleas Judges</u>, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter).

      Chief Justice Saylor did not participate in the consideration or decision of this matter.

*Recd  9-6-16 MCF*

Justice Baer files an Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief in which Justice Donohue and Justice Mundy join.

Justice Todd files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief in which Justice Dougherty joins and Justice Wecht joins in part.

Justice Wecht files an Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief.

Judgment Entered 9/2/2016

*Elizabeth Sail*
CHIEF CLERK

# Exhibit C

[J-96-2016]
## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| Defendant | : | |

## ORDER

**PER CURIAM**

      Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala ("Plaintiffs") seek reconsideration of this Court's unanimous *per curiam* order dated September 2, 2016, which stated that because the Court was evenly divided, we lacked authority to grant relief in Plaintiffs' challenge to the Secretary of the Commonwealth's phrasing of the judicial retirement age ballot question, and held that "the *status quo* of the matter prior to the filing of the lawsuit is maintained." Sprague v. Cortés, No. 75 MAP 2016, *per curiam* order dated Sep. 2, 2016. In support, the order cited our decision in Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971), for the proposition that, where this Court was evenly divided in an original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting

that the requested relief could not be granted, thereby maintaining the *status quo* of the matter.

Plaintiffs have now sought reconsideration, contending that this Court erred by restoring the *status quo* as it existed prior to filing their lawsuit, and, instead, should have restored the *status quo* as it existed before this Court accepted plenary jurisdiction, *i.e.*, when their challenge was pending in Commonwealth Court.   They contend that this Court's reliance upon Creamer to restore the *status quo* that existed prior to commencement of the action is misplaced because Creamer did not involve this Court's exercise of extraordinary jurisdiction over a matter originally commenced in a lower court.   Plaintiffs submit that because this Court's reliance on Creamer served to quash their legal challenge and deny them from ever having their day in court, we must vacate our order and remand the matter to Commonwealth Court for disposition.

In his answer, the Secretary contends that this Court entered a final adjudication on the phrasing of the judicial retirement ballot question and that issue may not be relitigated before an inferior tribunal.   See PA. CONST. art. V, § 2 (providing that this Court "shall be the highest court of the Commonwealth and in this court shall be reposed the supreme judicial power of the Commonwealth").   The Secretary argues that our decision in Creamer is dispositive as it held that the universal rule, providing that a matter remains in *status quo* if the judicial body is equally divided, applies even where there is no lower court order for an appellate court to affirm.   He contends that Plaintiffs received exactly what they asked for when they sought to have this Court remove their case from the Commonwealth Court and exercise plenary jurisdiction over the matter pursuant to Section 726 of the Judicial Code, *i.e.*, a full and fair opportunity to litigate the issue before the highest court in the Commonwealth so as to obtain a prompt, final decision.   Merely because Plaintiffs did not receive the result they desired, the

Secretary argues, does not afford them the right to relitigate the issue in a lower court that lacks authority to hear the case.  Finally, the Secretary submits that remanding the matter to the Commonwealth Court at this late date would be against the public interest because we are at a point on the election calendar where the ballot question has already been advertised in accordance with the constitutional mandate and absentee voting on the ballot question has already begun.

It is well-established that reargument is not a matter of right, but of sound judicial discretion, and will be granted "only when there are compelling reasons therefor." Pa.R.A.P. 2543.  See Note to Pa.R.A.P. 2543 (setting forth compelling reasons such as: (1) where a panel decision is inconsistent with a different panel decision of the same court; (2) where the court has overlooked or misapprehended a fact of record material to the outcome of the case; (3) where the court has overlooked or misapprehended a controlling or directly relevant authority; and (4) where a controlling or directly relevant authority relied upon by the court has been expressly reversed, modified, overruled or otherwise materially affected during the pendency of the matter).

Plaintiffs do not present a compelling reason for reargument, but rather seek a new avenue of relief.  They cite no controlling or directly relevant authority that this Court overlooked, and instead suggest only that our reliance upon Creamer was somehow misplaced.  This claim is unpersuasive.  This Court unanimously agreed that Creamer was controlling as it held that where the Court was evenly divided and there was no previous adjudication by a lower court, we lack authority to grant relief and, thus, must restore the status quo prior to filing the lawsuit.  This is precisely what occurred here.

While Creamer did not involve the additional fact that the plaintiffs had originally filed the action in a lower court and later sought this Court's exercise of extraordinary

jurisdiction, such fact does not alter the legal analysis. Section 726 of the Judicial Code makes clear that, when exercising extraordinary jurisdiction, this Court is removing the case from the lower court to impose a final order in the matter. See 42 Pa.C.S. § 726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done"). As acknowledged by Plaintiffs in their original application seeking this Court's invocation of extraordinary jurisdiction under Section 726 of the Judicial Code, there is no longer an action pending in the lower court that requires further adjudication. See Plaintiffs' Emergency Application for Extraordinary Relief at 11 (asserting that "[i]t is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court. Consequently, Petitioners respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election.").

The dissenting statement asserts that nothing "precludes the parties from seeking relief in the Commonwealth Court at this juncture, or prevents our Court from remanding the matter for a merits disposition." Slip Op. at 2 (Todd, J., dissenting). The dissent proceeds to conclude that it would "remand this case to that tribunal forthwith for expedited resolution." Respectfully, the dissent conflates the deadlock on the Court relating to the merits of Plaintiffs' challenge to the phrasing of the ballot question and this Court's unanimous *per curiam* order restoring this matter to the *status quo* prior to the filing of the litigation. This Court deliberately and unanimously considered the application of Creamer to the facts presented and disposed of the case in accordance

with governing precedent.  Plaintiffs do not demonstrate to the contrary.  What Plaintiffs and the dissent now advocate is not this Court's reconsideration of the matter pursuant to Rule 2543, but rather a remand of the case for the Commonwealth Court to consider anew.  Such action, based upon a motion for reconsideration, would be unprecedented, unsupported by legal authority, and outside the scope of Rule 2543.

Accordingly**,** this 16th day of September, 2016, the Application for Reconsideration is **DENIED**.  Additionally, the Application for Leave to File a Reply Brief to the Secretary's Answer filed by Plaintiffs is **GRANTED**.  The Application for Leave to File an Answer to Plaintiff's Application filed by Amicus Curiae is **DENIED**.


Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justice Todd files a dissenting statement in which Justice Wecht joins.

# Exhibit D

[J-96-2016]
IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | No. 75 MAP 2016 |
| | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| Defendant | : | |

**DISSENTING STATEMENT IN SUPPORT OF GRANT OF RECONSIDERATION AND REMAND TO THE COMMONWEALTH COURT**

**JUSTICE TODD**                                    **FILED:  September 16, 2016**

In these unprecedented and exceptional circumstances, I would grant Plaintiffs' Motion for Reconsideration and Correction of our Court's September 2, 2016 *per curiam* order and would remand this matter to the Commonwealth Court for expedited resolution, on the merits, of the manifestly important issue of whether this ballot question fairly, completely, and accurately apprises the voters of the constitutional change they are being asked to approve in the November election.

Specifically, the plaintiffs in this matter, Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala, have filed a motion for reconsideration of our prior order requesting that our Court remand the matter to the Commonwealth Court.  In our Court's *per curiam* order, we explained that,

because the Court was evenly divided on the question of whether the parties were entitled to summary relief on their respective motions,[1] our Court was "without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained."  Order, 9/2/16, at 1 (citing Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (discussed more fully at length *infra*)).  Nothing in our September 2 order, however, precludes the parties from seeking relief in the Commonwealth Court at this juncture, or prevents our Court from remanding the matter for a merits disposition.

It would appear, based on the averments in Plaintiffs' motion and Defendant's response, that this *per curiam* order has engendered confusion as to whether "maintaining the *status quo*" forecloses Plaintiffs' right to seek further relief in the Commonwealth Court.  See Plaintiffs' Motion for Reconsideration at 5-6 ("This Court's [sic] misguidedly relied on [Creamer] to quash Plaintiffs' legal challenge and prevent them from ever having their day in Court to protect their rights and the rights of every Pennsylvania citizen to cast informed votes on proposed amendments to the Pennsylvania Constitution."); Defendant's Answer at 4 ("Plaintiffs' request for relief failed when this Court entered a final adjudication (even if a split decision) ordering the *status quo*.").

Our *per curiam* order does not bar Plaintiffs from seeking further relief in the Commonwealth Court.  Because of the parties' evident confusion regarding this order, and the public importance of a definitive resolution of the constitutional issue in this case — as to whose merits *no court of this Commonwealth* has yet rendered a

---

[1]  Justices Baer, Donohue, and Mundy would have rejected Plaintiffs' challenge to the ballot question.  I, along with Justices Wecht and Dougherty, would have granted Plaintiffs' application on the basis that the ballot question failed to fairly, completely, and accurately apprise voters of the nature of the constitutional changes on which they were voting.

dispositive final adjudication — it is imperative, under these highly unusual circumstances, to emphasize that our order maintaining the *status quo* should not be read as barring further proceedings in the Commonwealth Court. I would remand this case to that tribunal forthwith for expedited resolution.

The Majority's disposition is unsupported by any controlling legal authority, inasmuch as the case on which it principally relies, <u>Creamer</u>, does not support denying Plaintiffs their requested relief.[2] <u>Creamer</u> was a case involving the constitutionality of the Governor's appointment of judges to fill 14 judicial vacancies. The multiple plaintiffs in those cases challenging the Governor's exercise of his appointment power commenced their various actions in our Court through a variety of means, such as a *quo warranto* action, a petition for a writ of mandamus, and a petition to take original and plenary jurisdiction. 281 A.2d at 63   Therefore, unlike in the matter before us, the actions were brought in our Court's original jurisdiction — no proceedings were pending in any lower court at the time our Court exercised our King's Bench power and assumed plenary jurisdiction over all of these cases.

The 6 members of our Court, who heard that case, while agreeing with respect to 8 of the 14 appointments, became equally divided on the resolution of the question of whether the remaining 6 jurists had been properly appointed by the Governor. As the Court could not render a final judgment on the merits of that question, and because there were no proceedings pending in a lower court at the time we assumed jurisdiction,

---

[2]  Plaintiffs do not seek reargument before our Court in order to have us reconsider the merits of our evenly divided decision; rather, they ask us to "reconsider, vacate and correct [our] September 2, 2016 Order dismissing this case due to the fact that the Justices of the Court are equally divided with respect to how the case should be resolved; and remand the case back to the Commonwealth Court." Plaintiffs' Motion for Reconsideration, filed 9/2/16.

the effect of our Court's order was to leave in place the *status quo*, i.e., simply to terminate the litigation in our Court — where it began.

Further, nothing in our Court's *per curiam* order in Creamer, or the respective opinions of the justices in that case, foreclosed any further proceedings thereafter in any other tribunal with jurisdiction to consider anew the merits of the constitutional question which our Court did not decide. Quite simply, there was nothing of record indicating that the challengers in Creamer sought to pursue any such actions.

In contrast, this action began in the Commonwealth Court, and, thus, was pending in that court at the time we assumed jurisdiction. Therefore, our Court's inability to render a final judgment on the merits, i.e., our lack of authority to grant the requested relief to any of the parties due to the deadlock, leaves the action pending in the Commonwealth Court as the *status quo*. Hence, Creamer does not bar Plaintiffs from pursuing relief in the Commonwealth Court at present, and our Court's September 2, 2016 order did not expand the breadth of our holding in Creamer to automatically foreclose further proceedings in the Commonwealth Court in this matter, as the parties have apparently interpreted it. Clarifying this order to eliminate any misconception as to its lack of preclusive effect is, therefore, a compelling reason to grant reconsideration and allow remand of the matter to the Commonwealth Court.

Consistent with this understanding of Creamer, I reject the Majority's conclusion that "there is no longer an action pending in the lower court that requires further adjudication." Order, 9/16/16 at 4. Plaintiffs originally commenced this action in the Commonwealth Court on July 21, 2016, and, on that same day, requested that our Court exercise our extraordinary jurisdiction over the matter. We granted that request on July 27, 2016. Pursuant to Pa.R.A.P. 3309(d), our grant of extraordinary jurisdiction had the legal effect of transferring jurisdiction of this action to our Court and *halting* all

proceedings in the Commonwealth Court during the pendency of this matter before our Court.  See Pa.R.A.P. 3309(d) ("Where action is taken under this rule which has the effect of transferring jurisdiction of a matter to the Supreme Court, unless otherwise ordered by the Supreme Court such action shall be deemed the taking of an appeal as of right for the purposes of Chapter 17 (effect of appeals; supersedeas and stays), except that the lower court shall not have the power to grant reconsideration."); Pa.R.A.P. 1701(a) ("Except as otherwise prescribed by these rules, after an appeal is taken or review of a quasijudicial order is sought, the trial court or other government unit *may no longer proceed further in the matter*."(emphasis added)).

Had our Court rendered a dispositive final adjudication on the merits of the parties' respective claims after assuming extraordinary jurisdiction, this action would have been finally concluded, and the Commonwealth Court, of course, could no longer conduct any further proceedings with respect thereto.  Since our Court was evenly divided on the parties' claims, and, thus, did not render a dispositive order finally adjudicating the claims on the merits, the Plaintiffs' action filed in the Commonwealth Court prior to our Court's exercise of extraordinary jurisdiction should re-attain the same posture which it was in when we originally assumed such jurisdiction.  Thus, our Court's September 2 order cannot be read as terminating Plaintiffs' pending action in the Commonwealth Court, but, rather, permits a remand to that court for final adjudication of the parties' claims on the merits.[3]

Finally, and in any event, Section 726 of the Judiciary Code requires our Court, once we have assumed extraordinary jurisdiction, to "enter a final order or otherwise

---

[3]  I consider the language in our order maintaining the *status quo* prior to the filing of the lawsuit as specifying that the ultimate merits of Plaintiffs' constitutional claims regarding the wording of the ballot question remain as they were at that point in time, unresolved, and nothing more.

cause right and justice to be done." 42 Pa.C.S. § 726.  Since our Court has not entered a final order, i.e. one that "disposes of all claims and of all parties," Pa.R.A.P. 341, our Court is mandated by Section 726 to otherwise "cause right and justice to be done." None of the parties have received a final adjudication on the merits of their claims in this matter, and most importantly, the people of this Commonwealth are entitled to a prompt and definitive resolution by the judiciary of this critically important constitutional question.  An immediate remand to the Commonwealth Court is the only available means at this late date which can accomplish such justice.  Consequently, I deem it of the utmost importance to remand this matter for that tribunal to expeditiously undertake that task.  Thus, I would grant Plaintiffs' motion and would remand the matter to the Commonwealth Court.

Justice Wecht joins this Dissenting Statement.

# Exhibit II

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : | No. 100 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated October 5, |
| Appellants | : | 2016 at No. 517 MD 2016. |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF | : | |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, IN HIS OFFICIAL | : | |
| CAPACITY, | : | |
| | : | |
| Appellee | : | |

## ORDER

**PER CURIAM**                                    **DECIDED: October 25, 2016**

AND NOW, this 25th day of October, 2016, Appellants' emergency application to expedite disposition of this matter is **GRANTED**.  Appellants' application for leave to file a reply to answer is **GRANTED**.  The Court being equally divided, the Order of the Commonwealth Court is **AFFIRMED**.

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justice Baer files an opinion in support of affirmance in which Justices Donohue and Mundy join.

Justice Todd files an opinion in support of reversal in which Justices Dougherty and Wecht join.

Justice Dougherty files an opinion in support of reversal in which Justices Todd and Wecht join.

Justice Wecht files an opinion in support of reversal in which Justices Todd and Dougherty join.

# Exhibit JJ

**[100 MAP 2016]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE AND HON. STEPHEN ZAPPALA, SR., | : | Appeal from the Order of the Commonwealth Court dated October 5, 2016, at No. 517 M.D. 2016 |
| | : | |
| Appellants | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| Appellee | : | |

<u>OPINION IN SUPPORT OF AFFIRMANCE</u>

**JUSTICE BAER**                              **DECIDED: October 25, 2016**

  Attorney Richard A. Sprague, the Honorable Ronald D. Castille, and the Honorable Stephen A. Zappala ("Appellants") appeal from the Commonwealth Court's order dated October 5, 2016, which granted summary relief in favor of Secretary Pedro A. Cortés ("Secretary") and dismissed Appellants' petition for review.   Appellants' petition for review challenged the legality of the November 2016 general election ballot question, as framed by the Secretary, which seeks to amend the mandatory judicial retirement age set forth in Article V, Section 16(b) of the Pennsylvania Constitution.[1] For the reasons that follow, we would affirm the Commonwealth Court.

---

[1] Article V, Section 16(b) currently provides, in relevant part, that "Justices, judges and justices of the peace shall be retired on the last day of the calendar year in which they attain the age of 70 years."  PA. CONST. art. V, § 16(b).

The record establishes that on July 21, 2016, Appellants filed a complaint in the Commonwealth Court challenging the Secretary's phrasing of the ballot question. Appellants sought an order declaring the ballot question unlawful, enjoining the Secretary from placing the question on the November 2016 ballot, and directing the Secretary to present the question to the electorate in a manner that advises voters that the compulsory judicial retirement age would be raised from 70 to 75.  Later that day, Appellants filed in this Court an emergency application requesting that we assume plenary jurisdiction over the action pursuant to 42 Pa.C.S. § 726.  See Appellants' Emergency Application for Extraordinary Relief at 11 (asserting that "[i]t is virtually certain that any order issued by the Commonwealth Court in this matter would be appealed to this Court.  Consequently, [Appellants] respectfully submit that this Court should assume immediate plenary jurisdiction over the matter in order to resolve it in advance of the November 8, 2016 general election.").  This Court granted Appellants' emergency application on July 27, 2016, and an expedited briefing schedule was established.

As there were no factual disputes, the parties filed applications for summary relief.  On September 2, 2016, this Court entered a unanimous *per curiam* order, stating that, because the Court was evenly divided as to which parties were entitled to summary relief, we lacked authority to grant the requested relief and, thus, maintained "the *status quo* of the matter prior to the filing of the lawsuit."  Sprague v. Cortés, No. 75 MAP 2016, *per curiam* order dated Sep. 2, 2016 (citing Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in an original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order noting that the requested relief could not be granted, thereby maintaining the *status quo* of the matter)).

This author filed an opinion in support of granting summary relief to the Secretary, which was joined by Justices Donohue and Mundy. Additionally, an opinion in support of granting summary relief to Appellants was filed by Justice Todd, and joined by Justice Dougherty and, in part, by Justice Wecht. Justice Wecht also filed a separate opinion in support of granting summary relief to Appellants. The opinions themselves had no precedential effect, but were issued to explain the various views regarding whether the ballot question was unlawful. The equal division among the Court on the question of whether Appellants were entitled to declaratory and injunctive relief was the basis for the Court's ultimate judgment, maintaining the *status quo*, which judgment was rendered unanimously by the concurrence of all Justices.

Appellants thereafter filed an application for reconsideration, requesting that we remand the matter to the Commonwealth Court for that court to examine the exact question that this Court already reviewed. On September 16, 2016, this Court entered a *per curiam* order denying Appellants relief on the ground that they did not present a compelling reason for reargument but, rather, sought a new avenue of relief. We emphasized that the grant of Appellants' request for extraordinary jurisdiction pursuant to Section 726 of the Judicial Code removed the case from the lower court so that this Court could impose a final order in the matter. See 42 Pa.C.S. § 726 (providing that "the Supreme Court may, on its own motion or upon the petition of any party, in any matter pending before any court or magisterial district judge of this Commonwealth involving an issue of immediate public importance, assume plenary jurisdiction of such matter at any stage thereof and enter a final order or otherwise cause right and justice to be done"). This Court's order denying reconsideration further distinguished the deadlock on the Court, which related to whether Appellants had a clear right to the requested relief, from the Court's unanimous judgment in the matter, which maintained

the *status quo* prior to the filing of the litigation.  We concluded that a remand for the Commonwealth Court to consider the case anew would be unprecedented, unsupported by legal authority, and outside the scope of Pa.R.A.P. 2543.  Justice Todd filed a dissenting opinion to the *per curiam* order, which was joined by Justice Wecht, in which she opined that this Court should remand the matter to the Commonwealth Court for it to address the legality of the ballot question's phrasing.

On September 19, 2016, Appellants filed in the Commonwealth Court a second petition for review in the nature of a complaint for declaratory and injunctive relief against the Secretary, raising the identical challenge and seeking the identical relief as they did in the original case before this Court.  The Secretary sought dismissal of Appellants' petition, contending that: (1) the action was barred by the doctrines of *res judicata*, laches, and "law of the case;" (2) relitigation of this Court's September 2, 2016 order would violate Article V, Section 2 of the Pennsylvania Constitution; (3) the ballot question is fair, accurate, and clearly apprises voters of the question to be voted on; (4) the Secretary and Attorney General are entitled to act free of interference under the political question doctrine; and (5) Appellants are not entitled to injunctive relief.  Both parties again filed applications for summary relief.

On October 5, 2016, in a single judge memorandum opinion authored by President Judge Mary Hannah Leavitt, the Commonwealth Court granted the Secretary's application for summary relief, denied Appellants' application for summary relief, and dismissed Appellants' petition for review, finding that the action was barred by the doctrine of *res judicata*.  The court did not address the Secretary's additional objections to the Commonwealth Court's reconsideration of the ballot question challenge.  The court reasoned that four conditions must exist for *res judicata* to apply: (1) identity of the issues; (2) identity of causes of action; (3) identity of persons and

parties to the action; and (4) identity of the quality or capacity of the parties suing or sued.  Commonwealth Court Slip Op. at 6 (citing <u>Safeguard Mutual Insurance Company v. Williams</u>, 345 A.2d 664, 668 (Pa. 1975)).  The Commonwealth Court found all of these requisites satisfied as the two actions (*i.e.*, the action adjudicated by this Court by order dated September 2, 2016 and the action filed in Commonwealth Court on September 19, 2016) shared identity of issues, causes of action, and parties.  Finding that this Court adjudicated the claims raised by the same parties in its September 2, 2016 *per curiam* order, the Commonwealth Court held that the doctrine of *res judicata* precludes that court's reconsideration of the same matter.

The Commonwealth Court rejected the contention that, because this Court was divided regarding the legality of the ballot question, Appellants never received a final adjudication on the merits of their claim, which is necessary for *res judicata* to apply.  Relying upon this Court's September 16th order denying reconsideration, the Commonwealth Court stated that "[t]he Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated.  This [c]ourt may not revisit that holding."  Commonwealth Court Slip Op. at 9.

On October 11, 2016, Appellants filed a notice of appeal in this Court, as well as an emergency application seeking an expedited disposition without further briefing.  Ignoring that the Secretary objected to the Commonwealth Court's consideration of Appellants' petition for review for a myriad of discrete reasons not addressed by the Commonwealth Court due to its finding that the case was precluded by the doctrine of *res judicata*, Appellants now request that we reverse the Commonwealth Court's dismissal of the petition based on *res judicata* and direct that court to adjudicate their challenge to the ballot question, regardless of the validity of the Secretary's alternative objections.

5

Appellants' entire premise on appeal mirrors the position taken by the dissenting Justices in the reconsideration matter, *i.e.*, because this Court was evenly divided as to whether the ballot question suffers from a legal impediment, Appellants never received a final judgment on the merits of their claim, and thus, their current action is not precluded.  Citing language from this Court's September 2nd order indicating that we lacked authority to grant the requested relief due to an inability to reach consensus, Appellants submit that we likewise lacked authority to adjudicate the merits of their claim, which is a prerequisite to the application of *res judicata*.  They further rely on distinguishable case law suggesting that the legal effect of a deadlock in a jurisdiction's highest appellate court is the same as if no appeal had been taken.  From this tenet, Appellants conclude that this Court's September 2nd order maintaining the *status quo* is a nullity, having no legal effect whatsoever.  They argue that the facts presented should be viewed as though this Court never granted their request for extraordinary jurisdiction, leaving the matter ripe for adjudication by the Commonwealth Court.

In his answer to Appellants' emergency application, the Secretary joins Appellants' request that this matter be resolved as expeditiously as possible, without further briefing, and attaches his brief filed in Commonwealth Court.  He contends that we should affirm summarily the well-reasoned decision below, which held that this Court's unanimous September 2nd *per curiam* order maintaining the *status quo* effectively denied the relief Appellants sought and constitutes a final adjudication on the merits for purposes of *res judicata*, rather than the absence of a decision as Appellants suggest.  The Secretary asserts that the legal effect of an evenly divided judicial body in Pennsylvania is that the requested relief is denied, both implicitly and as a matter of law.  Accordingly, he submits, the Commonwealth Court may not revisit this Court's determination, to which the parties are bound.

6

In addition to claims alleging preclusion of reconsideration of the ballot question issue based upon the doctrines of laches, "law of the case," and political question, the Secretary further contends that Appellants attempt to have the Commonwealth Court usurp this Court's "supreme judicial power of the Commonwealth" offends the constitutionally established structure of the judiciary as the September 2nd order declined to grant Appellants the very relief they subsequently sought in the Commonwealth Court.  See PA. CONST. art. V, § 2(a).  He argues that what Appellants essentially seek is for the Commonwealth Court to be this Court's tiebreaker in contravention of the structure of the unified judicial system.  Accordingly, he requests that we affirm the order of the Commonwealth Court dismissing Appellants' petition for review.

We agree with the Secretary that the Commonwealth Court was correct in holding that this Court's September 2nd order maintaining the *status quo* is a final order effectively declining Appellants' requested relief and, thus, constitutes a final judgment on the merits for purposes of *res judicata*.  As Justice Wecht points out in his Opinion in Support of Reversal, "[i]t is axiomatic that in order for  . . . *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment."  Opinion in Support of Reversal, Wecht, J., at 3 (quoting County of Berks ex rel. Baldwin v.  Pennsylvania Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996)).  Here, the various opinions attached to this Court's September 2nd unanimous *per curiam* order clearly establish that Appellants actually litigated in this Court the issue of whether the ballot question is legal and whether they are entitled to declaratory and injunctive relief.  Because this Court evenly divided as to the legality of the ballot question, the Court's unanimous *per curiam* order determined that Appellants were not entitled to relief and that the *status quo*, prior to the filing of the litigation, must be

maintained.  Thus, the order constitutes a valid and final judgment, as it disposed of all claims and of all parties.  See Pa.R.A.P. 341(b)(1) (defining a final order as an order disposing of all claims and of all parties).

Respectfully, Appellants and the Justices in support of reversal are misguided when they suggest that there was no final judgment on the merits because this Court did not by majority decision definitively answer whether the ballot question, as submitted by the Secretary, was illegal.

While factually distinguishable and not dispositive, we find persuasive the United States Supreme Court's sentiment, observed more than 100 years ago, that:

> [A court's judgment] is not the less expressive of the decision of the court upon the merits of the petitioner's claim in the case because it is rendered upon an equal division of opinion among the judges.  The fact of division does not impair the conclusive force of the judgment, though it may prevent the decision from being authority in other cases upon the question involved. The judgment is that of the entire court, and is as binding in every respect as if rendered upon the concurrence of all the judges.

Hartman v. Greenhow, 102 U.S. 672, 675-76 (1880) (citations omitted).   Stated succinctly, that the parties to this appeal do not have a definitive answer to the legal inquiry of whether the ballot question is invalid most certainly does not mean that the issue was not litigated and finally disposed of by this Court's September 2nd unanimous *per curiam* order.

The following illustrates the point.  When this Court evenly divides on a legal issue presented in an appeal, we enter a final *per curiam* order affirming the lower court's judgment - an action which maintains the *status quo* of the matter prior to the filing of the appeal in this Court.  See, e.g., Gov't Employees Ins. Co. v. Ayers, 18 A.3d 1093 (Pa. 2011).  Similarly, if the Court accepts extraordinary jurisdiction over a case where no judgment has been entered by a lower tribunal and we deadlock, then we

enter a final *per curiam* order that maintains the *status quo* of the matter prior to the filing of the lawsuit, as occurred in this case.  See Creamer, supra.  In both situations, the moving party failed to convince a majority of the Court to take affirmative action. Because the Court in this circumstance cannot grant relief, relief is denied by operation of law, and the *status quo* is maintained, which in this case results in the constitutional amendment as advertised remaining on the November 8, 2016 general election ballot.

It is indisputable that any opinion attached to these *per curiam* orders has no precedential value; it is equally indisputable that the orders are nonetheless binding, final orders.  See Commonwealth v. Bomar, 826 A.2d 831, 843 n.13 (Pa. 2003) ("While the ultimate order of a plurality opinion, *i.e.* an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority.") (*quoting Interest of O.A.*, 717 A.2d 490, 496 n. 4 (Pa. 1998) (opinion announcing judgment of the court)); see also Pa.R.A.P. 341(b)(1) (defining a final order as "any order that . . . disposes of all claims and of all parties").  Any purported distinction between the finality of orders entered as a result of a divided decision of this Court in its appellate jurisdiction versus orders entered as a result of a deadlock in an original jurisdiction matter constitutes the proverbial "red herring."  In both scenarios, a final judgment is entered maintaining the *status quo* and precluding further litigation among the parties to that action. Significantly, the Commonwealth Court cogently noted that this conclusion derives from the express language set forth in this Court's September 16th order denying reconsideration, which a majority of this Court joined.  See Commonwealth Court Slip Op. at 9 ("The Supreme Court has held that [Appellants'] issues and claim have been finally adjudicated.  This [c]ourt may not revisit that holding.").

Our proposed disposition is not contrary to County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 678 A.2d 355 (Pa. 1996), upon which the Justices in support of reversal rely.   County of Berks held that an order of this Court, unaccompanied by an opinion, which denied a party's request for extraordinary relief did not constitute an adjudication on the merits for purposes of res judicata.   Id. at 359 (stating that "we now hold that where this [C]ourt has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised").   Conversely, here, this Court issued an order granting Appellants' emergency application for extraordinary relief, the parties litigated the issues through briefing, the Court issued multiple opinions on the legal issue presented, and this Court entered a final order which disposed of all the claims in the case and resulted in the denial of relief to Appellants.   It cannot be ignored that this Court's grant of extraordinary relief pursuant to 42 Pa.C.S. § 726 assumes jurisdiction over the case so that we may enter a final order.   An order denying extraordinary jurisdiction, on the other hand, merely refuses to allow invocation of our jurisdiction to hear the case at that point in the proceeding.   Thus, County of Berks is not dispositive for we cannot equate our grant of extraordinary jurisdiction in this case and the extensive litigation that occurred thereafter with a single order denying extraordinary relief.

Further, contrary to the position of the Justices in support of reversal, Appellants are not denied any rights by this proposed disposition.   Justice Wecht's assertion that "today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth," Opinion in Support of Reversal, Wecht, J., at 4, completely ignores what occurred in this case.   Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to

10

the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code minutes after their Commonwealth Court action was filed, thereby forfeiting their right to appellate review of an original jurisdiction decision.   The result Appellants received, *i.e.*, a final judgment from this Court and no substantive review by the Commonwealth Court, was the direct result of their own tactical litigation plan.

Further, both Appellants and the Justices in support of reversal disregard cavalierly this Court's Article V, Section 2(a)'s supremacy power.  Indeed, there simply can be no question that Article V, Section 2(a) vests this Court with the supreme judicial power of the Commonwealth.  Appellants provide no authority, as none exists, that would allow them to relitigate their claims in a lower tribunal after this Court had granted the extraordinary relief they sought concerning jurisdiction and then proceeded to enter a final order in the matter.

In her Opinion in Support of Reversal, Justice Todd opines that "[w]ith today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without receiving an answer to that fundamental question [as to whether the ballot language satisfies constitutional standards for clarity]."  Opinion in Support of Reversal, Todd, J., at 9.  Regardless of the significance of the underlying challenge to the ballot question at issue, this Court cannot create remedies where the law does not so provide.

This Court also should not be influenced by newspaper editorials or polls that are not part of the record before us and are not in any way pertinent to the narrow legal issue presented regarding the preclusive effect of this Court's September 2nd order. See Opinion In Support of Reversal, Wecht, J., at 4-5 (citing a recent poll by Franklin & Marshall College, and various published editorials).   This Court should not be

11

concerned with matters of public opinion, but only matters of legal significance to issues that are properly presented by the parties.   References to commentary regarding whether the proposed constitutional amendment should, in fact, be passed have no place in appellate court opinions deciding a discrete legal issue.   These practices are misguided at best and dangerous at worst.

It is for these reasons that we would affirm the order of the Commonwealth Court.

Chief Justice Saylor did not participate in the consideration or decision of this matter.

Justices Donohue and Mundy join this opinion.

# Exhibit KK

## IN THE SUPREME COURT OF PENNSYLVANIA
## MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : : : : | No. 100 MAP 2016<br><br>Appeal from the Order of the Commonwealth Court dated October 5, 2016 at No. 517 MD 2016. |
| Appellants | : : : | |
| v. | : : : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : : : : : : | |
| Appellee | : : | |

## <u>OPINION IN SUPPORT OF REVERSAL</u>

**JUSTICE WECHT**                              **DECIDED: October 25, 2016**

This Court recently considered—but deadlocked on—a challenge to the wording of the November 2016 general election ballot question.  That question asks voters whether the judicial retirement age mandated in our Constitution should be amended. Appellants alleged that the ballot question as drafted misleads and deceives voters into believing that they are imposing a mandatory retirement age for the first time, when in fact a "yes" vote would *raise* the existing judicial retirement age from 70 to 75. Appellants sought to enjoin Appellee Cortés from issuing general election ballots that contain the deceptively worded question.

Although this Court assumed plenary jurisdiction over Appellants' action pursuant to 42 Pa.C.S. § 726, we did not (indeed, we could not) issue a final decision on the merits.   As explained in our September 2 order, three Justices favored denying

Appellants' application for relief and dismissing the complaint with prejudice, while the other three Justices would have granted Appellants' application for relief and permanently enjoined Appellee from placing the challenged language on the ballot.[1] Being equally divided, we stood deadlocked on the merits of the dispute. Our unanimous *per curiam* order accordingly noted that "this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained." *Per Curiam* Order, 9/2/2016, at 1.

In view of our deadlock, Appellants pursued merits adjudication by refiling their complaint for declaratory and injunctive relief in the Commonwealth Court. That court dismissed the complaint, holding that the doctrine of *res judicata* bars Appellants from litigating their still-unadjudicated constitutional challenge. In defending that dismissal, the Opinion in Support of Affirmance ("OISA") misconstrues our *failure* to resolve Appellants' challenge on the merits as an *adjudication* on the merits. It is nothing of the kind. I disagree with the OISA's view, which attempts incorrectly to deploy our September 2 deadlock as a bootstrap to affirm the Commonwealth Court, notwithstanding our utter inability to reach a decision on the merits of the parties' dispute.

The doctrine of *res judicata*, also known as claim preclusion, bars a subsequent action between the same parties on any claim that was the subject of an earlier adjudication on the merits. Balent v. City of Wilkes-Barre, 669 A.2d 309, 313 (Pa. 1995) ("Any final, valid judgment on the merits by a court of competent jurisdiction precludes

---

[1]    See Sprague v. Cortés, 2016 WL 4595403 (Pa. 2016); Opinion In Support Of Denying Plaintiffs' Application For Summary Relief And Granting Defendant's Application for Summary Relief (Baer, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application for Summary Relief (Todd, J.); Opinion in Support of Granting Plaintiffs' Application For Summary Relief and Denying Defendant's Application For Summary Relief (Wecht, J.).

any future suit between the parties or their privies on the same cause of action." (citing Allen v. McCurry, 449 U.S. 90, 94 (1980)).  The dispositive question here is whether our September 2 order constituted a full and final adjudication of Appellants' constitutional challenge.  It plainly did not.

I agree with the Commonwealth Court that the claims at issue and the parties *sub judice* are identical to those in the prior litigation.  See Sprague v. Cortés, 517 M.D. 2016, slip op. at 6.  Nevertheless, *res judicata* does not bar Appellants from litigating their claims, because neither this Court nor any other court has finally adjudicated Appellants' constitutional challenge to the wording of the November ballot question. See County of Berks ex rel. Baldwin v. Penna. Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996) ("It is axiomatic that in order for . . . *res judicata* to apply, the issue or issues must have been actually litigated and determined by a valid and final judgment.").[2]

*Res judicata* expresses a jurisprudential principle designed to avoid never-ending litigation.  It embraces the common sense proposition that a claim finally settled by a

---

[2]     In an attempt to obscure our decisional deadlock and expand our September 2 order into a final adjudication on the merits, the OISA invokes a decision of the United States Supreme Court that does not support the OISA's position.

Specifically, the OISA relies upon Hartman v. Greenhow, 102 U.S. 672 (1880), a case that does not concern, discuss, or even mention the doctrine of *res judicata*.  See OISA at 8.  Although Hartman involved an equally divided state court, it did not address any preclusive effect of that deadlock.  Instead, the issue in Hartman was whether the United States Supreme Court had jurisdiction over the appeal, *i.e.*, whether it was a "final judgment or decree" as defined by the Judiciary Act of 1789.  Id. at 674.  The portion of Hartman quoted by the OISA (see OISA at 8) simply explains why the state court's deadlock was amenable to the U.S. Supreme Court's jurisdiction.

Beyond that, the OISA is left with little but its own conclusory assertion that our opinion "completely ignores" the "final judgment" in this case (Id. at 10), a "final judgment," such as it is, which does not adjudicate the lawsuit's claims.  But just in case, suggests the OISA, Appellants' inability to obtain an adjudication here is, after all, somehow their own fault, the "result of their own tactical litigation plan."  Id. at 11.

court of competent jurisdiction remains settled.  *Res judicata* addresses the law's need for finality and precludes multiplicity of actions upon identical questions.[3]  What the doctrine does not do is encroach upon a litigant's fundamental right to have his or her case decided on the merits.

As the debate over the starkly misleading November ballot language intensifies in the court of public opinion, today's reappearing deadlock denies Appellants their right to a merits decision by the courts of this Commonwealth.  As written, the ballot question is patently deceptive (apparently by design), thereby depriving Pennsylvania voters of their inalienable right to amend our Constitution as they see fit.  Many share my concerns, including (it seems) half the voting Justices of this Court, Secretary Cortés himself (at least at one point),[4] and numerous commentators.[5]

---

[3]    The OISA ignores the obvious fact that not all "final" decisions are preclusive for *res judicata* purposes.  It bears repeating that *res judicata* applies only when there has been a final adjudication **on the merits**.  See Balent, 669 A.2d at 313.  For example, this Court has held that our denial of an application for extraordinary relief is not a final adjudication **on the merits**, and "the petitioning party is free to pursue his claim in any appropriate forum."  County of Berks ex rel. Baldwin, 678 A.2d at 359.  Similarly, when we issue an order explaining that "this Court is without authority to grant relief" to either party (*Per Curiam* Order, 9/2/2016, at 1), we have not fully and finally adjudicated the litigants' claims on the merits.

The OISA distinguishes County of Berks ex rel. Baldwin from the instant matter on the basis that we assumed plenary jurisdiction over Appellants' action and the parties "litigated the issues through briefing."  OISA at 10.  That is irrelevant.  The critical inquiry is whether our September 2 order was a full and final merits adjudication of Appellants' constitutional challenge.  The OISA concedes that "the Court issued multiple opinions on the legal issue presented," none of which gained the support of a majority of the Justices.  Id. at 11.  How this Court managed to adjudicate Appellants' claim on the merits while simultaneously failing to resolve "the legal issue presented" is beyond my understanding.

[4]    In a prior filing of record, Appellee Cortés himself took the position that failing to inform voters that the current judicial retirement age is 70, "would likely leave the voter wondering what the current requirement is—or worse yet, leave the voter with the impression that there is currently no requirement at all."  See Answer of Secretary of the Commonwealth Pedro A. Cortés, 29 MM 2016.  For reasons unknown and undisclosed, (continued…)

A recent poll conducted by Franklin & Marshall College reveals, as many had assumed, that the ballot question's misleading language places a heavy thumb on the scales of the amendment process.[6]  The polling indicates that 64% of registered voters would vote "yes" to the question that will appear on the November ballot.  But support for the amendment nosedives an astounding nineteen points to 45% when voters are presented with the question as Secretary Cortés himself originally phrased it, *i.e.*, when voters are informed that in fact a judicial retirement age does currently exist and that it is 70.[7]

---

(…continued)
Secretary Cortés seems to have changed his mind quite completely.  Nonetheless, the OISA has exaggerated the Secretary's role here by asserting that he "framed" the misleading ballot question.  OISA at 1.  He did not frame it; indeed, he initially opposed it, and then later chose to acquiesce in it.  The distinction for artful draftsmanship is owed not to the Secretary but to the General Assembly.  See H.R. 783 2015 (directing the Secretary to remove the previously drafted ballot question from the April 26, 2016 primary election ballot and to place the language now at issue on the November 8, 2016 general election ballot).

[5]     See, e.g., Vote 'No' on Question to Raise Judges' Retirement Age, PHILLY, http://www.philly.com/philly/opinion/editorials/20161011_DN_editorial__Vote__No__on_question_to_change_judges__retirement_age.html ("We agree with those who filed the suits challenging the wording of the ballot question.  We believe it is deceitful—and deliberately so, designed to bamboozle voters[.]") (last visited Oct. 20, 2016); Howard J. Bashman, Lessons From Pa.'s Judicial Retirement Age Ballot Fiasco, THE LEGAL INTELLIGENCER, http://www.thelegalintelligencer.com/id=1202769603634/Lessons-From-Pa-S-Judicial-Retirement-Age-Ballot-Fiasco/?slreturn=20160920113149 ("Pennsylvania's legislature has devised a masterful strategy to avoid the defeats experienced in numerous other states when voters are asked whether existing judicial mandatory retirement ages should be increased—simply don't tell voters that the constitutional amendment will have the effect of increasing the mandatory judicial retirement age.") (last visited Oct. 20, 2016).

[6]     Berwood A. Yost, For the Nov. 8 Ballot Question About Changing Pa. Judges' Retirement Age, Words Matter, PENNLIVE, http://www.pennlive.com/opinion/2016/10/for_the_nov_8_ballot_question.html (last visited Oct. 20, 2016).

[7]     The OISA criticizes our reference to polling and commentary.  OISA at 11-12.  This critique misconstrues our use of these sources.  As the OISA itself recognizes (id. (continued…)

It is imperative that Pennsylvania's judiciary decide whether our Constitution tolerates a demonstrably misleading ballot question.[8]  The question has been asked.  It has not been answered.  See Marbury v. Madison, 5 U.S. 137, 177 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is.").

---

(…continued)

at 2), today's dispute concerns a question of law: to wit, whether our September 2 *per curiam* order precludes Appellants' right to a merits adjudication on *res judicata* grounds.  The material facts are undisputed.  The litigation before us addresses a matter of substantial public importance and notoriety.  In such circumstances, it is not only proper but indeed expected that jurists will marshal secondary sources (law review articles, news reports, commentary, etc.) to persuasive effect.  There is no evidentiary record here which Justices of this Court can either refine or improve.  There is a disagreement on a question of law.  In this disagreement, jurists will employ the tools that are appropriate to the persuasive task at hand.

> We see here a perfect illustration of the importance of context.  The argument is over the facts but not over the record.  The opinions are trying to persuade us to put the dispute in one context rather than another.  Until we do that, we don't know which law applies; we don't know how to construct analogies or make distinctions. . . .  Once we leave the domain of proof and enter that of persuasion, there is not a great deal that can be said in the abstract.  What counts as persuasive depends on both the speakers and the listeners; it shifts over time and depends on the circumstances.  It depends as well on the ability to present the case in a compelling manner.  The court, like the rest of us, must be persuaded.

PAUL W. KAHN, MAKING THE CASE: THE ART OF THE JUDICIAL OPINION 146 (Yale Univ. Press 2016).

[8]     The point is not that judges are unfit to serve after age 70.  The legacies of Holmes, Brandeis, and countless other stars that shine in the judicial firmament suggest otherwise.  The point is that our Constitution does not permit the General Assembly to load the dice, to hoodwink or infantilize the voters by crafting a ballot question calculated to deceive and mislead.  See Opinion in Support of Granting Plaintiffs' Application For Summary Relief And Denying Defendant's Application For Summary Relief (Wecht, J.), at 1-5 (September 2, 2016) (discussing requirements of constitutional amendment process).

Appellants turned to our courts with one straightforward question: Does the November ballot, as worded, violate Pennsylvania's Constitution?  Today's decision prevents Appellants from receiving an answer to that question.  They are entitled to one.

I would reverse the Commonwealth Court, and I would remand for further proceedings.

Justices Todd and Dougherty join this opinion.

# Exhibit LL

IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : | No. 100 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated October 5, |
| Appellants | : | 2016 at No. 517 MD 2016 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTÉS, SECRETARY OF | : | |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA, IN HIS OFFICIAL | : | |
| CAPACITY, | : | |
| | : | |
| Appellee | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE TODD**                                **DECIDED: October 25, 2016**

Underlying the present appeal is the yet-unresolved question of whether the ballot language — seeking to raise the mandatory retirement age of judges and justices from 70 to 75 — fairly, completely, and accurately apprises the voters of the constitutional change they are being asked to approve.  When we last faced this question in Sprague I[1], I came to the considered conclusion that, in failing to inform the voters that they were *increasing* the mandatory retirement age, not *imposing* a mandatory retirement age for the first time, this ballot language was unconstitutionally misleading.[2][3]  However, our Court split 3-3 in that case, issuing an order that we were

---

[1] Sprague v. Cortés, 75 MAP 2016, 2016 WL 4595403 (Pa. filed Sept. 2, 2016) ("Sprague I").
[2] The ballot question states:
(continued…)

"without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained."  Sprague I (*per curiam* order).  As a result, regardless of what one concludes about the merits of the important constitutional question at issue, we manifestly did not answer that question.  Nevertheless, those Justices in favor of affirmance would transmogrify our non-decision into a preclusive ruling on the merits, and affirm the erroneous Commonwealth Court order below.  See Opinion in Support of Affirmance ("OISA").  By stark contrast, and for the following reasons, I would reverse the Commonwealth Court's order and remand for further proceedings.

As noted by the OISA, the constitutional challenge to the ballot language was brought by Appellants in the Commonwealth Court, and this Court assumed extraordinary jurisdiction in Sprague I, culminating in a *per curiam* order from this Court. As the Court was deadlocked — with three Justices concluding Appellants were correct in their claim that the ballot language was misleading and three Justices concluding they were not — we could agree on only one thing, the following order:

> **AND NOW**, this 2nd day of September, 2016, the Court being evenly divided in its determination as to which parties are entitled to the grant of summary relief, this Court is without authority to grant relief and the *status quo* of the matter prior to the filing of the lawsuit is maintained. See Creamer v. Twelve Common Pleas Judges, 281 A.2d 57 (Pa. 1971) (holding that where this Court was evenly divided in a King's Bench original jurisdiction matter challenging gubernatorial appointments to judicial vacancies, the appropriate disposition was to enter a *per curiam* order

---

(…continued)
> Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?

[3] See Sprague I (Opinion in Support of Granting Plaintiffs' Application for Summary Relief and Denying Defendant's Application for Summary Relief by Todd, J., joined by Dougherty, J., and Wecht, J., in part).

noting that the requested relief could not be granted, thereby
maintaining the *status quo* of the matter).

Sprague I (*per curiam* order).  After this Court subsequently declined to remand the matter to the Commonwealth Court[4], Appellants refiled the same constitutional challenge in that court.  The Commonwealth Court rejected this challenge, without addressing the merits, and the issue presently before us is whether that court erred in rejecting Appellants' new filing on the grounds that this Court already decided the matter in Sprague I.

For reasons of efficiency and fairness, courts rightly preclude the same parties from re-litigating questions that have already been decided.  Here, citing our prior order in Sprague I, the Commonwealth Court rejected Appellants' present suit under the doctrine of *res judicata*.  In doing so, it set forth that doctrine's basic and well established governing principles:

> [It is] a doctrine by which a former adjudication bars a later action on all or part of the claim which was the subject of the first action. Any *final, valid judgment on the merits* by a court of competent jurisdiction precludes any future suit between the parties or their privies on the same cause of action.

Sprague v. Cortés, 517 M.D. 2016 at 5 (Pa. Cmwlth. filed Oct. 5, 2016) (quoting R/S Fin. Corp. v. Kovalchick, 716 A.2d 1228, 1230 (Pa. 1998)) (emphasis added).  Stated differently, to apply the doctrine of *res judicata*, "the issue or issues must have been actually litigated and determined by a valid and final judgment."  County of Berks ex rel. Baldwin v. Pennsylvania Labor Relations Bd., 678 A.2d 355, 359 (Pa. 1996).

While there is no doubt that our order in Sprague I was final in the sense that it was this Court's concluding pronouncement in the matter before us, it was decidedly not *a judgment on the merits*, nor did we *actually litigate or determine* anything.  In the prior

---

[4] This author and Justice Wecht dissented.

matter — as now — Appellants posed a simple legal question:  does the ballot language satisfy constitutional standards for clarity?   This divided Court could not and did not answer that question.    That observation, at its simplest, answers the *res judicata* question; and the case cited by the OISA, which I discuss below, does not alter that analysis.  It was thus plainly erroneous, in my view, for the Commonwealth Court to bar Appellants' present suit on the grounds that we *had* answered the constitutional question.

This straightforward interpretation of our prior disposition is also dictated by the language of our *per curiam* order in <u>Sprague I</u>.  Critically, we noted therein that, in light of our 3-3 deadlock, we were "without authority to grant relief."   Appellee, the Commonwealth Court, and the OISA ignore the import of this explicit qualifying language.  Because of the deadlock in <u>Sprague I</u>, this Court could agree on only one thing:  that we were unable to act.  Contrary to the suggestions of the OISA, we did not "declin[e]" relief, nor did we decide Appellants were "not entitled to relief."  <u>See</u> OISA at 7.   Instead, we determined that we lacked *authority* to grant relief.  A court lacking the authority to act lacks the *ability* to act.  Indeed, this point was explicitly made in <u>Creamer v. Twelve Common Pleas Judges</u>, 281 A.2d 57 (1971), the sole precedent we cited in our order in <u>Sprague I</u>.  There, analogizing our 3-3 deadlock in that case to a tribunal containing two members who were likewise deadlocked, we stated:

> When a legal or semi-legal tribunal consists of only two members, *neither one of them can perform an affirmative act changing, or which may change, an existing condition; for it takes a majority of the whole body to do this, and one is not a majority of two.*

<u>Id.</u> at 58 (quoting <u>In re First Cong. Dist. Election</u>, 144 A. 735, 739 (Pa. 1928)) (internal quotation marks omitted and emphasis added).  Thus, our declaration in <u>Sprague I</u> that

we lacked the authority to act, along with our citation to <u>Creamer</u>, demonstrates that we took no substantive action — we were unable to act on the merits.

Moreover, if there could be any ambiguity — and there is none — about the effect of our pronouncement that we were "without authority to grant relief," it was resolved by our statement immediately following:  "the *status quo* of the matter prior to the filing of the lawsuit is maintained."  These words can only mean that, because of our deadlock, we intended to return the parties to the status they occupied at a time prior to our intervention.  Again, our citation to <u>Creamer</u> proves this.  Therein, as in <u>Sprague I</u>, we sat in our original jurisdiction, and stated:

> It is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in statu[s] quo.

<u>Id.</u> at 58 (quoting <u>In re First Cong. Dist. Election</u>, 144 A. at 739) (internal quotation marks omitted).  That point bears emphasis:  we stated that the *subject-matter* with which a deadlocked original jurisdiction court is dealing *must remain in the status quo*.  Obviously, prior to our intervention in <u>Sprague I</u> — the *status quo* — the parties were unconstrained by *any* court's pronouncements on the constitutional issue at hand, and Appellants were unencumbered by any judgment on the merits.  Yet, the OISA looks past these clear declarations of non-action and discovers not just a judgment, but *a judgment on the merits*.  Gazing through the looking glass, the OISA strains to conclude that, in <u>Sprague I</u>, we simultaneously issued a judgment on the merits *and* returned the parties to the *status quo*.  The illogic of this position is patent.  A court can issue a judgment on the merits.  A court can restore the *status quo* prior to litigation.  It cannot do both at the same time.

Thus, basic principles of *res judicata* and the explicit text of our order should be the simple end of this appeal, and indicate summary reversal.  However, even were I to

accept the characterizations of the OISA that our order in <u>Sprague I</u> was a *denial* of extraordinary relief — rather than a simple deadlocked inability to act and restoration of the *status quo* — this Court has explicitly held that an order denying extraordinary relief, without more, has no *res judicata* effect.  In <u>County of Berks</u>, <u>supra</u>, we addressed the contention that our denial of an application for extraordinary relief precluded a latter suit by the same parties on the same question in the Commonwealth Court.   Finding the matter to be one of first impression, we surveyed other jurisdictions, and noted:

> The general rule is that where the extraordinary jurisdiction of a court is unsuccessfully invoked and the court does not expressly adjudicate the matter on the merits, then there is no preclusive effect and the petitioning party is free to pursue his claim in any appropriate forum.

<u>Id.</u> at 359 (citing cases).   Recognizing that there are reasons beyond the lack of legal merit for this Court to deny extraordinary relief, we held that an *order without opinion* denying such relief had no preclusive effect:

> Therefore, we now hold that where this court has issued an order without opinion denying extraordinary relief, that order alone is insufficient to establish that there has been a full and final adjudication of the claims raised. Thus, because the bar of res judicata is inapplicable to this matter, Appellees' first claim does not provide a basis for affirming the decision of the Commonwealth Court.

<u>Id.</u>   Thus, even if our order in <u>Sprague I</u> were viewed as a denial of relief, on this additional precedential authority, the Commonwealth Court erred in rejecting Appellants' suit on the basis of *res judicata*.[5]

---

[5] The OISA attempts to evade the import of <u>County of Berks</u> by noting that, in that case, we issued an order denying an application for extraordinary relief, whereas, in <u>Sprague I</u>, we assumed extraordinary jurisdiction, and ultimately issued an order which the OISA contends had the effect of denying extraordinary relief.  OISA at 10.  From the point of view of the parties, and, more critically, for purposes of *res judicata*, I see no distinction. In either scenario, relief is denied by simple order.  Moreover, I disagree with the OISA's superficial contention that the issuance of multiple opinions in <u>Sprague I</u>, which even the (continued…)

The OISA cites <u>Hartman v. Greenhow</u>, 102 U.S. 672 (1880), in support of its contention that our *per curiam* order was a "final judgment on the merits for purposes of *res judicata*."  OISA at 8.  First, caselaw from the Supreme Court of the United States does not control our Court's determination of the preclusive effect of our orders on the adjudication of state constitutional claims, inasmuch as our Court is the final arbiter of such pure questions of Pennsylvania law.   Moreover, as also observed by Justice Wecht[6], this case does not establish the novel jurisprudential proposition offered by the OISA.

In <u>Hartman v. Greenhow</u>, the petitioner sought a writ of *mandamus* from the Supreme Court of Appeals of Virginia to compel the treasurer of Richmond to accept petitioner's tender of state issued bonds as payment of his state tax obligations without deducting additional state tax from their redemptive proceeds. Petitioner claimed that the statute under which the treasurer asserted authority to make this deduction violated the Contract Clause of the United States Constitution. The Virginia Supreme Court divided 3-3 on the merits of that question, which, under Virginia law, constituted a denial of the issuance of the writ.  The narrow jurisdictional question which the United States Supreme Court addressed as a threshold matter, from which the OISA's quotation derives, was whether the split decision of the Virginia Supreme Court constituted "a final judgment or decree" under the Judiciary Act of 1787, and the federal high Court concluded that it did since the effect of the judgment was to deny the writ of *mandamus* and to finally conclude that litigation.  Importantly, though, the high Court did not purport to opine on whether the doctrine of *res judicata* barred the parties from *re-litigating* the

_____

(...continued)
OISA recognizes are non-precedential, <u>see</u> OISA at 3, makes any difference for purposes of application of <u>County of Berks</u>.  Our order in <u>Sprague I</u> was issued purely under the authority of <u>Creamer</u>.

[6] <u>See</u> Opinion in Support of Reversal (Wecht, J.) at 3 n.2.

issue of the propriety of the denial.  Indeed, the high Court went on in its opinion to conclude that the statute was in fact repugnant to the United States Constitution and granted petitioner relief. The high Court's ruling, therefore, has no bearing on the question of the preclusive effect of an order of a state's highest court on further litigation in the tribunals of that state, which is the issue we are considering in the present appeal.

Finally, I must respond to the OISA's waiver and constitutional structure arguments.  The OISA claims that Appellants' choice to seek extraordinary relief from our Court at the time they originally commenced their action in the Commonwealth Court somehow precluded them from further seeking relief in the Commonwealth Court after our Court could not render a decision on their claims.   The OISA deems Appellants' effort to seek a final determination from this Court regarding a paramount question of constitutional interpretation "tactical litigation," contending:

> Appellants were given every opportunity to have the Commonwealth Court adjudicate the substance of their legal challenge to the ballot question, but Appellants voluntarily and purposefully waived such opportunity by seeking this Court's extraordinary jurisdiction pursuant to Section 726 of the Judicial Code . . . thereby forfeiting their right to appellate review of an original jurisdiction decision.

OISA at 10.  Respectfully, what Appellants were seeking from the Commonwealth Court with their new filing in this matter was *not* appellate review of our *per curiam* order, but, rather, what they have always requested: an adjudication on the merits.

When Appellants asked that our Court assume extraordinary jurisdiction, they did so with the reasonable expectation our Court would resolve the constitutionality of this ballot question with a ruling on the merits of their claims; however, our Court proved unable to act. The OISA's assertion that Appellants' right to have this matter now heard in the Commonwealth Court was forfeited, even though our Court was unable to render a decision on the merits of their claims, is unsupported by either Article V, Section 2(a)

of our Constitution, the plain language of Section 726 of the Judicial Code, prior precedent from our Court, or the language of our *per curiam* order in Sprague I. Indeed, Section 726 affords our Court maximum flexibility after we have exercised our extraordinary jurisdiction to "otherwise cause right and justice to be done."  42 Pa.C.S. § 726.  Here, causing right and justice to be done requires an adjudication of this important issue on the merits.

Furthermore, while it is certainly true that Article V, Section 2(a) of our Constitution vests the supreme judicial power of the Commonwealth in this Court, as the OISA avers, the vesting of such great power in our Court also creates the highest obligation to exercise that power to achieve fundamental justice, not only for the individual litigants, but for all of the people of this Commonwealth.  Instead, we are permitting the Commonwealth Court's erroneous decision on *res judicata* to stand, and a constitutional question to go unanswered.

Today, as in Sprague I, this Court is deadlocked, for reasons I again find hard to fathom.  Although the present issue before us is a purely procedural one, by contrast, the underlying constitutional question could not be more important, as it concerns the people's power to amend their Constitution, and specifically the question of whether they have been fairly, completely, and accurately apprised of a proposed change to our charter.  With today's inaction by this Court, it appears that the present parties, and more importantly the public, will go to the polls on November 8 without ever receiving an answer to that fundamental question.

Justices Dougherty and Wecht join this opinion.

# Exhibit MM

**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR., | : | No. 100 MAP 2016 |
| | : | |
| | : | Appeal from the Order of the |
| | : | Commonwealth Court dated October 5, |
| Appellants | : | 2016 at No. 517 MD 2016. |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PEDRO A. CORTES, SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, IN HIS OFFICIAL CAPACITY, | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| Appellee | : | |

## OPINION IN SUPPORT OF REVERSAL

**JUSTICE DOUGHERTY**                               **DECIDED: October 25, 2016**

I view the current controversy as different from the procedural question raised on motion for reconsideration and decided by this Court on September 16, 2016.  At this juncture, the issue is whether *res judicata* applies, and as this Court has not answered the substantive question originally presented — whether the ballot language at issue is unconstitutionally misleading — I do not believe a decision on the merits has been rendered by the Court.

Justices Todd and Wecht join this opinion.

# Exhibit NN

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **RICHARD A. SPRAGUE, HON. RONALD D. CASTILLE, AND HON. STEPHEN ZAPPALA, SR.** | : | Civil Action No. 1:16-CV-2169 |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| ~~PEDRO A. CORTÉS, IN HIS OFFICIAL~~ CAPACITY AS THE SECRETARY OF THE COMMONWEALTH OF PENNSYLVANIA, | : | |
| | : | |
| | : | |
| Defendant. | : | |

### AFFIDAVIT OF BERWOOD A. YOST

BERWOOD A. YOST, of full age, being duly sworn, upon his oath deposes and says:

1.     I am the Director of the Center for Opinion Research at Franklin & Marshall College where I also teach courses in research methods and public health. I have substantial applied experience designing and implementing public opinion research using both qualitative and quantitative methods, and I have conducted funded research on behalf of government, business, nonprofit organizations, public utilities, higher education, and the media. I have published approximately two-dozen articles in refereed scholarly journals and have also made numerous conference presentations based on the results and analysis of survey research I have designed and administered. My scholarly research has appeared in numerous journals, including *Addictive Behaviors, American Journal of Preventive Medicine, American Journal of Public Health, Commonwealth, Criminology & Public Policy, Human Rights Quarterly, Nicotine and*

*Tobacco Research, Political Communication, Tobacco Control,* and *Women's Health Issues.*
My writings have also appeared in The Polling Report, Pollster.com, Public Opinion Pros, and
Survey Research, which are published for the professional survey research community.

      2.      I am also the head methodologist for the Franklin & Marshall College Poll (the
"Poll"), formerly the Keystone Poll, which is conducted for the Philadelphia Daily News,
Pittsburgh Tribune Review, WTAE-TV and WGAL-TV. This Poll is an ongoing survey activity
of the Center for Opinion and Research and the Center for Politics and Public Affairs, both at
~~Franklin & Marshall College, which tracks public attitudes toward public policy issues and~~
political campaigns.

      3.      I am an expert in the field of survey research.

      4.      I have appeared as an expert in the field of survey research before the
Pennsylvania Court of Common Pleas of Susquehanna County.

      5.      In September 2016, I oversaw an objective study to assess the effect on voters of
the wording of ballot questions concerning whether the Pennsylvania Constitution should be
amended to raise the current constitutionally-mandated judicial retirement age from 70 to 75.

      6.      In particular, I conducted a "split-ballot experiment" (the "Experiment") which is
a tool regularly used by survey methodologists to objectively determine the effect of question
wording on survey outcomes.

      7.      I have attached as Exhibit A to this affidavit references to literature explaining the
type of split-ballot experiment that I conducted, which is generally accepted as reliable by
experts in the field of survey research and political science.

      8.      The findings of the Experiment presented in this Affidavit are based on the results
of interviews conducted September 28 – October 2, 2016. The interviews were conducted at the

Center for Opinion Research at Franklin & Marshall College. The data included the responses of 813 Pennsylvania registered voters, including 395 Democrats, 316 Republicans, and 102 Independents. The sample of registered voters was obtained from Labels & Lists. All sampled respondents were notified by letter about the survey. Interviews were completed over the phone and on-line depending on each respondent's preference. Survey results were weighted (age, gender, region, education, and party registration) using an iterative weighting algorithm to reflect the known distribution of those characteristics as reported by the Pennsylvania Department of State. The sample error for this survey is +/- 4.8 percentage points when the design effects from weighting are considered.

9.      The Experiment I conducted used a random procedure to assign survey participants to different forms of a question regarding the current proposed amendment to the Pennsylvania Constitution's mandatory judicial retirement age. It involved groups of people who are identical in all ways except for the form of the question they received (see Paragraph 10).

10.      The demographic and political characteristics of the participants in the Experiment ensured that differences appearing in the Experiment were the result of the wording of the question and not the result of who was asked the question. I have attached as Exhibit B to this affidavit a table detailing the makeup of the Experiment participants in each treatment condition and the success of the random assignment process in relation to gender, age, education, race, marital status, political party registration, and political ideology. The statistical tests show there are no significant differences in these characteristics by experimental groups. The random procedures used to assign Experiment participants appear to have been successful by these measures.

11.      Each person who participated confirmed being a registered voter in the Commonwealth of Pennsylvania.

12.     Participants in the Experiment were randomly assigned to get one of three different question forms about the proposal to raise the mandatory judicial retirement age currently set forth in the Pennsylvania Constitution: (1) the ballot initiative in the form of wording that is set to appear on the November 2016 general election ballot; (2) the original wording of the ballot question that was scheduled to appear on the April 2016 primary election ballot; and (3) a common language alternative created by me.  The questions that were randomly assigned to Experiment participants are as follows:

    a.   **The November 2016 General Election Question**: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?"

    b.   **The April 2016 Primary Election Question**: "Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?"

    c.   **Common Language Alternative Question**: "The Pennsylvania Constitution currently requires that justices of the Supreme Court, judges, and magisterial district judges retire on the last day of the calendar year they turn 70 years of age. Should the state Constitution be amended to allow these judges to serve in office until they are 75 years of age?"

13.     This Experiment showed that each form of the question generates a different response.  Nearly two in three (64 percent) registered Pennsylvania voters say they will vote "yes" to the November 2016 General Election Question; less than half (45 percent) say they will vote "yes" to the April 2016 Primary Election Question; and fewer than two in five (37 percent) say they will vote "yes" when asked the Common Language Alternative Question.  (*See* Exhibits B and C.)

14.     I would expect all three forms of the question to produce similar results if the ballot questions were commonly interpreted and the Experiment participants similarly understood the proposed amendment based on each of the ballot questions.

15.     The most likely reason that responses to the April 2016 Primary Election Question and the Common Language Alternative Question differ so much from the responses to the November 2016 General Election Question form is because the current judicial retirement age is left out of the November 2016 General Election Question. The different results produced by the Experiment questions suggest that some voters will not understand the subject of the current proposed amendment to the Pennsylvania Constitution's mandatory retirement age unless the ballot question on the proposed amendment states that judges are currently required under the Pennsylvania Constitution to retire at the age of 70.

16.     In my expert opinion, the November 2016 General Election Question omits information that a portion of voters would need to understand what they are voting for or against.

        The foregoing is all true and correct to the best of my knowledge, information and belief.

Dated: _11/2/2016_                          _[signature]_
                                            BERWOOD A. YOST

Sworn to and Subscribed

Before me this _2nd_ day of _November_, 2016

_[signature]_
     [Notary]

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
PEGGY A. SLOAD, Notary Public
Lancaster City, Lancaster County
My Commission Expires May 15, 2018

# Affidavit of Berwood A. Yost

# Exhibit A

Barabas, J. & Jerit, J. (2010) Are survey experiments externally valid? *American Political Science Review*, 104(2), 226 – 242.

Campbell, D. T. & Stanley, J. C. (1966) Experimental and quasi-experimental designs for research. Rand McNally, Chicago.

Druckman, J. N., Green, D. P., Kulkinski, J. H., & Lupia, A. (2012)  Cambridge handbook of experimental political science, 2nd ed.  Cambridge University Press, New York.

Mutz, D. (2011) Population-based Survey Experiments. Princeton University Press, Princeton, NJ.

Schuman, H., Presser, S. (1996) Questions and answers in attitude surveys: Experiments on question form, wording, and context.  Sage Publications, Thousand Oaks, California.

Sniderman, P. (2012) The Logic and Design of the Survey Experiment.  In: Cambridge Handbook of Experimental Political Science, 2nd Edition, James N. Druckman, Donald P. Green, James H. Kulkinski, and Arthur Lupia (eds). Cambridge University Press, New York, pp. 102 – 114.

# Affidavit of Berwood A. Yost

# Exhibit B

## Experimental Assignment Outcomes

| | | Fall 2016 Format | | Spring 2016 Format | | Common Language Format | | Pearson Chi-Square Test Outcomes |
|---|---|---|---|---|---|---|---|---|
| | | Count | Column N % | Count | Column N % | Count | Column N % | |
| Sex of respondent | Male | 132 | 48% | 132 | 50% | 127 | 47% | Chi-Sq (2) = 0.434, p = 0.805 |
| | Female | 145 | 52% | 134 | 50% | 144 | 53% | |
| age | Under 35 | 72 | 26% | 61 | 23% | 72 | 27% | Chi-Sq (4) = 3.107, p = 0.540 |
| | 35-54 | 82 | 30% | 94 | 35% | 92 | 34% | |
| | Over 55 | 123 | 44% | 110 | 42% | 107 | 39% | |
| education | HS or less | 55 | 20% | 51 | 19% | 53 | 20% | Chi-Sq (4) = 0.060, p = 1.000 |
| | Some college | 90 | 32% | 86 | 32% | 88 | 32% | |
| | College degree | 132 | 48% | 129 | 49% | 129 | 48% | |
| race | White | 248 | 92% | 238 | 92% | 234 | 89% | Chi-Sq (2) = 1.265, p = 0.531 |
| | Nonwhite | 21 | 8% | 21 | 8% | 27 | 11% | |
| marital status | Single, Never Married | 64 | 23% | 61 | 23% | 77 | 29% | Chi-Sq (4) = 3.616, p = 0.460 |
| | Married | 177 | 64% | 176 | 66% | 160 | 59% | |
| | Not currently married | 35 | 13% | 29 | 11% | 33 | 12% | |
| party affiliation | Republican | 117 | 42% | 107 | 40% | 93 | 34% | Chi-Sq (4) = 4.320, p = 0.364 |
| | Democrat | 130 | 47% | 127 | 48% | 138 | 51% | |
| | Independent or something else | 30 | 11% | 32 | 12% | 39 | 14% | |
| political ideology | Liberal | 83 | 31% | 79 | 31% | 85 | 33% | Chi-Sq (4) = 1.040, p = 0.904 |
| | Moderate | 80 | 29% | 72 | 28% | 79 | 31% | |
| | Conservative | 108 | 40% | 102 | 40% | 94 | 37% | |

# Affidavit of Berwood A. Yost

# Exhibit C

# The Effect of Wording Variation on the Vote Outcome
# Pennsylvania Judicial Ballot Question, November 2016

*Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges, and magisterial district judges be retired on the last day of the calendar year in which they attain the age of 75 years?*



*Shall the Pennsylvania Constitution be amended to require that justices of the Supreme Court, judges and justices of the peace (known as magisterial district judges) be retired on the last day of the calendar year in which they attain the age of 75 years, instead of the current requirement that they be retired on the last day of the calendar year in which they attain the age of 70?*



*The Pennsylvania Constitution currently requires that justices of the Supreme Court, judges, and magisterial district judges retire on the last day of the calendar year they turn 70 years of age. Should the state Constitution be amended to allow these judges to serve in office until they are 75 years of age?*



Note: Registered Pennsylvania Voters
Source: Survey conducted September 28 – October 2, 2016

Center for
OPINION RESEARCH FRANKLIN&MARSHALL
COLLEGE